**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| J-M MANUFACTURING COMPANY, INC., | |
| Plaintiff, | Hon. Robert W. Gettleman |
| v. | CASE NO. 1:24-CV-03853 |
| SIMMONS HANLY CONROY, LLP, NICHOLAS ANGELIDES, PERRY BROWDER, AMY GARRETT, BENJAMIN GOLDSTEIN, SUVIR DHAR, CRYSTAL FOLEY, DEBORAH ROSENTHAL, STAN JONES, AND JOHN AND JANE DOES 1–25, | JURY TRIAL DEMANDED |
| | ORAL ARGUMENT REQUESTED |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SPECIAL MOTION TO STRIKE COUNTS III, IV, AND V PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 AND FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

Introduction ....................................................................................................................1

Relevant Background .......................................................................................................3

I.  J-MM Manufactured And Sold Asbestos-Cement Pipe Throughout The 1980s, Leading To Lawsuits By Workers Who Manifested Asbestos-Related Diseases. ........................................3

II.  J-MM's Complaint Is Based Entirely On Defendants' Alleged Litigation Activities. ..............4

Argument .........................................................................................................................7

I.  Under Illinois Choice Of Law Principles, California's Anti-SLAPP Statute Applies To J-MM's State Law Claims. ...................................................................................................7

II.  California's Anti-SLAPP Law Precludes J-MM's State Law Claims Under The Applicable Two-Step Analysis. .......................................................................................................11

   A.  Step One: J-MM's Claims Arise From Protected Conduct As All Defendants' Alleged Activities Were In Connection With Litigation. .....................................................12

   B.  Step Two: J-MM Cannot Show A Probability That It Will Prevail On Its Claims. ..........15

      1.  The Litigation Privilege Bars All J-MM's Claims. .....................................................15

      2.  J-MM Cannot Meet Its Burden Of Demonstrating A Probability Of Success For Additional Reasons .................................................................................................17

III.  An Award Of Attorneys' Fees And Costs To Prevailing Defendants Is Mandatory. ..............20

Conclusion ....................................................................................................................20

# TABLE OF AUTHORITIES

CASES

*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.*,
6 Cal. App. 5th 426 (2016) ............................................................................. 20

*Auto–Owners Ins. Co. v. Websolv Computing, Inc.*,
580 F.3d 543 (7th Cir. 2009) ............................................................................. 7

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ............................................................................. 11, 15

*Blanchard v. DIRECTV, Inc.*,
123 Cal. App. 4th 903 (2004) ............................................................................. 16

*Bonni v. St. Joseph Health Sys*,
11 Cal. 5th 995 (2021) ............................................................................. 12

*Briggs v Eden Council for Hope & Opportunity*,
19 Cal. 4th 1106 (1999) ............................................................................. 13, 15

*Bucciarreli-Tieger v. Victory Records, Inc.*,
488 F. Supp. 2d 702 (N.D. Ill. 2007) ............................................................................. 8

*Carden v. Getzoff*,
190 Cal. App. 3d 907 (1987) ............................................................................. 17

*Chi v. Loyola Univ. Med. Ctr.*,
787 F. Supp. 2d 797 (N.D. Ill. 2011) ............................................................................. 10

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ............................................................................. 20

*Contreras v. Dowling*,
5 Cal. App. 5th 394 (2016) ............................................................................. 17

*Crossroads Investors L.P. Federal Nat'l Mtg. Ass'n*,
13 Cal. App. 5th 757 (2017) ............................................................................. 12

*Dean v. Friends of Pine Meadow*,
21 Cal. App. 5th 91 (2018) ............................................................................. 16

*Digerati Holdings, LLC v. Young Money Ent., LLC*,
194 Cal. App. 4th 873 (2011) ............................................................................. 16

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) ............................................................................. 20

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
47 Cal. App. 4th 777 (1996) ............................................................................. 16

*Duffy v. Godfread*,
No. 13-cv-1569, 2013 WL 4401390 (N.D. Ill. Aug. 14, 2013) ........................................... 8, 11

*Ed & F Man Biofuels Ltd. v. MV FASE*,
728 F. Supp. 2d 862 (S.D. Tex. 2010) ............................................................................. 19

*Engate, Inc. v. Esquire Deposition Servs., L.L.C.*,
208 F. App'x 946 (Fed. Cir. 2006) ............................................................................. 16

*Engate, Inc. v. Esquire Deposition Servs., L.L.C.*,
331 F. Supp. 2d 673 (N.D. Ill. 2004) ............................................................................. 16

*Equilon Enterprises, LLC. v Consumer Cause, Inc.*,
   29 Cal. 4th 53 (2002) .......................................................................... 14

*Esser v. McIntyre*,
   169 Ill.2d 292 (1996) ............................................................................ 8

*Finton Construction, Inc. v. Bidna & Keys, APLC*,
   238 Cal. App. 4th 200 (2015) .......................................................... 12, 17

*Flickinger v. Finwall*,
   85 Cal. App. 5th 822 (2022) ........................................................... 15, 16

*GeneThera, Inc. v Troy & Gould Professional Corp.*,
   171 Cal. App. 4th 901 (2009) ............................................................. 13

*G-I Holdings, Inc. v. Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002) ..................................................... 5

*G-I Holdings, Inc. v. Baron & Budd*,
   No. 01-cv-216, 2004 WL 1277870 (S.D.N.Y. June 10, 2004) ...................... 5

*Global Relief Found. v. N.Y. Times Co.*,
   No. 01-cv-8821, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002).......... 2, 7, 8, 11

*Governor Gray Davis Comm. v. Am. Taxpayers All.*,
   102 Cal. App. 4th 449 (2002) ............................................................. 11

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) ..................................................... 3

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ........................................................... 20

*Home Ins. Co. v. Zurich Ins. Co.*,
   96 Cal. App. 4th 17 (2002) ................................................................ 17

*Idema v. DreamWorks, Inc.*,
   162 F. Supp. 2d 1129 (C.D. Cal. 2001) ................................................ 20

*Intercon Sols., Inc. v. Basel Action Network*,
   969 F. Supp. 2d (N.D. Ill. 2013) ........................................................ 7, 8

*Jogani v. Superior Ct.*,
   165 Cal. App. 4th 901 (2008) ............................................................. 20

