**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| J-M MANUFACTURING COMPANY, INC., | |
| Plaintiff, | Hon. Robert W. Gettleman |
| v. | CASE NO. 1:24-CV-03853 |
| SIMMONS HANLY CONROY, LLP, NICHOLAS ANGELIDES, PERRY BROWDER, AMY GARRETT, BENJAMIN GOLDSTEIN, SUVIR DHAR, CRYSTAL FOLEY, DEBORAH ROSENTHAL, STAN JONES, AND JOHN AND JANE DOES 1–25, | JURY TRIAL DEMANDED ORAL ARGUMENT REQUESTED |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ................................................................................4

SUMMARY OF RELEVANT ALLEGATIONS ................................................6

ARGUMENT .........................................................................................................9

I. The *Noerr-Pennington* Doctrine Bars This Lawsuit In Its Entirety. .........................9

    A. The *Noerr-Pennington* Doctrine Applies To The Conduct Alleged In The Complaint.........................................................................................................9

    B. The *Noerr-Pennington* Doctrine's Sham Exception Does Not Apply..............11

II. J-MM Fails To State A RICO Violation.................................................................15

    A. J-MM Fails To Adequately Allege A RICO Enterprise. ...................................15

    B. J-MM Does Not Adequately Allege Any Racketeering Activity. .....................18

        1. Use Of Mail And Wires In Connection With Litigation Cannot Constitute Racketeering Activity. ..............................................................18

        2. The Federal Witness Tampering And Obstruction Of Justice Statutes Do Not Apply Here As A Matter Of Law. ...............................................22

    C. J-MM Fails To Sufficiently Allege Any Pattern Of Racketeering Activity As To The Individual Defendants...............................................................................23

    D. J-MM Cannot State A RICO § 1962(d) Claim Because It Does Not State A Viable § 1962(c) Claim. ...................................................................................28

    E. J-MM's RICO Claims Are Time Barred. ........................................................28

III. J-MM's State Law Claims Also Must Be Dismissed. ............................................31

    A. Because J-MM's RICO Claims Fail, This Court Should Decline To Exercise Supplemental Jurisdiction Over J-MM's State Law Claims...............................31

    B. J-MM's State Law Claims Fail Under The Substantive Law Of California Or Illinois. ............................................................................................................32

        1. Counts III, IV, and V Fail Under California's Litigation Privilege............33

        2. J-MM Fails To State A Claim For Common Law Fraud............................34

3.   J-MM Fails To State Claims For Unjust Enrichment And Civil Conspiracy. .............35

CONCLUSION ....................................................................................................................35

# TABLE OF AUTHORITIES

**CASES**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987)............................................................................................ 28

*Anderson v. Deloitte & Touche*,
   56 Cal. App. 4th 1468 (1997) ........................................................................... 34

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
   237 F.3d 394 (4th Cir. 2001) ............................................................................ 14

*Boyle v. United States*,
   556 U.S. 938 (2009)............................................................................................ 16

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972)....................................................................................... 9, 11

*Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*,
   559 F.3d 671 (7th Cir. 2009) ....................................................................... 28, 29

*Capasso v. CIGNA Ins. Co.*,
   765 F. Supp. 839 (S.D.N.Y. 1991) .................................................................... 22

*Carden v. Getzoff*,
   190 Cal. App. 3d 907 (1987) ............................................................................. 33

*Cedric Kusher Promotions, Ltd. v. King*,
   533 U.S. 158 (2001)...................................................................................... 16, 17

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
   168 F.3d 119 (3d Cir. 1999) ......................................................................... 10, 14

*Christiansburg Garment Co. v. EEOC*,
   434 U.S. 412 (1978)............................................................................................ 14

*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011) ............................................................................. 35

*Connick v. Suzuki Motor Co.*,
   174 Ill. 2d 482 (1996) ........................................................................................ 34

*Davit v. Davit*,
   366 F. Supp. 2d 641 (N.D. Ill. 2004) ........................................................... 22, 23

*Dean v. Riser*,
   240 F.3d 505 (5th Cir. 2001) ............................................................................. 14

*Deck v. Engineered Laminates*,
  349 F.3d 1253 (10th Cir. 2003) ............................................................................................ 19

*Demouchette v. Sheriff of Cook Cnty.*,
  No. 09-cv-6016, 2011 WL 1378712 (N.D. Ill. Apr. 12, 2011) ................................................ 27

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) .................................................................................... 35

*Domanus v. Locke Lord LLP*,
  847 F.3d 469 (7th Cir. 2017) .................................................................................................. 20

*Drobny v. JP Morgan Chase Bank, NA*,
  929 F. Supp. 2d 839 (N.D. Ill. 2013) ...................................................................................... 19

*Ed & F Man Biofuels Ltd. v. MV FASE*,
  728 F. Supp. 2d 862 (S.D. Tex. 2010) .................................................................................... 35

*Elzeftawy v. Pernix Grp., Inc.*,
  477 F. Supp. 3d 734 (N.D. Ill. 2020) ...................................................................................... 34

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
  831 F.3d 815 (7th Cir. 2016) .................................................................................................. 25

*Engate, Inc. v. Esquire Deposition Servs., L.L.C.*,
  208 F. App'x 946 (Fed. Cir. 2006) .......................................................................................... 33

*Engate, Inc. v. Esquire Deposition Servs., L.L.C.*,
  331 F. Supp. 2d 673 (N.D. Ill. 2004) ...................................................................................... 33

*Evers v. Cnty. of Custer*,
  745 F.2d 1196 (9th Cir. 1984) ................................................................................................ 10

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
  20 F. Supp. 3d 451 (S.D.N.Y. 2014) ...................................................................................... 20

*Fitzgerald v. Chrysler Corp.*,
  116 F.3d 225 (7th Cir. 1997) ............................................................................................ 16, 18

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ............................................................................................. 9, 10

*Gabovitch v. Shear*,
  No. 95-1055, 70 F.3d 1252 (unpublished table decision), 1995 WL 697319 (1st Cir. Nov. 21,
  1995) ....................................................................................................................................... 19

*Gorman Towers, Inc. v. Bogoslavsky*,
  626 F.2d 607 (8th Cir. 1980) .................................................................................................. 10

*Grimmet v. Brown*,
    75 F.3d 506 (9th Cir. 1996) ................................................................................ 30

*Guaranteed Rate, Inc. v. Barr*,
    912 F. Supp. 2d 671 (N.D. Ill. 2012) ................................................................. 23

*Harris Custom Builders, Inc. v. Hoffmeyer*,
    No. 90-cv-0741, 1994 WL 329962 (N.D. Ill. July 7, 1994) ................................. 19

*Heard v. Becton, Dickinson & Co.*,
    440 F. Supp. 3d 960 (N.D. Ill. 2020) ................................................................... 8

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
    76 F.4th 1164 (9th Cir. 2023) ............................................................................... 1

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ........................................................................... 35

*Idema v. Dreamworks, Inc.*,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) .............................................................. 35

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
    335 F.3d 303 (4th Cir. 2003) .............................................................................. 10

*In re Humira (Adalimumab) Antitrust Litig.*,
    465 F. Supp. 3d 811 (N.D. Ill. 2020) ................................................................. 11

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
    921 F. Supp. 2d 903 (N.D. Ill. 2013) ............................................................ 9, 10

*In re Mack Indus., Ltd.*,
    No. 17-bk-09308, 2021 WL 2005463 (Bankr. N.D. Ill. May 19, 2021).................. 8

*In re Manville Forest Prods. Corp.*,
    31 B.R. 991 (S.D.N.Y. 1983) ............................................................................... 4

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998) ................................................................................. 30

*In re Multidistrict Vehicle Air Pollution*,
    591 F.2d 68, 72 (9th Cir. 1979) .......................................................................... 30

*Ingersoll v. Klein*,
    46 Ill. 2d 42 (1970) ............................................................................................ 32

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*,
    196 F.3d 818 (7th Cir. 1999) .......................................................................... 9, 10

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
  610 F.3d 382 (7th Cir. 2010) ................................................. 28, 29

*Jogani v. Superior Ct.*,
  165 Cal. App. 4th 901 (2008) ...................................................... 35

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018) .............................................. 19, 20, 21

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997)...................................................................... 29

*Kottle v. Northwest Kidney Ctrs.*,
  146 F.3d 1056 (9th Cir. 1998) .............................................. 11, 15

*Krueger v. Boyd*,
  No. 93-cv-7352, 1994 WL 505301 (N.D. Ill. Sept. 15, 1994).................................. 8

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................... 35

*Ludlow v. Nw. Univ.*,
  79 F. Supp. 3d 824 (N.D. Ill. 2015) ............................................ 35

*Mayor & City Council of Baltimore v. AbbVie Inc.*,
  42 F.4th 709 (7th Cir. 2022) ...................................................... 11

*McCool v. Strata Oil Co.*,
  972 F.2d 1452 (7th Cir. 1992) .................................................... 29

*Mercatus Grp. LLC v. Lake Forest Hosp.*,
  641 F.3d 834 (7th Cir. 2011) ...................................................... 14

*Michalowski v. Rutherford*,
  82 F. Supp. 3d 775 (N.D. Ill. 2015) ............................................ 28

*Morgan v. J-M Mfg. Co., Inc.*,
  60 Cal. App. 5th 1078 (2021) ...................................................... 5

*New West, L.P. v. City of Joliet*,
  491 F.3d 717 (7th Cir. 2007) ...................................................... 12

*Nolan v. Galaxy Sci. Corp.*,
  269 F. Supp. 2d 635 (E.D. Pa. 2003) .......................................... 19

*Northern Trust Co. v. Peters*,
  69 F.3d 123 (7th Cir. 1995) .......................................................... 8

*O'Malley v. New York City Transit Auth.*,
   896 F.2d 704 (2d Cir. 1990) ............................................................ 22

*Paul S. Mullin & Assocs., Inc. v. Bassett*,
   632 F. Supp. 532 (D. Del. 1986) ...................................................... 20

*Pettiford v. Sheahan*,
   No. 02-cv-1777, 2004 WL 626151 (N.D. Ill. Mar. 26, 2004) ................................. 22

*Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ........................................................... 12, 13

*Raney v. Allstate Ins. Co.*,
   370 F.3d 1086 (11th Cir. 2004) ...................................................... 19

