# EXHIBIT 1

Dept. # 15    Assigned    Currey

ORIGINAL

As bestos

1  BRENT J. ZADOROZNY (SBN 208468)
   CRYSTAL G. FOLEY (SBN 224627)
2  MELISSA C. SCHOPFER (SBN 248156)
   **SIMMONS HANLY CONROY**
3  100 N. Pacific Coast Highway, Suite 1350
   El Segundo, California 90245
4  Tel:  (310) 322-3555
   Fax:  (310) 322-3655
5
6  Attorneys for Plaintiffs

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                **FOR THE COUNTY OF LOS ANGELES**

10  REYNA CARRANZA, *individually and as*          ) Case Nos.  **18STCV04130**
    *successor-in-interest to* ALBERTO CARRANZA,    )
11  deceased; and ALBERT I. CARRANZA, *a minor*      )
    *by and through his Guardian Ad Litem* REYNA     )  **COMPLAINT FOR WRONGFUL**
12  CARRANZA, SAMUEL A. CARRANZA, *a minor*          )  **DEATH/SURVIVAL ACTION**
    *by and through his Guardian Ad Litem* REYNA     )
13  CARRANZA, DAVID J. CARRANZA, *a minor by*        )
    *and through his Guardian Ad Litem* REYNA        )
14  CARRANZA, AND IAN A. CARRANZA, *a*               )
    *minor by and through his Guardian Ad Litem*     )
15  REYNA CARRANZA, *as legal heirs to*              )            **BY FAX**
    ALBERTO CARRANZA, deceased,                      )
16                                                   )
17                                                   )
           Plaintiffs,                               )
18                                                   )
    vs.                                              )
19                                                   )
20  **3M COMPANY;**                                  )
    **BORGWARNER MORSE TEC LLC,** *as*               )
21  *successor-by-merger to* **BORG-WARNER**          )
    **CORPORATION;**                                 )
22  **BWDAC INC.,** *f/k/a* **BWD AUTOMOTIVE**        )
    **CORPORATION;**                                 )
23  **CBS CORPORATION,** *f/k/a* VIACOM              )
    INC., *successor by merger with* CBS             )
24  CORPORATION, *f/k/a* WESTINGHOUSE                )
    ELECTRIC CORPORATION;                            )
25  **CERTAIN-TEED CORPORATION;**                    )
    **CONTINENTAL AUTOMOTIVE SYSTEMS,**              )
26   **INC.;**                                       )
27  **CROWN CORK & SEAL COMPANY,**                   )
     **INC.,** *individually and as successor-in-*   )
28

**FILED**
Superior Court of California
County of Los Angeles

NOV 07 2018

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
        Steven Drew

1

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1     *interest to* MUNDET CORK )
      CORPORATION; )
2   **E.I. DU PONT DE NEMOURS AND** )
    **COMPANY;** )
3   **FOSTER WHEELER ENERGY** )
    **CORPORATION;** )
4   **GENERAL ELECTRIC COMPANY;** )
5   **GENUINE PARTS COMPANY;** )
  **INDUSTRIAL HOLDINGS** )
6     **CORPORATION** *f/k/a* THE )
    CARBORUNDUM COMPANY; )
7   **INGERSOLL-RAND COMPANY;** )
8   **IRVINE PIPE & SUPPLY, INC.;** )
  **JOHN CRANE INC.;** )
9   **J-M MANUFACTURING COMPANY, INC.;** )
  **KELLY MOORE PAINT COMPANY,** )
10     **INC.;** )
11   **METALCLAD INSULATION LLC;** )
  **METROPOLITAN LIFE INSURANCE** )
12     **COMPANY;** )
  **THE PEP BOYS MANNY, MOE & JACK OF** )
13     **CALIFORNIA;** )
  **PNEUMO ABEX LLC;** )
14   **THE SHERWIN-WILLIAMS COMPANY;** )
  **SOCO WEST, INC.;** )
15   **STANDARD MOTOR PRODUCTS, INC.;** )
16   **UNION CARBIDE CORPORATION;** )
  **WESTERN AUTO SUPPLY COMPANY;** )
17   and )
  **DOES 1-850, INCLUSIVE,** )
18    )
    Defendants. )
19    )
   )
20    )
  ──────────────────────────────── )
21

22                **GENERAL ALLEGATIONS**

23       COME NOW Plaintiffs REYNA CARRANZA, individually and as successor-in-interest

24 to ALBERTO CARRANZA, deceased, and ALBERT I. CARRANZA, a minor by and through

25 his Guardian Ad Litem REYNA CARRANZA, SAMUEL A. CARRANZA, a minor by and

26 through his Guardian Ad Litem REYNA CARRANZA, DAVID J. CARRANZA, a minor by

27 and through his Guardian Ad Litem REYNA CARRANZA, and IAN A. CARRANZA, a minor

28

2

──────────────────────────────────────────
COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1   by and through his Guardian Ad Litem REYNA CARRANZA, as legal heirs to ALBERTO

2   CARRANZA, deceased, ("Plaintiffs") and complain and allege as follows:

3        1.     Decedent ALBERTO CARRANZA suffered and died on August 22, 2018, from

4   mesothelioma, a disease related to exposure to asbestos and asbestos-containing products.

5        2.     Decedent used, handled or was otherwise exposed to asbestos and asbestos-

6   containing products referred to herein in a manner that was reasonably foreseeable. Decedent's

7   exposure to asbestos and asbestos-containing products occurred at various locations as set forth

8   in Exhibit "A", attached hereto and incorporated herein by reference.

9        3.     Decedent's cumulative exposure to asbestos as a result of acts and omissions of

10   defendants and the defective products as hereinafter alleged, individually and together, was a

11   substantial factor in increasing Decedent's risk of mesothelioma and other related injuries and

12   therefore a legal cause of Decedent's injuries and death.

13        4.     Decedent was not aware at the time of exposure that asbestos or asbestos-

14   containing products presented any risk of injury and/or disease.

15        5.     Plaintiffs are informed and believe, and thereon allege, that progressive lung

16   disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

17   perceptible trauma and that said disease results from exposure to asbestos and asbestos-

18   containing products over a period of time.

19        6.     As a direct and proximate result of the aforesaid conduct of defendants, their

20   "alternate entities," and each of them, Decedent suffered permanent injuries, including

21   asbestosis, other lung damage, cancer, and death, from the effect of exposure to asbestos fibers,

22   all to Plaintiff's damage in a sum in excess of the jurisdictional limits of Court of Limited

23   Jurisdiction.

24        7.     As a direct and proximate result of the aforesaid conduct of the defendants, their

25   "alternate entities," and each of them, Decedent incurred for physicians, surgeons, nurses,

26   hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount

27   thereof being unknown to Plaintiff at this time, and Plaintiffs pray leave to amend this complaint

28   accordingly when the true and exact cost thereof is ascertained.

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1    8.    As a further direct and proximate result of the conduct of the defendants, their

2    "alternate entities," and each of them, Decedent incurred economic losses. As a result of his

3    illness and resulting premature death, he suffered a loss of past and future income, loss of

4    income potential, loss of the value of home services, and other pecuniary losses, the full nature

5    and extent of which are not yet known to Plaintiff; and leave is requested to amend this

6    complaint to conform to proof at the time of trial.

