**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| J-M MANUFACTURING COMPANY, INC., | |
| Plaintiff, | Hon. Robert W. Gettleman |
| v. | CASE NO. 1:24-CV-03853 |
| SIMMONS HANLY CONROY LLP, NICHOLAS ANGELIDES, PERRY BROWDER, AMY GARRETT, BENJAMIN GOLDSTEIN, SUVIR DHAR, CRYSTAL FOLEY, DEBORAH ROSENTHAL, STAN JONES, AND JOHN AND JANE DOES 1–25, | JURY TRIAL DEMANDED |
| | ORAL ARGUMENT REQUESTED |
| Defendants. | |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR SPECIAL MOTION TO STRIKE COUNTS III, IV, AND V PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 AND FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.   Application of California's Anti-SLAPP Statute Here Does Not Conflict with *Shady Grove*. 3

   A.  Courts in this District, Relying on Ninth and First Circuit Authority, Consider
      State Anti-SLAPP Motions ..................................................................................... 3

   B.  The Authorities Cited by J-MM Are Inapposite and Incomplete ................................... 10

II.  Application of the Anti-SLAPP Statute Requires Dismissal of J-MM's State Law Claims . . 11

   A.  California Law Controls the Anti-SLAPP Inquiry ....................................................... 11

   B.  J-MM's State Law Claims Fail Under California's Anti-SLAPP Statute ......................... 12

III. Simmons Hanly Is Entitled to Its Legal Fees ............................................................. 14

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

<small>CASES</small>

*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc*.,
  6 Cal. App. 5th 426 (2016)........................................................................................... 15

*Abbas v. Foreign Pol'y Grp., LLC*,
  783 F.3d 1328 (D.C. Cir. 2015).............................................................................. 8, 10

*Action Apartment Assn., Inc. v. City of Santa Monica*,
  41 Cal. 4th 1232 (2007) ................................................................................................ 14

*Estate of B.H v. Netflix, Inc.*,
  No. 21-06561, 2022 WL 551701 (N.D. Cal. January 12, 2022)........................................... 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................... 10

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010)..................................................................................... 11, 13

*Carbone v. Cable News Network, Inc.*,
  910 F.3d 1345 (11th Cir. 2018) .................................................................................. 8, 10

*Chi v. Loyola Univ. Med. Ctr.*,
  787 F. Supp. 2d 797 (N.D. Ill. 2011).............................................................................*passim*

*Cincinnati Ins. Co. v. E. Atl. Ins. Co.*,
  260 F.3d 742 (7th Cir. 2001)..................................................................................... 11, 13

*CoreCivic, Inc. v. Candide Grp., LLC*,
  46 F.4th 1136 (9th Cir. 2022)......................................................................................*passim*

*In re County of Orange*,
  784 F.3d 520 (9th Cir. 2015) ............................................................................................ 9

*Diamond Ranch Academy, Inc. v. Filer*,
  117 F. Supp. 3d 1313 (D. Utah 2015) ..................................................................... 3, 8, 9

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010) ............................................................................................... 3

*Herring Networks, Inc. v. Maddow*,
  8 F.4th 1148 (9th Cir. 2021).............................................................................................. 8

*Holland v. Jones*,
  210 Cal. App. 4th 378 (2012) ......................................................................................... 14

*Intercon Sols., Inc. v. Basel Action Network*,
791 F.3d 729 (7th Cir. 2015) ..................................................................... 4, 7

*Intercon Sols., Inc. v. Basel Action Network*,
969 F. Supp. 2d 1026, 1039 (N.D. Ill. 2013) ..................................................*passim*

*Klocke v. Watson*,
936 F.3d 240 (5th Cir. 2019) ..................................................................... 8, 10

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) ........................................................................ 8, 10

*Makaeff v. Trump University, LLC*,
736 F.3d 1180 (9th Cir. 2013) .......................................................................... 8

*Martinez v. ZoomInfo Technologies, Inc.*,
No. 22-35305 ......................................................................................................... 9

*Mogan v. Sacks, Ricketts & Case LLP*,
No. 21-08431, 2022 WL 1458518 (N.D. Cal. May 9, 2022) ....................... 8

*Moreau v. United States Olympic & Paralympic Comm.*,
641 F. Supp. 3d 1122 (D. Colo. 2022) ....................................................... 8

