IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J-M MANUFACTURING COMPANY, INC., Plaintiff, | ) | Case No. 24 C 3853 |
| v. | ) | Judge Robert W. Gettleman |
| SIMMONS HANLY CONROY, LLP, NICHOLAS ANGELIDES, PERRY BROWDER, AMY GARRETT, BENJAMIN GOLDSTEIN, SUVIR DHAR, CRYSTAL FOLEY, DEBORAH ROSENTHAL, STAN JONES, and JOHN and JANE DOES 1–25, Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff J-M Manufacturing Company, Inc. makes industrial pipe. From 1983 to 1988, it sold cement pipe that contained asbestos. It has since been on the receiving end of thousands of complaints filed by law firms that represent plaintiffs with asbestos-related diseases. Plaintiff has now filed its own complaint against one of those firms—Simmons Hanly Conroy, LLP—and some of Simmons Hanly's attorneys and staff (collectively, "defendants"). Plaintiff alleges that defendants engaged in a multi-year pattern of racketeering activity in which they filed sham asbestos-related lawsuits to extract unwarranted settlements from plaintiff. Plaintiff asserts five counts: a claim for violating 18 U.S.C. § 1962(c) of the Racketeered Influenced Corrupt Organizations Act ("RICO") (Count I); a claim for violating 18 U.S.C. § 1962(d) of RICO based on conspiring to commit RICO violations (Count II); a state law claim for common law fraud (Count III); a state law claim for unjust enrichment (Count IV); and a state law claim for civil conspiracy (Count V). Defendants move to dismiss the complaint in its entirety. For the reasons below, the court grants defendants' motion to dismiss.

## BACKGROUND

### Factual Background

Plaintiff alleges the following facts in its complaint, which are taken as true in resolving Defendants' motion. Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013). Asbestos is a naturally occurring silicate that was once considered a "miracle mineral." Its favorable characteristics—its resistance to fire, heat, and corrosion; its strength, durability, and flexibility; and its abundance—led to it widespread use in products ranging from insulation, roofing, ceilings, and brakes to stove pads and hairdryers. But that all changed in the 1970s, when it became common knowledge that exposure to asbestos can cause serious diseases—many of which have an average latency period of roughly 30 years.

Plaintiff manufactures plastic pipe, including polyvinyl chloride ("PVC") pipe. From 1983 to 1988, plaintiff sold cement pipe that contained asbestos ("ACP") to accommodate water districts as they transitioned to PVC pipes. Despite asbestos's tarnished reputation, the market for ACP persisted because it performed to governmental standards, was impervious to acids in soils, was corrosion-resistant, and could be worked with safely (if directions were followed). Indeed, "[h]igher levels of exposure" to asbestos from ACP "only occur if the pipe is cut with an unventilated power saw or drilled into using a power drill."

Yet plaintiff has been sued in more than 6,000 asbestos cases since 2000—typically by individuals with an asbestos-related disease like mesothelioma. Plaintiff became a "target of meritless asbestos lawsuits" after plaintiffs law firms had driven manufacturers and distributors of "friable asbestos products" (like insulation) out of business. "As part of this post-bankruptcy wave of asbestos litigation," those firms began suing plaintiff.

Law firm defendant Simmons Hanly—"one of the most prolific asbestos litigation law firms in the country," having "represented more than 6,000 asbestos claimants and recovered more than $9.3 billion in asbestos litigation"—has filed more than 430 cases against plaintiff. "But a recent lawsuit" filed by former Simmons Hanly partner (Scott Peebles) alleges that the firm "has engaged in a pattern of 'unlawful, unethical conduct, and fraudulent conduct' to gain the upper hand in asbestos litigation." And in performing a "case review," plaintiff "has found evidence" to corroborate those allegations.

In particular, evidence suggests that Simmons Hanly has "developed and implemented" the "Simmons Hanly Fraud Playbook"—"a coordinated and well-developed scheme to offer perjured testimony, suppress evidence of exposure to the products of bankrupt companies, make misrepresentations of fact about the existence of bankruptcy trust claims, file baseless claims in an attempt to extract settlements, and silence anyone who attempts to expose the firm's fraud." Defendants—including the individually named defendants and John and Jane Does 1-25—"are a quintessential RICO enterprise," the "primary objective of" which "is to secure the most compensation possible for clients and the firm regardless of whether that requires fraud and misconduct."

