IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J-M MANUFACTURING COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   24 C 3853 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SIMMONS HANLY CONROY, LLP, NICHOLAS | ) | |
| ANGELIDES, PERRY BROWDER, AMY | ) | |
| GARRETT, BENJAMIN GOLDSTEIN, SUVIR | ) | |
| DHAR, CRYSTAL FOLEY, DEBORAH | ) | |
| ROSENTHAL, STAN JONES, and JOHN and | ) | |
| JANE DOES 1–25, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff J-M Manufacturing Company, Inc. makes industrial pipe.   From 1983 to 1988,

it sold cement pipe that contained asbestos.   It has since been on the receiving end of thousands

of complaints filed by law firms that represent plaintiffs with asbestos-related diseases.   Plaintiff

decided to file its own complaint against one of those firms—Simmons Hanly Conroy, LLP—

and some of Simmons Hanly's attorneys and staff (collectively, "defendants"), alleging that

defendants engaged in a multi-year pattern of racketeering activity in which they filed sham

asbestos-related lawsuits to extract unwarranted settlements from plaintiff.   Plaintiff asserted

five counts in its complaint: a claim for violating 18 U.S.C. § 1962(c) of the Racketeered

Influenced Corrupt Organizations Act ("RICO") (Count I); a claim for violating 18 U.S.C. §

1962(d) of RICO based on conspiring to commit RICO violations (Count II); a state law claim

for common law fraud (Count III); a state law claim for unjust enrichment (Count IV); and a

state law claim for civil conspiracy (Count V).

In response, defendants moved to dismiss the complaint in its entirety for failure to state a claim. On March 18, 2025, the court granted defendants' motion, see J-M Mfg. Co., Inc. v. Simmons Hanly Conroy, LLP, No. 24 C 3853, 2025 WL 843854, at *1 (N.D. Ill. Mar. 18, 2025), entered judgment for defendants on Counts I and II, and declined to exercise jurisdiction over Counts III through V. On April 15, 2025, plaintiff moved under Fed. Rs. Civ. P. 59(e) and 60(b) to alter or amend the judgment so that plaintiff "may further seek leave to file an amended complaint." For the reasons below, the court grants plaintiff's motion.

## BACKGROUND

### Plaintiff's Allegations in its Complaint

The court set forth in detail plaintiff's allegations from its complaint in the court's dismissal decision. See J-M, 2025 WL 843854, at *1-3. Briefly, plaintiff alleged the following facts. From 1983 to 1988, plaintiff sold cement pipe that contained asbestos ("ACP"). Despite asbestos's tarnished reputation by that time, the market for ACP persisted—in part because it could be worked with safely if directions were followed. Indeed, "[h]igher levels of exposure" to asbestos from ACP "only occur if the pipe is cut with an unventilated power saw or drilled into using a power drill."

Yet plaintiff has been sued in more than 6,000 asbestos cases since 2000—typically by individuals with an asbestos-related disease like mesothelioma. Plaintiff became a "target of meritless asbestos lawsuits" after plaintiffs law firms had driven manufacturers and distributors of "friable asbestos products" (like insulation) out of business. "As part of this post-bankruptcy wave of asbestos litigation," those firms began suing plaintiff.

Law firm defendant Simmons Hanly has filed more than 430 cases against plaintiff. "But a recent lawsuit" filed by a former Simmons Hanly partner alleges that the firm "has engaged in a pattern of 'unlawful, unethical conduct, and fraudulent conduct' to gain the upper hand in asbestos litigation." And in performing a "case review," plaintiff "found evidence" to corroborate those allegations. In particular, evidence suggests that Simmons Hanly has "developed and implemented" the "Simmons Hanly Fraud Playbook"—"a coordinated and well-developed scheme to offer perjured testimony, suppress evidence of exposure to the products of bankrupt companies, make misrepresentations of fact about the existence of bankruptcy trust claims, file baseless claims in an attempt to extract settlements, and silence anyone who attempts to expose the firm's fraud."

Defendants "are a quintessential RICO enterprise," the "primary objective of" which "is to secure the most compensation possible for clients and the firm." "The RICO enterprise is a corporate entity and an association-in-fact enterprise that consists of the firm, the various professionals working in and with the Asbestos Department, including the individual Defendants . . ., certain asbestos litigation plaintiffs, other witnesses represented by Simmons Hanly, and law firms that serve as co-counsel with [Simmons Hanly] on asbestos lawsuits." This "enterprise is led by members of management of the firm." "The asbestos case investigators . . . and other members of the team build the cases by finding the evidence to support the story about each [sued entity]." (Cleaned up). "The 'story' that has been offered in case after case is that the asbestos plaintiff or decedent was exposed to asbestos in the ACP at nonspecific locations and job sites when the pipe was specifically cut with a power saw or drilled with a power drill," and

that this exposure occurred "hundreds" of times.   The lawyers then "file a lawsuit based on the 'evidence' often fabricated by the case investigators and others" in "a plaintiff-friendly" court.