*Kamelgard v. Macura*,
   585 F.3d 334 (7th Cir. 2009) ............................................................... 2

*Kenne v. Stennis*,
   230 Cal. App. 4th 953 (2014) ............................................................. 15

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ................................................................... 20

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ..................................................................... 18

*Laker v. Bd. of Trustees of Calif. State Univ.*,
   32 Cal. App. 5th 745 (2019) ............................................................. 15

*Ludlow v. Nw. Univ.*,
   79 F. Supp. 3d 824 (N.D. Ill. 2015) ..................................................... 20

*McCoy v. Iberdrola Renewables, Inc.*,
   760 F.3d 674 (7th Cir. 2014) ............................................................... 7

*Morgan v. J-M Mfg. Co., Inc.*,
   60 Cal. App. 5th 1078 (2021) .............................................................. 1

*Navellier v. Sletten*,
  29 Cal. App. 4th 82 (2002) ............................................................ 13, 15
*Oasis W. Realty, LLC v. Goldman*,
  51 Cal. 4th 811 (2011) ........................................................................ 11
*Optional Capital, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
  18 Cal. App. 5th 95 (2017) ................................................... 3, 12, 13, 15
*Osundairo v. Geragos*,
  447 F. Supp. 3d 727 (N.D. Ill. 2020) ..................................................... 2
*RePET, Inc. v. Zhao*,
  No. 15-cv-2315, 2016 WL 11634745 (C.D. Cal. Sept. 2, 2016) ................. 18, 19
*Rusheen v. Cohen*,
  37 Cal. 4th 1048 (2006) .................................................. 11, 12, 13, 16
*Silberg v. Anderson*,
  50 Cal. 3d 205 (1990) .................................................................. 3, 16
*Suarez v. Trigg Laboratories, Inc.*,
  3 Cal. App. 5th 118 (2016) ................................................................ 13
*Tanner v. Jupiter Realty Corp.*,
  433 F.3d 913 (7th Cir. 2006) .......................................................... 7, 10
*Taylor v. Avid Holdings*,
  No. 09-cv-5293, 2010 WL 3307374 (N.D. Ill. Aug. 19, 2010) ....................... 9
*Thomas v. Fry's Elecs., Inc.*,
  400 F.3d 1206 (9th Cir. 2005) ............................................................ 7
*Tocco v. Richman Greer Pro. Ass'n*,
  553 F. App'x 473 (6th Cir. 2013) ......................................................... 19
*Townsend v. Sears, Roebuck & Co.*,
  227 Ill.2d 147 (2007) ........................................................................ 8
*United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
  190 F.3d 963 (9th Cir. 1999) .............................................................. 7
*Williams v. J-M Mfg. Co., Inc.*,
  102 Cal. App. 5th 250 (2024) .............................................................. 1

**STATUTES**

Cal. Civ. Code § 47 ............................................................................ 3
Cal. Civ. Proc. Code § 425.16 ..................................................... passim

**RULES**

Cal. R. Prof. Conduct 8.5 ..................................................................... 9
Fed. R. Civ. P. 12 .......................................................................... 1, 7
Fed. R. Civ. P. 9 ............................................................................. 19

iv

## INTRODUCTION

Simmons Hanly Conroy LLP ("Simmons Hanly") and the individually identified and named defendants bring this Special Motion to Strike Counts III–V of J-M Manufacturing Company, Inc. ("J-MM")'s Complaint pursuant to California Code of Civil Procedure section 425.16 ("anti-SLAPP statute").

Having been repeatedly on the losing end of jury verdicts,[1] J-MM is trying a new tactic: retaliate against attorneys who represent asbestos victims by saddling them with frivolous and costly litigation in an attempt to deter further asbestos lawsuits. California's anti-SLAPP statute was enacted expressly to prevent this kind of gamesmanship. Cal. Civ. Proc. Code § 425.16(a). It requires the early dismissal of all claims based on litigation conduct—even if that conduct was supposedly unethical or otherwise wrongful—and mandates the dismissal of Counts III, IV, and V here.

Counts III, IV, and V allege claims for common law fraud, unjust enrichment, and civil conspiracy based *entirely* on Defendants' absolutely protected conduct in representing their clients in asbestos litigation against J-MM. Defendants are also filing a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss *all* J-MM's claims on a variety of grounds, but Defendants

---

[1] In *Morgan v. J-M Mfg. Co., Inc.*, one of the cases J-MM references in its Complaint, the jury returned a $30 million verdict in favor of a Simmons Hanly client, $22.2 million of which was J-MM's responsibility. 60 Cal. App. 5th 1078, 1084, 1091 (2021). Other plaintiffs' law firms have achieved similar success. In *Williams v. J-M Mfg. Co., Inc.*, 102 Cal. App. 5th 250, 258 (2024), the jury returned a $2.6 million verdict against J-MM and others; in *Hardcastle v. J-M A/C Pipe Corp.*, No. 830058-2 (Alameda Cnty. Super. Ct. 2001), the jury found J-MM's sister company liable for $20.5 million in damages; and in *Metzger v. J-M Mfg. Co., Inc.*, No. 19STCV27717 (Los Angeles Cnty. Super. Ct. 2023), the figure was $8.8 million, against J-MM and others.

bring this Motion because they are separately entitled to a dismissal with prejudice of the state law claims, plus an award of their attorneys' fees and costs, under the anti-SLAPP statute.[2]

As the state with the most relevant contacts and the strongest interest in having its anti-SLAPP law govern the alleged conduct at issue, the choice of law analysis requires application of California's anti-SLAPP statute. *Global Relief Found. v. N.Y. Times Co.*, No. 01-cv-8821, 2002 WL 31045394, at *11–12 (N.D. Ill. Sept. 11, 2002). In its Complaint, J-MM accuses Simmons Hanly and its employees of acting wrongfully in asbestos litigation against J-MM, a California-based manufacturer of asbestos-cement pipe. The majority of that litigation occurred in California on behalf of persons who were residents of and injured in California; not one of these cases was properly filed in Illinois or filed on behalf of an Illinois citizen.[3] Because the alleged "injury" to J-MM took place in California as a result of Defendants' alleged petitioning conduct in California on behalf of California residents, California has a strong interest in applying its anti-SLAPP protections. *See Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009) (Illinois favors applying the law of the place of injury); *Global Relief*, 2002 WL 31045394, at *11 ("California has a great interest in determining how much protection to give California speakers."). In fact, given the lack of connection between Illinois and the litigation that is central to J-MM's claims, J-MM appears to have selected Illinois as a venue in hopes of avoiding California's anti-SLAPP statute.