*Ratfield v. U.S. Drug Testing Lab'ys, Inc.*,
   No. 23-cv-15063, 2024 WL 640955 (N.D. Ill. Feb. 15, 2024) (Gettleman, J.) ................. 17, 31

*RePET, Inc. v. Zhao*,
   No. 15-cv-2315, 2016 WL 11634745 (C.D. Cal. Sept. 2, 2016) .............................. 34

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ............................................................. 16

*Robinson v. HSBC Bank USA*,
   732 F. Supp. 2d 976 (N.D. Cal. 2010) .................................................. 35

*Rocha v. Rudd*,
   826 F.3d 905 (7th Cir. 2016) ........................................................ 23

*Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*,
   863 F. Supp. 2d 732 (N.D. Ill. 2012) ........................................... 11, 12, 14

*Sandefur v. Dart*,
   No. 17-cv-2048, 2017 WL 3311018 (N.D. Ill. Aug. 3, 2017) ................................. 8

*Sihler v. Fulfillment Lab, Inc.*,
   No. 20-cv-01528, 2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) .............................. 35

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990), *as modified* (Mar. 12, 1990) .............................. 33

*Simmons v. Reich*,
   No. 20-4114, 2021 WL 5023354 (2d Cir. 2021) ...................................... 30, 31

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
   833 F.3d 512 (5th Cir. 2016) ........................................................ 19

*Spiegel v. Cont'l Ill. Nat. Bank,*
   609 F. Supp. 1083 (N.D. Ill. 1985) ........................................................................ 20

*Spiegel v. Cont'l Ill. Nat. Bank,*
   790 F.2d 638 (7th Cir. 1986) .................................................................................. 20

*Stachon v. United Consumers Club, Inc.,*
   229 F.3d 673 (7th Cir. 2000) .................................................................................. 28

*Taha v. Int'l Bhd. of Teamsters, Local 781,*
   947 F.3d 464 (7th Cir. 2020) .................................................................................... 8

*Tarpley v. Keistler,*
   188 F.3d 788 (7th Cir. 1999) .................................................................................... 9

*Taylor v. Avid Holdings, LLC,*
   No. 09-cv-5293, 2010 WL 3307374 (N.D. Ill. Aug. 19, 2010) .............................. 33

*Tocco v. Richman Greer Pro. Ass'n,*
   553 F. App'x 473 (6th Cir. 2013) ........................................................................... 34

*U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chi., Inc.,*
   953 F.3d 955 (7th Cir. 2020) ...................................................................... 11, 12, 13

*United Food & Comm. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.,*
   719 F.3d 849 (7th Cir. 2013) ............................................................................ 15, 16

*United States ex rel. Lusby v. Rolls-Royce Corp.,*
   570 F.3d 849 (7th Cir. 2009) .................................................................................. 23

*United States v. Pendergraft,*
   297 F.3d 1198 (11th Cir. 2002) .............................................................................. 19

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns,*
   858 F.2d 1075 (5th Cir. 1988) ................................................................................ 10

*Welch v. Wal–Mart Stores, Inc.,*
   No. 04-cv-50023, 2004 WL 1510021 (N.D. Ill. July 1, 2004) ............................... 23

*Westmoreland v. J.I. Case Co.,*
   714 F. Supp. 397 (E.D. Wis. 1989) ......................................................................... 13

*Williams v. Aztar Ind. Gaming Corp.,*
   351 F.3d 294 (7th Cir. 2003) .................................................................................. 31

*Williams v. J-M Mfg. Co., Inc.,*
   102 Cal. App. 5th 250 (2024), *review filed* (June 27, 2024) .............................. 4, 5

*Wright v. Associated Ins. Cos. Inc.*,
  29 F.3d 1244 (7th Cir. 1994) ................................................................. 31

**STATUTES**

18 U.S.C. § 1503 ................................................................................. 22, 23

18 U.S.C. § 1510 ................................................................................. 22, 23

18 U.S.C. § 1961 ........................................................................................ 16

18 U.S.C. § 1962 ................................................................. 3, 15, 28, 31

28 U.S.C. § 1367 ...................................................................................... 31

**OTHER AUTHORITIES**

Occupational Exposure to Asbestos,
  40 Fed. Reg. 47652 (Oct. 9, 1975) ....................................................... 5

The Fairness in Asbestos Injury Resolution Act of 2005,
  S. Rep. No. 109-97 (2005) ...................................................................... 5

**RULES**

Fed. R. Civ. P. 12 ...................................................................................... 8

Fed. R. Civ. P. 15 .................................................................................... 27

Fed. R. Civ. P. 9 ........................................................................... passim

## INTRODUCTION

Plaintiff J-M Manufacturing Company, Inc. ("J-MM"), an admitted asbestos-cement pipe supplier, improperly seeks to stem the successful tide of claims against it with this retaliatory RICO lawsuit against its litigation adversary Simmons Hanly Conroy LLP ("Simmons Hanly"), a law firm that represents asbestos victims.

In its Complaint, J-MM takes the position that routine litigation activities—such as seeking to secure "the most compensation possible for clients," Compl. ¶ 82, filing cases in "jurisdictions known to be favorable to asbestos plaintiffs[,]" *id.* ¶ 6, and preparing their clients for depositions, *id.* ¶¶ 83–84—constitute evidence of a racketeering enterprise. In support of its meritless claims, J-MM repeatedly cites decades-old allegations concerning the conduct of law firms *other than* Simmons Hanly, *see, e.g.*, *id.* ¶¶ 66, 68, 148–50, 162 (citing the "Baron & Budd" memorandum, authored by a law firm unconnected to Simmons Hanly, and the *Garlock Sealing Technologies* cases, where the plaintiffs, with full knowledge of the relevant facts, never sued Simmons Hanly), speculates about alleged wrongdoing based only on "information and belief," *see, e.g.*, *id.* ¶¶ 77, 80, 83–89, and misrepresents unverified and unproven allegations from an old employment case against Simmons Hanly (i.e., the *Peebles* complaint), *see, e.g.*, *id.* ¶¶ 93, 104, 172–80.

Courts consistently reject lawsuits like this one, where the claims stem from perceived unfavorable litigation outcomes. This Court should do the same. J-MM is no victim here; it made a conscious decision to sell asbestos-cement pipe well into the late 1980s despite the well-known dangers of asbestos, including its unique connection to mesothelioma (which is always terminal) and other debilitating illnesses.[1] Unsurprisingly, following the 20- to 30-year mesothelioma

---

[1] J-MM's questionable conduct has continued as it was found by a jury to have defrauded taxpayers throughout the country by selling municipal water districts faulty PVC pipe despite "kn[owing] that a significant amount of the pipe . . . did not in fact meet industry standards." *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1172 (9th Cir. 2023).

latency period, J-MM increasingly found itself on the receiving end of successful personal injury claims from victims of asbestos exposure. J-MM has repeatedly sought to blame everyone but itself in response. According to J-MM, sick and dying asbestos victims are liars, plaintiffs' lawyers are criminals, courts that allegedly refuse to "sanction the firm or [rein] [sic] it in" are corrupt,[2] and—when juries hold J-MM accountable for its actions—its own lawyers are incompetent. *See id.* ¶ 77; Request for Judicial Notice ("RJN") (filed concurrently herewith) Ex. 9.[3] This lawsuit is yet another attempt by J-MM to blame others for the foreseeable consequences of its own decision to make and sell a deadly product.

If J-MM really believed that attorney misconduct and fraud infected the outcomes of the cases it describes in its Complaint, it had potential recourse. It could have challenged the conduct in those cases (via motions for sanctions or to unwind the settlements it entered) or before an attorney disciplinary board. J-MM did not pursue those options despite acknowledging them in its Complaint, and it admits that it does not want to unwind any settlements with any asbestos exposure victims. *Id.* ¶ 210. It instead demands trebled and punitive damages, "disgorgement" of fees paid to Simmons Hanly by its clients (not by J-MM), and injunctive relief restricting Defendants' future litigation activities, which speaks volumes about J-MM's true motivation and objectives. This lawsuit is retribution for Defendants daring to represent injured and deceased

---

[2] J-MM believes the asbestos injury trust process is opaque and rife with fraud because "[t]he fox is guarding the proverbial hen house of these trusts." Compl ¶¶ 56–64. Yet J-MM's own counsel in this case—Steptoe LLP—has been counsel for a committee of unsecured creditors in an asbestos company bankruptcy, where that committee includes Simmons Hanly clients. *See* Order Authorizing the Employment and Retention of Steptoe LLP as Co-Counsel for the Official Committee of Unsecured Creditors of Barretts Minerals Inc., et al., as of January 16, 2024, *In re Barretts Minerals Inc.*, No. 23-bk-90794 (Bankr. S.D. Tex. Mar. 15, 2024), ECF No. 735.

[3] In *J-M Mfg. Co., Inc. v. WFBM, LLP*, No. 21STCV13121 (L.A. Cnty. Sup. Ct. Apr. 6, 2021), J-MM sued its own defense counsel for malpractice in the *Morgan* case, one of the 10 cases cited by J-MM in the instant complaint, after a jury found J-MM liable for $22 million in compensatory and punitive damages to a plaintiff represented by Simmons Hanly. RJN Ex. 9.

victims of J-MM's products and an inappropriate attempt to restrict Defendants from obtaining justice in the future for vulnerable individuals J-MM has harmed.

The *Noerr-Pennington* doctrine prohibits this type of gamesmanship. Every single allegedly wrongful act identified in the Complaint constitutes "petitioning activity" (i.e., litigation activity) protected by the First Amendment and, by extension, the *Noerr-Pennington* doctrine. Applicable to both litigants and their lawyers, the doctrine bars this action in its entirety as a matter of law. Accordingly, J-MM's RICO and state law claims alike must be dismissed with prejudice.

Even if J-MM's claims somehow could escape *Noerr-Pennington*, J-MM's RICO claims fail on their face for multiple additional reasons.