7    9.    Plaintiff REYNA CARRANZA brings any and all Survival Causes of Action

8    pursuant to Section 377.32 of the Code of Civil Procedure, as successor-in-interest to Decedent

9    ALBERTO CARRANZA.

10    10.    The heirs-at-law of the decedent and their relationship to the decedent are:

11    REYNA CARRANZA the surviving spouse of Decedent ALBERTO CARRANZA; and

12    ALBERT I. CARRANZA, SAMUEL A. CARRANZA, DAVID J. CARRANZA and IAN A.

13    CARRANZA, the surviving minor sons of Decedent ALBERTO CARRANZA.

14    11.    At all times prior to his death, Decedent was a loving and dutiful spouse and

15    parent.

16    12.    Plaintiffs REYNA CARRANZA, ALBERT I. CARRANZA, a minor by and

17    through his Guardian Ad Litem REYNA CARRANZA, SAMUEL A. CARRANZA, a minor by

18    and through his Guardian Ad Litem REYNA CARRANZA, DAVID J. CARRANZA, a minor

19    by and through his Guardian Ad Litem REYNA CARRANZA, and IAN A. CARRANZA, a

20    minor by and through his Guardian Ad Litem REYNA CARRANZA, bring any and all

21    Wrongful Death Causes of Action pursuant to Section 377.60 of the Code of Civil Procedure.

22    13.    The individuals set forth as heirs constitute all of the surviving heirs of Decedent

23    pursuant to California Code of Civil Procedure Section 377.60.

24    14.    Defendants DOES 826-850 may be heirs of Plaintiffs' Decedent entitled to

25    recover damages under California Code of Civil Procedure Section 377.60. Plaintiffs have not

26    at this time ascertained the true names of said defendants and, therefore, name them as nominal

27    defendants pursuant to California Code of Civil Procedure Section 382; however, these

28    defendants are not intended to be included within the charging allegations of "defendant" as

1 | used hereafter within this complaint.

2 |      15.    As a direct and proximate result of the conduct of the defendants, their "alternate

3 | entities," and each of them, as aforesaid, Decedent was exposed to asbestos and asbestos-

4 | containing products, developed the diseases alleged herein, and died therefrom.

5 |      16.    As a direct and proximate result of the conduct of defendants, and each of them,

6 | and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

7 | of care, society, comfort, attention, services, and support of Decedent, all to their damage as

8 | herein alleged.

9 |      17.    As a further direct and proximate result of the conduct of defendants, and each of

10 | them, and the death of Decedent, Decedent's heirs have incurred funeral and burial expenses in

11 | an amount currently not ascertained.

12 |      18.    Each of the herein named defendants is liable for its own tortious conduct and/or

13 | the tortious conduct of an "alternate entity" as hereinafter defined. Defendants, and each of

14 | them, including but not limited to the following defendants, are liable for the acts of their

15 | "alternate entity," and each of them, in that there has been a corporate name change, defendant is

16 | the successor by merger or successor by other acquisition resulting in a virtual destruction of

17 | Plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have

18 | acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such

19 | "alternate entity"; defendants, and each of them, caused the destruction of Plaintiffs' remedy

20 | against each such "alternate entity"; each such defendant has the ability to assume the risk-

21 | spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

22 | originally attached to each such "alternate entity."

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| BORGWARNER MORSE TEC LLC | ALFOL<br>BORG-WARNER<br>BORG WARNER AUTOMOTIVE<br>TRANSMISSION & ENGINE<br>COMPONENTS CORPORATION<br>BORG-WARNER AUTOMOTIVE<br>MORSE TEC CORPORATION |

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

| | |
|---|---|
| | B-W TRANSMISSION & ENGINE CORPORATION<br>BURNS INTERNATIONAL SERVICES CORPORATION<br>BURNS INTERNATIONAL SECURITY SERVICES<br>BORG-WARNER INC.<br>BORG-WARNER CORPORATION<br>BORGWARNER MORSE TEC, INC. |
| BWDAC INC., f/k/a BWD AUTOMOTIVE CORPORATION | BWD AUTOMOTIVE CORPORATION |
| CBS CORPORATION | VIACOM, INC.<br>WESTINGHOUSE ELECTRIC CORPORATION<br>B. F. STURTEVANT COMPANY |
| CERTAINTEED CORPORATION | KEASBEY & MATTISON<br>BESTWALL<br>GUSTIN BACON MANUFACTURING CO. |
| CONTINENTAL AUTOMOTIVE SYSTEMS, INC. | CTI<br>CONTINENTAL TEVES INC. |
| CROWN CORK & SEAL COMPANY, INC. | CROWN, CORK & SEAL USA, INC.<br>CROWN HOLDINGS, INC.<br>MUNDET CORK CORPORATION |
| E.I. DU PONT DE NEMOURS AND COMPANY | DUPONT CHEMICAL COMPANY |
| GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY INC.<br>GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY<br>GENERAL ELECTRIC PROFESSIONAL SERVICES COMPANY<br>GENERAL ELECTRIC TRADING COMPANY<br>MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>GE INDUSTRIAL SYTEMS |

6

| | |
|---|---|
| | CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES<br>SMITH'S AEROSPACE LLC |
| GENUINE PARTS COMPANY | NAPA |
| INDUSTRIAL HOLDINGS CORPORATION | THE CARBORUNDUM COMPANY |
| INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG<br>DRESSER-RAND<br>POWERWORKS<br>THERMOKING<br>TERRY STEAM TURBINE COMPANY<br>WHITON MACHINE COMPANY<br>THERMO KING CORPORATION |
| JOHN CRANE INC. | CRANE PACKING COMPANY<br>TI GROUP PLC<br>SMITHS GROUP PLC |
| J-M MANUFACTURING COMPANY, INC. | J-M A/C PIPE CORPORATION |
| KELLY MOORE PAINT COMPANY INC. | FRANK W. DUNNE COMPANY<br>DUNNE QUALITY PAINTS |
| METALCLAD INSULATION LLC | NORTHERN CALIFORNIA INSULATION, INC.<br>METALCLAD INSULATION CORPORATION<br>METALCLAD PRODUCTS CORP.<br>SWEETSER ENTERPRISES<br>METALCLAD ENVIRONMENTAL CONTRACTORS<br>METALCLAD KIRCHER ASBESTOS CO.<br>METALCLAD INSULATION COMPANY INC.<br>METALCLAD CORP. |
| PNEUMO ABEX LLC | ABEX CORPORATION, f/k/a PNEUMO ABEX CORPORATION |
| SOCO WEST, INC. | BRENNTAG WEST, INC.<br>SOCO-LYNCH CORPORATION<br>SOCO-WESTERN CHEMICAL CORPORATION<br>STINNES-WESTERN CHEMICAL CORPORATTION |

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

| STANDARD MOTOR PRODUCTS, INC. | EIS BRAND BRAKES<br>CALI-BLOK |
| --- | --- |
| UNION CARBIDE CORPORATION | THE DOW CHEMICAL COMPANY<br>UNION CARBIDE CHEMICALS AND<br>PLASTICS COMPANY, INC.<br>UNION CARBIDE AND CARBON<br>CORPORATION<br>LINDE AIR PRODUCTS COMPANY<br>NATIONAL CARBON CO. INC.<br>PREST-O-LITE CO. INC.<br>UNION CARBIDE COMPANY<br>CARBIDE AND CARBON CHEMICALS<br>CORPORATION<br>BAKELITE CORPORATION<br>UNION CARBIDE CONSUMER<br>PRODUCTS CO.<br>UNION CARBIDE MINING AND METALS<br>DIVISION<br>UNION CARBIDE ELECTRONICS<br>DIVISION<br>UNION CARBIDE HYDROCARBONS<br>DIVISION<br>UNION CARBIDE FERROALLOYS<br>DIVISION<br>JENNAT CORPORATION<br>AMERCHOL CORPORATION<br>UOP<br>UCAR CARBON COMPANY<br>UNION CARBIDE INDUSTRIAL GASES<br>INC.<br>PRAXAIR INC.<br>POLIMERI EUROPA S.r.l.<br>ASIAN ACETYLS COMPANY LTD.<br>EQUATE PETROCHEMICAL COMPANY<br>UNIVATION TECHNOLOGIES |