*Morgan v. J-M Mfg. Co., Inc.*,
60 Cal. App. 5th 1078 (2021) .......................................................................... 1

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) ..................................................................... 8, 15

*Osundairo v. Geragos*,
447 F. Supp. 3d 727 (N.D. Ill. 2020) ...........................................................*passim*

*Rubin v. Green*,
4 Cal. 4th 1187 (1993) ................................................................................... 13

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) ................................................................................. 14

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
559 U.S. 393 (2010) .......................................................................................*passim*

*Silberg v. Anderson*,
50 Cal. 3d 205 (1990) ............................................................................... 13, 14

*Tanner v. Jupiter Realty Corp.*,
433 F.3d 913 (7th Cir. 2006) .......................................................................... 12

*Thayer v. Kabateck Brown Kellner LLP*,
  207 Cal. App. 4th 141 (2012) ...................................................................... 13

*Trudeau v. ConsumerAffairs.com, Inc.*,
  No. 10-7193, 2011 WL 3898041 (N.D. Ill. Sept. 6, 2011) ........................... 1, 4, 5

*Underground Sols., Inc. v. Palermo*,
  41 F. Supp. 3d 720 (N.D. Ill. 2014) .............................................................. 11

*Weinstein v. Schwartz*,
  422 F.3d 476 (7th Cir. 2005) .................................................................. 11, 13

**STATUTES**

Cal. Civ. Proc. Code § 425.16 ......................................................... 9, 13, 15

Wash. Rev. Code Ann. § 4.24.510 ......................................................... *passim*

**RULES**

Fed. R. Civ. P. 12 ................................................................................. *passsim*

Fed. R. Civ. P. 23 ........................................................................ 3, 4, 15

Fed. R. Civ. P. 56 ................................................................................. 5

## INTRODUCTION

J-MM does not dispute that its lawsuit falls squarely within the protections of California's anti-SLAPP statute. Nor could it, given that the face of the Complaint reveals that all of J-MM's state law claims are improperly premised on Simmons Hanly's litigation related conduct, including filing lawsuits on behalf of its clients harmed by J-MM's deadly products.[1] As California law makes abundantly clear—and J-MM does not deny—this alleged conduct is absolutely "protected" under California law and therefore cannot support a viable claim for relief.[2]

Unable to defend on the merits, J-MM devotes the entirety of its opposition to arguing that the Supreme Court's 4-4-1 fractured decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), prohibits this Court from even entertaining Simmons Hanly's anti-SLAPP challenge. It does not, and J-MM's argument to the contrary has been rejected by the Ninth and First Circuits and district courts *in this very district*. These in-circuit district court decisions, which go largely unmentioned by J-MM, have held that anti-SLAPP statutes *are* enforceable in federal court, notwithstanding *Shady Grove*. *See, e.g.*, *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 808-09 (N.D. Ill. 2011) (Illinois anti-SLAPP statute); *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 743 (N.D. Ill. 2020) (California anti-SLAPP statute); *Trudeau v. ConsumerAffairs.com, Inc.*, No. 10-7193, 2011 WL 3898041, at *5 (N.D. Ill. Sept. 6, 2011) (Illinois anti-SLAPP statute). J-MM also fails to mention that in *Intercon Solutions, Inc. v. Basel Action Network*, the district court granted an anti-SLAPP motion under Washington state's anti-SLAPP statute (section 4.24.510), and that portion of the district court's ruling was affirmed

---

[1] One of these lawsuits resulted in a multi-million-dollar jury verdict against J-MM that was upheld on appeal, perhaps explaining J-MM's animus toward Simmons Hanly. *Morgan v. J-M Mfg. Co., Inc.*, 60 Cal. App. 5th 1078, 1084, 1091 (2021).

[2] *See* Motion to Strike at Dkt. 22, Section II.B.2.

1

without discussion by the Seventh Circuit, five years *after* the *Shady Grove* decision on which J-MM relies exclusively in its Opposition. 969 F. Supp. 2d 1026, 1039 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015).