"The RICO enterprise is a corporate entity and an association-in-fact enterprise that consists of the firm, the various professionals working in and with the Asbestos Department, including the individual Defendants and John and Jane Does 1-25, certain asbestos litigation plaintiffs, other witnesses represented by Simmons Hanly, and law firms that serve as co-counsel with [Simmons Hanly] on asbestos lawsuits." This "enterprise is led by members of management of the firm," including defendants Nicholas Angelides, Perry Browder, and Amy

Garrett. "The asbestos case investigators, including Stan Jones, and other members of the team build the cases by finding the evidence to support the story about each [sued entity], while the medical professionals develop evidence about the asbestos plaintiffs' injuries." (Cleaned up).

"The 'story' that has been offered in case after case is that the asbestos plaintiff or decedent was exposed to asbestos in the ACP at nonspecific locations and job sites when the pipe was specifically cut with a power saw or drilled with a power drill," and that exposure to the asbestos occurred "hundreds" of times. The lawyers then "file a lawsuit based on the 'evidence' often fabricated by the case investigators and others" in "a plaintiff-friendly 'court system that avoids any potential complications and awards the most compensation possible.'" "Based on information and belief, the firm files in these jurisdiction[s] because it knows that it can engage in misconduct and the court is unlikely to sanction the firm or reign [sic] it in" and "because it knows that it will put pressure on the [sued entities] to settle regardless of the merits of any particular lawsuit."

Simmons Hanly's success stems in part from the fact that "it is difficult to affirmatively disprove the firm's narrative about exposure, the firm's clients are highly sympathetic plaintiffs, and the firm has filed its cases in 'state court[s] that [are] likely to provide . . . the most compensation.'" At least five cases against plaintiff that were resolved within the last five years exemplify Simmons Hanly's scheme—a scheme which "could only be detected and understood once (a) [Peebles] filed a lawsuit against the firm and exposed that the firm was engaged in a pattern of fraud and misconduct in asbestos litigation, and (b) [plaintiff] investigated the alleged pattern of fraud and misconduct after learning of the Peebles complaint."

These five cases, though, "were not isolated incidents." "In case after case, Simmons Hanly has put forward the same 'story' and used the same tactics as part of the Simmons Hanly Fraud Playbook"—tactics which included using scripted product identification testimony, exposure stories, and denials about warning labels; providing vague and deceptive testimony and discovery responses to avoid discovery that might frustrate the story; and suppressing evidence to asbestos-containing products of bankrupt companies. As for product identification, at the depositions of several product-identification witnesses, "the witness was shown a picture of [plaintiff]'s ACP either at or before the deposition to facilitate the product identification." And the witnesses "provided remarkably consistent identifications of [plaintiff]'s ACP"—including the color, texture, and look of it. This "yields the ineluctable inference of a coordinated product identification testimony strategy without regard for the actual facts of usage or exposure."

As for the exposure story, it involves "assertions about cutting or drilling the pipe with power tools 'hundreds' of times." Deposition testimony from several cases shows the "consistency of the narrative across cases lends proof to the allegations in the Peebles complaint about perjured testimony and the subornment of perjury." It "is not credible that asbestos plaintiff after asbestos plaintiff represented by Simmons Hanly did not follow OSHA and other workplace regulations and was exposed to the asbestos in [Plaintiff]'s ACP in the exact same way."

As for denials about warning labels, "Simmons Hanly plaintiffs routinely testified as if they had received" an instruction to maintain that they had never seen any warning labels. As for vague and deceptive testimony and discovery responses, on many "occasions, [plaintiff] has discovered that the information provided by Simmons Hanly and the Simmons Hanly

represented witness was fabricated." Several cases show that "Simmons Hanly product identification and exposure witness has testified in ways designed to make it extremely difficult to test the narrative that the firm has crafted and laid out in discovery." And as for suppression of evidence, in at least one case, "Simmons Hanly failed to disclose a proof of claim that it filed in a bankruptcy of another ACP company."

Finally, other tactics that Simmons Hanly uses include over-naming defendants, filing baseless claims in plaintiff-friendly jurisdictions to extract settlements, and silencing people and activity that might expose their scheme.