### Plaintiff's Counts

Based on the above-pleaded facts, plaintiff asserted five counts in its original complaint. In Count I, plaintiff asserted a RICO claim under 18 U.S.C. § 1962(c).   According to plaintiff, each defendant is a RICO "person," and Simmons Hanly is a business enterprise, and the "Simmons Hanly Defendants collectively also form an association-in-fact enterprise that includes asbestos plaintiffs and witnesses represented by Simmons Hanly and local law firms engaged by Simmons Hanly as part of the firm's asbestos litigation."   "The law firm enterprise and the association-in-fact enterprise affect interstate commerce because the enterprise members knowingly file sham lawsuits leveraging the Simmons Hanly Fraud Playbook across the country for the purpose of extracting settlement and otherwise obtaining recoveries through a pattern of racketeering activity"—which includes mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), witness tampering (18 U.S.C. § 1512), and obstruction of justice (18 U.S.C. § 1503).

In Count II, plaintiff alleged a RICO violation under 18 U.S.C. § 1962(d) based on defendants having "knowingly and unlawfully conspired and agreed with each other to conduct the affairs of the enterprises."   And in Counts III through V, plaintiff alleged state law common law fraud, unjust enrichment, and civil conspiracy.

### The Court's Dismissal of the Complaint

On March 18, 2025, the court granted defendants' Rule 12(b)(6) motion to dismiss the complaint.   J-M, 2025 WL 843854, at *1.   The court began with Count I, explaining that § 1962(c) "makes it unlawful for any person employed by or associated with any enterprise to

4

conduct or participate in the conduct of such enterprise's affairs through the commission of two or more statutorily defined crimes—which RICO calls 'a pattern of racketeering activity.'" <u>Id.</u> at *5 (cleaned up). The court then explained that a RICO complaint must therefore identify the alleged "enterprise," which can include, (1) formal organizations (like corporations), or (2) informal "associations in fact" (like criminal gangs or rings). <u>Id.</u> In analyzing whether a complaint has done so, the court stated, "a plaintiff must identify a 'person'—i.e., the defendant—that is distinct from the RICO enterprise." <u>Id.</u> at *6 (cleaned up). That is because the "persons" who conduct the affairs of the enterprise through a pattern of racketeering activity are liable for RICO violations—not the enterprise itself. <u>Id.</u>

In analyzing plaintiff's complaint, the court found that plaintiff had not pleaded a plausible enterprise based on either a formal-organization (or "legal-entity") theory or an informal association-in-fact theory. <u>Id.</u> at *7. As for a legal-entity theory, the court explained that plaintiff's complaint failed to identify a person who was distinct from the RICO enterprise because plaintiff alleged "that both the firm <u>and</u> others working for it are the RICO persons"— i.e., defendants. <u>Id.</u> (emphasis in original).

As for an association-in-fact theory, the court explained that when "the organization is named as defendant, and the organization associates with its member to form the enterprise 'association-in-fact,' the requisite distinctness does not obtain." <u>Id.</u> (citation omitted). So the court agreed with the parties that the issue was whether plaintiff had "plausibly pleaded that non-Simmons Hanly entities"—"the asbestos plaintiffs, other witnesses represented by Simmons Hanly, and local law firms engaged as local counsel by Simmons Hanly"—were "properly part of the association in fact enterprise." <u>Id.</u>

5

The court found that plaintiff had not done so.  Id. at *8-9.  First, "plaintiff's allegations as to these unnamed persons or entities [we]re sparse and conclusory."  Id. at 8.  Second, the complaint "fail[ed] to plausibly plead that" those persons or entities "functioned with Simmons Hanly and its employees as an enterprise."  Id.  The court explained that an enterprise requires "that the various associates function as a continuing unit" and with "a common purpose of engaging in a course of conduct."  Id. (citation omitted).  But "[t]hat [wa]s missing" from plaintiff's complaint: the entities were "alleged only to [have] been involved in their discrete cases—that is, the entities in each specific case had no alleged involvement in any other case." Id.  So, the court stated, plaintiff was "simply tacking on entities to the enterprise which do not in fact operate as a 'continuing unit."  Id. at *9 (citation omitted).