---

[2] Anti-SLAPP protection must be asserted in a "special" motion to strike, which is why this Motion is brought separate from Defendants' forthcoming motion to dismiss. *See generally Global Relief Found. v. N.Y. Times Co.*, No. 01-cv-8821, 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002); *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 733 (N.D. Ill. 2020); Cal. Civ. Proc. Code § 425.16(a)(1).

[3] One of the ten cases complained of by J-MM, *Perkins v. A. W. Chesterton* was initially filed in Illinois but "refiled in Vermont state court based on a jurisdictional defect in Illinois." Compl. ¶ 119. Ms. Perkins and her surviving spouse were residents of North Carolina and then Vermont, not Illinois. *See* Request for Judicial Notice ("RJN") (to be filed concurrently with Defendants' forthcoming motion to dismiss) Ex. 3 at 2.

Applying California's anti-SLAPP statute to J-MM's state law claims is straightforward. J-MM's claims against Defendants arise out of Defendants' representation of their clients in asbestos litigation against J-MM, which indisputably constitutes protected conduct at step one. *See* Cal. Civ. Proc. Code § 425.16(e); *Optional Capital, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 18 Cal. App. 5th 95, 113 (2017) ("It is well established that the protection of the anti-SLAPP statute extends to lawyers and law firms engaged in litigation-related activity."). At step two, then, J-MM has the burden to establish a probability of success on its claims, *see* Cal. Civ. Proc. Code § 425.16(b), which it cannot do. J-MM has no probability of success on its state law claims—for all the reasons set forth in Defendants' forthcoming motion to dismiss but also because California provides an "absolute" litigation privilege, broadly immunizing all conduct, statements, or writings with any "connection or logical relation" to pending or anticipated litigation. *Silberg v. Anderson*, 50 Cal. 3d 205, 211–12 (1990); Cal. Civ. Code § 47(b). It recognizes no exceptions. *Silberg,* at 215. Counts III, IV, and V on their face target Defendants' litigation activities and thus must be dismissed.

## RELEVANT BACKGROUND[4]

**I.    J-MM Manufactured And Sold Asbestos-Cement Pipe Throughout The 1980s, Leading To Lawsuits By Workers Who Manifested Asbestos-Related Diseases.**

J-MM sold asbestos-cement pipe from 1983 to 1988, "long after" the dangers of asbestos were "common knowledge." Compl. ¶¶ 13, 38, 40, 42. Asbestos exposure causes a range of fatal asbestos-related diseases, including mesothelioma, an incurable cancer that manifests "approximately 30 years" after exposure. *Id*. ¶¶ 50, 61. The 1970s saw "[m]ass asbestos litigation"

---

[4] While this Court need not accept J-MM's speculative and wholly conclusory allegations as true, *see Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020), the truth or falsity of these allegations is irrelevant for purposes of this motion because litigation conduct— wrongful or not—is absolutely protected by the anti-SLAPP statute.

begin "in earnest" when courts ruled that manufacturers of asbestos-containing products could be held strictly liable for their part in causing asbestos-related diseases. *Id*. ¶ 51.

J-MM, which is headquartered in Los Angeles, continued selling pipes containing asbestos into the late 1980s. *Id.* ¶¶ 13, 42. J-MM, "one of the largest" pipe manufacturers in the United States, used asbestos because it is "strong, durable, and flexible" and "inexpensive." *Id*. ¶¶ 13, 35. J-MM admits that the pipes "needed to be cut" on occasion, risking "airborne release" of asbestos. *Id*. ¶¶ 46, 48.

Starting in the 2000s, J-MM saw a "wave of asbestos litigation" filed by workers who manifested asbestos-related diseases. *Id.* ¶¶ 55, 70. Simmons Hanly represented workers in some of those suits. *Id*. ¶¶ 55, 70.[5]

## II.    J-MM's Complaint Is Based Entirely On Defendants' Alleged Litigation Activities.

J-MM alleges that Defendants engaged in wrongful litigation conduct by filing unmeritorious lawsuits on behalf of victims of asbestos-related diseases and concealing the deficiencies of those suits, Compl. ¶¶ 11, 71, allegedly in furtherance of Defendants' "primary objective of securing the most compensation possible for clients," *id.* ¶ 82; *see also id.* ¶¶ 31–32. The breadth of J-MM's requested relief makes clear that J-MM's lawsuit is an effort to silence its litigation adversaries: it seeks an injunction "prohibiting the Defendants from continuing to perpetrate their fraudulent scheme against [J-MM]," trebled damages, punitive damages, "disgorgement" of fees paid by clients to Simmons Hanly (not by J-MM), J-MM's own attorneys' fees in defending past asbestos claims, and pre- and post-judgment interest. *Id*. at 87–88. Paradoxically, J-MM expressly disclaims any desire to unwind any settlements or rulings in any of the cases it claims were the product of fraud. *Id*. ¶ 210.

---

[5] J-MM has been sued more than 6,000 times by asbestos victims. Compl. ¶ 50. Simmons Hanly has brought 430—fewer than 10%—of those lawsuits against J-MM. *Id*. ¶¶ 11, 50.

J-MM's Complaint is based entirely on Defendants' litigation activities, which it claims are wrongful. Citing an unrelated case from over two decades ago involving an entirely different plaintiff's firm,[6] J-MM speculates that Defendants' asbestos litigation follows an imaginary "Fraud Playbook." *Id.* ¶¶ 11, 71–72, 82. Yet there is no well-pled allegation that Simmons Hanly possesses, or has ever possessed, any type of playbook, handbook, or guide for litigating its cases. J-MM's allegations concerning this so-called playbook instead consist entirely of the following litigation conduct:

- ***First***, according to J-MM, Simmons Hanly allegedly names J-MM as a defendant if J-MM's name "crops up in a plaintiff's work history." *Id.* ¶ 76.