1. J-MM does not allege a RICO enterprise distinct from the alleged persons conducting the enterprise, as 18 U.S.C. § 1962(c) requires. The alleged enterprise consists solely of Simmons Hanly (a law firm) and individual Simmons Hanly personnel, which is inadequate as a matter of controlling law. J-MM's perfunctory and conclusory reference to unidentified individuals outside Simmons Hanly, including plaintiffs, witnesses, and co-counsel law firms, does not save the Complaint. And because J-MM's RICO claim under § 1962(d) is based on the same nucleus of operative facts as its § 1962(c) claim, the § 1962(d) claim is deficient as well.

2. J-MM does not adequately allege any predicate racketeering activity as required for a RICO claim. J-MM's predicate mail and wire fraud allegations are based solely on litigation activity, including the filing of documents, serving of discovery responses, telephonic or videoconference depositions, and settlement communications. Litigation activities cannot constitute mail or wire fraud as a matter of law. J-MM's other alleged predicate acts—obstruction of justice and witness tampering—are nonsensical, as the statutes cited apply only to federal proceedings and this case involves none.

3.      J-MM does not allege with the particularity required by Rule 9(b) that any of the individual defendants engaged in a pattern of racketeering activity. The Complaint proffers vague and conclusory allegations—based entirely on speculation—as to the individual defendants' roles; these allegations fall well short of the concrete, particularized factual allegations the law requires.

4.      The RICO claims are untimely. RICO has a four-year statute of limitations. All the cases J-MM complains of, save one, were litigated and/or resolved before the statute of limitations expired on May 10, 2020, and all the cases allegedly are part of a common scheme that began as early as 2013.

J-MM's state law claims, too, must be dismissed. In addition to failing under the *Noerr-Pennington* doctrine, they are barred under California's anti-SLAPP law[4] and California's absolute litigation privilege. They also are insufficiently pled.

In short, the Court should dismiss J-MM's groundless and ill-conceived lawsuit with prejudice and reject its inappropriate efforts to restrict Defendants' ability to pursue relief in court on behalf of their injured and dying clients.

## FACTUAL BACKGROUND

J-MM was born in December 1982 when, after asbestos claims forced Johns-Manville into bankruptcy, J-MM and a related entity purchased Johns-Manville's asbestos-cement pipe assets. *See In re Manville Forest Prods. Corp.*, 31 B.R. 991, 992 (S.D.N.Y. 1983); *Williams v. J-M Mfg. Co., Inc.*, 102 Cal. App. 5th 250, 250 n.1 (2024), *review filed* (June 27, 2024). Neither Johns-Manville's history of asbestos litigation and bankruptcy, nor the federal government's recognition that even limited exposure to asbestos was tied to mesothelioma, *see* Occupational Exposure to

---

[4] *See* Defendants' Special Motion to Strike Under California Code of Civil Procedure Section 425.16, Dkts. 21, 22.

Asbestos, 40 Fed. Reg. 47652, 47653–54 (Oct. 9, 1975), deterred J-MM from selling asbestos-cement pipe well into the late 1980s. *See* Compl. ¶ 42.

Mesothelioma is a painful, incurable, and ultimately deadly cancer uniquely caused by one thing: asbestos exposure. *See id.* ¶¶ 40, 49. It has a long latency period. *Id.* Predictably, about 20 years after J-MM entered the asbestos-cement pipe business, mesothelioma victims represented by many different plaintiffs' law firms, including Simmons Hanly, began suing J-MM. *Id.* ¶¶ 40, 50, 55. Simmons Hanly and its attorneys have represented clients in 430 lawsuits against J-MM, which constitute less than 10% of the total number of asbestos suits against J-MM to date. *Id.* ¶¶ 11, 50.

Juries nationwide have returned significant verdicts against J-MM for its role in manufacturing and selling asbestos-cement pipe.[5] For example:

- In *Morgan v. J-M Manufacturing Co., Inc.*—litigated by Simmons Hanly—the jury awarded the victims $30 million in damages, with J-MM responsible for $22.2 million of that judgment. *See Morgan v. J-M Mfg. Co., Inc.*, 60 Cal. App. 5th 1078, 1081 (2021) (affirming judgment on appeal with remittitur).

- In *Williams v. J-M Manufacturing Co., Inc.*—litigated by a different firm—the jury awarded $2.6 million in damages against J-MM and other defendants. *See Williams*, 102 Cal. App. 5th at 250 (affirming judgment on appeal).

- In *Hardcastle v. J-M A/C Pipe Corp.*—also litigated by a firm other than Simmons Hanly—the jury awarded $20.5 million in damages against J-MM's sister company. *Hardcastle v. J-M A/C Pipe Corporation*, No. 830058-2 (Alameda Cnty. Sup. Ct. 2001).

- In *Metzger v. J-M Manufacturing Co., Inc*., the jury awarded $8.8 million in damages against J-MM and others to victims represented by a firm other than Simmons Hanly. Case No. 19STCV27717 (L.A. Cnty. Sup. Ct. 2023).

J-MM has settled scores of other lawsuits brought against it by mesothelioma victims. *E.g.*, Compl. ¶¶ 105, 124.

---

[5] Juries, of course, are not alone in recognizing the asbestos crisis and its impact on those exposed to it. *See, e.g.*, The Fairness in Asbestos Injury Resolution Act of 2005, S. Rep. No. 109-97, at 4 (2005) (noting that "[t]he asbestos crisis has been considered by the Congress for decades").

## SUMMARY OF RELEVANT ALLEGATIONS

J-MM's Complaint is riddled with allegations that have nothing to do with Defendants. The vast majority of the allegations in the 89-page complaint are about law firms *other than* Simmons Hanly and J-MM's general gripes about asbestos litigation. Stripped of that irrelevant content, J-MM's *factual* allegations against Defendants boil down to the following:

- Simmons Hanly, in building cases on behalf of mesothelioma victims, attempts to identify "solvent companies" and products with "relevance to the type of work done by plaintiff." *Id.* ¶¶ 76, 78.

- Simmons Hanly attorneys endeavor to file in jurisdictions favorable to its clients. *Id.* ¶ 77.

- Plaintiffs in Simmons Hanly-initiated suits have identified J-MM's asbestos-cement pipe as the source of their exposure, *id.* ¶ 97—a fact that can hardly be surprising in lawsuits naming J-MM as a defendant.

- These plaintiffs were consistent with one another in how they (accurately) described the pipe with which they worked: smooth, gray, with stenciling. *Id.* ¶¶ 153–54.

- Some plaintiffs in Simmons Hanly-initiated suits against J-MM recall only "vague details about work history, job sites, and co-workers," *id.* ¶ 86; *see also id.* ¶ 110—which J-MM elsewhere acknowledges is because the asbestos exposure at issue occurred approximately 30 to 40 years earlier and "memories fade," *id.* ¶ 61.

- Some witnesses in Simmons Hanly's cases have given inconsistent testimony—which J-MM fantastically labels as "perjury." *Id.* ¶¶ 103–04.

- In one case initiated by Simmons Hanly, a J-MM customer denied allowing its workers to use a power saw with asbestos cement pipe, which releases asbestos; from this, J-MM concludes that Simmons Hanly's client could not have been exposed and thus lied. *Id.* ¶¶ 127–30.

- Plaintiffs represented by Simmons Hanly were often deposed within a few months of the complaint being filed, *id.* ¶ 96, which is not surprising because mesothelioma is an aggressive and terminal form of cancer.

From these unremarkable factual allegations, J-MM concludes that Simmons Hanly must have "scripted" its clients' testimony, purportedly "encouraging or suborning perjured testimony." *Id.* ¶¶ 11, 95–142, 205. In short, J-MM believes it found some contradictory evidence in ten isolated cases out of the 430 cases Simmons Hanly clients brought, and J-MM now attempts to turn those

6

purported contradictions into a RICO claim against Defendants. As every trial lawyer knows, contradictions and conflicting evidence are hallmarks of litigation.

The rambling Complaint contains just thirteen pages of factual allegations specific to Defendants, wherein J-MM describes five cases (of the allegedly 430 cases brought on behalf of Simmons Hanly clients) that it claims were infected by fraud: *Bretado*, *Carranza*, *Perkins*, *Yates*, and *Montgomery*. *Id.* ¶¶ 11, 95–142. The Complaint also cites five other cases without describing them: *Azevedo*, *Boyance*, *Morgan*, *Noll*, and *Swiger*. *Id.* ¶¶ 153–66. For the Court's convenience, salient information about these ten cases is listed in Exhibit A attached hereto. J-MM also refers to a "Fraud Playbook" that is entirely a product of J-MM's imagination, but which purportedly guides Defendants' conduct. *Id.* ¶¶ 11, 71–72, 89. There is no well-pled allegation that Defendants have ever possessed any type of playbook, handbook, or guide for litigating asbestos cases. That is because no such "playbook" exists.

The Complaint names eight individual defendants (all Simmons Hanly employees at the relevant times) but fails to adequately allege wrongful conduct by any of them. Two of them—Nicholas Angelides and Amy Garrett—are not alleged to have played any specific role in the ten cases listed in the Complaint. Suvir Dhar, a now former Simmons Hanly attorney, is alleged to have done nothing to prevent the filing of a complaint in *Carranza* with incorrect information, and to have presented a witness for a deposition in that case. *Id.* ¶¶ 19, 107–14. Deborah Rosenthal is alleged to have filed a summary judgment brief with incorrect information in *Carranza* and sent "threatening letters and emails" disputing J-MM's assertions and positions in *Yates* and *Montgomery*. *Id.* ¶¶ 125, 129, 141. Stan Jones allegedly assisted with translations in *Bretado* and *Carranza*. *Id.* ¶¶ 96 n.37, 109. Perry Browder allegedly sent letters with settlement paperwork and requested dismissal stipulations in *Bretado*, *Perkins*, *Azevedo*, and *Boyance*. *Id.* ¶ 202. Benjamin

Goldstein allegedly did the same in *Perkins* and *Azevedo*. *Id.* And Crystal Foley is alleged to have signed and served documents with incorrect information—pleadings, discovery responses, and correspondence—in *Bretado*, *Carranza*, and *Yates*. *Id.* ¶¶ 201–02.[6]