19.     The true names and capacities, whether individual, corporate, associate,

governmental or otherwise, of defendants DOES 1 through 800, are unknown to Plaintiff at this

time, who therefore sues said defendants by such fictitious names.  When the true names and

capacities of said defendants have been ascertained, Plaintiff will amend this complaint

accordingly.  Plaintiffs are informed and believe, and thereon allege, that each defendant

designated herein as a DOE is responsible, negligently or in some other actionable manner, for

the events and happenings hereinafter referred to, and caused injuries to Decedent and damages

thereby to the Plaintiff, as hereinafter alleged.

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1      20.     At all times herein mentioned, each of the defendants was the agent, servant,

2  employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each

3  defendant was acting in the full course and scope of said agency, service, employment and/or

4  joint venture.

5      21.     Plaintiffs are informed and believe, and thereon allege, that at all times herein

6  mentioned, all defendants, and DOES 1 through 800, inclusive, were and are corporations,

7  partnerships, unincorporated associations, sole proprietorships and/or other business entities

8  organized and existing under and by virtue of the laws of the State of California, or the laws of

9  some other state or foreign jurisdiction, and that said defendants, and each of them, were and are

10  authorized to do and are doing business in the State of California, and that said defendants have

11  regularly conducted business in the County of Los Angeles, State of California. Defendants and

12  each of them purposefully availed themselves of the privilege of conducting business in the State of

13  California and invoked the rights and protections of California law:  by delivering into California

14  asbestos-containing materials, to which Decedent was exposed in California; by performing work

15  within the State of California which caused Decedent to be exposed to asbestos-containing

16  materials; and/or by placing into the stream of commerce asbestos-containing materials, to which

17  Decedent was exposed in California, with notice, awareness and/or knowledge that said materials

18  would be sold, distributed and delivered into California. Said asbestos-containing materials were

19  part of a regular and substantial flow of goods into California through established channels in the

20  stream of commerce and were not isolated, random or fortuitous sales. Defendants and each of them

21  further availed themselves of the privilege of conducting business in the State of California and

22  invoked the rights and protections of California law, at the time of Decedent's exposures, by

23  advertising, soliciting business, and engaging in other activities in or directed to California with the

24  purpose of serving markets in California.

25  ///

26  ///

27  ///

28

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

**FIRST CAUSE OF ACTION**
**[Negligence – Survival and Wrongful Death]**

**PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "C" and DOES 1-500, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE:**

22.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

23.     At all times herein mentioned, defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos.

24.     At all times herein mentioned, defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities described herein.

25.     At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, breached that duty of care in that they negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to provide adequate use instructions for eliminating the health risks inherent in the use of the products, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and other household members of said persons, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons."

26.     Defendants, their "alternate entities" and each of them, knew, or should have known, that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers.

27.     At all times herein relevant, defendants, their "alternate entities" and each of them, were aware of their asbestos and asbestos-containing products' defect but failed to warn and/or adequately warn, decedent, decedent's employers, and others of the known hazards associated with their products and/or failed to recall or retrofit their products.  A reasonable manufacturer, distributor, or seller of defendant's products would, under the same or similar circumstances, have warned and/or adequately warned of the hazards associated with their products and/or recalled or retrofitted their products.

28.     Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

29.     Defendants, their "alternate entities," and each of them, are liable for their fraudulent, oppressive, and malicious acts, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, their acts and the malicious acts of each of their "alternate entities" as set forth herein.

30.     The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

31.     As a direct and proximate result thereof, Plaintiffs have suffered the damages previously alleged.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### [Strict Liability – Survival and Wrongful Death]

**AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "C" AND DOES 1-500, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

32.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

33.     Decedent suffered and died from a condition related to exposure to asbestos and asbestos-containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

34.     Defendants' conduct and defective products as described in this cause of action were a direct cause of decedent's injuries, and the injuries and damages thereby sustained by plaintiff.

35.     Decedent used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A", attached hereto and incorporated by reference herein and/or by the work of others at said locations.

36.     At all times herein mentioned, defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos.

37.     Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

38.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons," including Decedent herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

39.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that said products did not perform as safely as expected by an ordinary consumer when used in an intended or reasonably foreseeable manner as said products did, in fact, release asbestos fibers and asbestos dust causing serious disease and/or death through inhalation of said asbestos. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them.  Said products were intended to reach the ultimate consumer in the same condition as it left defendants. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons," including Decedent herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

40.     "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which Decedent and others similarly situated were exposed and/or failed to provide adequate use instructions for eliminating the health risks inherent in the use of the products.

41.     The gravity of the potential harm resulting from the use of Defendants' defective products as described in this cause of action, and the likelihood such harm would occur,

1   outweighed the cost of feasible alternative designs, including providing adequate warning of

2   such potential harm.

3        42.    In researching, manufacturing, fabricating, designing, modifying, testing or

4   failing to test, warning or failing to warn, labeling, instructing or failing to instruct, assembling,

5   distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing,

6   installing, contracting for installation, repairing, marketing, warranting, rebranding,

7   manufacturing for others, packaging and advertising asbestos and asbestos-containing products,

8   defendants, their "alternate entities," and each of them, did so with conscious disregard for the

9   safety of "exposed persons" who came in contact with said asbestos and asbestos-containing

10  products, in that said defendants, their "alternate entities," and each of them, had prior

11  knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos

12  or asbestos-containing products, including, but not limited to, asbestosis, other lung damages

13  and cancer.  Said knowledge was obtained, in part, from scientific studies performed by, at the

14  request of, or with the assistance of, said defendants, their "alternate entities," and each of them,

15  and in part by scientific studies published in literature that was in defendants' possession and/or

16  readily available to defendants, and which knowledge was obtained by said defendants, their

17  "alternate entities," and each of them on or before 1930, and thereafter.

18       43.    On or before 1930, and thereafter, said defendants, their "alternate entities" and

19  each of them, were aware that members of the general public and other "exposed persons," who

20  would come in contact with their asbestos and asbestos-containing products, had no knowledge

21  or information indicating that asbestos or asbestos-containing products could cause injury, and

22  said defendants, their "alternate entities," and each of them, knew that members of the general

23  public and other "exposed persons," who came in contact with asbestos and asbestos-containing

24  products, would assume, and in fact did assume, that exposure to asbestos and asbestos-

25  containing products was safe, when in fact said exposure was extremely hazardous to health and

26  human life.

27       44.    With said knowledge, said defendants, their "alternate entities," and each of them,

28  opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

1   offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

2   warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-

3   containing products without attempting to protect "exposed persons" from or warn "exposed

4   persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

5   containing products. Rather than attempting to protect "exposed persons" from, or warn

6   "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

7   asbestos-containing products, defendants, their "alternate entities," and each of them,

8   intentionally failed to reveal their knowledge of said risk, and consciously and actively

9   concealed and suppressed said knowledge from "exposed persons" and members of the general

10  public, thus impliedly representing to "exposed persons" and members of the general public that

11  asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.