J-MM invites this Court to part ways with its fellow district judges and multiple courts of appeal because, it says, the anti-SLAPP statute's Step Two burden of proof requires a showing of a "probability" of success rather than a mere "plausibility." But the burden of proof component of the California anti-SLAPP statute is substantive in nature and thus can be enforced in federal court, particularly here, where Simmons Hanly, including the three California resident defendants, seeks to avail itself of protections provided by California law for litigation activity in California. *See, e.g., Chi,* 787 F. Supp. 2d at 808-09 (N.D. Ill. 2011) (burden of proof in Illinois anti-SLAPP statute is substantive). But even if this Court were to find the Step Two analysis to be procedural, it may simply decide the Step Two inquiry on a plausibility standard, as other federal courts have done. *See e.g., Osundairo,* 447 F. Supp. 3d at 743; *see also CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022). Either way, the result is the same: the dismissal of J-MM's state law claims. Because the protected conduct identified at Step One is *absolutely* privileged under California's absolute litigation privilege, J-MM's claims are defeated under *any* standard, including the Rule 12(b)(6) plausibility standard that J-MM requests.

For these reasons, Simmons Hanly respectfully requests that this Court dismiss J-MM's state law claims for common law fraud, unjust enrichment, and civil conspiracy. Simmons Hanly further requests an order awarding it attorneys' fees in an amount to be determined by later briefing. *Chi*, 787 F. Supp. 2d at 808-09 (finding state statute's fee provisions are *substantive*, not procedural, and may be enforced in federal court).

## ARGUMENT

I. **Application of California's Anti-SLAPP Statute Here Does Not Conflict With *Shady Grove*.**

In dismissively arguing that state anti-SLAPP statutes may never be entertained in federal court post-*Shady Grove*, J-MM narrowly focuses on decisions from the Second and D.C. Circuits, while ignoring in-circuit authority. Notably, within this district, courts routinely hold that anti-SLAPP motions may be brought in federal court. *See, e.g.*, *Osundairo*, 447 F. Supp. 3d at 743; *Chi*, 787 F. Supp. 2d at 808-09. The decisions of these district courts align with that of the Ninth Circuit, *see CoreCivic*, 46 F.4th at 1142-43; First Circuit, *see Godin v. Schencks*, 629 F.3d 79, 88 (1st Cir. 2010); and district courts within the Tenth Circuit, *see Diamond Ranch Academy, Inc. v. Filer*, 117 F. Supp. 3d 1313, 1318-20 (D. Utah 2015).[3] By contrast, the out-of-circuit decisions J-MM cites are inapposite and incomplete. We address first the decisions of fellow district courts, and then J-MM's authority.

A. **Courts In This District, Relying On Ninth And First Circuit Authority, Consider State Anti-SLAPP Motions.**

In *Shady Grove*, 559 U.S. 393, the U.S. Supreme Court addressed the effect of a provision in New York procedural law that prohibited a class action seeking civil damages, when Federal Rule of Civil Procedure 23 allows such a class. In the portion of the opinion joined by five justices, the Court held that Rule 23 and the state law were in conflict, and that Rule 23 supersedes a contrary provision of state law if the Rule's criteria are met—as long as the federal Rule is a valid exercise of authority. *Id*. at 398-99. A plurality of the Court then found that the federal rule applied, because it is procedural not substantive, *id*. at 399, while Justice Stevens, concurring, opined that

---

[3] And while the Second, D.C., Fifth, and Eleventh Circuits have reached the opposite conclusion, most of these courts were not considering California's unique statute, or the procedural posture for this motion, where no extrinsic evidence has been submitted or needs to be weighed.

the proper analysis is not whether Rule 23 is procedural but whether the state procedure is "so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy," *id.* at 420 (J. Stevens, concurring).

As confirmed by the numerous cases decided after *Shady Grove*, in the context of state anti-SLAPP laws, there is no conflict between federal and state law, at least not where the court does not need to weigh extrinsic evidence to resolve the motion. Notably, in *Intercon*, the Seventh Circuit affirmed the grant of a dismissal pursuant to a Washington state anti-SLAPP statute where, like here, an absolute privilege appeared on the face of the complaint. 791 F.3d at 732. And in *Chi* and *Trudeau*—two "post-*Shady*" Illinois district court cases not cited by J-MM—the courts held that Illinois' anti-SLAPP statute was *substantive* and could be enforced in federal court. *Chi,* 787 F. Supp. 2d at 809; *Trudeau,* 2011 WL 3898041, at *5. Further, in *Osundairo*—yet another post-*Shady Grove* case from this district not cited by J-MM—an Illinois district court determined it *could* consider a motion pursuant to California's anti-SLAPP statute. 447 F. Supp. 3d at 744. A closer examination of these cases is essential to understanding how anti-SLAPP motions are handled in this district.