**Plaintiff's Counts**

Based on the above pleaded facts, plaintiff asserts five counts in its complaint. First, plaintiff asserts a RICO claim under 18 U.S.C. § 1962(c). According to plaintiff, each defendant is a "person" under 18 U.S.C. § 1961(3), and Simmons Hanly is a business enterprise, and the "Simmons Hanly Defendants collectively also form an association-in-fact enterprise that includes asbestos plaintiffs and witnesses represented by Simmons Hanly and local law firms engaged by Simmons Hanly as part of the firm's asbestos litigation." "The law firm enterprise and the association-in-fact enterprise affect interstate commerce because the enterprise members knowingly file sham lawsuits leveraging the Simmons Hanly Fraud Playbook across the country for the purpose of extracting settlement and otherwise obtaining recoveries through a pattern of racketeering activity." Defendants, plaintiff further alleges, repeatedly used "interstate mails and wires in furtherance of essential parts of the scheme" and "engaged or took part in multiple instances of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) in knowing furtherance of the enterprises' objectives"—to "obtain settlements or other recoveries . . . and

cause litigation expense and other loss to [plaintiff] and others through a pattern of racketeering activity." "The predicate acts of mail and wire fraud include the interstate transmission by mail and wire of fraudulent discovery and pleadings, [and] perjured testimony." Defendants also "engaged in or took part in multiple violations of 18 U.S.C. § 1512 (witness tampering) and 18 U.S.C. § 1503 (obstruction of justice)." The "predicate acts of mail fraud, wire fraud, witness tampering, and obstruction of justice constitute a pattern of racketeering for purposes of 18 U.S.C. §§ 1961(5) and 1962(c)." Ultimately, plaintiff alleges, defendants have proximately caused plaintiff to "expend substantial money and resources to defend claims based on false information and enter and/or satisfy settlements or judgements that were inflated due to the Defendants' pattern of racketeering activity."

In Count II, plaintiff alleges a RICO violation under 18 U.S.C. § 1962(d) based on defendants having "knowingly and unlawfully conspired and agreed with each other to conduct the affairs of the enterprises." And in Counts III-V, plaintiff alleges state law common law fraud, unjust enrichment, and civil conspiracy.

**DISCUSSION**

Defendants have moved to dismiss all five counts for failure to state a claim under Fed. Rs. Civ. P. 12(b)(6) and 9(b). A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the sufficiency of the complaint. See Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). To survive such a motion, the complaint must provide the defendant with fair notice of a claim's basis and must be facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Claims involving fraud—including RICO claims based on fraud—are subject to the heightened pleading standard of Rule 9(b). Ratfield v. United States Drug Testing Lab'ys, Inc., No. 23 C 15063, 2024 WL 640955, at *2 (N.D. Ill. Feb. 15, 2024). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," and that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This requires a plaintiff to describe "the who, what, when, where, and how of the fraud." Anchorbank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir. 2011) (cleaned up).

Defendants argue that dismissal is appropriate here for several reasons: The Noerr-Pennington immunity doctrine[1] bars this entire lawsuit; plaintiff fails to state a RICO violation; plaintiff's RICO claims are time-barred; because the RICO claims fail, the court should decline supplemental jurisdiction over the state law claims and dismiss the suit; and the state law claims fail under either California or Illinois law.

As explained below, the court finds that the RICO claims should be dismissed. Because those are the only federal claims, the court declines to exercise supplemental jurisdiction over the state law claims. It is thus unnecessary to reach defendants' argument that they are immune from suit under the Noerr-Pennington doctrine.

[1] Named for two Supreme Court cases: Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965).

**The RICO Counts I and II**

Defendants argue that plaintiff's two federal RICO claims "suffer from substantive pleading defects that defeat those claims as a matter of law." The court agrees.

RICO "was an outgrowth of increasing congressional concern over the infiltration of American businesses by organized crime," Introduction, 1 Corporate Criminal Liability, 3d § 7:1—including "the infiltration of legitimate businesses such as laundry services, retail stores, restaurants and nightclubs, or labor unions to commit gambling, money laundering, loan sharking, or extortion," United States Sentencing Commission Primer on RICO, at 1, available at https://www.ussc.gov/sites/default/files/pdf/training/primers/2018_Primer_RICO.pdf.