Because plaintiff "failed to plead an enterprise separate and distinct from the RICO person defendants," it had "failed to sufficiently plead a RICO claim."  Id.  The court thus dismissed Count I.  Id.  And "[b]ecause plaintiff fail[ed] to adequately allege an enterprise that would establish a violation of section 1962(c), plaintiff also [could not] state a" § 1962(d) conspiracy claim.  Id.  The court therefore dismissed Count II.  Id.  And "[b]ecause the court ha[d] disposed of the only federal claims," it declined to exercise supplemental jurisdiction over the remaining state law claims.  Id.  The court entered judgment for defendants the same day.

## DISCUSSION

Plaintiff has moved to alter or amend the judgment under Fed. Rs. Civ. P. 59(e) and 60(b), so that plaintiff "may further seek leave to file an amended complaint" to add evidence, to "cure[ ] the defects" that the court identified in plaintiff's legal-entity and association-in-fact theories, and to "clarify the scope, aims, participants, and victims of the relevant RICO

6

enterprise." Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Rule 60(b) provides that:

> [o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake . . .;
>
> (2) newly discovered evidence . . .;
>
> (3) fraud . . .;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

A Rule 60(b) motion "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

Plaintiff filed its motion here on April 15, 2025, which was within 28 days of the court's March 18, 2025 dismissal order and judgment. The court will therefore analyze plaintiff's motion under Rule 59(e). See Swopes v. United States, No. 21 C 4796, 2022 WL 1487334, at *2 (N.D. Ill. May 10, 2022) ("Where a motion is filed within 28 days of entry of judgment, the court treats it as a [Rule] 59(e) motion to alter the judgment."). The Seventh Circuit has explained that "Rules 59(e) and 60(b) provide extraordinary remedies reserved for the exceptional case." Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind., 786 F.3d 510, 521 (7th Cir. 2015) (cleaned up). But because "the filing of a Rule 59(e) motion within the 28-day period 'suspends the finality of the original judgment,'" courts "do not require a movant to show the same 'extraordinary circumstances' to receive relief" as they do when a

7

movant seeks relief under, say, Rule 60(b)(6).   BLOM Bank SAL v. Honickman, 605 U.S. __,

145 S. Ct. 1612, 1622 (2025) (cleaned up).

What exactly "extraordinary circumstances" means for Rule 59(e) purposes, however,

need not be explored here.   That is because when, as here, the court has "enter[ed] judgment at

the same time it first dismisses a case," and the party moving under Rule 59(e) seeks to amend

its complaint, Taylor v. Salvation Army Nat'l Corp., 110 F.4th 1017, 1033 (7th Cir. 2024)

(citation omitted), the court applies "the liberal standard for amending pleadings under [Fed. R.

Civ. P.] 15(a)(2) and need not find other extraordinary circumstances to grant the relief

requested," Reilly v. Will Cnty. Sheriff's Off., 142 F.4th 924, 929 (7th Cir. 2025) (cleaned up).

This follows from the fact that "a plaintiff who receives a Rule 12(b)(6) motion and who has

good reason to think the complaint is sufficient may . . . choose to stand on the complaint and

insist on a decision without losing the benefit of the well-established liberal standard for

amendment with leave of court under Rule 15(a)(2)."   Runnion, 786 F.3d at 523.

Under Rule 15(a)(2), "[t]he court should freely grant leave when justice so requires."

Fed. R. Civ. P. 15(a)(2).   "The Supreme Court has interpreted this rule to require a district court

to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad

faith—for denying leave to amend."   NewSpin Sports, LLC v. Arrow Elecs., Inc., 910 F.3d 293,

310 (7th Cir. 2018) (citation omitted); see Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the

absence of any apparent or declared reason—such as undue delay, bad faith or . . . futility . . .—

the leave sought should, as the rules require, be 'freely given.'").   Freely giving leave to amend

is "especially advisable when such permission is sought after the dismissal of the first

complaint."   Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n, 377 F.3d 682, 687

(7th Cir. 2004); see also Reilly, 142 F.4th at 929 ("a plaintiff whose complaint has been dismissed at the pleading stage should be given at least one opportunity to amend"). And so, "[u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." Barry Aviation, 377 F.3d at 687 (emphasis added). This is not to say, though, that a plaintiff's entitlement to leave is automatic: When, for example, "[a] plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint," a "district court acts within its discretion in denying leave to amend . . . by denying a post-judgment motion." Gonzalez-Koeneke v. West, 791 F.3d 801, 808 (7th Cir. 2015).