- ***Second***, Simmons Hanly files a complaint in "a plaintiff-friendly" jurisdiction. *Id.* ¶ 77. Most of Simmons Hanly's complaints against J-MM have been filed in California, where J-MM is headquartered and which J-MM does not contest is a proper venue; despite this, according to J-MM, the selected jurisdictions are ones willing to overlook Simmons Hanly's alleged "misconduct." *Id.*

- ***Third***, J-MM alleges "based on information and belief" that Defendants prepare their clients for their deposition testimony, including by ensuring that the deposition highlights aspects favorable to their cases. *Id.* ¶¶ 83–84. Despite acknowledging that the asbestos exposure at issue occurred approximately 30 years ago because of mesothelioma's long latency period, J-MM faults witnesses for recalling only "vague details about work history, job sites, and co-workers." *Id.* ¶ 86.

- ***Fourth***, "based on information and belief," J-MM alleges that Defendants work to minimize the importance of evidence unfavorable to their clients' claims. *Id.* ¶¶ 85–87.

- ***Fifth***, again "based on information and belief," J-MM alleges that Simmons Hanly "dismisses bogus asbestos lawsuits" once it is clear that "they are infected by misconduct." *Id.* ¶¶ 88–89.

---

[6] J-MM cites *G-I Holdings, Inc. v. Baron & Budd*, No. 01-cv-216 (S.D.N.Y.), for the proposition that Simmons Hanly follows a supposed litigation "playbook." Compl. ¶¶ 65–66, 69, 148–49, 162. But Defendants are not alleged to have had any involvement in *G-I Holdings*, nor are any facts alleged suggesting that Simmons Hanly had any "playbook." The claims regarding the "Baron & Budd Memorandum" were ultimately dismissed for failing to allege facts showing the memorandum was actually used to prepare clients. 238 F. Supp. 2d 521, 538–39 (S.D.N.Y. 2002); 2004 WL 1277870, at *3 (S.D.N.Y. June 10, 2004).

As discussed in Defendants' forthcoming motion to dismiss, of the alleged 430 suits filed by Simmons Hanly naming J-MM since 2001, *id.* ¶ 11, J-MM describes five suits in which Defendants allegedly engaged in misconduct: (1) *Bretado v. 3M Company* (California), *id.* ¶¶ 95–106, (2) *Carranza v. 3M Company* (California), *id.* ¶¶ 107–14; RJN Ex. 1, (3) *Yates v. Basco Drywall & Painting Co.* (California), Compl. ¶¶ 125–33, (4) *Montgomery v. Caterpillar* (California), *id.* ¶¶ 134–42, and (5) *Perkins v. A.W. Chesterton* (Vermont), *id.* ¶¶ 115–24. The Complaint also references (but does not describe) five additional cases: (1) *Swiger v. A.R. Wilfley & Sons, Inc.* (West Virginia), RJN Ex. 2, (2) *Morgan v. J-M Manufacturing Co., Inc.* (California), Compl. ¶¶ 27, 153–66, (3) *Azevedo v. A.W. Chesterton Company* (Massachusetts), RJN Ex. 4, (4) *Boyance v. Calaveras Asbestos, Ltd.* (California), RJN Exs. 5–6, and (5) *Noll v. American Biltrite Inc.* (Washington), RJN Ex. 7. Attached hereto as Exhibit A is a chart summarizing these cases.

In supposed support of its claims, J-MM cites the unverified (and unproven) allegations in *Peebles v. Simmons Hanly Conroy, LLC*, No. 20-18513 (Cal. Super. Ct. May 12, 2020), an employment case between Simmons Hanly and a former employee. Compl. ¶¶ 27, 93, 143–45. J-MM misconstrues Peebles's complaint as alleging misconduct by Simmons Hanly "across a number of different lawsuits." *Id.* ¶¶ 10, 22, 33. As J-MM well knows, Peebles himself emphatically rejected as "[n]onsense" J-MM's "mischaracterization of his underlying allegations" to "make[] it sound as if [he] 'blew the whistle' on some massive conspiracy to falsify evidence in asbestos cases affecting 'thousands' of people," and denied that J-MM "was the 'victim' of even one 'fraudulent case.'" RJN Ex. 10 at 8.

## ARGUMENT

### I. Under Illinois Choice Of Law Principles, California's Anti-SLAPP Statute Applies To J-MM's State Law Claims.

Courts in this District have recognized that defendants may bring a special motion to strike pursuant to California's anti-SLAPP statute in federal court, *see, e.g.*, *Global Relief*, 2002 WL 31045394, at *11–12, if California law applies and the motion "is consistent with the standards of [Federal Rules of Civil Procedure] 12 and 56," *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1050 (N.D. Ill. 2013); *accord United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970–73 (9th Cir. 1999); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206–07 (9th Cir. 2005) (reversing district court for failing to apply anti-SLAPP statute). Here, this Motion is being brought along with a motion to dismiss under Rule 12, and as discussed further below, California's anti-SLAPP provision governs.

District courts in Illinois apply Illinois's choice of law rules to select the applicable state substantive law. *McCoy v. Iberdrola Renewables, Inc*., 760 F.3d 674, 684 (7th Cir. 2014) (explaining that the forum state's choice of law rules apply when a federal court sits in diversity or exercises supplemental jurisdiction over state-law claims). Illinois courts use the "most significant contacts" test to resolve conflicts of law.[7] *Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In assessing which state has the most significant contacts, courts look to: "'(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered.'" *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006) (quoting *Esser v. McIntyre*, 169 Ill.2d 292,

---

[7] A choice of law analysis is necessary here because, even though both Illinois and California have enacted anti-SLAPP statutes, their application differs. *See, e.g.*, *Global Relief*, 2002 WL 31045394, at *11–12 (applying choice of law analysis to decide whether Illinois's or California's anti-SLAPP statute applied); *Intercon*, 969 F. Supp. 2d at 1034 (same as to Washington's and Illinois's anti-SLAPP statutes).

298 (1996)). Courts also consider the "interests and public policies of potentially concerned states as they relate to the transaction." *Bucciarreli-Tieger v. Victory Records, Inc*., 488 F. Supp. 2d 702, 711 (N.D. Ill. 2007).