Because it has no real facts to allege, J-MM invokes unproven and unverified allegations made by Scott Peebles, a former Simmons Hanly attorney, in an employment case Peebles filed against the firm. *See, e.g.*, *id.* ¶ 10, 22, 33. Peebles generally alleged in that suit that he was unlawfully terminated because, among other alleged reasons, he refused to participate in unspecified actions that he believed would have been unethical or illegal. RJN Ex. 10 at 1, 8–9. After the case was resolved and dismissed, J-MM attempted to intervene in the case to unseal the complaint. The trial court rejected J-MM's efforts, and the appellate court affirmed. Despite having no involvement in that litigation and never obtaining the complaint, J-MM erroneously asserts that Peebles's complaint alleged misconduct by Simmons Hanly attorneys "across a number of different lawsuits[,]" that included the firm's attorneys providing falsified sworn statements, filing undisclosed bankruptcy claims, and serving false discovery responses. Compl. ¶¶ 10, 22, 33. J-MM's description of Peebles's claims is objectively untrue. As Peebles himself stated in a brief opposing J-MM's intervention, J-MM "mischaracterize[ed] . . . his underlying allegations" to "make[] it sound as if [he] 'blew the whistle' on some massive conspiracy to falsify evidence in

---

[6] Defendants dispute J-MM's version of events, but for the limited purpose of this motion they accept only J-MM's well-pled and reasonable allegations as true. *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) ("The court is not required to credit rank speculation.") (citing *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020)); *see also In re Mack Indus., Ltd.*, No. 17-bk-09308, 2021 WL 2005463, at *5 (Bankr. N.D. Ill. May 19, 2021) (for purposes of Rule 12(b)(6), "the court is required to make *reasonable* inferences . . . from the facts alleged, not *any* inference the [plaintiff] seeks") (emphasis in original) (citing *Krueger v. Boyd*, No. 93-cv-7352, 1994 WL 505301, at *4 (N.D. Ill. Sept. 15, 1994) (Rule 12(b)(6) "permits us to make only reasonable inferences," not unreasonable ones); *Northern Trust Co. v. Peters*, 69 F.3d 123, 132 (7th Cir. 1995) (refusing to draw unreasonable inferences); *Sandefur v. Dart*, No. 17-cv-2048, 2017 WL 3311018, at *3 (N.D. Ill. Aug. 3, 2017) (same)).

asbestos cases affecting 'thousands' of people." RJN Ex. 10 at 8. He did not. Peebles explained that "there is no basis whatsoever for J-MM's exaggerated and self-serving insistence that it was the 'victim' of even one 'fraudulent case' or anything that involved 'thousands' of people." *Id.* at 8–9. J-MM misrepresents Peebles's allegations.

**ARGUMENT**

I. **The *Noerr-Pennington* Doctrine Bars This Lawsuit In Its Entirety.**

The *Noerr-Pennington* doctrine extends First Amendment protections to parties that petition the government, including courts, for that petitioning activity. *See In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 910–11 (N.D. Ill. 2013). Originally arising in the antitrust context, the Supreme Court and the Seventh Circuit have since extended the doctrine to immunize plaintiffs from federal and state statutory and common law claims alike. *See, e.g.*, *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999). J-MM's RICO and state law claims are clearly foreclosed by *Noerr-Pennington*, and this Court should dismiss the entire Complaint with prejudice.

A. **The *Noerr-Pennington* Doctrine Applies To The Conduct Alleged In The Complaint.**

Rooted in the First Amendment's speech and petitioning clauses, the *Noerr-Pennington* doctrine recognizes a party's right to petition the government without fear of suit and requires dismissal of claims that chill the exercise of that right. *Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999). The doctrine extends protection, not only to the lobbying of legislative bodies, but also to lawyers' use of "the channels and procedures of state and federal . . . courts to advocate their causes and points of view respecting resolution of their business and economic interests[.]" *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972); *see Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1186 (9th Cir. 2005) (the *Noerr-Pennington* doctrine protects lawyers

9

who engage in and facilitate the exercise of First Amendment rights from civil liability). That is, a lawyer cannot be sued for the consequences of his or her litigation-related activities or statements. *Freeman*, 410 F.3d at 1185 (immunizing alleged discovery and settlement misconduct because both were "incidental to" a petition—the defense against the lawsuit).

The *Noerr-Pennington* doctrine's immunity for lawyers is expansive: It applies broadly to federal and state causes of action alike, both within and outside the context of antitrust, and extends to RICO claims in particular. *See Local 734*, 196 F.3d at 826 ("Although the *Noerr–Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits."); *Innovatio*, 921 F. Supp. 2d at 911 (doctrine applies to RICO and "state law statutory and common law claims") (citing *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003) ("[A]lthough originally developed in the antitrust context, the doctrine has now universally been applied to business torts."); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999) ("We are persuaded that the same First Amendment principles on which *Noerr–Pennington* immunity is based apply to the New Jersey tort claims."); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns*, 858 F.2d 1075, 1084 (5th Cir. 1988); *Evers v. Cnty. of Custer*, 745 F.2d 1196, 1204 (9th Cir. 1984); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614 (8th Cir. 1980)).

There can be no dispute that *Noerr-Pennington* immunity bars J-MM's lawsuit. All five counts in J-MM's Complaint are expressly based on Defendants' alleged conduct in filing, litigating, and settling lawsuits against J-MM. According to J-MM, Defendants engaged in racketeering by allegedly filing suits based on fabricated evidence, choosing the most favorable jurisdictions, and "maximizing" settlements. Compl. ¶¶ 76–78. Specifically, J-MM claims that Defendants acted wrongfully in five specific lawsuits by making untrue allegations against J-MM, *id.* ¶ 108, offering purportedly false testimony about J-MM's responsibility for the victims'

10

exposure to asbestos, *id.* ¶¶ 97–98, 110, 117, 137, providing purportedly false answers in discovery, *id.* ¶¶ 103, 113, 121, 127, 132, 135, allegedly "coaching" clients in depositions, *id.* ¶¶ 98, 138, and inducing J-MM to settle, *id.* ¶ 243.[7] *See also* Ex. B (summarizing factual allegations against the individual defendants). In other words, J-MM's entire complaint is premised on Defendants' use of "the channels and procedures of state and federal . . . courts to advocate [their clients'] causes and points of view"—activity protected under the Noerr-Pennington doctrine. *Cal. Motor*, 404 U.S. at 511. *See also, e.g.*, *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 853 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022) (dismissing Sherman Act claim under *Noerr-Pennington* doctrine where the claim was based on patent infringement lawsuits and USPTO proceedings); *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 743 (N.D. Ill. 2012) (dismissing RICO claim under *Noerr-Pennington* doctrine where claim was based on lawsuits and zoning board activity).

Because *Noerr-Pennington* immunity applies to all five of J-MM's claims—which are all based on Defendants' litigation activity on behalf of their clients—the entire Complaint should be dismissed with prejudice.

### B.     The *Noerr-Pennington* Doctrine's Sham Exception Does Not Apply.

The *Noerr-Pennington* doctrine is subject to an "extraordinarily narrow" "sham" exception. *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chi., Inc.*, 953 F.3d 955, 963 (7th Cir. 2020) (quoting *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1061 (9th Cir. 1998)). The exception has two applications. The first is where the litigation or the way the litigation is

---

[7] J-MM cites five other cases in which Defendants purportedly coached witnesses to implicate J-MM products in the clients' exposure to asbestos, but J-MM does not believe the testimony from those clients. *Id*. ¶¶ 152–66.

conducted is not "genuine," in both an objective and subjective sense of the word. *Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993); *see also U.S. Futures*, 953 F.3d at 963 (excepting "objectively baseless" litigation brought with improper subjective intent). The second is where the defendants allegedly make knowing and intentional "[f]raudulent misrepresentations . . . in [an] adjudicative proceeding," and the misrepresentations are "material, in the sense that [they] actually altered the outcome of the proceeding." *U.S. Futures*, 953 F.3d at 960, 960 n.7 (internal citation and marks omitted).

The first application is inapposite where the underlying litigation was settled or successful; such litigation "by definition, cannot be objectively meritless." *Rubloff*, 863 F. Supp. 2d at 742–43. For example, in *Rubloff*, the plaintiff "paid $200,000 and made significant concessions regarding the design of the development to settle the suits" that formed the basis of the subsequent lawsuit. *Id.* at 743. "That settlement," the court explained in finding the plaintiffs' claims barred by *Noerr-Pennington* immunity, "is fatal to the sham litigation argument." *Id.*; *see New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (lawsuit settled for a significant amount could not form the basis for the sham litigation exception).

Here, J-MM settled six of the ten cases it cites as purported evidence of Defendants' misconduct (*Bretado*, *Perkins*, *Swiger*, *Azevedo*, *Boyance*, and *Noll*). Ex. A. It has never argued or sought in any forum to undo any of these settlements. As in *Rubloff*, J-MM's voluntary decision to settle these cases is fatal to any sham exception argument. A seventh case, *Morgan*, culminated in a jury verdict in favor of Simmons Hanly's client, Ex. A—again, a "successful action" and therefore not "objectively meritless." *Rubloff*, 863 F. Supp. 3d at 742.