12  Defendants, their "alternate entities," and each of them, engaged in this conduct and made these

13  implied representations with the knowledge of the falsity of said implied representations.

14       45.    As a direct and proximate result thereof, Plaintiff has suffered the damages

15  previously alleged.

16       46.    The above-referenced conduct of said defendants, their "alternate entities," and

17  each of them, was motivated by the financial interest of said defendants, their "alternate

18  entities," and each of them, in the continuing, uninterrupted research, design, modification,

19  manufacture, fabrication, labeling, instructing, assembly, distribution, lease, purchase, offer for

20  sale, supply, sale, inspection, installation, contracting for installation, repair, marketing,

21  warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and

22  asbestos-containing products.  In pursuance of said financial motivation, said defendants, their

23  "alternate entities," and each of them, continued to market and sell products which they knew

24  were dangerous to plaintiff and to the public, without adequate warnings or proper use

25  instructions, in conscious disregard for the safety of "exposed persons." Defendants were

26  willing and intended to permit asbestos and asbestos-containing products to cause injury to

27  "exposed persons" and induced persons to work with and be exposed thereto, including

28  decedent.

47.     Defendants, their "alternate entities," and each of them, are liable for their own fraudulent, oppressive, and malicious acts and the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them.  Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts described herein.

48.     The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**[False Representation Under Restatement of Torts Section 402-B**
**– Survival and Wrongful Death]**

**AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "C" and DOES 1-500, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

49.     Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the General Allegations, First Cause of Action (Negligence), and Second Cause of Action (Strict Liability).

50.     At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, failed to provide adequate use instructions for eliminating the health risks inherent in the use of the products , labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the defendants, their

1   "alternate entities," and each of them, expressly and impliedly represented to members of the

2   general public, including the purchasers and users of said product, and other "exposed persons,"

3   including the decedent herein and her employers, that asbestos and asbestos-containing products,

4   were of merchantable quality, and safe for the use for which they were intended.

5       51.     The purchasers and users of said asbestos and asbestos-containing products, and

6   other "exposed persons," including the decedent and Decedent's then-husband's employers,

7   relied upon said representations of defendants, their "alternate entities," and each of them, in the

8   selection, purchase and use of asbestos and asbestos-containing products.

9       52.     Said representations by defendants, their "alternate entities," and each of them,

10  were false and untrue, and defendants knew at the time they were untrue, in that the asbestos and

11  asbestos-containing products, were not safe for their intended use, nor were they of

12  merchantable quality as represented by defendants, their "alternate entities," and each of them, in

13  that asbestos and asbestos-containing products have very dangerous properties and defects

14  whereby said products cause asbestosis, other lung damages and cancer, and have other defects

15  that cause injury and damage to the users of said products and other "exposed persons," thereby

16  threatening the health and life of said persons including Decedent herein.

17      53.     Defendants, their "alternate entities," and each of them, and their officers,

18  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

19  had full knowledge of, or should have known of, each of the acts set forth herein.

20      54.     Defendants, their "alternate entities," and each of them, are liable for the

21  fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and

22  each defendant's officers, directors and managing agents participated in, authorized, expressly

23  and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of

24  their "alternate entities" as set forth herein.

25      55.     The herein-described conduct of said defendants, their "alternate entities," and

26  each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard

27  and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of

28  example and by way of punishing said defendants, seek punitive damages according to proof.

---

17

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

56.     As a direct and proximate result of said false representations by defendants, their "alternate entities," and each of them, Decedent sustained the injuries and death and Plaintiffs sustained damages herein above set forth.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**[Intentional Tort – Survival and Wrongful Death]**

**AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "C" and DOES 1-500, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

57.     Plaintiffs, by this reference, hereby incorporate, as though fully set forth herein, each and every allegation contained in the General Allegations, Second Cause of Action (Strict Liability), and Third Cause of Action (False Representation).

58.     At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed Decedent a duty, as provided for in Section 1708 through 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the decedent. When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury and subsequent death to Decedent and the damages suffered by Plaintiffs, as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) and, more specifically, included suggestions of fact which were not true and which defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the decedent as provided for in the aforementioned Civil Code sections.

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

59.     Since on or before 1930, the defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in Plaintiff's First Cause of Action were and are hazardous to the health and safety of Decedent, and others in Decedent's position working in close proximity with such materials. The defendants, their "alternate entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time. With intent to deceive Decedent, and others in Decedent's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Decedent and such others to alter her and their positions to her and their injury and/or risk and in order to gain advantages, the following acts occurred:

60.     Defendants, their "alternate entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Decedent and others in Decedent's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein when the knowledge of such hazards was existing and known to defendants, their "alternate entities," and each of them, since 1924. By not labeling such materials as to their said hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to Decedent that it was safe for Decedent to work in close proximity to such materials when in fact it was not true and defendants, their "alternate entities," and each of them, did not believe it to be true;

61.     Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1  nature thereof when defendant, their "alternate entities," and each of them, were bound to

2  disclose such information;

3       62.    Defendants, their "alternate entities," and each of them, sold the aforementioned

4  products and materials to Decedent's employer and others without advising Decedent and others

5  of the dangers of use of such materials to persons working in close proximity thereto when

6  defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to

7  disclose such dangers all as set forth herein. By said conduct, defendants, their "alternate

8  entities," and each of them, caused to be positively asserted to Decedent that which was not true

9  and that which defendants, their "alternate entities," and each of them, had no reasonable ground

10  for believing to be true, to wit, that it was safe for Decedent to work in close proximity to such

11  materials;

12       63.    Defendants, their "alternate entities," and each of them, suppressed from

13  Decedent medical and scientific data and knowledge of the results of studies including, but not

14  limited to, the information and knowledge of the contents of the Lanza report. Although bound

15  to disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to

16  change his report, the altered version of which was published in Public Health Reports, Volume

17  50 at page 1 in 1935, thereby causing Decedent and others to be and remain ignorant thereof.

18  Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely

19  disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice

20  of danger to the users thereof;

21       64.    Defendants, their "alternate entities," and each of them, belonged to, participated

22  in, and financially supported the Asbestos Textile Institute and other industry organizations

23  which, for and on behalf of defendants, their "alternate entities," and each of them, actively

24  promoted the suppression of information of danger to users of the aforementioned products and

25  materials, thereby misleading Decedent by the suggestions and deceptions set forth above in this

26  cause of action. The Dust Control Committee, which changed its name to the Air Hygiene

27  Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust

28  control. Discussions in this committee were held many times regarding the dangers inherent in

1    asbestos and the dangers which arise from the lack of control of dust, and such information was

2    suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

3       65.    Commencing in 1930 with the study of mine and mill workers at Asbestos and

4    Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in

5    Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of

6    them, knew and possessed medical and scientific information of the connection between

7    inhalation of asbestos fibers and asbestosis, which information was disseminated through the

8    Asbestos Textile Institute and other industry organizations to all other defendants, their

9    "alternate entities," and each of them, herein. Between 1942 and 1950, the defendants, their

10    "alternate entities," and each of them, acquired medical and scientific information of the

11    connection between inhalation of asbestos fibers and cancer, which information was

12    disseminated through the Asbestos Textile Institute and other industry organizations to

13    defendant herein. Thereby, defendants, their "alternate entities," and each of them, suggested to

14    the public as a fact that which is not true and disseminated other facts likely to mislead

15    Decedent. Such facts did mislead Decedent and others by withholding the afore-described

16    medical and scientific data and other knowledge and by not giving Decedent the true facts