*Chi.* In 2011, a year after *Shady Grove* was decided, two courts in this district held that Illinois' anti-SLAPP statute could be applied in federal court. In *Chi,* Judge Matthew Kennelly held that the Illinois anti-SLAPP statute's "operative provisions"—specifically, the provision establishing the defense and the legal fees provision—were "not merely procedural." 787 F. Supp. 2d at 808. "[I]ntended to promote free speech, not merely to increase efficiency in litigation," the provision was substantive and therefore available to litigants in federal court. *Id.* Judge Kennelly employed the statute's "clear and convincing" standard and found that the plaintiff met it. *Id.* at 809-10.

4

*Trudeau*. A few months later, in *Trudeau*, Judge Joan Lefkow similarly concluded that the Illinois anti-SLAPP statute applied in federal court. 2011 WL 3898041, at *5-6. Discussing *Shady Grove*, Judge Lefkow held that the Federal Rules are "not so broad as to preclude application of the [anti-SLAPP statute]" and explained that the anti-SLAPP's relevant provisions, including its "allocation of the burden of proof," are "substantive in nature." *Id.* at *5 (applying the statute's clear and convincing standard). *Id.* at *5. *Chi* and *Trudeau* directly refute J-MM's argument.

*Intercon*. In *Intercon*, decided three years after *Shady Grove*, now-Chief Judge Virginia Kendall analyzed two provisions in Washington state's anti-SLAPP statute to determine whether they could be enforced in federal court. 969 F. Supp. 2d at 1034. In response to the defendant's argument that the anti-SLAPP provisions conflicted with federal law, Judge Kendall explained that, under *Shady Grove,* there was a conflict between federal law and Washington's anti-SLAPP law only insofar as the state statute required the court to evaluate materials outside the pleadings, thereby "altering the procedure otherwise set forth in Rules 12 and 56 for determining a challenge to the merits of a plaintiff's claim and by setting a higher standard upon the plaintiff to avoid dismissal." *Id.* at 1047 (internal marks and citation omitted).

Analyzing the two anti-SLAPP provisions separately, the court first explained that section 4.24.510 grants a speaker absolute immunity for communications to government agencies and provided for attorneys' fees and statutory damages where a defendant prevailed. *Id.* at 1034, 1037-38; Wash. Rev. Code Ann. § 4.24.510. Because the complaint, on its face, based certain of its claims on communications made to government agencies, the defendant's right to absolute immunity could be gleaned from the complaint. In this situation, there could be no conflict with Federal Rule 12 or 56 because no weighing or consideration of extrinsic evidence was needed. Thus, the Court granted the motion and dismissed all claims based on communications with a

government agency within the meaning of the statute.

By contrast, the section 4.24.525 anti-SLAPP provision established only a qualified immunity that "force[d] a federal court to adjudicate claims on the merits and consider materials outside of the pleadings without tying the motion to the summary judgment rule." *Id*. at 1047 (explaining that the motion required the court to "evaluate hundreds of pages of material outside of the pleadings, including declarations, affidavits, and exhibits" and determine "whether there is 'clear and convincing evidence'" that the claims were likely to succeed on the merits). This second anti-SLAPP provision could not be enforced because it allowed the court to dismiss claims that presented a plausible entitlement to relief, based on the subjective weighing of external evidence. *Id.* at 1047-48.

In finding section 4.24.525 unenforceable, Judge Kendall specifically contrasted that statute with *California's* anti-SLAPP law, which she acknowledged courts within this district had previously found to be substantive and permissible. 969 F. Supp. 2d at 1042 (citing as examples *Chi*, *Trudeau*, and *Global Relief v. New York Times Co.*, No. 01-8821, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002)). Judge Kendall explained that section 4.24.525, "unlike the California anti-SLAPP statute, imposes on the plaintiff a heavier burden than the federal rules. Specifically, the California statute does not require the plaintiff to demonstrate a probability of prevailing on the merits 'by clear and convincing evidence,'" which was "not an insignificant variation from the California law." 969 F. Supp. 2d at 1048-49.