"Yet despite the law's name and primary thrust, no organized crime connection need be shown to establish a RICO violation." Corporate Criminal Liability, § 7:1. And RICO even allows a private plaintiff to file a civil action against legitimate businesses. Menzies v. Seyfarth Shaw LLP, 943 F.3d 328, 336 (7th Cir. 2019). As the Supreme Court has explained: although "private civil actions under the statute are being brought almost solely against [respected businesses], rather than against the archetypal, intimidating mobster," that "is inherent in the statute as written." Semida, S.P.R.L. v. Imrex Co.,473 U.S. 479, 499 (1985). Relevant here, the statute includes: section 1962, which sets forth four prohibited activities; section 1961, which defines terms used in the Act; and section 1964, which provides for civil remedies—including treble damages and attorney fees—for violations of the statute.

As for the four prohibited activities, section 1962(a) prohibits "us[ing] or invest[ing]" any income derived from "a pattern of racketeering activity" or a "collection of an unlawful debt" to establish or operate "any enterprise" engaged in interstate commerce. 18 U.S.C. § 1962(a). So,

for example, it prohibits a drug dealer from using money from a pattern of narcotic crimes to operate a legitimate business. USSC Primer on RICO, at 2. Section 1962(b) prohibits acquiring control of any enterprise that is engaged in interstate commerce through a pattern of racketeering activity or the collection of an unlawful debt. 18 U.S.C. § 1962(b). For example, it prohibits "an organized crime figure [from] taking over a legitimate business through a pattern of extortionate and loansharking acts designed to intimidate the owners into selling the business to him." USSC Primer on RICO, at 2.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). For example, it prohibits employees of a state DMV from "using the DMV to process fraudulent licenses and registrations for stolen vehicles in exchange for money." USSC Primer on RICO, at 2-3. And finally, section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)." 18 U.S.C. § 1962(d).

Plaintiff here asserts a claim under section 1962(c) (Count I) and a conspiracy claim under section 1962(d) (Count II). The court address both claims in turn.

Section 1962(c)

Again, section 1962(c) "makes it 'unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs' through the commission of two or more statutorily defined crimes—which RICO calls 'a pattern of racketeering activity.'" Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 160 (2001)

(quoting 18 U.S.C. § 1962(c)). To state a claim under section 1962(c), a plaintiff must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 655 (7th Cir. 2015).

In their motion to dismiss, defendants first argue that plaintiff fails to adequately allege the second element—a RICO enterprise. The court agrees.

"[A] RICO complaint must identify the enterprise." Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000) (citation omitted). Section 1961(4) defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This definition thus contemplates two types of enterprises: (1) formal organizations like corporations; and (2) informal organizations that have no recognized legal status but that can be characterized as "associate[ions] in fact," id.—"which is a polite name for a criminal gang or ring," Emery v. Am. Gen. Fin., Inc., 134 F.3d 1321, 1325 (7th Cir. 1998). The definition of "enterprise" is "to be interpreted broadly." United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co., 719 F.3d 849, 853 (7th Cir. 2013). For example, the Supreme Court has interpreted an "association-in-fact" enterprise broadly as not needing to "have any structural features beyond 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" Id. (quoting Boyle v. United States, 556 U.S. 938, 944, 946 (2009)). "Such an enterprise," the Supreme Court has said, "is proved by evidence of an ongoing organization,

formal or informal, and by evidence that the various associates function as a continuing unit." Boyle, 556 U.S. at 945-46 (cleaned up).

But the definition of enterprise "is not limitless": "a plaintiff [must] identify a 'person'—*i.e.*, the defendant—that is distinct from the RICO enterprise." Walgreen, 719 F.3d at 853 (citing Cedric Kushner, 533 U.S. at 161). That is because "[t]he enterprise itself is not liable for RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable." In re ClassicStar Mare Lease Litig., 727 F.3d 473, 490 (6th Cir. 2013). So while "[t]he 'person' need not be a natural person," Fitzgerald v. Chrysler Corp., 116 F.3d 225, 226 (7th Cir. 1997) (citing 18 U.S.C. § 1961(3) and explaining that "Chrysler is a person within the meaning of the Act"), the "person" must be separate and distinct from the enterprise: "Without a difference between the defendant and the 'enterprise' there can be no violation of RICO." Baker v. IBP, Inc., 357 F.3d 685, 692 (7th Cir. 2004). Liability, then, "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs', not just their *own* affairs." Cedric Kushner, 533 U.S. at 163 (citation omitted) (emphasis in original). At bottom, the "distinctness doctrine requires a plaintiff to demonstrate that the RICO person is legally separate from the RICO enterprise, while the association-in-fact requirements help ensure that distinctiveness is not achieved by simply tacking on entities to the enterprise which do not in fact operate as a 'continuing unit' or share a 'common purpose.'" Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., No. 05-5934, 2009 WL 3245388, at *6 (E.D.N.Y. Sept. 30, 2009) (citation omitted).