In opposing plaintiff's motion here, defendants first argue that plaintiff cannot show the need for leave to amend because plaintiff failed to attach a proposed amended complaint to its motion. In reply, plaintiff asserts that defendants are "put[ting] the cart before the horse, conflating the procedural requirements for a motion to amend a complaint with [a] motion for post-judgment relief." According to plaintiff, there is line of Seventh Circuit cases that suggest that plaintiffs are "not permitted to move to amend [a] complaint until the judgment is reopened," and so "it would have been procedurally premature . . . for [plaintiff] to attach a proposed amended complaint to [its] Motion."

The court finds that plaintiff's failure to attach a proposed amended complaint to its motion—while inconvenient—is not fatal. As an initial matter, the court disagrees with plaintiff that it was forbidden from attaching a proposed amended complaint. True, some older cases may have suggested this. See, e.g., Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 784 (7th Cir. 1994) ("There exists in this circuit a line of cases that require a plaintiff seeking

leave to amend in the post-judgment context to file a Rule 59(e) or 60(b) motion <u>prior to</u> filing a Rule 15(a) motion." (emphasis added)).   But more recent cases—including the <u>Runnion</u> case, which plaintiff says governs here—make clear that a plaintiff can simultaneously move under both Rules 59(e) and 15(a)(2), and in doing so, can attach a proposed amended complaint.   <u>See, e.g., Reilly</u>, 142 F.4th at 928 ("Reilly filed a motion under Rule 59(e) to alter or amend the judgment and for leave to file an amended complaint under Rule 15(a)(2), with a proposed amended complaint attached."); <u>NewSpin</u>, 910 F.3d at 311 ("NewSpin then timely filed a Rule 59(e) motion that included a request for leave to amend and <u>properly</u> attached a proposed first amended complaint to its motion." (emphasis added)); <u>Runnion</u>, 786 F.3d at 518 (the plaintiff "filed a motion to alter the judgment under [Rule] 59(e) and for leave to file an amended complaint under Rule 15(a)(2)," and "attached a proposed amended complaint").

In any event, Seventh Circuit case law also suggests that a plaintiff can show that the proposed amendment would cure the deficiencies in the prior complaint either by attaching a proposed amended complaint <u>or</u> by meaningfully describing the proposed amendment.   <u>See Gonzalez-Koeneke</u>, 791 F.3d at 808-09 (explaining that the plaintiff must "give the district court a description of her amended complaint or produce a[n] . . . amended complaint"); <u>Indep. Tr. Corp. v. Stewart Info. Servs. Corp.</u>, 665 F.3d 930, 943 (7th Cir. 2012) (explaining that the plaintiff "did not offer any meaningful indication of how it would plead differently"); <u>Leavell v. Illinois Dep't of Nat. Res.</u>, 600 F.3d 798, 808 (7th Cir. 2010) (explaining that the plaintiff's complaint should be dismissed with prejudice because she "ha[d] not suggested any way that she might amend her pleading to cure the deficiency"); <u>Hecker v. Deere & Co.</u>, 556 F.3d 575, 591

(7th Cir. 2009) (explaining that the plaintiff should attach an amended complaint or otherwise "indicate the exact nature of the amendments proposed" (cleaned up)).

The question here, then, is whether plaintiff has meaningfully explained how its amendment would not be futile or otherwise unwarranted. Defendants maintain that plaintiff has failed to do so for two reasons. First, defendants argue that plaintiff identifies "no 'newly discovered' evidence," making the proposed amendment untimely. According to defendant, plaintiff needed to "show that it did not know, and could not have known at an earlier time, the information it now wants to add to the complaint." Yet, defendants assert, plaintiff "does not allege that th[e] supposedly 'new' evidence came into [plaintiff's] possession only *after* judgment was entered—or even recently." (Emphasis by defendants). Defendants thus conclude that the proposed amendment is untimely.

The court disagrees. As explained above, "a plaintiff who receives a Rule 12(b)(6) motion and who has good reason to think the complaint is sufficient may . . . choose to stand on the complaint and insist on a decision without losing the benefit of the well-established liberal standard for amendment with leave of court under Rule 15(a)(2)." Runnion, 786 F.3d at 523. The Seventh Circuit recently reiterated this point in Reilly, where it rejected the very proposition defendants put forth here. The plaintiff there had moved under Rule 59(e) to alter the judgment after dismissal, seeking to amend its complaint. In holding that the liberal Rule 15(a)(2) standards applied to the motion, the court explained that the plaintiff did not need to allege "newly discovered evidence": "[T]here was no 'newly discovered evidence' to put forward after

final judgment was entered; Reilly simply should have been given an opportunity to cure any perceived defects in his complaint." Reilly, 142 F.4th at 929 (citing Runnion, 786 F.3d at 523).