Under the Illinois doctrine of *dépeçage*, this Court must give separate choice-of-law consideration to each issue in a case, including the issue of which state's anti-SLAPP law applies. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 159–61 (2007). In deciding which anti-SLAPP statute applies, the Court must consider the states' contacts specific to the anti-SLAPP issues, including the states' respective interests in enforcing their anti-SLAPP protections; it is irrelevant to this inquiry that another state's law might govern the substantive adjudication of the claims. *Global Relief*, 2002 WL 31045394, at *11–12 (applying anti-SLAPP defense under California law to Illinois defamation claim); *Duffy v. Godfread*, No. 13-cv-1569, 2013 WL 4401390, at *4 (N.D. Ill. Aug. 14, 2013) (applying anti-SLAPP defense under Minnesota law to Illinois defamation claim); *Intercon*, 969 F. Supp. 2d at 1035 (applying anti-SLAPP defense under Washington law to Illinois defamation claim).

California easily has the most significant contacts under the choice-of-law test. Beginning with the first factor of that test, California is the sole location of J-MM's alleged injuries. J-MM claims it was injured by the "fees and costs" it paid "to fend off claims" filed by Defendants, which also, in some cases, "induced the company into settlements." Compl. ¶ 210. As a California-based company, J-MM would have suffered these claimed injuries in California.

The second factor, the location of the alleged injury-causing conduct, also favors California. Four of the five cases described in the complaint—*Bretado*, *Carranza*, *Yates*,

*Montgomery*, and *Morgan*—were venued in California state court. *Id.* ¶¶ 95, 107, 125, 134.[8] The *Peebles* case also was filed and litigated in California. *Id.* at 18; RJN Ex. 10. In contrast, *none* of the cases discussed in the Complaint were properly filed in Illinois. J-MM asserts that Simmons Hanly attorneys prepared some filings and correspondence in Illinois, Compl. ¶ 27, but these filings and communications—wherever prepared—related to ongoing litigation venued most predominantly in California where they were subject to California's Professional Rules of Conduct. *See* Cal. R. Prof. Conduct 8.5 (specifying that California's rules apply to "conduct in connection with a matter pending before a tribunal" sitting in California). In any event, a significant portion of the litigation pleadings and documents were, in fact, prepared in California as two of the individual defendants (Deborah Rosenthal and Benjamin Goldstein) are based in Simmons Hanly's California office.[9] Compl. ¶¶ 18, 21.

The third factor, the domicile of the parties, also weighs in favor of California. J-MM is domiciled in California.[10] *Id.* ¶ 13. So too are Goldstein and Rosenthal.[11] *Id.* ¶¶ 18, 21. Crystal Foley and Nicholas Angelides are licensed to practice law in California. *Id.* ¶ 20;[12] *see also, e.g.*, RJN Ex. 5 at 1. Moreover, the plaintiffs in the six California actions, on whose behalf Simmons

---

[8] Considering all ten of the cases mentioned in the Complaint (i.e., adding the five cases that are mentioned, but neither cited nor described in the Complaint), six of the ten were venued in California. *See* Ex. A.

[9] Defendant Stan Jones is also a resident of California. Nevertheless, the Complaint erroneously alleges Mr. Jones is a resident of Illinois. Compl. ¶ 22. Jones's residence in California is not a deciding factor here given the overwhelming evidence in favor of the application of California law, but should the Court desire proof of Jones's correct residence, Defendants can provide such proof.

[10] "A national corporation is domiciled in the state wherein the corporation's headquarters are located." *Taylor v. Avid Holdings*, No. 09-cv-5293, 2010 WL 3307374, at *3 (N.D. Ill. Aug. 19, 2010).

[11] *See supra* n.9.

[12] *See* Attorney Profile, Nicholas J. Angelides #250127 (*available at* https://apps.calbar.ca.gov/attorney/Licensee/Detail/250127).

Hanly filed the cases at issue, were California citizens at the time of their death, exposure, or both. That is highly relevant. In the anti-SLAPP context, courts in this District place significant weight on "the place where the allegedly tortious speech took place and the domicile of the speaker," given the state's "strong interest in having its own anti-SLAPP law applied to the speech of its own citizens." *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011) (also explaining that "the purpose behind an anti-SLAPP law is to encourage the exercise of free speech"). Here, the "speakers" in question were Simmons Hanly's clients, who were citizens of California and spoke through the complaints filed and litigated by the Defendants on their behalf.

California is also "where the relationship of the parties is centered," satisfying Illinois's fourth factor. *Tanner*, 433 F.3d at 916. Seven of the cases referenced in the Complaint (including *Peebles*) were litigated in California. While four cases were litigated outside of California, no case was ever litigated in Illinois (*Perkins* was refiled in Vermont) and no state other than California was the location of more than one case, making J-MM's domicile in California and the alleged place of injury, also California, the only common thread. There is no other state that even comes close to being the center of the parties' alleged relationship.

The public policy underscoring California's anti-SLAPP statute—which is expressly based on the goal of "encourag[ing] continued participation in matters of public significance," Cal. Civ. Proc. Code § 425.16(a)—strongly supports application of California law. The California legislature could hardly be clearer that suits such as this one—in which J-MM targets petitions filed by California citizens who seek redress for deadly asbestos exposure against a California company—are subject to the California statute's protections. The statute itself specifies that it was drafted to protect conduct "in connection with an issue under consideration or review by a . . . judicial body," and admonishes that it must be "construed broadly" to ensure "participation in

10

matters of public significance" is not "chilled through abuse of the judicial process." *Id.*; *id.* at (e)(2).

*Duffy*, 2013 WL 4401390, at \*4, is illustrative. There, an Illinois citizen sued a Minnesota attorney and his client in this District for alleged "false and defamatory statements" made in a complaint they filed in Minnesota state court. *Id.* at \*1. Recognizing Minnesota's "strong interests" in the application of its own anti-SLAPP statute to its own citizens, Judge Darrah concluded that Minnesota's anti-SLAPP statute should apply rather than Illinois's. *Id.* at \*4. Similarly, in *Global Relief*, Judge Coar applied California's anti-SLAPP statute rather than Illinois's, recognizing California's "great interest in determining how much protection to give California speakers." 2002 WL 31045394, at \*11. In short, California easily has the most significant contacts to J-MM's state law claims and its anti-SLAPP statute therefore should apply.