The remaining three cases (*Carranza*, *Yates*, and *Montgomery*) were voluntarily dismissed by Simmons Hanly. Ex. A. But J-MM cannot point to any facts reasonably supporting an inference

that the suits were dismissed because they were baseless, as opposed to for a good-faith reason. In all three cases, the victims alleged asbestos exposure during the time period in which J-MM admittedly sold asbestos-cement pipe, and all three victims died from mesothelioma, a disease caused only by asbestos exposure. Compl. ¶ 125 (Yates died of mesothelioma); *id.* ¶ 134 (Montgomery died of mesothelioma); RJN Ex. 1 ¶ 1 (Carranza died of mesothelioma). In fact, as reflected in the Complaint, J-MM declined to challenge whether two of these complaints stated valid causes of action, and although it initially filed a demurrer in the Yates case, tellingly, J-MM does not allege that the court took any action on its *Yates* demurrer; this is because, as J-MM well knows, that demurrer was withdrawn and J-MM subsequently answered the *Yates* amended (wrongful death) complaint without challenge. *See* Compl. ¶¶ 107–14 (*Carranza*), 125–33 (*Yates*), 134–42 (*Montgomery*); *cf. PRE*, 508 U.S. at 62 ("The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation."). And while these cases were ultimately voluntarily dismissed, voluntary dismissals, or even adverse outcomes, do not imply or even reasonably support an inference that those cases were "objectively meritless" from the start.[8] *See U.S. Futures*, 953 F.3d at 966 ("Although a successful, winning petition proves its own reasonableness, it does not follow that a petition lacks merit simply because it did not prevail."); *Westmoreland v. J.I. Case Co.*, 714 F. Supp. 397, 398 (E.D. Wis. 1989) (even where plaintiff voluntarily dismissed the case due to issues with proof, "it cannot be said that the plaintiff's action was clearly frivolous[,]" as "the plaintiff made the commendable decision not to

---

[8] The actual reasons for the dismissals vary and are protected by the attorney-client privilege, but the known circumstances show that the dismissals were, in fact, for reasons *other than* the merits of the claims. For example, in *Yates*, the victim died before he could be deposed and provide product identification testimony, and there were no other witnesses who could testify to the victim's exposure to J-MM's products. *See* Compl. ¶ 125. Hence, the case was voluntarily dismissed and the victim's family was tragically left without recovery.

continue to litigate after it became apparent that he would not be able to meet his burden of proof"); *Dean v. Riser*, 240 F.3d 505, 510 (5th Cir. 2001) ("Many circumstances may influence a plaintiff to voluntarily dismiss his claim with prejudice . . . . A plaintiff whose claim appeared meritorious at the onset may encounter various changes in his litigation posture during the unpredictable course of litigation. 'Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation.' Should such events create insurmountable problems of proof for the plaintiff, voluntarily withdrawing the complaint with prejudice would be the prudent thing to do.") (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).

The sham exception's second application also is inapposite here. For alleged misrepresentations to give rise to an exception to *Noerr-Pennington*, a judicial ruling must have been "*dependent upon* the [allegedly] misrepresented information." *Mercatus Grp. LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011) (emphasis added) (quoting *Cheminor*, 168 F.3d at 124); *Rubloff*, 863 F. Supp. 2d at 742 (sham exception did not apply because alleged misrepresentations did not impact "the *government's* (i.e., the judge's) action" (emphasis added)); *see also Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 403 (4th Cir. 2001) (exception did not apply "because no judicial ruling was based on" the alleged misrepresentations).

The six cases J-MM voluntarily settled did not allegedly involve any substantive judicial ruling adverse to J-MM, let alone one based on any alleged misrepresentations. Nor did the three cases that Simmons Hanly clients voluntarily dismissed. The sole remaining case is *Morgan*, involving a jury verdict favorable to Simmons Hanly's client, but J-MM cites no factual misrepresentations made to the court in that case that could have infected the court's rulings, and alleges no facts from which such an inference would be reasonable.

As such, J-MM cannot rely on the sham exception in either form. Defendants represented clients who undisputedly had mesothelioma and were engaged in the type of work that would have involved asbestos-cement pipe. In light of the purpose of the *Noerr-Pennington* doctrine, courts carefully scrutinize and will dismiss claims that run afoul of the doctrine at the pleading stage due to the "danger that the mere pendency of the action will chill the exercise of First Amendment rights"—consistent with J-MM's apparent objective here. *Kottle*, 146 F.3d at 1063. Because this is not a defense that J-MM can plead around, the case should be dismissed with prejudice.

## II.     J-MM Fails To State A RICO Violation.

In addition to the threshold *Noerr-Pennington* bar discussed above, J-MM's RICO claims suffer from substantive pleading defects that defeat those claims as a matter of law. First, the Complaint's alleged RICO "enterprise" runs afoul of the requirement that it be distinct from the alleged RICO "person[s]," i.e., Defendants. Second, J-MM fails to adequately allege any racketeering activity because (1) ordinary litigation activities cannot constitute mail or wire fraud, and (2) the federal obstruction of justice and witness tampering statutes do not apply to state court proceedings. Third, as to each individual current or former Simmons Hanly employee named as a defendant, J-MM fails to adequately allege any pattern of mail or wire fraud. Fourth, J-MM's § 1962(d) conspiracy claim fails because it is based solely on the § 1962(c) claim that is deficient for the above-mentioned reasons. Fifth, J-MM's RICO claims are untimely under RICO's four-year statute of limitations.

### A.     J-MM Fails To Adequately Allege A RICO Enterprise.

A plaintiff invoking § 1962(c) must properly allege a RICO "enterprise." *United Food & Comm. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013); 18 U.S.C. § 1962(c). A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "association-in-fact" enterprise, in turn, need not have any structural features beyond "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

"Despite the expansive nature of this definition, it is not limitless." *Walgreen*, 719 F.3d at 853. It requires a plaintiff to identify a "person" as the defendant, as distinct from the enterprise itself. *Id.* at 853–54 (citing *Cedric Kusher Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("[A]n 'enterprise' that is not simply the same 'person' referred to by a different name.")). In other words, defendants must have "conducted or participated in the conduct of the '*enterprise*'s affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original).

Even assuming all J-MM's allegations to be true, the RICO claim fails because the sole alleged enterprise is nothing more than the law firm and its employees. There is no defendant as distinct from the enterprise, as reflected by J-MM's own allegations. J-MM alleges that "Simmons Hanly *is a business enterprise*, and the individual Defendants willing[ly] [sic] and knowingly conducted and participated in *the firm's affairs* through a pattern of racketeering activity." Compl. ¶ 216 (emphasis added). According to J-MM, Simmons Hanly and the personnel that make up the firm of Simmons Hanly are a "law firm enterprise." *E.g.*, *id.* ¶ 218. But Simmons Hanly and its employees are all defendants, too, meaning that the alleged enterprise (Simmons Hanly) is also the "person," just referred to by a different name. *See id.*; *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997) ("[A]n employer and its employees cannot constitute a RICO enterprise.").

16

This Court recently reached a similar conclusion in dismissing an amended complaint against a corporation (USDTL) and certain executives of the corporation where "the corporation together with its employees [were] the enterprise." *Ratfield v. U.S. Drug Testing Lab'ys, Inc.*, No. 23-cv-15063, 2024 WL 640955, at *3 (N.D. Ill. Feb. 15, 2024) (Gettleman, J.). This Court explained that "in an association-in-fact enterprise a defendant corporation cannot be distinct from its officers when they are operating in their official capacities for the corporation." *Id.* There are some circumstances in which a natural person is distinct for RICO purposes from a closely held corporation, *see, e.g.*, *Kushner*, 533 U.S. at 160, 165, but the rule is different where the alleged "enterprise" consists of an association of employees of a defendant; in that situation, this Court concluded, "plaintiffs have failed to allege a RICO enterprise separate and distinct from the RICO person defendants and have failed to sufficiently plead a RICO claim." *Ratfield*, 2024 WL 640955, at *3.

J-MM attempts to circumvent that conclusion by alleging that certain unnamed co-counsel, asbestos plaintiffs, and "other witnesses" were members of the enterprise. Compl. ¶¶ 73, 218. Its effort fails. J-MM's allegations regarding these unnamed, unidentified persons' involvement are, at best, sparse and conclusory, resembling the *Ratfield* plaintiff's allegations in an amended complaint about defendants outside the corporation. This Court in *Ratfield* dismissed the amended complaint, finding the allegations insufficient to demonstrate anything other than "a standard commercial relationship." 2024 WL 640955, at *3. The same is true here. J-MM pleads no facts that, if true, establish anything other than a valid relationship between Simmons Hanly and co-counsel, clients, and witnesses. This holds true even had J-MM specifically alleged—it did not— that the clients and witnesses in each of the ten identified cases were part of the alleged enterprise. Each of those individual plaintiffs and/or witnesses are alleged only to have testified or otherwise

been involved in their discrete cases. For instance, the *Bretado* plaintiff and witnesses had no alleged involvement in *Carranza*, the *Yates* parties had no alleged involvement in *Morgan*, and so on. Thus, even with these potential additional allegations, individual plaintiffs and/or witnesses would only have been conducting their own affairs—not the affairs of the alleged enterprise, as would be needed to establish their involvement in a RICO enterprise separate and distinct from the law firm.

That leaves only the "law firm enterprise," *see* Compl. ¶¶ 218–19—Simmons Hanly and its employees—which categorically cannot simultaneously fill the roles of both defendants and enterprise. *See Fitzgerald*, 116 F.3d at 226. This Court therefore should dismiss J-MM's RICO claim with prejudice.

### B. J-MM Does Not Adequately Allege Any Racketeering Activity.

J-MM's mail and wire fraud allegations are based solely on alleged use of mail and wires in connection with litigation, including the filing of documents, the serving of discovery responses, participating in telephonic or videoconference depositions, and engaging in settlement communications. But courts have held time and again that mailings and wirings in furtherance of litigation cannot be a RICO predicate act, as a matter of law. Likewise, J-MM's obstruction of justice and witness tampering allegations are based solely on state court proceedings, which are outside the scope of the federal statutes cited and cannot serve as predicate acts. Without any adequately alleged racketeering activity, J-MM's RICO claim must be dismissed with prejudice.

#### 1. Use Of Mail And Wires In Connection With Litigation Cannot Constitute Racketeering Activity.

Peeling away J-MM's many irrelevant grievances about the general state of asbestos litigation, the complained-of conduct is straightforward: Certain defendants allegedly filed meritless cases against J-MM and used the mail or wires to initiate and conduct the litigation.