17    concerning such knowledge of danger, which defendants, their "alternate entities," and each of

18    them, were bound to disclose;

19       66.    Defendants, their "alternate entities," and each of them, failed to warn Decedent

20    and others of the nature of said materials which were dangerous when breathed and which could

21    cause pathological effects without noticeable trauma, despite the fact that defendants, their

22    "alternate entities," and each of them, possessed knowledge and were under a duty to disclose

23    that said materials were dangerous and a threat to the health of persons coming into contact

24    therewith;

25       67.    Defendants, their "alternate entities," and each of them, failed to provide

26    Decedent with information concerning adequate protective masks and other equipment devised

27    to be used when applying and installing the products of the defendants, and each of them,

28    despite knowing that such protective measures were necessary, and that they were under a duty

1    to disclose that such materials were dangerous and would result in injury and death to the

2    decedent and others applying and installing such material;

3        68.    Defendants, their "alternate entities," and each of them, when under a duty to so

4    disclose, concealed from Decedent the true nature of the industrial exposure of Decedent and

5    knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in time,

6    develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their

7    "alternate entities," and each of them, also concealed from Decedent and others that harmful

8    materials to which they were exposed would cause pathological effects without noticeable

9    trauma;

10       69.    Defendants, their "alternate entities," and each of them, failed to provide

11    information of the true nature of the hazards of asbestos materials and that exposure to these

12    materials would cause pathological effects without noticeable trauma to the public, including

13    buyers, users, and physicians employed by Decedent and Decedent's employers so that said

14    physicians could examine, diagnose and treat Decedent and others who were exposed to

15    asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under

16    a duty to so inform and said failure was misleading; and

17       70.    Defendants, their "alternate entities," and each of them, failed to provide adequate

18    information to physicians and surgeons retained by Decedent's employers and their predecessor

19    companies, for purposes of making physical examinations of Decedent and other employees as

20    to the true nature of the risk of such materials and exposure thereto when they in fact possessed

21    such information and had a duty to disclose it.

22       71.    Defendants, their "alternate entities," and each of them, willfully failed and

23    omitted to complete and file First Report of Occupational Injury of Illness regarding Decedent's

24    injuries, as required by law, and did willfully fail and omit to file report of injury and

25    occupational disease with the State of California. Decedent was in the class of persons with

26    respect to whom a duty was owed to file such reports and who would have been protected

27    thereby if the fact of danger from products complained of had become known.

28

72. Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duty to inform Decedent about the true facts, and knowing the decedent did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Decedent to remain unaware of the true facts and to induce Decedent to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

73. Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

74. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

75. The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

76. As a direct and proximate result thereof, Plaintiffs have suffered the damages previously alleged.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

///

///

1

### FIFTH CAUSE OF ACTION
**[Premises Owner/Contractor Liability – Survival and Wrongful Death]**

2

**AND FOR A FURTHER FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "D" and DOES 501-800, INLCUSIVE, THEIR "ALTERNATE ENTITIES" (HEREINAFTER "PREMISES OWNER/CONTRACTOR DEFENDANTS"), AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

3

4

5

6       77.    Plaintiffs incorporate herein by reference, as though fully set forth herein,

7    each and every paragraph of the General Allegations above.

8       78.    At all times herein mentioned, defendants, their "alternate entities," and

9    each of them, were and are engaged in the business of researching, manufacturing, fabricating,

10   designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering

11   for sale, supplying, selling, inspecting, servicing, installing, contracting for installation,

12   repairing, marketing, warranting, rebranding, manufacturing for others, packaging and

13   advertising a certain product, namely asbestos and other products containing asbestos.

14      79.    At all times mentioned herein, the Premises Owner/Contractor Defendants,

15   and each of them, respectively, owned, leased, maintained, managed, and/or controlled at least

16   some of the premises listed on Exhibit "A" where Decedent was present. The information

17   provided on Exhibit "A" is preliminary, based on recall over events covering many years and

18   further investigation and discovery may produce more reliable information. Additionally,

19   Decedent might have been present at these or other Premises Owner/Contractor Defendants'

20   premises at other locations and on other occasions.

21      80.    At all times herein mentioned, defendants, and each of them, was an entity

22   and/or successor, successor-in-business, assign, predecessor, predecessor-in-business, parent,

23   subsidiary, wholly or partially owned by, or the whole or partial owner of an entity, hereinafter

24   collectively be called "alternate entities,"  causing certain asbestos- containing insulation, other

25   building materials, products and toxic substances to be constructed, installed, maintained, used,

26   replaced, repaired and/or removed on the respective premises owned, leased, maintained,

27   managed and/or controlled by them.

28   ///

24

81.     Prior to and at said times and places, Premises Owner/Contractor Defendants, and each of them, respectively, caused certain asbestos- containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, disturbed and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Decedent and other persons exposed to said asbestos fibers and toxic substances while present at premises owned, leased, maintained, managed, and/or controlled by the defendants, and each of them.

82.     At all times mentioned herein, said Premises Owner/Contractor Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Decedent and other workers or persons so exposed present on each of the aforesaid respective premises.

83.     At all times relevant herein, Decedent entered said premises and used or occupied each of said respective premises as intended by and for the benefit and advantage of and/or at the request and invitation of, each of the defendants.  In so doing, Decedent was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by Premises Owner/Contractor Defendants, and each of them.

84.     Decedent used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Decedent's exposure to asbestos and asbestos-containing products occurred at the various locations as set forth in Exhibit "A", attached hereto and incorporated by reference herein, and at such other premises under defendants' control as investigation may reveal.

85.     Decedent at all times was unaware of the hazardous condition or the risk of

1  personal injury created by the aforesaid presence and use of asbestos products and materials and

2  other toxic substances on said premises.

3      86.    At all times mentioned herein, the Premises Owner/Contractor Defendants

4  owed to Decedent and others similarly situated a duty to exercise care in the management of

5  their premises in order to avoid exposing workers such as Decedent and others similarly situated

6  to an unreasonable risk of harm and to avoid causing injury to said persons.

7      87.    At all times mentioned herein, Premises Owner/Contractor Defendants,

8  and each of them, knew, or in the exercise of ordinary and reasonable care should have known,

9  that the premises that were in their control would be used without knowledge of, or inspection

10  for, defects or dangerous conditions and that the persons present and using said premises would

11  not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

12      88.    At all times mentioned herein, Premises Owner/Contractor Defendants, and each

13  of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to

14  abate or correct, or to warn Decedent of, the existence of the aforesaid dangerous conditions and

15  hazards on said premises.

16      89.    Prior to and at the times and places aforesaid, said Premises

17  Owner/Contractor Defendants, and each of them, respectively, caused certain asbestos-

18  containing insulation, other building materials, products and toxic substances to be constructed,

19  installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid

20  respective premises, by their own workers and/or by employing various contractors, and caused

21  the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the

22  ambient air and thereby injured Decedent.

23      90.    At all times mentioned herein, said Premises Owner/Contractor Defendants, and

24  each of them, should have recognized that the work of said contractors would create during the

25  progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm

26  Decedent and others unless special precautions were taken.

27  ///

28  ///

91.     At all times mentioned herein, said Defendants should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Decedent and others unless special precautions were taken.  Defendants knew or should have known that the work required special procedures to be done safely.  Defendants were aware or should have been aware that such special procedures were not taken.