On appeal, the Seventh Circuit left undisturbed Judge Kendall's granting of the anti-SLAPP motion pursuant to section 4.24.510 (providing for absolute immunity), but indicated that it had delayed its opinion with respect to section 4.24.525 because the Washington State Supreme Court had taken up the question of whether the statute could be "decomposed into procedural and

substantive components"—implying that the federal courts *could* apply the substantive components of the statute if separated from whatever portions might be considered procedural. 791 F.3d at 731. The Seventh Circuit explained that, while the federal rules apply to procedural matters, "state law governs substantive matters such as the elements of a defense *and the burden of persuasion." Id*. at 732 (emphasis added). However, rather than answer the "decomposition" question, the Washington Supreme Court struck down section 4.24.525 in its entirety, thus mooting the Seventh Circuit's examination of section 4.24.525. Accordingly, the Seventh Circuit never considered whether Washington State's clear and convincing standard (a standard that does not exist in the California statute) was enforceable in federal court, but did affirm the district court's order striking all claims pursuant to the absolute immunity set forth in Washington's section 4.24.510 anti-SLAPP statute. Because California's anti-SLAPP statute allows for the application of California's absolute immunity for litigation activities—a substantive protection under state law—the Seventh Circuit's decision supports Simmons Hanly's position here.

*Osundairo*. In March 2020, Judge Mary Rowland concluded that California's anti-SLAPP statute could be enforced in federal court. *See Osundairo*, 447 F. Supp. 3d at 744. The plaintiffs there alleged that California lawyers made defamatory statements to the media about plaintiffs. Defendants, as here, filed a motion to strike under California's anti-SLAPP provision based on facts alleged in the complaint. Relying on *Planned Parenthood*, 890 F.3d 828 (9th Cir. 2018), Judge Rowland found that the defendants' anti-SLAPP motion did not conflict with the Federal Rules so long as the court applied a 12(b)(6) sufficiency standard. 447 F. Supp. 3d at 744. The court ultimately denied the motion because the alleged privilege could only be adjudicated by considering and weighing extrinsic evidence supplied by the moving party, but *Osundairo*'s framework is nonetheless instructive: a federal court can entertain a motion to strike under

7

California law where the defendants would be entitled to immunity under the facts alleged in the complaint.

*CoreCivic*. Numerous federal courts outside of the circuit, too, have reaffirmed that their pre-*Shady Grove* precedents applying California's anti-SLAPP statute in federal court remain good law. *See CoreCivic*, 46 F.4th at 1142-43; *Planned Parenthood*, 890 F.3d at 834.[4] The Ninth Circuit's opinion in *CoreCivic* is instructive. There, the court considered whether its "long line of precedents holding that California's anti-SLAPP statute applies in federal court" was "irreconcilable" with *Shady Grove*, concluding that it was not. *Id*. at 1138, 1141-43. The Ninth Circuit considered *La Liberte*, *Klocke*, *Abbas*, and *Carbone*—all cases from other circuits on which J-MM relies in its Opposition—but found that the outcomes of those cases do not demonstrate that *Shady Grove* changed the applicable standard in such a way as to render it "clearly irreconcilable" with prior Ninth Circuit cases such as *Newsham* and *Planned Parenthood*. *Id.* at 1142-43. California's anti-SLAPP statute is enforceable in federal court, the Ninth Circuit

---

[4] *See also Mogan v. Sacks, Ricketts & Case LLP*, No. 21-08431, 2022 WL 1458518, at *6 (N.D. Cal. May 9, 2022), *aff'd*, No. 22-15254, 2023 WL 2983577 (9th Cir. Apr. 18, 2023), *cert. denied*, 144 S. Ct. 428 (2023), *and cert. denied*, 144 S. Ct. 1103 (2024) (rejecting argument that *Shady Grove* prevents California's anti-SLAPP statute from applying in federal court); *Estate of B.H v. Netflix, Inc.*, No. 21-06561, 2022 WL 551701, at *1 n.2 (N.D. Cal. January 12, 2022) (granting motion to strike based on California's anti-SLAPP statute, holding that "[t]his Court is bound to apply the anti-SLAPP statute and its fee provision even though it is based upon state law," as California federal courts "continue to apply anti-SLAPP in light of *Shady Grove*"); *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (granting motion to strike based on California's anti-SLAPP statute; "there is no direct collision between the special motion to strike subsection of the statute and the Federal Rules"); *Makaeff v. Trump University, LLC*, 736 F.3d 1180 (9th Cir. 2013) (denying petition to revisit whether California's anti-SLAPP statute may be applied in federal court); *see also Diamond Ranch Academy*, 117 F. Supp. 3d at 1320 (D. Utah 2015) (holding that California's anti-SLAPP statute does "not conflict with the Federal Rules of Civil Procedure" even after *Shady Grove*); *Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1130, 33 (D. Colo. 2022) (applying Colorado's anti-SLAPP statute in federal court post-*Shady Grove* after noting that the statute "tracks California's anti-SLAPP statute almost exactly").