Defendants argue here that even taking plaintiff's allegations as true, "the RICO claim fails because the sole alleged enterprise is nothing more than the law firm and its employees."

According to defendants, the complaint asserts that both Simmons Hanly and the individual defendants are the "persons," and that "Simmons Hanly *is a business enterprise*, and the individual Defendants willing[ly] [sic] and knowingly conducted and participated in *the firm's affairs* through a pattern of racketeering activity." (Emphasis by defendants.) Defendants note that plaintiff alleges in the complaint that "certain unnamed co-counsel, asbestos plaintiffs, and 'other witnesses' were members of the enterprise." But, they say, that cannot save plaintiff's claim because those allegations are "at best, sparse and conclusory"; any identified individuals or entities are alleged only to been involved in discrete cases; and the "individual plaintiffs and/or witnesses would only have been conducting their own affairs—not the affairs of the alleged enterprise, as would be needed to establish their involvement in a RICO enterprise separate and distinct from the law firm." Without those added entities, defendants conclude, the RICO claim fails the distinctiveness test.

In response, plaintiff argues that "the Complaint identifies *two* RICO enterprises: 'the law firm enterprise and the association-in-fact enterprise.'" (Emphasis by plaintiff.) As for the law firm enterprise theory—which plaintiff says it is pleading as an "alternative" theory to the association in fact theory—plaintiff conclusorily states in a single sentence that "[a]s against the Individual Defendants, [the law firm enterprise] is undisputedly an adequate allegation of a distinct RICO enterprise, for 'the statute requires no more than the formal legal distinction between 'person' and 'enterprise' (namely, incorporation) that is present here.'" (quoting Cedric Kushner, 533 U.S. at 165).

As for the association in fact theory, plaintiff quotes the complaint, which pleads "an association-in-fact enterprise that consists of the firm, the various professionals working in and

with the Asbestos Department, including the individual [d]efendants and John and Jane Does 1-25, certain asbestos litigation plaintiffs, other witnesses represented by Simmons Hanly, and law firms that serve as co-counsel." And so, plaintiff says, the named defendants—the "persons"—"are not *equivalent to* or *coextensive with* the association-in-fact," as that association-in-fact includes the "asbestos litigation plaintiffs, other witnesses represented by Simmons Hanly, and law firms that serve as co-counsel," and these entities along with the defendants "associated and coordinated together with the shared purpose of litigating against Plaintiff and others." (Emphasis in original). Plaintiff further asserts that the clients had a "shared purpose between attorney and client"—that is, "they undisputedly shared the purpose of the rest of the enterprise (winning the case)"—and that a litigation has "longevity sufficient to permit these associates to pursue the enterprise's purpose." (quoting Boyle, 556 U.S. at 946). The "attorneys and firms acting as co-counsel to Simmons Hanly," they add, "would likewise have a shared purpose" and "the natural inference is that a firm that brings hundreds of suits would often use the same co-counsel across numerous suits."

The court finds that plaintiff has not pleaded a plausible enterprise based on either theory. As for the "alternative" legal-entity theory, plaintiff only conclusorily argues for this theory, and has thus effectively waived its argument in favor of it. See Charles A. v. Saul, No. 220-412, 2021 WL 2820534, at *2 (S.D. Ind. July 7, 2021) (finding party's arguments waived where the "'arguments' [were] not arguments at all, but merely conclusions").