The fact of the matter is that RICO is a complex area of law. See Fireman's Fund Ins. Co. v. Plaza Oldsmobile Ltd., 600 F. Supp. 1452, 1457 n.2 (E.D.N.Y. 1985) ("RICO, as interpreted by case law, appears extremely complex."). And "[t]his is not a case where a plaintiff obtusely failed to comply with well-established legal standards." Runnion, 786 F.3d at 524. The court accordingly finds that it was not unreasonable (or undue delay) for plaintiff to stand on its complaint before seeking to amend. See id. (explaining that the plaintiff did not unduly delay by waiting to amend where, based on the uncertainty of the law, she "could reasonably have expected that the allegations in her original complaint would survive a motion to dismiss").

Second, defendant argues that plaintiff has not shown that its proposed amendment would cure the deficiencies in the prior complaint. As noted above, plaintiff proposes amending the complaint to cure the defects identified by the court as to both enterprise theories. As for a legal-entity theory, plaintiff argues that it could "easily" amend to "clarify" (1) that plaintiff "does not allege that [Simmons Hanly] was a RICO person carrying out the affairs of the enterprise," and (2) that plaintiff instead alleges "that certain [Simmons Hanly] employees were the 'persons,' and [Simmons Hanly] is the 'enterprise.'"

As for the association-in-fact theory, plaintiff proposes amending the complaint to drop plaintiff's reliance on tacking on witnesses and victims, and to allege instead that several law firms—the Gori Law Firm, the Sokolove Law Firm, Law Firm C, and Law Firm D—coordinate with Simmons Hanly in an association-in-fact enterprise (what plaintiff calls the "CGAF

Enterprise"). According to plaintiff: "Sokolove and Law Firm C focus on advertising, funneling their referrals to [Simmons Hanly] and Gori in exchange for a portion of case settlements"; the "members of the enterprise then capitalize on these referrals using the 'playbook' to bring fraudulent lawsuits against solvent companies, and then later fil[e] bankruptcy trust claims against insolvent companies"; Simmons Hanly "abuses the bankruptcy trust proceedings by having asbestos plaintiffs indiscriminately sign . . . affidavits claiming exposure to the products of a broad swath of bankrupt companies without first investigating" the claim; the "CGAF Enterprise coaches plaintiffs in litigation to not claim exposure to products of bankrupt companies" and to instead "only identify products of solvent companies"; and Gori "maintained a 'bounty system' to coordinate targets with the other enterprise law firms," in which "bonuses were paid to [deposition attorneys] and others when these individuals successfully coached asbestos plaintiffs to testify that they were exposed to the products of solvent companies on a specified target list."

Plaintiff asserts that with these allegations and more (like its allegation that some firms had a "no-poaching attorneys" agreement), it will "plausibly allege that [Simmons Hanly] and other law firms took part in an association-in-fact enterprise" that "function[s] as a unit to advance the[ ] common goal of extracting settlements and payouts through a pattern of" filing "sham asbestos litigation and manipulating bankruptcy trust claims."

Defendants contend in response that plaintiff's proposed association-in-fact allegations are insufficient to establish that the law firm members acted to benefit others in the other litigations—as opposed to just themselves—or that the members functioned as a "continuing

13

unit." And on the legal-entity theory, defendants do not meaningfully argue that the proposed changes would be futile, but assert again that the amendment was untimely sought.

The court finds that plaintiff has done enough at this juncture to describe how its proposed amendments might cure the deficiencies that the court identified in plaintiff's prior complaint. Put simply, at this stage, the court cannot conclude that it is "certain that amendment would be futile." Reilly, 142 F.4th at 930; see Runnion, 786 F.3d at 520 ("Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." (citation omitted)); id. ("cases of clear futility at the outset of a case are rare"); Barry Aviation, 377 F.3d at 687 ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). The court will therefore grant plaintiff leave to file an amended complaint.

## CONCLUSION

The court grants plaintiff's motion to alter or amend the judgment [Doc. 50]. The case is reopened and plaintiff is granted leave to file an amended complaint, which is due by October 14, 2025. Defendants will have until November 11, 2025, to answer or otherwise respond to the amended complaint.

So ordered.

ENTER:

Robert W. Gettleman
**Robert W. Gettleman**
**United States District Judge**

**DATE:   September 17, 2025**

14