## II. California's Anti-SLAPP Law Precludes J-MM's State Law Claims Under The Applicable Two-Step Analysis.

In deciding an anti-SLAPP motion, courts engage in a two-step analysis. <u>First</u>, the moving parties must make a "threshold showing that the challenged cause of action arises from protected activity." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006); Cal. Civ. Proc. Code § 425.16(b)(1). "[A] court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary." *Governor Gray Davis Comm. v. Am. Taxpayers All.*, 102 Cal. App. 4th 449, 458 (2002). <u>Second</u>, "[i]f the court finds the defendant has made the threshold showing, it determines then whether the plaintiff has demonstrated a probability of prevailing on the claim." *Rusheen*, 37 Cal. 4th at 1056. If steps one and two are both satisfied, the entire count must be dismissed with prejudice. *Baral v. Schnitt*, 1 Cal. 5th 376, 395 (2016); *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011).

11

A.     **Step One: J-MM's Claims Arise From Protected Conduct As All Defendants' Alleged Activities Were In Connection With Litigation.**

J-MM's Complaint may be 89 pages long, but it can be boiled down to one line: Simmons Hanly and its attorneys allegedly filed unmeritorious claims against J-MM and acted improperly during the litigation of those claims. For example, J-MM alleges it was "informed and believes" that Defendants filed lawsuits against J-MM that "peddled falsehoods" and that Defendants obstructed J-MM's efforts to obtain evidence, improperly coached deposition witnesses, and served false discovery responses. *See, e.g.*, Compl. ¶¶ 7, 11, 127–28, 152.

*All* these alleged acts constitute quintessentially "protected conduct" under the first step of the anti-SLAPP analysis. Cal. Civ. Proc. Code § 425.16(e)(4). That is because *all* litigation conduct—filing pleadings, engaging in settlement negotiations, discovery conduct, and more—is protected. *See Optional Capital*, 18 Cal. App. 5th at 113; *Rusheen*, 37 Cal. 4th at 1056 (anti-SLAPP protections apply to "lawyers and law firms engaged in litigation-related activity"). Moreover, litigation conduct remains protected at step one *even if* that conduct is alleged to have been wrongful, unethical, or illegal. *Bonni v. St. Joseph Health Sys*, 11 Cal. 5th 995, 1024–25 (2021) (finding settlement negotiations before and during a lawsuit constitute protected activity under anti-SLAPP statute despite allegations of fraud during settlement negotiations); *Crossroads Investors L.P. Federal Nat'l Mtg. Ass'n*, 13 Cal. App. 5th 757, 778–79 (2017) (finding allegedly wrongful interrogatory responses and statements made during the pendency of plaintiff's bankruptcy that led to supposedly illegal and fraudulent sale of foreclosed property, protected activity under anti-SLAPP statute); *Finton Construction, Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 210 (2015) (finding "the determination is an easy one," and dismissing conversion and receipt of stolen property claims against lawyers pursuant to anti-SLAPP statute because "the acts alleged in the complaint all arise out of defendants' representation of their clients in the

underlying case"); *Navellier v. Sletten*, 29 Cal. App. 4th 82, 90–91 (2002) (finding alleged misrepresentation by defendant of his intention to be bound by release occurred during litigation and therefore protected activity under anti-SLAPP statute); *Rusheen*, 37 Cal. 4th at 1056; *Optional Capital*, 18 Cal. App. 5th at 113 (finding anti-SLAPP protections apply to "lawyers and law firms engaged in litigation-related activity").

In the seminal California Supreme Court case, *Briggs v Eden Council for Hope & Opportunity*, the court reviewed the legislative history regarding, and the express language of, the anti-SLAPP statute and concluded that the statute's protections apply broadly to all litigation related conduct. 19 Cal. 4th 1106, 1115 (1999). There, landlords sued a nonprofit organization alleging that the organization engaged in pattern of harassment by giving false information and making defamatory statements about the landlords. *Id.* at 1109. Because the non-profit's actions were in preparation of filing lawsuits, or in connection with issues then pending before the Department of Housing and Urban Development or in the civil courts, the court held that the non-profit's actions were protected under step one, without regard to the truth or falsity of the allegations. *Id.* at 1115. Likewise, in *Navellier*, the California Supreme Court applied anti-SLAPP protection to an action alleging "misrepresentations and omissions" in connection with the signing of a release in an underlying federal action. 29 Cal. 4th at 89. Relying on *Navellier*, a subsequent California appellate court explained: "Misrepresentation or failure to disclose can be protected petitioning activity for purposes of section 425.16." *Suarez v. Trigg Laboratories, Inc.*, 3 Cal. App. 5th 118, 124 (2016); *see also GeneThera, Inc. v Troy & Gould Professional Corp.*, 171 Cal. App. 4th 901, 906–10 (2009) (anti-SLAPP protections applied to tort action arising from an allegedly unethical settlement offer).

So too here. J-MM's Complaint patently arises entirely from Defendants' alleged litigation conduct and therefore is protected at step one of the analysis. The Complaint alleges that Defendants engaged in wrongful litigation conduct by allegedly filing suits based on fabricated evidence, choosing the most favorable jurisdictions, and "maximizing" settlements in the cases cited in the Complaint. Compl. ¶¶ 76–78. In support, J-MM cites product identification deposition testimony and parts of the asbestos complaints that it believes were untrue or found suspicious, *id.* ¶¶ 97–98, 108, 110, 117, 137, 152–66, purportedly false discovery answers, *id.* ¶¶ 103, 113, 121, 127, 132, 135, and examples of Defendants supposedly coaching witnesses, *id.* ¶¶ 98, 138. The individual defendants' alleged wrongful conduct, to the extent it is specifically alleged at all, consists entirely of litigation activity, too: signing pleadings and discovery responses, *id.* ¶¶ 95, 107, 113, 194, preparing witnesses for depositions, *id.* ¶¶ 195, sending letters to J-MM's counsel about pending litigation, *id.* at ¶ 194, and investigating their clients' cases, *id.* ¶¶ 75, 107.[13]

J-MM's motivation for suing Defendants (i.e., whether J-MM was actually motivated by a desire to chill Defendants' speech) is irrelevant. As the California Supreme Court explained in *Equilon Enterprises, LLC. v Consumer Cause, Inc.*, interpreting section 425.16 "without regard to the subjective intent of the plaintiff[] both maximizes the statute's tendency 'to encourage continued participation in matters of public significance' and conforms to the Legislature's express requirement of broad construction . . . . Judicial imposition of an intent-to-chill proof requirement also would contravene legislative intent by modifying the detailed remedial scheme the Legislature laid out in the statute's operative sections." 29 Cal. 4th 53, 60 (2002).