Even giving the benefit of every possible doubt to J-MM, this is not racketeering activity. As myriad courts have held, ordinary litigation activity—even if baseless, fraudulent or malicious—cannot constitute the predicate acts of mail or wire fraud, or any other RICO predicate acts. *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (citing courts of appeals' decisions across the country, all of which agree that "[i]n the absence of corruption," litigation activity "cannot act as a predicate offense for a civil-RICO claim").[9]

This is true of the act of "filing and prosecuting a complaint." *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013) (dismissing RICO complaint with alleged wire and mail fraud predicates even when complaint alleged submission of false documents in connection with the filing); *see also Harris Custom Builders, Inc. v. Hoffmeyer*, No. 90-cv-0741, 1994 WL 329962, *3–4 (N.D. Ill. July 7, 1994) ("[RICO defendant's] alleged scheme of filing lawsuits to enforce an allegedly illegally obtained copyright does not constitute a predicate act of racketeering for purposes of RICO"). It is equally true of "serving litigation documents by mail." *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (collecting cases); *see also Nolan v. Galaxy Sci. Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003) ("This court is unwilling to expand RICO liability for mail fraud in such a dramatic fashion as to include litigation papers and pre-litigation statements of legal position."). The court in *Paul S. Mullin & Associates, Inc. v. Bassett*, summarized the issue perfectly when it "f[ound] absurd plaintiffs' apparent suggestion

---

[9] *See, e.g.*, *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087–88 (11th Cir. 2004) (deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (meritless litigation not a predicate act of extortion under RICO); *Gabovitch v. Shear*, No. 95-1055, 70 F.3d 1252 (unpublished table decision), 1995 WL 697319, at *2 (1st Cir. Nov. 21, 1995) (same, even where allegations included "proffering false affidavits and testimony to [a] state court").

that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud" and that "[i]f such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation." 632 F. Supp. 532, 540 (D. Del. 1986) (citing *Spiegel v. Cont'l Ill. Nat. Bank*, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir. 1986)). "Such activity simply is not fraudulent." *Id.*

To hold otherwise "would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation" and, "as it did here, give birth to collateral suits." *Spiegel*, 609 F. Supp. at 1089. It also "would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." *Kim*, 884 F.3d at 104. J-MM never attempted to seek relief through more appropriate means, such as "lodg[ing] a complaint with the appropriate disciplinary body or apply[ing] to the court for assistance" or seeking sanctions or other relief in the underlying asbestos cases it claims were fraudulent or somehow improper; J-MM instead waited years after those cases were concluded and then leapt straight to a federal RICO claim seeking to second-guess a handful of closed cases because J-MM believed there was some conflicting evidence in the cases. *See Spiegel*, 609 F. Supp. at 1088 (quoting earlier ruling); *see also FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014) ("Recognizing . . . litigation as a predicate RICO act would give complainants unprecedented access to federal courts and the treble damage remedy authorized under RICO. Such a significant extension of RICO's reach is best made, if at all, by Congress. Moreover, allowing these suits to proceed as RICO suits risks chilling parties' resort to the judicial system to resolve their disputes."); *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017)

20

("there are many tools available to discipline lawyers who foment frivolous litigation," and the "path to relief . . . is not through RICO").

The Second Circuit's decision in *Kim* is a compelling illustration of this rule. In *Kim*, a restaurant owner and operator sued a lawyer for fraudulent trademark registration, breach of contract, and trademark infringement. 884 F.3d at 101. The lawyer prevailed on summary judgment on some claims, with the remaining claims dismissed by agreement. *Id.* The lawyer then filed a RICO lawsuit against the restaurant owner and operator, alleging they were "members of two criminal enterprises that conspired to sue him for trademark infringement and breach of contract" and knowingly submitted false affidavits in order to "extort $2 million from him." *Id.* at 101–03 (internal marks omitted). The district court dismissed, and the Second Circuit affirmed, joining the First, Fifth, Tenth, and Eleventh Circuits in holding "that allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Id.* at 104 (collecting cases).

As in *Kim*, J-MM has alleged nothing more than litigation activities, which courts consistently hold are not RICO predicate acts. Moreover, the acts alleged here involve conflicting evidence and imperfect memories about matters that occurred decades earlier— considerably more benign than the false affidavits at issue in *Kim*. For example, J-MM complains of "implausibl[e] testi[mony]" in Bretado's recollection of asbestos-cement pipe distributors, and the "remarkable level of detail about the [asbestos-cement pipe]." Compl. ¶¶ 97–103. J-MM takes issue with the "familiar pattern" that the deposition in *Carranza* allegedly followed, along with the "five interrogatory responses" served in the case. *Id.* ¶¶ 110–13. J-MM says the written discovery responses in *Perkins* were "highly misleading" and/or "just false." *Id.* ¶¶ 120–23. It cites purported contradictions by a non-party witness in *Yates*, and a written discovery response in which

"Simmons Hanly [allegedly falsely] stated that no autopsy had been performed on Yates after he passed away." *Id.* ¶¶ 128–31.[10] And it claims inconsistencies in testimony and documents in *Montgomery* regarding the victim's work history and social security records. *Id.* ¶¶ 134–40.

J-MM casts these events as fraud, but, even assuming the allegations are true, they are nothing more than routine evidentiary disputes and criticisms about conduct during long-concluded litigation. They certainly are not viable grounds for a racketeering claim.

### 2. The Federal Witness Tampering And Obstruction Of Justice Statutes Do Not Apply Here As A Matter Of Law.

J-MM's attempt to rely on alleged violations of 18 U.S.C. § 1503(a) (witness tampering) and 18 U.S.C. § 1510 (obstruction of justice) as predicate acts fares no better. Compl. ¶¶ 207, 226. Section 1503(a) criminalizes the obstruction of federal proceedings only. *Davit v. Davit*, 366 F. Supp. 2d 641, 655 (N.D. Ill. 2004); *Pettiford v. Sheahan*, No. 02-cv-1777, 2004 WL 626151, at *11 (N.D. Ill. Mar. 26, 2004) ("To constitute an offense under this statute, defendants' acts must relate to a proceeding in a federal court of the United States."). It does not govern state court proceedings. *See, e.g.*, *Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 843 (S.D.N.Y. 1991) ("The divorce proceeding was a state proceeding and therefore 18 U.S.C. § 1503 would not apply to any obstruction that may have occurred."); *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990) ("The obvious deficiency . . . is that the proceeding underlying each of them occurred in state judicial or administrative courts, not in a federal court proceeding as required by § 1503").

---

[10] J-MM implies that, because Yates is alleged to have worked with J-MM asbestos-cement pipe from 1998 to 2008, and J-MM "had stopped supplying [asbestos-cement pipe] a decade earlier," Compl. ¶ 128, Defendants should have known Yates's allegations to be false. This ignores basic logic. Ceasing to manufacture asbestos-cement pipe does not conclusively preclude Yates's exposure to earlier-manufactured asbestos-cement pipe which was still in the stream of commerce.

Here, all relevant litigation—and thus the alleged racketeering conduct, including the depositions that allegedly involved "witness tampering"—occurred in the context of civil lawsuits filed and pursued in state court. Thus, § 1503(a) does not apply.

The same is true of 18 U.S.C. § 1510. Section 1510 prohibits obstruction of a federal criminal investigation. 18 U.S.C. § 1510(c) (defining a criminal investigator as an "individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States."); *see also Davit*, 366 F. Supp. 2d at 655 (dismissing RICO claim where alleged predicate act was a violation of § 1510 but facts did not establish obstruction of a federal criminal investigation); *Welch v. Wal–Mart Stores, Inc.*, No. 04-cv-50023, 2004 WL 1510021, at *3 (N.D. Ill. July 1, 2004) (same). J-MM does not allege that any Defendant obstructed a federal investigation, much less a federal *criminal* investigation—nor does such an allegation appear plausible on these facts.

### C. J-MM Fails To Sufficiently Allege Any Pattern Of Racketeering Activity As To The Individual Defendants.

J-MM's RICO claims also fail because the Complaint lacks any of the specificity required by Rule 9(b) for fraud allegations. Under Rule 9(b), where a defendant is alleged to have played a part in a scheme to defraud, the plaintiff must identify with particularity the "'who, what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). In the context of racketeering based on mail or wire fraud, the particularity also must extend to the *pattern* of racketeering activity in which each defendant is alleged to have engaged. *See Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 685 (N.D. Ill. 2012).

The Complaint falls far short of that standard. In addition to the legal defects identified above, the Complaint's conclusory, barebones allegations against the individuals do not come close to alleging a pattern of mail and/or wire fraud *by any of them individually*. *See* Ex. B.

**Nicholas Angelides**. Angelides is allegedly the "Chair of the firm's Asbestos Department" and "'directed the legal strategy of all of the firm's asbestos and mesothelioma cases' since 2012." Compl. ¶ 15. Though J-MM makes conclusory assertions that Angelides was "directly involved in predicate acts," *id.* ¶ 184, and was "the brainchild of 'the legal strategy[,]'" *id.* ¶ 183, it offers no specific facts to support those conclusions. The Complaint cites no mailings or wirings in which Angelides allegedly was involved, or when they occurred. It does not identify any misrepresentations Angelides allegedly made, let alone the who, what, where, and when of those unalleged misrepresentations.

**Perry Browder**. The allegations against Browder are likewise deficient. J-MM generically alleges that Browder is "part of the firm's leadership team[,]" *id.* ¶ 16, "engaged in decision-making, oversight and predicate acts," *id.* ¶ 27, "overs[aw] the operation of the enterprise to ensure that it maximizes results," *id.* ¶ 74, "signed the settlement paperwork" in *Bretado*, *id.* ¶ 105, was "involved" in the settlement of *Perkins*, *id.* ¶ 124, and is "effectively Angelides'[s] deputy and a leader within the RICO enterprise," *id.* ¶ 186. Browder also allegedly sent four letters "with settlement paperwork and requesting stipulation of dismissal paperwork related to" *Bretado*, *Perkins*, *Azevedo*, and *Montgomery*. *Id.* ¶ 202. But the allegations are general in nature and the descriptions of the communications are boilerplate recitals. J-MM does not identify with the specificity Rule 9(b) requires how those communications were fraudulent, or how the communications are connected to or in furtherance of any alleged scheme.

**Suvir Dhar**. Dhar, now a former Simmons Hanly attorney, *see* Compl. ¶ 19, is alleged to have engaged in conduct only related to the *Carranza* case, *id.* ¶¶ 107–14. But J-MM does not allege that Dhar used or agreed to use any interstate mail or wires other than presenting Carranza's brother for a multi-day telephonic deposition and examining him, during which the brother allegedly gave false testimony. *Id.* ¶¶ 109–10. And J-MM offers only a generic description of that testimony, without identifying with particularity what Carranza's brother said during the deposition or why the testimony was allegedly wrong. Moreover, there is no alleged *pattern* of mail or wire fraud. Dhar is alleged to have taken a single deposition of a single witness in a single case, which even though it spanned multiple days, lacks the continuity required of a pattern. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 827–28 (7th Cir. 2016) ("predicate acts must exhibit 'continuity plus relationship'" in order "to form a pattern," which ensures RICO targets "long-term criminal conduct" and not "one-off crimes").