92.     In part, Decedent was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take the necessary precautions.

93.     The work of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

94.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

(a)     Failure to warn of asbestos and other toxic dusts;

(b)     Failure to suppress the asbestos-containing or toxic dusts;

(c)     Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

(d)     Failure to provide adequate breathing protection, i.e., approved respirators or masks;

(e)     Failure to inspect and/or test the air;

(f)     Failure to provide medical monitoring.

95.     Defendants had a duty to maintain and provide safe premises and a safe place to work and to warn of latent dangerous conditions on the premises.  Said duties arise out of common law, Civil Code §1714, and Labor Code §6400, et seq., or Health and Safety Code §40.200, et seq., and regulations promulgated thereunder.  These duties were not delegated to any contractor.  Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

1      96.    Prior to and at said times and places, said Premises Owner/Contractor Defendants

2  were subject to certain ordinances, statutes, and other government regulations promulgated by

3  the United States Government, the State of California, and others, including but not limited to

4  the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and

5  the California Administrative Code under the Division of Industrial Safety, Department of

6  Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous

7  Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as

8  documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety

9  Orders. Additionally, said Premises Owner/Contractor Liability Defendants were required to

10  provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust

11  and other toxic fumes or substances as prescribed by Title 40 Code of Federal Regulations,

12  Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants and

13  under the regulations promulgated by California regional Air Quality Management Districts, as

14  empowered by California Health and Safety Code §40.200, et seq., , including but not limited to

15  South Coast Air Quality Management District Regulation XIV, Rules 1403 and 1414; Bay Area

16  Air Quality Management District Regulation 11, Rules 2 and 14; Mojave Desert Air Quality

17  Management District, Regulation IX, Regulation X, Rule 1000 and Notification (ATCMs)

18  thereto as revised 11/27/00); Imperial Air Quality Management District, Regulation X, Rules

19  1001 and 1002; San Diego Air Quality Management District, Regulation IV, Rules 50, 50.1, 54,

20  54.1, Regulation X, Subpart A, Regulation XI, Subparts A and M; Antelope Valley Air Quality

21  Management District, Regulation X, Rule 1000, Regulation XIV, Rule 1414; Ventura County

22  Air Pollution Control District, Regulation IV, Rule 62.7, Rule 73; Santa Barbara County Air

23  Pollution Control District, Regulation X, 1001; San Luis Obispo County Air Pollution Control

24  District, Regulation IV, Rule 412, Regulation VII, Rule 701; Kern Air County Quality

25  Management District, Regulation IV, Rules 402 and 423; Great Basin Unified Air Pollution

26  Control District, Regulation IV, Rule 430, Regulation X, Rule 1002; San Joaquin Valley Unified

27  Air Pollution Control District, Regulation IV, Rule 4002, Regulation VII, Rule 7050; Monterey

28  Bay Unified Air Pollution Control District, Regulation V, Rule 436, Regulation X, Rule 1008;

1    Mariposa County Air Pollution Control District, Regulation IX, Rule 904, Regulation X, Rule

2    1001; Tuolumne County Air Pollution Control District, Regulation V, Rule 500, et seq.,

3    Regulation IX, Rule 904;  Calaveras County Air Pollution Control District, Regulation IX, Rule

4    906, Regulation X, Rule 1001; Amador County Air Pollution Control District, Regulation V,

5    Rule 500 et seq.;  Sacramento Metropolitan Air Quality Management District, Regulation IX,

6    Rules 901, 902, 904; El Dorado County Air Quality Management District, Regulation II, Rule

7    223, 223-1, and 223-2; Yolo-Solano air Quality Management District, Regulation III, Rules 3-8,

8    Regulation IX, Rules 9-8 and 9-9; Feather River Air Quality Management District, Regulation

9    X, Rule 10, et seq., Regulation XI, Rule 11-2; Placer County Air Pollution Control District,

10   Regulation II, Rule 224, Regulation V, Rule 507, Rule IX, Rule 905; Northern Sierra Air

11   Quality Management District, Regulation IX, Rule 904; Northern Sonoma County Air Pollution

12   District, Chapter IV, Rule 1-4-492; Colusa County Air Pollution Control District, Regulation II,

13   2-43, Regulation III, Rules 3-17 and 3-18, and Appendix D; Lake County Air Quality

14   Management District, Chapter II, Sections 450 and 467l; Mendocino County Air Quality

15   Management District, Chapter IV, Rules 1-430, 1-492; Glenn County Air Pollution Control

16   District, Articles III and IV; Butte County Air Quality Management District, Rules 1000, 1101,

17   430; Tehama County Air Pollution Control District, Regulations IV and VI; Lassen County Air

18   Pollution Control District, Regulation IV, Rule 421 and Appendix C;  Shasta County Air Quality

19   Management District, Rules 2-1, 3-22, and 5, North Coast Unified Air Quality Management

20   District Regulation 1, Rules 430 and 492, and Regulation 3, Rules 3-100 et seq.; Siskiyou

21   County Air Pollution Control District, Regulation IV, Rule 4-13, Regulation VIII, Rule 8-7;

22   Modoc County Air Pollution Control District, Regulation IV, Rule 4-13, Regulation VIII, Rule

23   8-7. Defendants' failure to comply with these ordinances, statutes, and other government

24   regulations include but are not limited to:

25        (a)    Failing to comply with statutes and allowing ambient levels of airborne asbestos

26   fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

27        (b)    Failing to segregate work involving the release of asbestos or other toxic dusts;

28        (c)    Failing to suppress dust using prescribed ventilation techniques;

1      (d)     Failing to suppress dust using prescribed "wet down" techniques;

2      (e)     Failing to warn or educate Decedent or others regarding asbestos or other toxic

3  substances on the premises;

4      (f)     Failing to provide approved respiratory protection devices;

5      (g)     Failing to ensure "approved" respiratory protection devices were used properly;

6      (h)     Failing to provide for an on-going health screening program for those exposed to

7  asbestos on the premises;

8      (i)     Failing to provide adequate housekeeping and clean-up of the work place;

9      (j)     Failing to properly warn of the hazards associated with asbestos as required by

10  these statutes;

11      (k)     Failing to properly report renovation and disturbance of asbestos-containing

12  materials, including but not limited to BAAQMD Regulation 11-2-401 and/or SCQAMD Rule

13  1403 D(1);

14      (l)     Failing to have an asbestos removal supervisor as required by regulation;

15      (m)    Failing to get approval for renovation as required by statutes; and

16      (n)     Failing to maintain records as required by statute.

17      97.    Decedent at all times was unaware of the hazardous condition or the risk of

18  personal injury created by defendants' violation of said regulations, ordinances or statutes.

19      98.    At all times mentioned herein, Decedent was a member of the class of persons

20  whose safety was intended to be protected by the regulations, statutes or ordinances described in

21  the foregoing paragraphs.

22      99.    At all times mentioned herein, said Premises Owner/Contractor Defendants, and

23  each of them, knew, or in the exercise of ordinary and reasonable care should have known, that

24  the premises that were in their control would be used without knowledge of, or inspection for,

25  defects or dangerous conditions, that the persons present and using said premises would not be

26  aware of the aforesaid hazardous conditions to which they were exposed on the premises, and

27  that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

28      100.   As a legal consequence of the foregoing, Decedent developed an asbestos-related

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1  illness, which caused great injury and disability as previously set forth, and Plaintiffs have

2  thereby suffered damages as herein alleged.

3     101.   The above-referenced conduct of said defendants was motivated by the financial

4  interest of said defendants.  In pursuance of said financial gain, defendants consciously

5  disregarded the safety of "exposed persons" and in fact were consciously willing and intended to

6  permit asbestos and asbestos-containing products to cause injury to "exposed persons" and

7  induced persons to work with and be exposed thereto, including Decedent.