concluded, but should be interpreted to eliminate possible conflicts between standards in the Federal Rules and the statute. *Id.*; *see also Diamond Ranch Academy,* 117 F. Supp. 3d at 1320 (applying *Shady Grove* but holding that California's anti-SLAPP statute does "not conflict with the Federal Rules of Civil Procedure").[5]

\* \* \* \*

In sum, courts in this district, like the Ninth and First Circuits, have consistently held that state anti-SLAPP laws may be considered in federal court post *Shady Grove*.[6] Some of those decisions, like *Chi*, have treated the anti-SLAPP statute's burdens of proof as substantive and therefore applicable in federal court. Other courts, such as *Osundairo*, have applied a Rule 12(b)(6) standard to the second step of the anti-SLAPP inquiry. Both approaches are consistent with the Federal Rules, while not depriving litigants of the substantive state law protections to which they are entitled. And, either approach yields the same result here. As discussed further below, because the conduct at issue is absolutely privileged, JMM's claims cannot withstand any type of scrutiny—even pursuant to a less onerous plausibility standard—and J-MM's state claims must be stricken.

---

[5] J-MM's Opposition notes that a Ninth Circuit majority of non-recused active judges ordered that the holding in *Martinez v. ZoomInfo Technologies, Inc.*, No. 22-35305 be reheard *en banc*. Opp. at 6. But the *Martinez* case involved the *denial* of an anti-SLAPP challenge under the "public interest exemption" and, notably, whether a federal court may hear an interlocutory appeal under California Code of Civil Procedure Section 425.16(i), and if so, the scope of such appellate rights. None of those issues are relevant here. And whatever J-MM may be trying to intimate by this odd reference, as discussed above, the current Ninth Circuit law holds that California's anti-SLAPP statute is applicable in federal court.

[6] If anti-SLAPP protections did not apply in federal court, it would encourage forum-shopping, as plaintiffs would have a significant incentive to evade the immunity from suit by bringing California-law claims in federal court. *Intercon*, 969 F. Supp. 2d at 1054; *see also In re County of Orange*, 784 F.3d 520, 527-28 (9th Cir. 2015) (discussing *Erie* doctrine in determining whether a law is substantive or procedural).

**B.    The Authorities Cited By J-MM Are Inapposite And Incomplete.**

The cases cited by J-MM do not require a different result. Nearly all the cases cited by J-MM concern *entirely different* state anti-SLAPP statutes and provisions and involve other Circuits. *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019) (Texas anti-SLAPP statute); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) (Georgia anti-SLAPP statute); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) (Washington D.C. anti-SLAPP statute).

J-MM relies heavily on *La Liberte v. Reid*, 966 F.3d 79, 86-88 (2d Cir. 2020), where the Second Circuit held that California's anti-SLAPP law does not apply in federal court because the statute supplied heightened pleading standards. But, as shown in *Osundairo*, *CoreCivic*, and a host of other cases, if this Court agrees with that reasoning, it may apply the Rule 12(b)(6) standard to this anti-SLAPP motion. In fact, no heightened pleading standard is necessary here because the litigation privilege is absolute.

Put another way, the pleading standard does not matter here because California's anti-SLAPP protections confer *absolute* immunity over Simmons Hanly's alleged wrongful acts. Just like with Judge Kendall's application of Washington's anti-SLAPP statute (section 4.24.510) in *Intercon*, this Court need not "evaluate hundreds of pages of material outside of the pleadings" to conclude that J-MM's claims are neither probable *nor* plausible under California's absolute litigation privilege. 969 F. Supp. 2d at 1047; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

## II. Application Of The Anti-SLAPP Statute Requires Dismissal Of J-MM's State Law Claims.

### A. California Law Controls The Anti-SLAPP Inquiry.

As Simmons Hanly argued in its opening brief, California's anti-SLAPP law applies here because the speech at issue primarily occurred in California, was primarily made in connection with California litigation, concerns the free speech right of litigants who were primarily California residents (i.e., Simmons Hanly's clients), and impacts the rights of several defendants who are California residents (Rosenfeld, Goldstein, and Jones) or California licensed attorneys (Foley).