That theory would fail anyway. As defendants point out in their reply brief, "the Complaint lacks any factual support for what [plaintiff] now characterizes as an alternate enterprise theory," and the "entire Complaint is based on Simmons Hanly being part of an

enterprise, rather than the enterprise itself." What's more, plaintiff has named both Simmons Hanly and the other individual defendants who worked for Simmons Hanly as the RICO "persons." But "by virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise." Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir. 1994). Indeed, "[t]he plain language and purpose of the statute contemplate that a *person* violates the statute by conducting an *enterprise* through a pattern of criminality" and "[i]t thus follows that a corporate person cannot violate the statute by corrupting itself." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (emphasis in original). Put simply: "[A]n employer and its employees cannot constitute a RICO enterprise." Fitzgerald, 116 F.3d at 226. Nor does plaintiff's appeal to a quote from Cedric Kushner save its theory. That "case concern[ed] a claim that a corporate employee [wa]s the 'person' and the corporation [wa]s the 'enterprise.'" Cedric Kushner, 533 U.S. at 164. Here again, plaintiff alleges that both the firm and others working for it are the RICO persons. Plaintiff has thus not adequately pleaded a legal-entity enterprise theory here.

As for an association in fact enterprise, the parties appear to agree that the issue here hinges on whether the entities referred to in addition to Simmons Hanly and its employees—the asbestos plaintiffs, other witnesses represented by Simmons Hanly, and local law firms engaged as local counsel by Simmons Hanly—can create a distinctive association in fact. That makes sense because, "[w]here, as here, the organization is named as defendant, and the organization associates with its member to form the enterprise 'association-in-fact,' the requisite distinctness does not obtain." Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639, 883 F.2d 132, 141 (D.C. Cir. 1989), rev'd in part on other issues on rehrg, 913 F.2d 948 (D.C. Cir.

1990) (en banc); see also Yellow Bus Lines, 883 F.2d at 141 ("an organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself"); Ratfield, 2024 WL 640955, at *3 ("an 'enterprise' consisting of an association of defendants USDTL, Lewis, and Jones is not distinct from the RICO persons"). But even where the organization and its affiliates are not sufficiently distinct, there may still be a distinct enterprise when the enterprise includes at least one player that is not part of the defendant organization. ClassicStar, 727 F.3d at 493 ("Even if GeoStar were not considered distinct from Gastar and ClassicStar, the alleged RICO enterprise was comprised of other entities that were neither owned by GeoStar nor acting as its agents."). The court agrees with the parties that the issue here is whether plaintiff has plausibly pleaded that non-Simmons Hanly entities are properly part of the association in fact enterprise.

Again, plaintiff contends that these additional entities along with the defendants "associated and coordinated together with the shared purpose of litigating against Plaintiff and others," that the clients had a "shared purpose between attorney and client" (winning the case), and that co-counsel had also had a shared purpose with the firm. In reply, defendants assert that plaintiff: "fails to plead facts showing a common purpose, relationships, and longevity"; fails to "even identify the witnesses, co-counsel, or plaintiffs"; and "alleges nothing more than arms-length commercial relationships."

The court agrees with defendants that plaintiff has not adequately alleged that these additional entities are part of an association in fact enterprise. For one thing, the court agrees with defendants that plaintiff's allegations as to these unnamed persons or entities are sparse and conclusory. See Ratfield, 2024 WL 640955, at *3 (finding that the plaintiff could not plead an

enterprise separate and distinct from the RICO person defendants by adding two additional non-defendant entities from outside the defendant company); cf. Stachon, 229 F.3d at 676 ("[W]e cannot accept Appellants' vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure.").

More importantly, though, the complaint here fails to plausibly plead that the asbestos plaintiffs, witnesses, and law firms serving as co-counsel functioned with Simmons Hanly and its employees as an enterprise. "[I]ndividuals or entities whose activities sometimes intersect do not form an enterprise." In re: Gen. Motors LLC Ignition Switch Litig., 2016 WL 3920353, at *12 (S.D.N.Y. July 15, 2016). The existence of an enterprise instead requires: "an ongoing organization, formal or informal"; "evidence that the various associates function as a continuing unit"; and "a common purpose of engaging in a course of conduct." Boyle, 556 U.S. at 944-45 (cleaned up).