---

[13] Attached hereto as Exhibit B is a chart summarizing the allegations against the individual defendants.

In short, there is not a single allegation against any defendant that does not arise out of litigation conduct, which is more than enough to satisfy step one.

**B.  Step Two: J-MM Cannot Show A Probability That It Will Prevail On Its Claims.**

Having established that J-MM's lawsuit arises out of protected litigation activity, the burden shifts to J-MM to "demonstrate the merit of the claim by establishing a probability of success." *Baral*, 1 Cal. 5th at 384; Cal. Civ. Proc. Code § 425.16(b). To do so, J-MM must demonstrate that the claims at issue are both "legally sufficient" and "factually substantiated." *Baral*, 1 Cal. 5th at 396. A plaintiff cannot meet its burden if its claim is barred by an affirmative defense—such as the litigation privilege—or if plaintiff otherwise cannot state a legally viable claim. *See Optional Capital*, 18 Cal. App. 5th at 115; *Navellier*, 29 Cal. 4th at 93 (at step two, the plaintiff must establish a "prima facie" claim).

J-MM cannot meet its burden at step two because all its claims against Defendants are barred by California's litigation privilege[14] and, additionally and independently, fail to state a claim on various other grounds.

**1.  The Litigation Privilege Bars All J-MM's Claims.**

A plaintiff "cannot show a probability of prevailing on the merits of a cause of action for anti-SLAPP purposes where the cause of action is barred by the litigation privilege codified in Civil Code section 47." *Flickinger v. Finwall*, 85 Cal. App. 5th 822, 840 (2022); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 963–64 (2014); *see also Laker v. Bd. of Trustees of Calif. State Univ.*, 32 Cal. App. 5th 745, 769 (2019).

---

[14] Although steps one and two are separately discussed in this motion, the litigation privilege is co-extensive with section 425.16(e)(2) and so where the conduct at issue is litigation conduct, the analysis between steps one and two is often collapsed. *See Briggs*, 19 Cal. 4th at 1115.

California's broad litigation privilege applies to all communications made by litigants or their counsel that have "some connection or logical relation to the action." *Flickinger*, 85 Cal. App. 5th at 840. The privilege "is not limited to statements made during a trial or other proceedings," but also encompasses "steps taken prior thereto, or afterwards." *Rusheen*, 37 Cal. 4th at 1057. The privilege applies to *all* communicative acts and "noncommunicative acts that are necessarily related to the communicative conduct," made in connection with pending or anticipated litigation. *Id.* at 1065.

The litigation privilege is "absolute" and unconditional. *Digerati Holdings, LLC v. Young Money Ent., LLC*, 194 Cal. App. 4th 873, 889 (2011); *Silberg*, 50 Cal. 3d at 215. All that must be shown is a logical connection between pending or anticipated litigation and the conduct at issue. *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996). Applying labels such as "fraudulent" and "wrongful" to the alleged conduct, as J-MM repeatedly does here, does not circumvent the privilege. *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 921 (2004) (communications made in connection with litigation do not fall outside the privilege "merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal"). It applies regardless of "motives, morals, ethics or intent," and with equal force to both true and false communications. *Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 107 (2018).

Courts, including in this District, have consistently found that the California litigation privilege bars claims such as those J-MM brings here. *Silberg*, 50 Cal. 3d at 218 (collecting "numerous cases in which fraudulent communications or perjured testimony have nevertheless been held privileged"); *see also Engate, Inc. v. Esquire Deposition Servs., L.L.C.*, 331 F. Supp. 2d 673, 707 (N.D. Ill. 2004), *aff'd in part, rev'd in part on other grounds*, 208 F. App'x 946 (Fed. Cir. 2006) (dismissing claim because California law "make[s] clear that the § 47(b) privilege bars

16

causes of action seeking redress for the filing of baseless lawsuits—unless the plaintiff (or counterclaimant) pleads the elements of malicious prosecution"); *Carden v. Getzoff*, 190 Cal. App. 3d 907, 915 (1987) ("With similar considerations of public policy in mind, our Supreme Court long ago ruled that injurious perjury and suborning such perjury cannot be the basis of a civil action."); *Finton*, 238 Cal. App. 4th at 212–13 (applying litigation privilege to law firm's actions in receiving and retaining an alleged stolen hard drive during a lawsuit); *Contreras v. Dowling*, 5 Cal. App. 5th 394, 416 (2016) (rejecting tenant's argument that litigation privilege did not apply where tenant sued landlord's lawyer for conspiracy and aiding and abetting his clients' illegal entries into the apartment); *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 20, 24–26 (2002) (applying litigation privilege to attorney's misrepresentation of available insurance policy limits to induce the settlement of a lawsuit).

The application of the litigation privilege here is obvious: Every single charging allegation in J-MM's Complaint is based on litigation conduct. *See* Ex. B. Because such conduct is subject to an absolute privilege, as a matter of law, J-MM cannot meet its burden under step two of the anti-SLAPP analysis. For that reason alone, J-MM cannot prevail on its state law claims and those claims must be stricken with prejudice.

### 2. J-MM Cannot Meet Its Burden Of Demonstrating A Probability Of Success For Additional Reasons.

Separate and apart from the litigation privilege, which bars all three of J-MM's state law claims against Defendants, J-MM cannot establish a probability of success because those claims are untenable on the face of the Complaint for a variety of additional reasons that are more fully discussed in Defendants' forthcoming motion to dismiss. In short:

<u>First</u>, with respect to J-MM's common law fraud claim (Count III), J-MM has not and cannot plausibly allege the essential element of reasonable reliance. *See RePET, Inc. v. Zhao*, No.