**Crystal Foley**. Foley is alleged to have signed and served or filed a number of litigation documents—pleadings and written discovery responses—that contained false information in three different lawsuits. Compl. ¶ 201. However, the allegations lack any particularity as to the purported false information. The Complaint labels as "false" the "exposure information" and "work history" from these cases, but does not specify what about the information or history is supposedly false, or provide any detail beyond J-MM's naked assertions. These purely conclusory and general allegations are insufficient.

**Amy Garrett**. Garrett is not alleged to have used or agreed to use interstate mail and/or wires in connection with any litigation against J-MM at all. The allegations specific to her relate only to her terminating former Simmons Hanly attorney, Scott Peebles, *id.* ¶ 190, her participation in the *Peebles* lawsuit, and more generically, how she allegedly "acted to ensure that the scheme

was not exposed," *id.* ¶ 189. J-MM alleges Garrett used mail or wires in connection with court filings in *Peebles*, but does not specify the contents of those filings, let alone how they were allegedly fraudulent or how any purported fraud in a dispute over the termination of a firm employee was connected to any other alleged racketeering activity involving asbestos lawsuits against J-MM.

**Benjamin Goldstein**. Goldstein is generically alleged to have been "involved" in *Bretado*, *Carranza*, *Yates*, and *Montgomery*, and *Morgan*, *id.* ¶ 192, and, specifically, in the dismissal of *Carranza*, *id.* ¶ 114, *Perkins*, *id.* ¶ 202, and *Azevedo*, *id.* His only alleged use of mail or wires is a single "[e]mail re dismissals and settlement . . . related to *Azevedo* and *Perkins*." *Id.* J-MM does not allege that the email contained false information—or anything about the contents of the email whatsoever—and J-MM provides no details from which the Court can infer a connection between that email and any alleged scheme to defraud or pattern of racketeering, as Rule 9(b) requires.[11]

**Stan Jones**. The allegations against Jones are especially scant. Jones is a Simmons Hanly case investigator, Compl. ¶ 75, and his alleged conduct is limited to participating in depositions and assisting with translation in *Bretado* and *Carranza*, *id.* ¶¶ 97, 109. Beyond that, J-MM makes vague and generic allegations on information and belief that "Jones helped manufacture [] testimony and 'evidence'" and "assisted in the coaching of Simmons Hanly represented witnesses both before and during key depositions," such as in *Carranza*. *Id.* ¶¶ 195–96. J-MM does not identify the nature of the alleged false evidence or Jones's purported role in securing it, again falling short of fraud, much less a pattern of fraud described with particularity as Rule 9(b) requires.

---

[11] Goldstein's alleged participation in "retaliatory conduct," Compl. ¶ 192, against Mr. Peebles is irrelevant. J-MM does not attempt to demonstrate how that alleged conduct—which has nothing to do with the asbestos cases filed against J-MM—constitutes racketeering activity.

**Deborah Rosenthal**. J-MM generically claims that Rosenthal "has been involved in some of [Simmons Hanly]'s cases involving egregious misconduct[,]" Compl. ¶ 21, but this, too, lacks any substance. Rosenthal was allegedly involved in filing a summary judgment brief in *Carranza*, but J-MM does not state with specificity the content of that brief or what in it was purportedly false. *Id.* ¶ 113. J-MM alleges that Rosenthal "attempt[ed] [to] intimidat[e]" an unnamed agent of J-MM during a conference related to J-MM's demurrer (California's version of a motion to dismiss) in the *Yates* case, *id.* ¶ 128–29,[12] and that Rosenthal sent a letter to J-MM "vigorously resist[ing]" discovery requests and opposed a motion to compel on an unspecified date in *Montgomery*, *id.* ¶¶ 141, 180, but does not identify what Rosenthal did to allegedly "intimidate" J-MM nor how arguments she made in routine motion practice were fraudulent.

\* \* \* \*

For the reasons stated above, the claims against the individual defendants fail due to lack of particularity regarding the alleged fraud in which they engaged, the mailings or wirings they purportedly sent in furtherance of the fraud scheme, or the pattern of racketeering activity in which they allegedly engaged. The claims against them should be dismissed for this additional reason.

In addition, this Court should dismiss the 25 unnamed "John and Jane Doe" defendants, as they serve no legitimate purpose and are not the subject of any genuine allegations of fact. The Seventh Circuit has "expressly stated that it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Demouchette v. Sheriff of Cook Cnty.*, No. 09-cv-6016, 2011 WL 1378712, at \*2 (N.D. Ill. Apr. 12, 2011) (internal marks omitted)).

---

[12] J-MM fails to allege the medium over which this conference took place, but Defendants construe this allegation in a manner most favorable to J-MM for purposes of this motion and assume that it was over the telephone or by video.

### D. J-MM Cannot State A RICO § 1962(d) Claim Because It Does Not State A Viable § 1962(c) Claim.

To state a claim for a RICO conspiracy under § 1962(d), J-MM must allege a racketeering enterprise under § 1962(c). The converse also is true: Where a plaintiff fails to allege a claim under § 1962(c), the § 1962(d) claim "based on the same nucleus of operative facts fails as well." *Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 791 (N.D. Ill. 2015) (citing *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) ("Since Appellants fail to establish a violation of [§] 1962(c), their [§] 1962(d) claim based on the same facts must fail as well.")).

Here, J-MM's § 1962(d) claim is based on precisely the same alleged facts as its § 1962(c) claim. *See, e.g.*, Compl. ¶¶ 185, 189, 235–40. All the defects in J-MM's § 1962(c) theory therefore are also defects in its § 1962(d) claim. For that reason, the § 1962(d) claim should be dismissed.

### E. J-MM's RICO Claims Are Time Barred.

J-MM's RICO claims must be dismissed, as its own allegations make clear that the claims are time-barred. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) ("if it is plain from the complaint that the [statute of limitations] defense is indeed a bar to the suit dismissal is proper without further pleading").

Although RICO's civil enforcement provision does not contain an express statute of limitations, the Supreme Court has held that civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 146, 156 (1987). This limitations period "begins to run when the plaintiffs discover, or should, if diligent, have discovered, that they had been injured by the defendants." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). As the Seventh Circuit has explained, it is "the injury arising from the first predicate act to injure the plaintiff . . . [that] starts the limitations period running, rather than the injury from the last predicate act, which might occur decades after the

28

first." *Hayden*, 610 F.3d at 386–87. The plaintiff need not know it has "been injured by a RICO violation," or "a pattern of racketeering activity" to trigger this time period, *id.* at 387—it need only know of the "harm itself," *Cancer Found.*, 559 F.3d at 674.

Under these well-established rules, J-MM's RICO claims are time barred. J-MM claims it was injured when it was first forced to incur attorneys' fees to "fend off" "baseless" cases and "induced" to settle other cases. Compl. ¶¶ 3, 210. Nine out of the ten asbestos cases J-MM mentions were litigated, and often resolved, well before May 10, 2020 (i.e., four years before the Complaint was filed). For example, *Carranza* was filed in 2018 and voluntarily dismissed in March 2020. *Id.* ¶¶ 201–02. *Bretado* was settled in August 2019. *Id.* ¶ 105; Ex. A. The jury in *Morgan* returned a verdict adverse to J-MM in November 2018. Ex. A. J-MM also allegedly began incurring "fees and costs" to "fend off" other cases filed by Simmons Hanly well before May 20, 2020. *Perkins*, *Yates*, *Swiger*, *Azevado*, and *Boyance* all were filed in 2019. *Id. Noll* was filed in February 2013, the complained of deposition in that case took place in April 2013, and J-MM settled the case in November 2013. Compl. ¶¶ 153–66; RJN Ex. 8; Ex. A. In other words, based on J-MM's theory of injury, J-MM was harmed as early as 2013 when it took the deposition in *Noll*, Compl. ¶¶ 153–66, and the limitations period expired as early as a decade before J-MM filed this case.

*Montgomery* was filed later than the others, in January 2021, but the well-established rule is that later acts in furtherance of a common scheme do not create a "new" claim with a new cause of action within the limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187–90 (1997) (rejecting application of "last predicate act" rule from the criminal RICO context to civil RICO claims). A new cause of action accrues only when there is a *new* instance of wrongful conduct that causes a new injury. *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992). By contrast,

"new" injuries that flow from the same scheme do not generally restart the statute of limitations. *Grimmet v. Brown*, 75 F.3d 506, 513 (9th Cir. 1996); *Simmons v. Reich*, No. 20-4114, 2021 WL 5023354, at *3 (2d Cir. 2021) (same); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59–60 (2d Cir. 1998) (same); *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68 (9th Cir. 1979) (similar as to acts in furtherance of a single conspiracy).

Here, J-MM's own theory of this RICO case is that *Montgomery* is part of a single, long-standing scheme and not "new" misconduct that would support a separate claim. J-MM alleges that Simmons Hanly has "filed hundreds of cases against [J-MM]," all of which have employed "a coordinated, well-developed, and long-running strategy that involves evidence suppression, shifting narratives and fraud." Compl. ¶ 3. According to J-MM, each case followed a "Fraud Playbook" and were part of a "persistent pattern" that J-MM has been aware of for decades, but did nothing about until now. *Id*. ¶¶ 73, 209.[13] In other words, if J-MM's allegations were true, the cases were part of a common scheme, with new cases being "clearly derivative" of the earlier

---

[13] J-MM's general counsel, Frank Fletcher, stated in open court in 2021 that "for as long as I've been part of J-M and looking at our history, all [Simmons Hanly's] cases follow their same highly unusual patterns . . . the two most notable examples are [*Bretado*, filed in 2018] and Carranza [filed in 2018] . . . and the facts are always unbelievable." RJN Ex. 11 at 3. Fletcher later criticized J-MM's own defense counsel in the *WFBM* case described above for not being "prepared for the well-established patterns and practices of the Simmons Firm" RJN Ex. 12 at 16. Simmons Hanly is not the only plaintiffs' firm that Fletcher has targeted. For example, when attacking the firm Maune Raichle Hartley French & Mudd, LLC in open court, Fletcher asserted that "fraud in asbestos litigation" consisting of "made-up testimony" "has been known for about 25 years[,]" and that "when the complete and expurgated history of asbestos litigation is finally written, that litigation will surely come to be considered for entry into the pantheon of such great American scandals as the Yazoo land scandals, Credit Mobilizer, Teapot Dome, Billie Sol Estes, the Salad Oil scandals, the savings and loan scandals, WorldCom, and Enron." RJN Ex. 14 at 4957–58.

strategy and not "new and independent" injuries. *Simmons*, 2021 WL 5023354, at \*3. This Court should reject J-MM's attempt to recycle its stale and untimely claims.[14]

## III.    J-MM's State Law Claims Also Must Be Dismissed.

### A.    Because J-MM's RICO Claims Fail, This Court Should Decline To Exercise Supplemental Jurisdiction Over J-MM's State Law Claims.