8     102.   Defendants are liable for the fraudulent, oppressive, and malicious acts of

9  their "alternate entities," and each of them, and of their officers, directors, and managing agents.

10    103.   Defendants, their "alternate entities," and each of them, and their officers,

11  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

12  had full knowledge of, or should have known of, each of the acts set forth herein.

13    104.   Defendants, their "alternate entities," and each of them, are liable for the

14  fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and

15  each defendant's officers, directors and managing agents participated in, authorized, expressly

16  and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of

17  their "alternate entities" as set forth herein.

18    105.   The herein-described conduct of said defendants, their "alternate entities," and

19  each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard

20  and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of

21  example and by way of punishing said defendants, seek punitive damages according to proof.

22    WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities,"

23  and each of them, as hereinafter set forth.

24  ///

25  ///

26  ///

27

28

## SIXTH CAUSE OF ACTION
### [Negligence – Survival and Wrongful Death]

**AND FOR A SIXTH, FURTHER, AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS and DOES 1-800, INLCUSIVE, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

106.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations and the First Cause of Action above.

107.    At all times herein mentioned, defendants inspected, tested, selected, specified the use of, supplied, procured, stored, maintained, required, used, and/or distributed asbestos containing materials to their employees and others, for use during their regular work activities, in areas where defendants owned, maintained, controlled, managed and/or conducted business activities where Decedent worked and/or spent time, as alleged herein in Exhibit "A".

108.    Said employees and others handled, disturbed and otherwise manipulated these asbestos containing materials, causing the release of asbestos fibers and dust.

109.    Defendants were negligent in selecting, inspecting, testing or failing to test, supplying, procuring, storing, maintaining, specifying and/or requiring the use of, and/or distributing the asbestos containing products and materials that Decedent worked with, in that said products were unsafe in that they released asbestos fibers and dust into air when used or otherwise handled, which settled onto Decedent's clothes, shoes, body, and personal effects, thus creating a situation whereby workers and by-standers, such as Decedent, foreseeably would be exposed to dangerous asbestos dust.

110.    The asbestos and asbestos-containing materials described herein were unsafe in that handling and disturbing products which contain asbestos causes the release of asbestos fibers into the air, and the inhalation of asbestos fibers causes serious disease and death. Here, the handling of asbestos containing materials by defendants' employees and other caused personal injuries, including mesothelioma and other lung damage, to Decedent.

///

///

1        111.    At all times herein mentioned, defendants knew or should have known that

2    its employees, including Decedent, and the household members of defendants' employees,

3    including Decedent, frequently encountered asbestos-containing products and materials during

4    the course and scope of defendants' business activities.

5        112.    At all times herein mentioned, defendants knew or should have known that

6    the asbestos-containing materials encountered by its employees and bystanders thereto,

7    including Decedent, were unsafe in that harmful asbestos fibers were released during the use,

8    handling, breaking, or other manipulation of asbestos-containing products and materials, and

9    that once released, asbestos fibers can be inhaled, and can alight on the clothes, shoes, personal

10    effects, skin, hair, and body parts of those exposed, where further activity causes the fibers to

11    once again be released into the air where they can be inhaled, all of which causes serious disease

12    and/or death.

13        113.    At all times herein mentioned, defendants, and each of them knew, or in the

14    exercise of reasonable diligence should have known, that absent adequate training and

15    supervision, their employees and bystanders thereto including Decedent were neither qualified

16    nor able to identify asbestos-containing products nor to identify the hazardous nature of their

17    work activities involving asbestos-containing products.

18        114.    At all times herein mentioned, Decedent was unaware of the dangerous condition

19    and unreasonable risk of personal injury created by the aforesaid presence and use of asbestos-

20    containing products and materials.

21        115.    At all times herein mentioned, defendants, and each of them knew, or in the

22    exercise of reasonable diligence should have known, that absent adequate training and

23    supervision, their employees and bystanders thereto including Decedent were neither qualified

24    nor able to identify asbestos-containing products nor to identify the hazardous nature of their

25    work activities involving asbestos-containing products.

26        116.    At all times herein mentioned, defendants had a duty to use ordinary care in the

27    conduct of their activities, including the selection, supply, distribution, use, and disturbance of

28    asbestos containing products and materials on their premises and/or in their business processes.

1 Defendants' duties to use ordinary care to prevent household members of workers from

2 becoming exposed to asbestos, included providing adequate instruction and training to, and

3 supervision of, their employees; and implementing adequate safety policies and procedures, all

4 of which was necessary to protect workers and persons encountering those workers, including

5 Decedent, from suffering injury or death as a result of the asbestos hazards encountered and

6 created by the work of defendants' employees and others involved in the furtherance of

7  117. Defendants' duties as alleged herein exist and existed independently of

8 defendants' duties to maintain their premises in reasonably safe condition, free from concealed

9 hazards.

10  118. Defendants negligently selected, supplied, and distributed the asbestos

11 containing materials and negligently failed to adequately train or supervise their employees and

12 negligently failed to implement adequate safety policies and procedures as needed to identify

13 asbestos-containing products and materials and ensure the safe handling of asbestos-containing

14 products and materials encountered during the course of their work activities; and to guard

15 against the inhalation of asbestos fibers by those who would come into close contact with the

16 work activities of defendants' employees as or after they had used, disturbed, or handled, said

17 asbestos-containing products and materials during the course and scope of their employment by

18 defendants.

19  119. Defendants failed to warn their employees and the household members of their

20 employees, including Decedent, of the known hazards associated with asbestos and the asbestos

21 materials they were using and/or disturbing.

22  120. As a direct and proximate result of the conduct of defendants as alleged herein, ,

23 Decedent became exposed to and inhaled asbestos fibers, which was a substantial factor causing

24 Decedent to develop asbestos-related conditions and diseases and resulting in the Plaintiff has

25 suffered damages as herein alleged.

26  121. Defendants' officers, directors and managing agents participated in, authorized,

27 expressly and impliedly ratified, and had full knowledge of, or should have known of, each of

28 the acts set forth herein.

1      122.    The herein-described conduct of said defendants was and is willful, malicious,

2    fraudulent, outrageous and in conscious disregard and indifference to the safety and health of

3    "exposed persons."  Plaintiff, for the sake of example and by way of punishing said defendants,

4    seeks punitive damages according to proof.

5          WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate

6    entities," and each of them, as hereinafter set forth.

7

8                    **SEVENTH CAUSE OF ACTION**

9            **[Aiding and Abetting Battery – Survival and Wrongful Death]**

10    **AS AND FOR A FURTHER, SEVENTH SEPARATE, AND DISTINCT CAUSE OF**

11    **ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF COMPLAINS OF**
      **DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, DOES 801-825,**

12    **THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS**

13                         **FOLLOWS:**

14      123.    Plaintiff hereby incorporates by reference each and every allegation contained

15    in the preceding causes of action herein.

16      124.    This cause of action is for the aiding and abetting of battery by

17    METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE").

18      125.    Plaintiffs are informed and believe, and thereon allege, that at all times herein

19    mentioned, defendant MET LIFE was and is a corporation organized and existing under and by

20    virtue of the laws of the State of New York or the laws of some other state of foreign

21    jurisdiction, and that this defendant was and is authorized to do and/or was and is doing business

22    in the State of California, and regularly conducted or conducts business in the County of Los

23    Angeles, State of California.  At times relevant to this cause of action, MET LIFE was an insurer

24    of defendants named herein and others.