Tellingly, J-MM's Opposition does not attempt to address this issue, but instead dismissively directs the Court to J-MM's choice of law discussion in its Opposition to Simmons Hanley's Rule 12(b)(6) motion.[7] But the choice of law analysis for a 12(b)(6) motion differs from the choice of law analysis as to which state's anti-SLAPP law applies. *Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 722-23 (N.D. Ill. 2014) ("[T]he choice of law question regarding the anti-SLAPP law is treated separately . . . because the anti-SLAPP question involves whether a statement is privileged."). Thus, in *Osundairo*, the court applied Illinois law to the Rule 12(b)(6) motion but California's anti-SLAPP statute because the defendant speaker was domiciled in California (even though her speech occurred in New York where she spent most of her time). 447 F. Supp 3d at 743-44.

Understanding that "states have a strong interest in having their own anti-SLAPP applied

---

[7] J-MM's failure to address the specific anti-SLAPP choice of law analysis constitutes waiver of that argument, requiring the application of California law. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (holding failure to respond to the merits of motion to dismiss constituted waiver); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (holding failure to oppose an argument permits an inference of acquiescence and "acquiescence operates as a waiver."); *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver.").

to the speech of their citizens," the primary considerations in an anti-SLAPP choice of law analysis are where the speech occurred and the domicile of the speakers. *Intercon*, 969 F. Supp. 2d at 1035; *Chi*, 787 F. Supp. 2d at 803 (placing significant weight on "the place where the allegedly tortious speech took place and the domicile of the speaker"). Here, three of the individual defendants, Mr. Goldstein, Ms. Rosenthall, and Mr. Jones are California residents whose challenged speech occurred in California. Compl ¶¶ 18, 21 and Dkt. 24 at 33 n.16. It cannot be seriously disputed that these three defendants have a right to the protection of California's anti-SLAPP law, which was promulgated for the benefit of California residents. *See Intercon*, 969 F. Supp. 2d at 1035.

Moreover, although Simmons Hanly is an Illinois-based firm, it has multiple offices in California, and it is being sued for its speech that occurred in California litigation, on behalf of its clients who were California citizens. Indeed, seven of the 11 lawsuits complained of by J-MM— including *Peebles*—were litigated in California. California is undeniably the "center" of the parties' relationship. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006). The majority of the conduct complained of by J-MM was done by Simmons Hanly lawyers practicing California law, speaking on behalf of California citizens who were harmed by a California-based company (J-MM), in a California lawsuit. *See* Dkt. 24 at 33 n.16. These facts are alleged in J-MM's Complaint or are reflected in documents J-MM has conceded should be judicially noticed. *Id*. California's anti-SLAPP law must be applied here.

**B.      J-MM's State Law Claims Fail Under California's Anti-SLAPP Statute.**

J-MM does not dispute that California's anti-SLAPP statute, if applied, demands dismissal of J-MM's state law claims against Simmons-Hanly for common law fraud, unjust enrichment,

and civil conspiracy.[8]

Under the two-step analysis, this Court must initially determine whether Simmons Hanly has made a threshold showing that the claims arise out of one of the enumerated categories of acts subject to anti-SLAPP protections. *Osundairo*, 447 F. Supp. 3d at 744. Because the anti-SLAPP statute applies to litigation conduct, and all the claims are based on Simmons Hanly's alleged litigation conduct, the first step is easily satisfied. Cal. Civ. Proc. Code § 425.16(e)(2) (protected conduct includes "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law"); *Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 154 (2012) ("Numerous cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and activity.") (collecting cases).

At Step Two, the Court considers whether J-MM's claims arising out of protected conduct are legally cognizable. Here, they are not for a variety of reasons, but most notably because California's litigation privilege provides complete immunity for litigation conduct.[9] That immunity is "absolute," not qualified, and applies to any "communications with 'some relation' to judicial proceedings." *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993).