That is missing here. As defendants point out, even if the unnamed entities were the specific entities from the specific cases discussed in the complaint, those entities are alleged only to been involved in their discrete cases—that is, the entities in each specific case had no alleged involvement in any other case. In other words, plaintiff "essentially alleges so-called 'hub-and-spoke' enterprises," New England Carpenters Health & Welfare Fund v. Abbott Labs., No. 12 CV 1662, 2014 WL 4783833, at *6 (N.D. Ill. Sept. 25, 2014)—with Simmons Hanly and its employees (the hub) instructing individual witnesses and clients in each litigation (the spokes) to provide false testimony. See New York Auto. Ins. Plan, No. 97-3164, 1998 WL 695869, at *5 (S.D.N.Y. Oct. 6, 1998) ("In essence, plaintiffs allege that fraudulent insurance applications were submitted to the Plan through one insurance broker—the Producer-Defendants—but on behalf of

numerous unrelated Insureds," which "is a classic 'hub and spoke" conspiracy," with the Producer-Defendants as the "hub" and the various Insureds as the "spokes"). But plaintiff fails to allege any "rim" enclosing the "spokes." Abbott Labs., 2014 WL 4783833, at *6 (finding that the plaintiff failed to supply the "rim" linking various pharmacies to one another).

Indeed, "there are no allegations that" the witnesses or clients or unnamed local counsel in each case "are in communication with" those in the other cases "or are even aware that other[s] are part of the enterprise." Id. Nor does plaintiff allege that these entities acted in their discrete litigation to benefit others in the other litigations as opposed to just themselves. See New York Auto, 1998 WL 695869, at *6 ("each Insured acted on a particular occasion to benefit himself or herself and not to benefit any other insured"). Or that these entities "join[ed] together as a group to perpetrate the frauds against the [p]laintiff[ ]." Id. Rather, "each [allegedly] committed similar but independent frauds with the aid of the" defendants. Id. Without more, this "is insufficient to allege a viable association-in-fact RICO enterprise." Abbott Labs., 2014 WL 4783833, at *6; see also New York Auto., 1998 WL 695869, at *6.

In short, Plaintiff is "simply tacking on entities to the enterprise which do not in fact operate as a 'continuing unit.'" Allstate, 2009 WL 3245388, at *6; see also Stachon, 229 F.3d at 676 (finding no enterprise, explaining that the fact "that UCC, for nearly 21 years, had business dealings with a wide assortment of unnamed manufacturers, wholesalers, and members in no way establishes that they function with UCC as a continuing unit").[2]

[2] The court also notes that even if plaintiff were correct that "the natural inference is that" the "same co-counsel" is used "across numerous suits," plaintiff does not plead any facts that would support that local counsel was doing anything other than performing ordinary business functions on behalf of Simmons Hanly. See Baker, 357 F.3d at 691-92 (finding alleged RICO enterprise consisting of the corporation and third-party contractors that provided the corporation with employees failed); Fitzgerald, 116 F.3d at 227-28.

* * * *

The court finds that plaintiff has failed to plead an enterprise separate and distinct from the RICO person defendants and has thus failed to sufficiently plead a RICO claim. The court consequently dismisses Count I.

Section 1962(d)

Because plaintiff fails to adequately allege an enterprise that would establish a violation of section 1962(c), plaintiff also cannot state a claim for conspiracy under section 1962(d) based on those same facts. See Stachon, 229 F.3d at 677 ("Since Appellants fail to establish a violation of section 1962(c)" by failing to "adequately allege a RICO 'enterprise,'" "their section 1962(d) claim based on the same facts must fail as well."); Ratfield, 2024 WL 640955, at *3 (dismissing a section 1962(d) conspiracy claim after finding that the plaintiff had failed to adequately plead a RICO enterprise for purposes of a section 1962(c) claim). The court thus dismisses Count II.

**The Remaining Counts III-V**

Because the court has disposed of the only federal claims, the only claims remaining in this case are state law claims—namely, Count III (common law fraud), Count IV (unjust enrichment), and Count V (civil conspiracy). Because the court has disposed of the only federal claims in the complaint, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c). The court therefore dismisses plaintiff's state law claims without prejudice. See Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without

prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

**CONCLUSION**

The court grants defendants' motion to dismiss [Doc. 23]. The court dismisses Counts I and II. The court declines to exercise supplemental jurisdiction over Counts III-V and therefore dismisses them without prejudice. Because the court has dismissed all claims, the court denies defendants' separate motion to strike Counts III-V [Doc. 21] and request for judicial notice [Doc. 25] without prejudice.

So ordered.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: March 18, 2025**