17

15-cv-2315, 2016 WL 11634745, at *3 (C.D. Cal. Sept. 2, 2016). The alleged misrepresentations consist solely of supposed false testimony and written discovery responses related to a victim's exposure to J-MM's asbestos-cement pipe or, in *Perkins,* an alleged failure to disclose a claim filed with CertainTeed, a bankrupt entity. *See* Compl. ¶¶ 97–103 (*Bretado*); *id.* ¶¶ 110–13 (*Carranza*); *id.* ¶¶ 127–30 (*Yates*); *id.* ¶¶ 134–40 (*Montgomery*), *id.* ¶¶ 153–66 (allegedly suspicious testimony); *id.* ¶ 121 (*Perkins*). But J-MM makes clear that it did not believe, and contemporaneously sought to disprove, allegations that exposure to J-MM asbestos-cement pipe caused the plaintiffs' injuries. As to *Bretado*, for example, J-MM points to contemporaneous depositions that purportedly disproved the alleged misrepresentations. *Id.* ¶¶ 102–03 ("These witnesses [who testified in June 2019], in other words, confirmed that Bretado had provided false testimony."); *see also id.* ¶¶ 110, 112 (allegedly obtaining high school and immigration records purportedly disproving exposure deposition testimony in *Carranza*); *id.* ¶¶ 130–31 (witness allegedly "refut[ing] almost everything Simmons Hanly had represented about Yates' exposure to [asbestos-cement pipe]"); *id.* ¶¶ 135, 139 (referring to "statements that could not possibly be true" and product identification testimony purportedly disproven by social security records and employer witness). Similarly, J-MM was well aware that CertainTeed was a potential source of exposure in the *Perkins* case as the initial *Perkins* complaint filed by Simmons Hanly named CertainTeed as a defendant. *Id*. ¶ 118. Both black-letter law and basic logic make clear that J-MM could not have been defrauded if it never relied on an alleged misrepresentation as J-MM itself states repeatedly. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327 n.10 (2011) ("'Reliance' as used in the ordinary fraud context has always been understood to mean reliance on a statement for its truth and accuracy.").

18

Furthermore, even if J-MM did rely on any alleged misrepresentation, such reliance would not have been *reasonable*, as the alleged misrepresentations came from a litigation adversary dealing with J-MM at arms' length. "Reasonable reliance by a party upon an attorney's representations cannot exist where the interests of that party are adverse to those of the attorney's client." *Tocco v. Richman Greer Pro. Ass'n*, 553 F. App'x 473, 475 (6th Cir. 2013); *Ed & F Man Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862, 868 (S.D. Tex. 2010) ("It is well settled rule that a party may not justifiably rely on an opposing attorney's statements made in an adversarial setting, including litigation.").

Additionally, J-MM fails to plead its fraud claim with particularity as required under Rule 9(b). *RePET*, 2016 WL 11634745, at *3 ("A party alleging fraud in federal court must meet the heightened pleading standards of Rule 9(b) by stating 'with particularity the circumstances constituting fraud.'") (quoting Fed. R. Civ. P. 9(b)). J-MM fails to state with particularity the circumstances surrounding any alleged fraud in connection with any of the cases referenced in the Complaint, and also fails to do so with respect to each of the individual defendants. J-MM inexcusably fails to state with particularity the alleged misrepresentations even though they allegedly appear in writings directed to J-MM (e.g., pleadings, discovery responses, and correspondence).

Thus, none of the alleged misrepresentations J-MM identifies in the Complaint can support a fraud claim as a matter of law, even assuming the truth of J-MM's allegations.

Second, J-MM cannot prove a likelihood of success on its unjust enrichment (Count IV) and civil conspiracy (Count V) claims because, in addition to being barred by the litigation privilege as discussed above, these are not even cognizable standalone causes of action under

California law.[15] *See Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim."); *Jogani v. Superior Ct.*, 165 Cal. App. 4th 901, 911 (2008) (similar); *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 861 (N.D. Cal. 2023) (dismissing a "stand alone" civil conspiracy claim); *Idema v. DreamWorks, Inc.*, 162 F. Supp. 2d 1129, 1196–97 (C.D. Cal. 2001) (dismissing civil conspiracy claim).

## III.     An Award Of Attorneys' Fees And Costs To Prevailing Defendants Is Mandatory.

Where a defendant prevails on an anti-SLAPP motion, an award of attorneys' fees and costs is mandatory. Cal. Civ. Proc. Code § 425.16(c); *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal. App. 5th 426, 432 (2016) (court is "obligated to award reasonable attorney fees under section 425.16 [that] adequately compensate[] [the moving party] for the expense of responding to a baseless lawsuit") (internal quotations omitted); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (award of fees and costs is mandatory). Thus, if this Motion is granted, Defendants seek leave of this Court to supplement this filing with information on their fees and costs to be paid by J-MM.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court grant this Motion and strike Counts III, IV, and V with prejudice. Because an award of attorneys' fees and costs is mandatory on a successful anti-SLAPP motion, Defendants further request that this Court set a briefing schedule to determine the amount of such award.

---

[15] Nor are they in Illinois. *See Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 846 (N.D. Ill. 2015) (under Illinois law, "conspiracy is not an independent tort") (citation and internal quotation marks omitted); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim").

Dated:  July 16, 2024                    Respectfully submitted,

                                         */s/ John R. Storino*

                                         Reid J. Schar (6243821)
                                         John R. Storino (6273115)
                                         JENNER & BLOCK LLP
                                         353 North Clark Street
                                         Chicago, IL 60654-3456
                                         Tel:  (312) 222-9350
                                         Fax:  (312) 527-0484
                                         rschar@jenner.com
                                         jstorino@jenner.com

                                         Kirsten H. Spira (admitted *pro hac vice*)
                                         JENNER & BLOCK LLP
                                         2029 Century Park East
                                         Suite 1450
                                         Los Angeles, CA 90067-2901
                                         Tel:  (213) 239-6900
                                         kspira@jenner.com

                                         Amit B. Patel (6309876)
                                         JENNER & BLOCK LLP
                                         1155 Avenue of the Americas
                                         New York, NY 10036-2711
                                         Tel:  (212) 891-1600
                                         apatel@jenner.com

                                         *Counsel for Defendants*