If this Court does not dismiss J-MM's state law claims pursuant to the *Noerr-Pennington* doctrine as discussed herein, or under California's anti-SLAPP statute as discussed in Defendants' separately filed Special Motion to Strike ("Motion to Strike"), Dkts. 21, 22, the Court should decline to exercise jurisdiction over those pendent state claims. The only basis J-MM invokes for this Court's jurisdiction over Counts III, IV, and V, which "all are based on the same underlying facts and involve all of the same parties," is supplemental jurisdiction under 28 U.S.C. § 1367(a). Compl. ¶ 25. Because, as previously discussed, J-MM's RICO claims fail, "the sole basis for invoking federal jurisdiction is nonexistent and [this] [C]ourt[] should not exercise supplemental jurisdiction over [J-MM]'s remaining state law claims." *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003) (citing *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that once all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolv[e] them on the merits.")); *see also Ratfield*, 2024 WL 640955, at \*4 ("The court declines to exercise supplemental jurisdiction over the remaining state law counts" where the court dismissed the RICO Section 1962(c) and (d) claims.).

---

[14] In the alternative, even if this Court finds some of the claims to be based on events within the four-year limitations period, it should hold the claims based on *Bretado*, *Carranza*, *Yates*, *Swiger*, *Azevedo*, *Boyance*, *Noll*, and *Morgan* to be time-barred, as they are expressly based on events (e.g., depositions or filings) that took place more than four years before the filing of the Complaint. The preclusion of any claims arising from these cases will severely limit an already deficient Complaint.

**B. J-MM's State Law Claims Fail Under The Substantive Law Of California Or Illinois.**

If this Court does not dismiss J-MM's state law claims on the grounds discussed *supra*, this Court should dismiss those counts because they fail under either the substantive law of California or Illinois.

J-MM, which is a Delaware corporation headquartered in California, Compl. ¶ 13, has not specified the source of substantive law for its common law claims in the Complaint. As discussed more fully in the Motion to Strike, California law should apply to the state law claims, not least because J-MM alleges that all the conduct was directed at it in California. Illinois courts use the "most significant relationship" test of the Restatement (Second) of Conflict of Laws for tort claims. *Ingersoll v. Klein*, 46 Ill. 2d 42, 45 (1970). Under that approach, "the local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, the law of Illinois should apply." *Id.* Four factors are relevant to the choice-of-law analysis: (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered. *Id.* at 47.

All four factors weigh in favor of applying California law. California is the sole location of the alleged injury, which is financial harm to J-MM. Compl. ¶ 210. Six of the ten cases referenced in the Complaint—*Bretado*, *Carranza*, *Yates*, *Montgomery*, *Boyance*, and *Morgan*— were venued in California state court, and thus the allegedly injury-causing conduct occurred exclusively in California. Compl. ¶¶ 95, 107, 125, 134, 153–66. The domicile of the parties also

weighs in favor of California. J-MM is domiciled there,[15] as are Goldstein and Rosenthal. *Id.* ¶¶ 18, 20–21.[16] The center of the parties' relationship is, if nowhere else, California.

### 1. Counts III, IV, and V Fail Under California's Litigation Privilege.

As discussed in the Motion to Strike, the scope of California's litigation privilege immunizes all litigation conduct—which is the only conduct at issue in the Complaint. *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), *as modified* (Mar. 12, 1990); Dkt. 22 at 15–17. It applies to all tort claims, including fraud. *Silberg*, 50 Cal. 3d at 215 (citing *Carden v. Getzoff*, 190 Cal. App. 3d 907, 913 (1987)). And it is, for all intents and purposes, without exception, even where, as here, claims are based on alleged "fraudulent communications or perjured testimony." *Silberg*, 50 Cal. 3d at 215; *see also Carden*, 190 Cal. App. 3d at 915.

*Engate, Inc. v. Esquire Deposition Servs., L.L.C.*, is analogous. 331 F. Supp. 2d 673, 705 (N.D. Ill. 2004), *aff'd in part*, *rev'd in part*, 208 F. App'x 946 (Fed. Cir. 2006). There, the defendant counterclaimed for unfair competition, asserting that the plaintiff's patent infringement claims were brought "without a scintilla of evidence" or a "good faith belief that [the plaintiff] could prevail in litigation." *Id.* The court dismissed the counterclaim under Rule 12(b)(6), agreeing with the plaintiff that, under California law and California's litigation privilege, the counterclaim "is barred by an absolute privilege extended to communicative acts made in judicial proceedings, such as the filing of a complaint . . . ." *Id.* The same result holds here: California's litigation privilege bars J-MM's state law claims.

---

[15] "A national corporation is domiciled in the state wherein the corporation's headquarters are located, even if the corporation does business . . . in the state where the injury occurred." *Taylor v. Avid Holdings, LLC*, No. 09-cv-5293, 2010 WL 3307374, at *3 (N.D. Ill. Aug. 19, 2010).

[16] Though Jones is also a resident of California, the Complaint erroneously alleges Jones is a resident of Illinois. Compl. ¶ 22. Jones's residence in California is not a deciding factor here given the overwhelming evidence in favor of the application of California law, but should the Court desire proof of Jones's correct residence, Defendants can provide it.

### 2. J-MM Fails To State A Claim For Common Law Fraud.

J-MM fails to state a claim under state law. The common law fraud claim (Count III), is subject to Rule 9(b). *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 788 (N.D. Ill. 2020) ("Fraud claims brought in federal court—including those brought under state law—are subject to the heightened pleading requirements of Rule 9(b)."). Yet J-MM again provides only the barest of conclusory and general assertions as to the allegedly misrepresented facts. *See* Compl. ¶¶ 243–53. These allegations do not satisfy Rule 9(b)'s who, what, where, when, and how requirements.

Separately, J-MM has not alleged detrimental reliance, as required by both California and Illinois law. *RePET, Inc. v. Zhao*, No. 15-cv-2315, 2016 WL 11634745, at *3 (C.D. Cal. Sept. 2, 2016) (quoting *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997)); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996). J-MM purports to identify a laundry list of misrepresentations. These misrepresentations largely consist of alleged false testimony and written discovery responses related to asbestos-cement pipe exposure. *See* Compl. ¶¶ 97–103 (*Bretado*); *id.* ¶¶ 110–13 (*Carranza*); *id.* ¶¶ 121–22 (*Perkins*); *id.* ¶¶ 127–30 (*Yates*); *id.* ¶¶ 134–40 (*Montgomery*). But J-MM does not allege it relied on any alleged misrepresentations to its detriment. In fact, to the contrary, J-MM alleges that it did *not* believe, and thus sought to *disprove*, the alleged misrepresentations. *See, e.g.*, *id.* ¶¶ 102, 110, 112 (describing documents collected (e.g., social security and high school records) and witnesses located (e.g., employers) to contradict alleged misrepresentations). J-MM itself confirms it did not rely on the alleged misrepresentations.

Nor would reliance on Defendants' alleged representations be "reasonable" because, in all cases, Simmons Hanly represented an opposing party in litigation. *Tocco v. Richman Greer Pro. Ass'n*, 553 F. App'x 473, 475 (6th Cir. 2013). "It is well settled rule that a party may not justifiably rely on an opposing attorney's statements made in an adversarial setting, including litigation." *Ed*

*& F Man Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862, 868 (S.D. Tex. 2010). Without reasonable reliance by J-MM on any alleged misrepresentations, there can be no fraud claim.

### 3. J-MM Fails To State Claims For Unjust Enrichment And Civil Conspiracy.

Count V for civil conspiracy must be dismissed because "conspiracy" is not a standalone claim in either California or Illinois. *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 861 (N.D. Cal. 2023); *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 846 (N.D. Ill. 2015). Courts in both jurisdictions also readily dismiss civil conspiracy claims where plaintiffs have failed to plead a viable RICO claim. *See, e.g.*, *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1136 (C.D. Cal. 2001); *Sihler v. Fulfillment Lab, Inc.*, No. 20-cv-01528, 2020 WL 7226436, at *10 (S.D. Cal. Dec. 8, 2020).

California similarly does not recognize a separate cause of action for unjust enrichment. *See Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim."); *Jogani v. Superior Ct.*, 165 Cal. App. 4th 901, 911 (2008). As a result, courts consistently dismiss standalone claims for unjust enrichment. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010). *See also Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (applying Illinois law). This Court should follow suit.

### CONCLUSION

Courts consistently refuse to allow litigants to pursue retaliatory actions based on perceived unfavorable litigation outcomes. This Court should do the same. J-MM consciously chose not to address its grievances with legislative policies that govern asbestos litigation, or how Defendants conduct their litigation, using any of the more appropriate means available to it. It cannot now manufacture a RICO claim against Defendants by recasting ordinary litigation activities as fraudulent many years later. The Complaint should be dismissed in its entirety with prejudice.

Dated:  July 19, 2024

Respectfully submitted,

*/s/ John R. Storino*

Reid J. Schar (6243821)
John R. Storino (6273115)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456
Tel:  (312) 222-9350
Fax:  (312) 527-0484
rschar@jenner.com
jstorino@jenner.com

Kirsten H. Spira (admitted *pro hac vice*)
JENNER & BLOCK LLP
2029 Century Park East
Suite 1450
Los Angeles, CA 90067-2901
Tel:  (213) 239-6900
kspira@jenner.com

Amit B. Patel (6309876)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Tel:  (212) 891-1600
apatel@jenner.com

*Counsel for Defendants*