25      126.    Plaintiff's Decedent was exposed to asbestos-containing dust created by the

26    use of the asbestos products manufactured, distributed and/or supplied by defendants named

27    herein, and others, who were insured by MET LIFE.  This exposure to said asbestos or asbestos-

28    related products caused the asbestos-related disease and subsequent death of Plaintiff's

---

                                    35

1    Decedent's and the injuries that plaintiff seeks redress for herein.

2       127.    MET LIFE aided and abetted defendants named herein and others in the

3    suppression and misrepresentation of the hazards of exposure to asbestos.

4       128.    As a direct and proximate result of said conduct, Plaintiff's Decedent

5    Remained ignorant and uninformed of the hazards of asbestos, failed to take precautions, and

6    was thereby exposed to, inhaled, ingested or otherwise absorbed amounts of asbestos fibers

7    sufficient to cause Plaintiff's Decedent to develop the asbestos disease specified herein. As a

8    direct and proximate result of said disease and subsequent death of Plaintiff's Decedent, Plaintiff

9    has suffered the damages alleged herein.

10      129.    MET LIFE knew that the conduct of its insured defendants named herein and

11    others constituted a breach of its duties to its insureds' workers and end users of its insureds'

12    products. MET LIFE gave substantial assistance to certain defendants named herein and others

13    in committing batteries on said workers and end users, including Plaintiff's Decedent, through

14    MET LIFE's conduct described above.

15      WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities,"

16    and each of them, as hereinafter set forth.

17    ///

18    ///

19    ///

20

21

22

23

24

25

26

27

28

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

FOR DECEDENT ALBERTO CARRANZA, by and through his successor-in-interest REYNA CARRANZA, pursuant to Code of Civil Procedure § 377.31, et seq.:

1. For DECEDENT'S medical and related expenses according to proof;
2. For DECEDENT'S loss of income, benefits, and/or income potential;
3. For exemplary or punitive damages according to proof;

FOR PLAINTIFFS REYNA CARRANZA, ALBERT I. CARRANZA, *a minor by and through his Guardian Ad Litem* REYNA CARRANZA, SAMUEL A. CARRANZA, *a minor by and through his Guardian Ad Litem* REYNA CARRANZA, DAVID J. CARRANZA, *a minor by and through his Guardian Ad Litem* REYNA CARRANZA, and IAN A. CARRANZA, *a minor by and through his Guardian Ad Litem* REYNA CARRANZA, pursuant to Code of Civil Procedure § 377.60, et seq.:

4. For Plaintiffs' general damages according to proof including damages for loss of love, companionship, comfort, affection, solace, moral support and/or society according to proof caused by DECEDENT'S death;
5. For Plaintiffs' loss of income and income potential caused by DECEDENT'S death, and for Plaintiffs' loss of Decedent's financial support and financial contributions;
6. For funeral and burial expenses caused by DECEDENT'S death and;

FOR ALL PLAINTIFFS:

7. For Plaintiffs' cost of suit herein;
8. For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032 and related provisions of law.

Dated: November 7, 2018                    SIMMONS HANLY CONROY

By: _____
        Crystal G. Foley
        Attorneys for Plaintiffs

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1

## **DEMAND FOR JURY TRIAL**

2     Plaintiffs hereby demand a trial by jury as to all issues so triable.

3

4   Dated: November 7, 2018               SIMMONS HANLY CONROY

5

6                 By: _____

7                       Crystal G. Foley
                        Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1

**EXHIBIT "A"**

2

3      Decedent ALBERTO CARRANZA's exposure to asbestos and asbestos-containing

4   products occurred at various locations in the State of California, including but not limited to the

5   following:

| **Employer** | **Location** | **Job Title** | **Dates of Exposure** |
|---|---|---|---|
| Indelcor | Los Angeles | Laborer/ Electrician | Approx. 1983-1988 |

8

9   **NON-OCCUPATIONAL EXPOSURE**

10  Automotive/Friction

11      Throughout the 1980's, Decedent performed many brake and clutch replacements on his
and his friends' and family's vehicles and also had a word of mouth referral business where he
12  performed automotive repair work on cars for extra side income. Generally this work involved
replacing drum brakes on all four wheels. While removing brakes, Decedent brushed out the
13  drums and backing plates with a brush to remove brake dust and sanded the new brakes to take
off the glaze so they would grab better. Decedent followed a similar procedure on clutch
14  replacements cleaning dust from the bell housing with a brush and sanding the friction material
on the clutch facing. Decedent also performed significant auto body work on these vehicles
15  which included repairing damaged areas on the vehicles. This work included the application and
sanding of body fillers and body patches.

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1

**EXHIBIT "B"**

2       Decedent ALBERTO CARRANZA's exposure to asbestos and asbestos-containing

3 products caused severe and permanent injury to Decedent including, but not limited to, breathing

4 difficulties, asbestosis, malignant mesothelioma, lung and/or other cancer, and/or other lung

5 damage.

6       Decedent ALBERTO CARRANZA was diagnosed with malignant mesothelioma on or

7 about April 12, 2018, and subsequently thereto, became aware that the same was wrongfully

8 caused. Decedent Alberto Carranza died from malignant mesothelioma on or about August 22,

9 2018.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1

**EXHIBIT "C"**

2

**3M COMPANY;**

3

**BORGWARNER MORSE TEC LLC,** *as successor-by-merger to* **BORG-WARNER CORPORATION;**

4

**BWDAC INC.,** *f/k/a* **BWD AUTOMOTIVE CORPORATION;**

5

**CBS CORPORATION,** *f/k/a* VIACOM INC., *successor by merger with* CBS CORPORATION, *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION;

**CERTAIN-TEED CORPORATION;**

6

**CONTINENTAL AUTOMOTIVE SYSTEMS, INC.;**

7

**CROWN CORK & SEAL COMPANY, INC.,** *individually and as successor-in-interest to* MUNDET CORK CORPORATION;

8

**E.I. DU PONT DE NEMOURS AND COMPANY;**

**FOSTER WHEELER ENERGY CORPORATION;**

9

**GENERAL ELECTRIC COMPANY;**

**GENUINE PARTS COMPANY;**

10

**INDUSTRIAL HOLDINGS CORPORATION** *f/k/a* THE CARBORUNDUM COMPANY;

11

**INGERSOLL-RAND COMPANY;**

**IRVINE PIPE & SUPPLY, INC.;**

12

**JOHN CRANE INC.;**

**J-M MANUFACTURING COMPANY, INC.;**

13

**KELLY MOORE PAINT COMPANY, INC.;**

**METALCLAD INSULATION LLC;**

14

**METROPOLITAN LIFE INSURANCE COMPANY;**

**THE PEP BOYS MANNY, MOE & JACK OF CALIFORNIA;**

15

**PNEUMO ABEX LLC;**

16

**THE SHERWIN-WILLIAMS COMPANY;**

**SOCO WEST, INC.;**

17

**STANDARD MOTOR PRODUCTS, INC.;**

**UNION CARBIDE CORPORATION;**

18

**WESTERN AUTO SUPPLY COMPANY;**

19

and

**DOES 1-500, INCLUSIVE,**

20

21

22

23

24

25

26

27

28

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION

1

**EXHIBIT "D"**

2

**METALCLAD INSULATION LLC;**
**DOES 501-800, INCLUSIVE,**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR WRONGFUL DEATH/SURVIVAL ACTION