When invoked through California's anti-SLAPP statute, the litigation privilege bars "all torts except malicious prosecution." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). The absolute

---

[8] Because J-MM made the strategic decision not to contest (or even address) the substance of California's anti-SLAPP, J-MM has waived that argument and, to the extent the Court finds the anti-SLAPP statute applicable here, it requires dismissal of J-MM's state law claims. *Bonte*, 624 F.3d at 466; *Cincinnati Ins. Co.*, 260 F.3d at 747; *Weinstein v. Schwartz*, 422 F.3d at 477 n.1.

[9] While the Court need look no farther than the absolute litigation privilege, as Simmons Hanly pointed out in its motion, additionally "J-MM has not and cannot plausibly allege" a claim for fraud, unjust enrichment or civil conspiracy. *See* Dkt. 22 at 17-19.

immunity is applied even when it means litigants cannot recover damages for injurious publications made in judicial proceedings. *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007); *Silberg*, 50 Cal.3d. at 218 ("The salutary policy reasons for an absolute privilege supersede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings."). And immunity is not overcome by allegations that the statements are false or perjurious. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006); *Holland v. Jones*, 210 Cal. App. 4th 378, 382 (2012) (explaining that tort claims based on "statements, whether true or false or made with malice or without" in a declaration filed in judicial proceedings "fall squarely within the litigation privilege.").

Here, even if this Court were to apply the Rule 12(b)(6) standard to the Step Two analysis, this motion must be granted because the immunity is clear from the face of the Complaint. As J-MM does not dispute, the allegedly wrongful conduct consists entirely of litigation activity, such as Simmons Hanly's decision to file complaints in jurisdictions J-MM deems to be "plaintiff-friendly" (presumably referring to California), Compl. ¶ 77, supposed improper preparation of its clients for depositions, *id.* ¶¶ 83-86, or alleged attempts to "minimize" evidence unfavorable to its clients, *id.* This alleged conduct is absolutely privileged—that privilege does depend on a defendant's motives or even whether a defendant's acts were allegedly unfair or fraudulent. Thus, J-MM's state law claims fail under the statute's "probability of prevailing" standard, but also under a Rule 12(b)(6) plausibility standard. In other words, J-MM's state law claims are legally insufficient regardless of whether the Court applies a "plausibility" or "probability" standard.

## III. Simmons Hanly Is Entitled To Its Legal Fees.

J-MM does not deny that a prevailing defendant is entitled to its attorneys' fees as a matter of right, but nevertheless suggests (without discussion) that this request for fees is somehow improper. J-MM has it backwards. The portion of the anti-SLAPP statute providing for attorneys'

14

fees is substantive and enforceable.[10] *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999); *accord Chi*, 787 F. Supp. 2d at 809 (holding anti-SLAPP statute's fee provision is substantive, not procedural, as it creates an affirmative right to attorneys' fees). This fee-shifting feature of California's anti-SLAPP law was included to deter lawsuits brought to "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a).

J-MM's retaliatory suit—brought against a litigation adversary—exactly fits the description of the types of suits which the anti-SLAPP statute was designed to stamp out, and Simmons Hanly has every right to assert entitlement to such fees, which are mandatory where a defendant prevails. Cal. Civ. Proc. Code § 425.16(c); *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc*., 6 Cal. App. 5th 426, 432 (2016) (obligating court to award reasonable attorneys' fees upon successful invocation of anti-SLAPP protections).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court grant this Motion and strike Counts III, IV, and V with prejudice and award attorneys' fees and costs.

---

[10] *Shady Grove* is not contrary; the Court in *Shady Grove* specifically reserved the question of whether a state law concerning remedies—even one that limits remedies—conflicts with the Federal Rules. 559 U.S. at 401 ("We need not decide whether a state law that limits the remedies available in an existing class action would conflict with Rule 23.").

Dated:  October 25, 2024

Respectfully submitted,

*/s/ John R. Storino*

Reid J. Schar (6243821)
John R. Storino (6273115)
Andrianna D. Kastanek (6286554)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel:  (312) 222-9350
Fax:  (312) 527-0484
rschar@jenner.com
jstorino@jenner.com
akastanek@jenner.com

Kirsten H. Spira (*pro hac vice*)
JENNER & BLOCK LLP
2029 Century Park East
Suite 1450
Los Angeles, CA 90067-2901
Tel:  (213) 239-6900
kspira@jenner.com

Amit B. Patel (6309876)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Tel:  (212) 891-1600
apatel@jenner.com