**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

J-M MANUFACTURING COMPANY, INC.,

        Plaintiff,

    v.

SIMMONS HANLY CONROY LLP, JOHN
SIMMONS, NICHOLAS ANGELIDES, PERRY
BROWDER, AMY GARRETT, BENJAMIN
GOLDSTEIN, SUVIR DHAR, CRYSTAL FOLEY,
DEBORAH ROSENTHAL, STAN JONES,
SOKOLOVE LAW, LLC, AND JOHN AND JANE
DOES 1–25,

        Defendants.

Hon. Robert W. Gettleman

CASE NO. 1:24-CV-03853

JURY TRIAL DEMANDED

ORAL ARGUMENT REQUESTED

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

I. Factual Background. ....................................................................................................3

II. J-MM's Recycled Allegations Carried Forward From The Original Complaint......................4

III. The Court's Dismissal Order. ....................................................................................7

IV. J-MM's Amended Complaint. ....................................................................................8

ARGUMENT ....................................................................................................................10

I. The *Noerr-Pennington* Doctrine Bars This Lawsuit In Its Entirety. ......................................10

    A. The *Noerr-Pennington* Doctrine Applies To Defendants' Alleged Conduct. .................10

    B. The *Noerr-Pennington* Doctrine's Narrow "Sham Exception" Does Not Apply.............12

II. J-MM Fails To State A RICO Violation. ..........................................................................15

    A. J-MM Fails To Adequately Allege A RICO Enterprise. .........................................15

        1. J-MM Fails To Allege That The Individual Defendants Participated In The Operation And Management Of The "Law Firm Enterprise." ...........................16

        2. J-MM Fails To Allege An Association-In-Fact Enterprise Distinct From Defendants Where Enterprise Participants Shared A Common Purpose..................17

    B. J-MM Does Not Adequately Allege Any Racketeering Activity. ....................................20

        1. Use Of Mail And Wires In Connection With Litigation Cannot Constitute Racketeering Activity. ....................................................................................21

        2. J-MM Fails To Sufficiently Allege Any Pattern Of Racketeering Activity As To The Individual Defendants. ..........................................................................24

    C. J-MM's RICO Claims Are Time Barred. ..........................................................28

    D. J-MM Cannot State A RICO § 1962(d) Claim. ..................................................31

III. J-MM's State Law Claims Also Must Be Dismissed. ..........................................................31

    A. Because J-MM's RICO Claims Fail, This Court Should Decline To Exercise Supplemental Jurisdiction Over J-MM's State Law Claims..............................................31

i

B.  J-MM's State Law Claims Fail Under California Or Illinois Law. ...................................32

    1.  Counts III, IV, and V Fail Under California's Litigation Privilege............................33

    2.  J-MM Fails To State A Claim For Common Law Fraud.............................................33

    3.  J-MM Fails To Allege Unjust Enrichment And Civil Conspiracy. ............................35

CONCLUSION.................................................................................................................................35

# TABLE OF AUTHORITIES

**CASES**

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ..................................................................................... 25

*Azima v. Dechert LLP*,
  2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024) ............................................. 22

*Azrielli v. Cohen Law Offices*,
  21 F.3d 512 (2d Cir. 1994) .......................................................................... 17

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
  237 F.3d 394 (4th Cir. 2001) ....................................................................... 14

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ......................................................................... 17

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ............................................................................... 11, 12

*Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*,
  559 F.3d 671 (7th Cir. 2009) ....................................................................... 29

*Carden v. Getzoff*,
  190 Cal. App. 3d 907 (1987) ....................................................................... 33

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ..................................................................................... 18

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ....................................................................... 35

*Connick v. Suzuki Motor Co.*,
  174 Ill. 2d 482 (1996) .................................................................................. 34

*Crichton v. Golden Rule Ins. Co.*,
  576 F.3d 392 (7th Cir. 2009) ....................................................................... 16

*Dean v. Riser*,
  240 F.3d 505 (5th Cir. 2001) ....................................................................... 14

*Deck v. Engineered Laminates*,
  349 F.3d 1253 (10th Cir. 2003) ................................................................... 21

*Demouchette v. Sheriff of Cook Cnty.*,
  2011 WL 1378712 (N.D. Ill. Apr. 12, 2011) .............................................. 28

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) ................................................................. 35

*Domanus v. Locke Lord LLP*,
  847 F.3d 469 (7th Cir. 2017) .............................................................................. 22

*Drobny v. JP Morgan Chase Bank, NA*,
  929 F. Supp. 2d 839 (N.D. Ill. 2013) ................................................................. 21

*Dudley Enters., Inc. v. Palmer Corp.*,
  822 F. Supp. 496 (N.D. Ill. 1993) ...................................................................... 24

*Ed & F Man Biofuels Ltd. v. MV FASE*,
  728 F. Supp. 2d 862 (S.D. Tex. 2010) ................................................................ 34

*Edelson PC v. Bandas L. Firm PC*,
  2018 WL 723287 (N.D. Ill. Feb. 6, 2018) .......................................................... 35

*Elzeftawy v. Pernix Grp., Inc.*,
  477 F. Supp. 3d 734 (N.D. Ill. 2020) ................................................................. 33

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
  831 F.3d 815 (7th Cir. 2016) .............................................................................. 26

*Engate, Inc. v. Esquire Deposition Servs., L.L.C.*,
  331 F. Supp. 2d 673 (N.D. Ill. 2004), *aff'd in part, rev'd in part*, 208 F. App'x 946 (Fed. Cir.
  2006) ..................................................................................................................... 33

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
  20 F. Supp. 3d 451 (S.D.N.Y. 2014) ................................................................. 22

*Ford Motor Co. v. Knight Law Grp.*,
  2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) ........................................... 11, 12, 20

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ............................................................................ 11

*Gabovitch v. Shear*,
  70 F.3d 1252 (unpublished table decision), 1995 WL 697319 (1st Cir. Nov. 21, 1995) ......... 21

*G-I Holdings, Inc. v. Baron & Budd*,
  2004 WL 1277870 (S.D.N.Y. June 10, 2004) ...................................................... 6

*G-I Holdings, Inc. v. Baron & Budd*,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002) ................................................................. 6

*Goren v. New Vision Int'l, Inc.*,
  156 F.3d 721 (7th Cir. 1998) .............................................................................. 16

iv

*Green v. Morningstar, Inc.*,
   2018 WL 1378176, (N.D. Ill. Mar. 16, 2018)........................................................ 19

*Grimmet v. Brown*,
   75 F.3d 506 (9th Cir. 1996) .................................................................................... 30

*Guaranteed Rate, Inc. v. Barr*,
   912 F. Supp. 2d 671 (N.D. Ill. 2012) ..................................................................... 24

*Harris Custom Builders, Inc. v. Hoffmeyer*,
   1994 WL 329962 (N.D. Ill. July 7, 1994).............................................................. 21

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) ....................................................................... 6

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ............................................................................... 35

*Idema v. Dreamworks, Inc.*,
   162 F. Supp. 2d 1129 (C.D. Cal. 2001) .................................................................. 35

*In re Humira (Adalimumab) Antitrust Litig.*,
   465 F. Supp. 3d 811 (N.D. Ill. 2020), *aff'd*, 42 F.4th 709 (7th Cir. 2022) ............. 12

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
   921 F. Supp. 2d 903 (N.D. Ill. 2013) ............................................................... 10, 11

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998) ..................................................................................... 30

*In re Multidistrict Vehicle Air Pollution*,
   591 F.2d 68 (9th Cir. 1979) .................................................................................... 30

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) .................................................................. 19

*Ingersoll v. Klein*,
   46 Ill. 2d 42 (1970) ................................................................................................. 32

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*,
   196 F.3d 818 (7th Cir. 1999) .................................................................................. 10

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
   610 F.3d 382 (7th Cir. 2010) ............................................................................ 28, 29

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018) ......................................................................... 21, 22, 23

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) ................................................................................ 29

*Lee v. Certainteed Corp.*,
    123 F. Supp. 3d 780 (E.D.N.C. 2015) ....................................................... 3

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................... 35

*Ludlow v. Nw. Univ.*,
    79 F. Supp. 3d 824 (N.D. Ill. 2015) ........................................................ 35

*McCool v. Strata Oil Co.*,
    972 F.2d 1452 (7th Cir. 1992) ................................................................. 30

*Mercatus Grp. LLC v. Lake Forest Hosp.*,
    641 F.3d 834 (7th Cir. 2011) ................................................................... 14

*Michalowski v. Rutherford*,
    82 F. Supp. 3d 775 (N.D. Ill. 2015) ........................................................ 31

*Morgan v. J-M Manufacturing Co.*,
    60 Cal. App. 5th 1078 (2021) .................................................................... 4

*Navient Sols., LLC v. Lohman*,
    136 F.4th 518 (4th Cir. 2025) .................................................................. 11

*Neder v. U.S.*,
    527 U.S. 1 (1999) ..................................................................................... 25

*New W., L.P. v. City of Joliet*,
    491 F.3d 717 (7th Cir. 2007) ................................................................... 13

*Nolan v. Galaxy Sci. Corp.*,
    269 F. Supp. 2d 635 (E.D. Pa. 2003) ...................................................... 22

*Paul S. Mullin & Associates, Inc. v. Bassett*,
    632 F. Supp. 532 (D. Del. 1986) ............................................................. 22

*Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ............................................................................ 12, 14

*Rajaratnam v. Motley Rice, LLC*,
    449 F. Supp. 3d 45 (E.D.N.Y. 2020) ....................................................... 21

*Raney v. Allstate Ins. Co.*,
    370 F.3d 1086 (11th Cir. 2004) ............................................................... 21

vi

*Rao v. BP Prods. N. Am., Inc.*,
   589 F.3d 389 (7th Cir. 2009) ............................................................................. 20

*Ratfield v. United States Drug Testing Lab'ys, Inc.*,
   140 F.4th 849 (7th Cir. 2025) ................................................................... 18, 25

*Ratfield v. United States Drug Testing Lab'ys, Inc.*,
   2024 WL 640955 (N.D. Ill. Feb. 15, 2024) ..................................................... 18

*Relevant Grp., LLC v. Nourmand*,
   116 F.4th 917 (9th Cir. 2024) ........................................................................... 13

*RePET, Inc. v. Zhao*,
   2016 WL 11634745 (C.D. Cal. Sept. 2, 2016) ................................................. 34

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .......................................................................................... 17

*Robinson v. HSBC Bank USA*,
   732 F. Supp. 2d 976 (N.D. Cal. 2010) ............................................................. 35

*Rocha v. Rudd*,
   826 F.3d 905 (7th Cir. 2016) ............................................................................ 24

*Rubloff Dev. Grp. v. SuperValu*,
   863 F. Supp. 2d 732 (N.D. Ill. 2012) ................................................... 12, 13, 14

*Sihler v. Fulfillment Lab, Inc.*,
   2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) .................................................... 35

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990), *as modified* (Mar. 12, 1990) ...................................... 33

*Simmons v. Reich*,
   2021 WL 5023354 (2d Cir. 2021) .................................................................... 30

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
   833 F.3d 512 (5th Cir. 2016) ............................................................................ 21

*Spiegel v. Cont'l Ill. Nat. Bank*,
   609 F. Supp. 1083 (N.D. Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir. 1986) ........... 22, 23

*Swat-Fame, Inc. v. Goldstein*,
   101 Cal. App. 4th 613 (2002) ........................................................................... 14

*Tarpley v. Keistler*,
   188 F.3d 788 (7th Cir. 1999) ............................................................................ 10

*Taylor v. Avid Holdings, LLC*,
     2010 WL 3307374 (N.D. Ill. Aug. 19, 2010) ......................................................... 33

*Tocco v. Richman Greer Pro. Ass'n*,
     553 F. App'x 473 (6th Cir. 2013) ......................................................................... 34

*Trinity Sober Living, LLC v. Vill. of Hinsdale*,
     2021 WL 1057749 (N.D. Ill. Mar. 18, 2021) ......................................................... 12

*U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chi., Inc.*,
     953 F.3d 955 (7th Cir. 2020) ................................................................... 12, 13, 14

*U.S. v. Pendergraft*,
     297 F.3d 1198 (11th Cir. 2002) ............................................................................. 21

*United Food & Comm. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
     719 F.3d 849 (7th Cir. 2013) ................................................................................. 15

*Univ. of Md. v. Peat, Marwick, Main & Co.*,
     996 F.2d 1534 (3d Cir. 1993) ................................................................................ 17

*Westmoreland v. J.I. Case Co.*,
     714 F. Supp. 397 (E.D. Wis. 1989) ....................................................................... 14

*Williams v. Aztar Ind. Gaming Corp.*,
     351 F.3d 294 (7th Cir. 2003) ................................................................................. 32

*Williams v. J-M Mfg. Co., Inc.*,
     102 Cal. App. 5th 250 (2024) ............................................................................. 3, 4

**STATUTES**

28 U.S.C. § 1367(a) ................................................................................................... 32

**OTHER AUTHORITIES**

The Fairness in Asbestos Injury Resolution Act of 2005,
     S. Rep. No. 109-97 (2005) ....................................................................................... 4

**RULES**

ABA Model Rule of Professional Conduct 1.5 .......................................................... 19

Fed. R. Civ. P. 15 ....................................................................................................... 28

Fed. R. Civ. P. 9(b) ................................................................................. 2, 24, 26, 33

## INTRODUCTION

In March 2025, the Court dismissed Plaintiff J-M Manufacturing Company, Inc. ("J-MM")'s initial complaint against its frequent opposing counsel, Simmons Hanly Conroy LLP ("SHC") and its personnel. Dkt. 48.[1] Finding J-MM's RICO allegations deficient and declining to exercise supplemental jurisdiction over the state law claims, the Court held that J-MM failed to allege that the supposed RICO enterprise associates "acted in their discrete litigation to benefit others in the other litigations as opposed to just themselves." *Id*. at 18. J-MM has now amended its complaint, having promised the Court that it would remedy the earlier defects with groundbreaking "whistleblower"-backed allegations showing that SHC associated with at least four other competitor firms to engage in racketeering. Dkt. 50 at 3. J-MM's new allegations accomplish no such thing. They suffer the same defects as the allegations of the original complaint.

J-MM proffers two new enterprise theories: the alleged "Simmons Hanly Enterprise" consisting only of SHC where SHC is no longer a named defendant (Count I), and an alleged association-in-fact enterprise that purportedly included the Sokolove Law Firm ("Sokolove") and SHC founder John Simmons (Count II), who also have been added as new defendants. Both theories fail. As to Count I, the Individual Defendants' alleged racketeering acts—mail and wire fraud—do not amount to operation or management of SHC. And as to Count II, J-MM does not allege any common purpose *separate from* Defendants' alleged predicate acts. Indeed, J-MM alleges nothing other than ordinary business relationships that are transparently public and fully legal: case referrals, revenue sharing, and common ownership between Sokolove and SHC (all of

---

[1] Defendants cite the docket in this Court as "Dkt." followed by document number. They cite the first amended complaint, Dkt. 63, as "FAC." In case citations, internal citations and quotation marks are omitted unless noted.

which was entirely appropriate). As with its initial complaint, J-MM has no valid RICO claim because it does not allege a RICO enterprise.

The claims in the amended complaint fail for several additional reasons, too:

1.     J-MM's amended complaint is based on Defendants' representation of asbestos exposure victims, which is litigation conduct protected under the *Noerr-Pennington* doctrine. Applicable to both litigants and their lawyers, the doctrine bars this action in its entirety.

2.     J-MM fails to allege predicate acts actionable under RICO. There is no well-pleaded allegation that SHC founder John Simmons played any role in the asbestos cases J-MM cites or otherwise engaged in racketeering; the only allegation directed to him is the routine filing of required corporate disclosures bearing his name. As to all other Individual Defendants, J-MM's predicate mail and wire fraud allegations are limited to the filing of documents, serving of discovery responses, virtual depositions, and telephone communications. These ordinary litigation activities cannot, as a matter of law, constitute mail or wire fraud. Far from a "multi-faceted scheme to defraud," J-MM's allegations show only a disgruntled litigation adversary complaining about everyday litigation activities. Moreover, none of the alleged falsehoods on which the alleged predicate mail or wire frauds are based were material to J-MM or anyone else.

3.     J-MM does not allege concretely and with particularity, as required by Federal Rule of Civil Procedure 9(b) , that any Individual Defendant engaged in a pattern of racketeering activity.

4.     The RICO claims are untimely under RICO's four-year statute of limitations. All the allegedly fraudulent asbestos cases J-MM cites, save one, were litigated and/or resolved more than four years before J-MM sued. J-MM admits that Defendants' alleged scheme began as early as 2013 and that the predicate acts that were part of the alleged scheme date back to before 2019.

5.      J-MM's state law claims, in addition to failing under the *Noerr-Pennington* doctrine, are barred under California's anti-SLAPP law and California's absolute litigation privilege. They also are insufficiently pled.

In sum, J-MM responds to the Court's prior dismissal by (1) recasting its RICO claim to exclude SHC, and (2) naming Sokolove and Simmons as defendants in a second RICO claim without any well-pled allegation that they engaged in any predicate act. Neither change cures the original complaint's deficiencies. The Court should end this improper retaliatory litigation and dismiss the amended complaint with prejudice.

## BACKGROUND

### I.     Factual Background.

J-MM was formed in 1982 upon its purchase of Johns-Manville's asbestos-cement pipe assets. *See Williams v. J-M Mfg. Co., Inc.*, 102 Cal. App. 5th 250, 250 n.1 (2024). Seeing opportunity for profit from those assets, J-MM continued making and selling asbestos-cement pipe for the next five years. *See* FAC ¶ 46. Thousands of miles of asbestos-cement pipe remain in use to supply drinking water, continuing to expose Americans to asbestos. *See id.* ¶ 49.

Mesothelioma is a deadly cancer uniquely caused by asbestos exposure. *See id.* ¶¶ 44, 54. Its long latency period coincides with the filing of lawsuits against J-MM, which started about 20 years after J-MM entered the asbestos-cement pipe business. *Id.* ¶¶ 44, 54, 59. J-MM alleges that exposure from asbestos-cement pipe is "highly improbable," *id.* ¶¶ 115–17, but many other firms representing mesothelioma sufferers have alleged that dust generated by asbestos-cement pipe being installed, sawed, and cut caused their disease; J-MM admits that SHC represented clients in only 430 of the over 6,000 cases brought against it. *Id.* ¶¶ 12, 54; *see also Lee v. Certainteed Corp.*, 123 F. Supp. 3d 780, 789 (E.D.N.C. 2015); *Williams*, 102 Cal. App. 5th at 266.

Juries nationwide have returned significant verdicts against J-MM, including in cases in

which SHC has not been involved.[2] For example:

- In *Morgan v. J-M Manufacturing Co.*, the jury awarded the victims—SHC clients— $30 million in damages, with J-MM responsible for $22.2 million. 60 Cal. App. 5th 1078, 1082 (2021) (affirming judgment with remittitur). J-MM has a pending malpractice lawsuit against its defense counsel in *Morgan*.

- In *Williams v. J-M Manufacturing Co.*—litigated by a different plaintiffs' firm—the jury awarded $2.6 million in damages against J-MM and other defendants. 102 Cal. App. 5th at 255 (affirming judgment on appeal).

- In *Hardcastle v. J-M A/C Pipe Corp.*—also litigated by a firm other than SHC—the jury awarded $20.5 million in damages against J-MM's sister company. No. 830058-2 (Alameda Cnty. Sup. Ct. 2001).

- In *Metzger v. J-M Manufacturing Co.*, the jury awarded $8.8 million in damages against J-MM and others to victims represented by a firm other than SHC. No. 19STCV27717 (L.A. Cnty. Sup. Ct. 2023).

J-MM has settled scores of other mesothelioma victims' lawsuits. *E.g.*, FAC ¶¶ 130, 149.

## II. J-MM's Recycled Allegations Carried Forward From The Original Complaint.

On May 10, 2024, J-MM filed an 89-page complaint against SHC and eight of its lawyers and employees. Dkt. 1. Most of the original allegations reappear in the amended complaint. *See generally* FAC. Stripped of J-MM's general gripes about asbestos litigation, unsupported assertions about the safety of asbestos-cement pipe, and recitation of old allegations against other firms that have no connection to any of the parties here, J-MM alleged then, as it does now, that:

- All named individual and entity defendants were part of an association-in-fact RICO enterprise. FAC ¶ 249.

- SHC, in building cases for mesothelioma victims, attempted to identify "solvent companies" and products "relevan[t] to the type of work done by plaintiff." *Id.* ¶¶ 101, 103.

- SHC attorneys endeavored to file in jurisdictions favorable to its clients. *Id.* ¶ 102.

- Plaintiffs in SHC-initiated suits identified J-MM's asbestos-cement pipe as a source of their

---

[2] Juries are not alone in recognizing the asbestos crisis and its impact on those exposed to it. *See, e.g.*, The Fairness in Asbestos Injury Resolution Act of 2005, S. Rep. No. 109-97, at 4 (2005) (noting that "[t]he asbestos crisis has been considered by the Congress for decades").

exposure, *id.* ¶ 122—unsurprising in lawsuits naming J-MM as a defendant.

- Plaintiffs' descriptions of asbestos-cement pipe with which they worked—smooth and gray, with stenciling—were consistent across SHC's cases. *Id.* ¶¶ 174–75.

- Some plaintiffs in SHC-initiated suits against J-MM recalled only "vague details about work history, job sites, and co-workers." *Id.* ¶ 111; *see also id.* ¶ 135. (In the amended complaint, J-MM acknowledges that this is because the asbestos exposure at issue occurred approximately 30 to 40 years ago and "memories fade." *Id.* ¶ 65.)

- Some witnesses gave inconsistent testimony. *Id.* ¶¶ 128–29.

- A J-MM customer denied allowing power saw usage with asbestos cement pipe; from this, J-MM concludes that SHC's client intentionally lied about exposure. *Id.* ¶¶ 151–54.

- SHC's clients were often deposed within a few months of complaints being filed. *Id.* ¶ 121.

From these unremarkable factual allegations, J-MM concludes without any factual support that SHC must have "scripted" its clients' testimony, purportedly suborning perjury. *Id.* ¶¶ 8, 12, 120–66, 170–82. And for this, J-MM seeks compensation for money it has spent in connection with the allegedly fraudulent claims: defense costs, satisfaction of judgments, and settlements. *Id.* ¶¶ 245, 256. J-MM also seeks an injunction precluding SHC from suing J-MM in the future.

Both of J-MM's complaints describe five cases (out of allegedly 430 brought on behalf of SHC clients) that it alleges were tainted: *Bretado*, *Carranza*, *Perkins*, *Yates*, and *Montgomery*. *Id.* ¶¶ 12, 120–66. Both complaints also cite allegedly suspect testimony from another five cases without describing them: *Azevedo*, *Boyance*, *Morgan*, *Noll*, and *Swiger*. *Id.* ¶¶ 173–85. (For the Court's convenience, salient information about these 10 cases is listed in Exhibit A attached hereto.) J-MM's complaints name eight of the same Individual Defendants (all SHC employees at the relevant times), while failing to adequately allege wrongful conduct by any of them.[3]

Nicholas Angelides and Amy Garrett still are not alleged to have engaged in any conduct in connection with the 10 cases listed in the amended complaint. Suvir Dhar, a now former SHC

---

[3] As explained below, J-MM now also names John Simmons, the founder of SHC, as a defendant.

attorney, still is alleged to have not stopped the filing of a complaint in *Carranza* with incorrect information, and to have presented a witness for a deposition in that case. *Id.* ¶¶ 21, 32, 132–39. Deborah Rosenthal is alleged to have filed a summary judgment brief with incorrect information in *Carranza* and sent "threatening letters and emails" disputing J-MM's assertions and positions in *Yates* and *Montgomery*. *Id.* ¶¶ 150, 153, 165, 215. Stan Jones (a non-attorney investigator) allegedly assisted with translation during depositions in *Bretado* and *Carranza*. *Id.* ¶¶ 121 n.84, 134. Perry Browder allegedly sent letters with settlement paperwork and requested dismissal stipulations in *Bretado*, *Perkins*, *Azevedo*, and *Boyance*. *Id.* ¶ 228. Benjamin Goldstein allegedly did the same in *Perkins* and *Azevedo*. *Id.* And Crystal Foley allegedly signed and served papers containing false information in *Bretado*, *Carranza*, and *Yates*. *Id.*[4]

J-MM continues to tout an imaginary "Fraud Playbook" that purportedly guided Defendants' conduct. *Id.* ¶¶ 12, 97–98, 114. But both the original and amended complaints fail to describe any specific contents of any playbook, nor do they allege that any defendant ever possessed any playbook or guide for litigating asbestos cases. The so-called playbook is instead based on decades-old allegations about the conduct of *entirely unrelated* law firms. *See, e.g.*, *id.* ¶¶ 70, 72 (citing the "Baron & Budd memorandum," authored by a law firm unconnected to SHC, and cases filed by manufacturer Garlock Sealing Technologies, in which Garlock, with full knowledge of relevant facts, declined to include SHC among the many firms it sued).[5]

J-MM also invokes in both complaints former SHC attorney Scott Peebles's unproven and unverified sealed allegations in his employment case against the firm. *See, e.g.*, *id.* ¶¶ 11, 24, 36.

---

[4] For this motion, Defendants accept as true J-MM's well-pled and reasonable allegations, but not "rank speculation." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020).

[5] The claims against Baron & Budd that J-MM references were dismissed. *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 538–39 (S.D.N.Y. 2002); 2004 WL 1277870, at *3 (S.D.N.Y. June 10, 2004).

Peebles alleged that he was unlawfully terminated for, among other alleged reasons, refusing to participate in unspecified actions he believed were unethical or illegal. Request for Judicial Notice ("RJN") Ex. 10 at 1, 8–9. After the case was dismissed, J-MM sought to unseal the complaint. J-MM never obtained the complaint, however, because both the trial and appellate courts rejected J-MM's requests. J-MM claims it conducted an "investigation" of past cases involving SHC after learning of Peebles's allegations. FAC ¶¶ 35–36. Yet J-MM continues to rely on rank speculation about Peebles' complaint, *id*. ¶¶ 11, 24, 36, which Peebles himself has disclaimed. Peebles has explained that J-MM "mischaracterize[ed] . . . [his] underlying allegations" to "make[] it sound as if [he] 'blew the whistle' on some massive conspiracy to falsify evidence in asbestos cases affecting 'thousands' of people." RJN Ex. 10 at 8. According to Peebles, "there is no basis whatsoever for J-MM's exaggerated and self-serving insistence that it was the 'victim' of even one 'fraudulent case' or anything that involved 'thousands' of people." *Id.* at 8–9.

## III.    The Court's Dismissal Order.

Dismissing J-MM's original complaint, this Court held that J-MM failed to state RICO §§ 1962(c) and (d) claims. Dkt. 48. Specifically, the association-in-fact enterprise allegedly consisting of SHC, "the various professionals working in and with the Asbestos Department, including the individual [d]efendants and John and Jane Does 1–25, certain asbestos litigation plaintiffs, other witnesses represented by [SHC], and law firms that serve as co-counsel" was inadequately alleged; so too was a "law firm enterprise" consisting solely of SHC. *Id.* at 13–14.

The Court reached those conclusions after agreeing with Defendants that J-MM's allegations as to the "unnamed persons or entities [we]re sparse and conclusory." *Id.* at 16–17. And, in any event, the Court reasoned, alleged unnamed non-SHC participants—asbestos plaintiffs, witnesses, co-counsel—showed at most a "hub-and-spoke" enterprise without a "rim" enclosing the "spokes." *Id.* at 17–18. J-MM failed to allege that the unnamed clients, witnesses, or

co-counsel communicated with each other or were even aware of each other's existence, or that they "acted in their discrete litigation to benefit others in the other litigations as opposed to just themselves. *Id.* at 18. J-MM "simply tack[ed] on entities to the enterprise which do not operate as a 'continuing unit'" *Id.* The Court rejected J-MM's argument that those tacked-on entities saved the defendant RICO "persons" from being "equivalent or coextensive with the [enterprise]" and found no "enterprise separate and distinct from the RICO person defendants." *Id*. at 14, 19.

The Court found no need to reach any of Defendants' other arguments directed to J-MM's RICO claims. It dismissed J-MM's state-law claims for lack of supplemental jurisdiction.

## IV.     J-MM's Amended Complaint.

On September 17, 2025, the Court permitted J-MM to amend its complaint based on J-MM's promises to, among other things, describe a new association-in-fact enterprise without tacked-on entities but with two new identified law firms (including Sokolove) plus two other unnamed firms that allegedly coordinated with SHC. Dkt. 60 at 14. The coordination, J-MM promised, would include allegations about no-poach agreements for employees and a "bounty system" with bonuses for coached testimony. *Id.* at 13.

J-MM failed to live up to its promises. The amended complaint mentions no new firms other than Sokolove, no no-poach agreements, and no bounty system. Instead, relying heavily on Sokolove's public website, public corporate filings, and public allegations in a now-dismissed lawsuit involving Sokolove, J-MM's new allegations focus on Sokolove's business model, corporate structure, and relationship with SHC, none of which is improper. J-MM adds Sokolove, along with Simmons, as defendants and participants in the alleged association-in-fact enterprise, which allegedly deceived "asbestos plaintiffs, state regulators, and defendants alike" through alleged misrepresentations about the nature of Sokolove's business, a "dubious" corporate structure with overlapping ownership and control, and fee sharing. FAC ¶¶ 4, 76.

J-MM's newly added allegations are as follows:

- Sokolove has very few practicing lawyers and serves as a lead generator for SHC and other firms, a relationship J-MM alleges was "exposed," *id.* ¶ 37, in an August 2025 Massachusetts state court complaint filed against Sokolove alleging deceptive advertising. *See generally* RJN Ex. 15. The law firm plaintiff in that case voluntarily dismissed the case with prejudice on October 30, 2025, before any court action. RJN Ex. 16.

- Sokolove referred clients to a network of outside attorneys, including SHC attorneys, in exchange for a percentage of any recovery and while maintaining joint responsibility to the client, as expressly disclosed on Sokolove's website and as permitted under applicable rules of professional conduct. FAC ¶¶ 80–83.

- Sokolove "advertise[d] that the firm's attorneys will work on client matters" and "have achieved favorable results," which, according to J-MM, was "false and misleading" even though the "truth[] [is] buried in the literal fine print of Sokolove's website." *Id.* ¶¶ 78–80.

- Sokolove's website (accurately, as J-MM does not allege otherwise) lists its LLC members, who are registered with their respective state bars under their own firms' names rather than Sokolove's. *Id.* ¶ 80. Some members' addresses correspond to SHC office locations. *Id.*

- Sokolove openly touts its expertise and resources to attract co-counsel to use its referral services, which purportedly "lay[s] bare the reality that Sokolove does not litigate its own cases" and shows that Sokolove "is falsely passing off [] outside firms' settlements and verdicts as though Sokolove achieved them." *Id.* ¶¶ 83–86.

- SHC and Sokolove have some common ownership, as John Simmons's name is on documents filed with state regulators indicating Simmons's leadership of both firms. *Id.* ¶¶ 96, 222. Public filings also indicate that some attorneys are associated with both SHC and Sokolove, such as nonparties Ricky LeBlanc, *id.* ¶ 96, and Valere Nassif, *id.* ¶ 91.

- SHC has had a business relationship with Sokolove for over a decade. *Id.* ¶¶ 96, 99.

J-MM characterizes the relationship between SHC and Sokolove as a "crucial aspect of the scheme to defraud litigation defendants" and alleges that, without it, SHC would not have as significant an inventory of cases. *Id.* ¶ 98. J-MM's apparent theory is that Defendants' so-called fraud on asbestos plaintiffs and state regulators allegedly harmed J-MM because it enabled SHC to find more asbestos victims, including through Sokolove, to represent against J-MM.

Stripped of J-MM's extreme labels, the Sokolove-related allegations describe a firm that openly and transparently discloses its ownership, which includes licensed attorneys in multiple

states, and its relationship with those attorneys, including that it has referred cases to other firms for litigation after screening those cases. Though J-MM vaguely alludes to ethical and regulatory requirements, J-MM makes no well-pled allegations (because it cannot so allege, in good faith) that Sokolove's business violates any rules of professional conduct or other regulations, or that Sokolove was involved in the specific asbestos cases referenced in the amended complaint.

## ARGUMENT

J-MM's new allegations do not cure the deficiencies that led the Court to dismiss its original complaint. The new allegations are still sparse and conclusory. They still do not show that the supposed co-conspirators "acted in their discrete litigation to benefit others in the other litigations as opposed to just themselves." Dkt. 48 at 18. They still do not suffice to plead a "continuing unit." *Id.* And they do not resolve any of the additional grounds for dismissal identified in Defendants' original motion but which the Court did not reach in its earlier dismissal order.

**I.    The *Noerr-Pennington* Doctrine Bars This Lawsuit In Its Entirety.**

The *Noerr-Pennington* doctrine is a threshold bar to J-MM's case. It prohibits disgruntled parties from using litigation to deter others' exercises of their First Amendment rights by extending First Amendment protections to parties' petitioning of the government, including courts. *See In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 910–11 (N.D. Ill. 2013). Applied here, this doctrine requires dismissal of J-MM's amended complaint with prejudice.

**A.    The *Noerr-Pennington* Doctrine Applies To Defendants' Alleged Conduct.**

Rooted in the First Amendment's speech and petitioning clauses, the *Noerr-Pennington* doctrine requires immediate dismissal of claims that chill the exercise of that right. *Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999). The doctrine—which applies to both federal and state law claims, including RICO claims, *see Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) (RICO); *Innovatio*, 921 F. Supp. 2d

10

at 911 (RICO and "state law . . . claims")—protects defendants' use of "the channels and procedures of state and federal . . . courts to advocate their causes and points of view respecting resolution of their business and economic interests." *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 511 (1972); *see Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1186 (9th Cir. 2005). Put another way, a defendant cannot be sued for the consequences of his or her litigation-related activities or statements. *Freeman*, 410 F.3d at 1185 (immunizing alleged discovery and settlement misconduct "incidental to" a petition); *Ford Motor Co. v. Knight Law Grp.*, 2025 WL 3306280, at *7 (C.D. Cal. Nov. 24, 2025) (barring claims based on both "petitions sent directly to the court in the course of litigation" and "conduct incidental to the prosecution of the suit"); *see also Navient Sols., LLC v. Lohman*, 136 F.4th 518, 525 (4th Cir. 2025) (discussing attorneys' "efforts to recruit" potential plaintiffs as "incidental conduct").

Because this case arises out of Defendants' sourcing, filing, litigating, and settling cases against J-MM, *Noerr-Pennington* requires dismissal. J-MM alleges that Defendants engaged in racketeering by falsely advertising to prospective asbestos plaintiffs, filing suits based on purportedly fabricated evidence, choosing the most favorable jurisdictions, and "maximizing" settlements. FAC. ¶¶ 101–03. The alleged racketeering occurred in five lawsuits where Defendants supposedly made false allegations against J-MM, *id.* ¶ 133, offered false testimony about J-MM's responsibility for exposure to asbestos, *id.* ¶¶ 122–23, 135, 142, 162, provided false answers in discovery, *id.* ¶¶ 128, 138, 146, 151, 156, 159, "coach[ed]" clients in depositions, *id.* ¶¶ 123, 162, 216, and induced J-MM to settle, *id.* ¶ 266.[6] *See* Ex. B (summarizing allegations). All of this

---

[6] J-MM cites five other cases in which Defendants purportedly coached witnesses to implicate J-MM products in the clients' exposure to asbestos, but J-MM does not believe the clients' testimony. *Id.* ¶¶ 173–85. As to Sokolove, the amended complaint lacks any well-pled allegations that it was involved in any of the 10 cases identified.

conduct is litigation activity or activity incident to litigation, and thus is bound up with Defendants' use of "the channels and procedures of state and federal . . . courts to advocate their [clients'] causes and points of view"—activity protected under *Noerr-Pennington*. *Cal. Motor*, 404 U.S. at 511. *See also, e.g.*, *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 853 (N.D. Ill. 2020), *aff'd*, 42 F.4th 709 (7th Cir. 2022) (barring claim based on patent infringement lawsuits and USPTO proceedings); *Rubloff Dev. Grp. v. SuperValu*, 863 F. Supp. 2d 732, 746 (N.D. Ill. 2012) (barring RICO claim based on lawsuits and zoning board activity).

Because J-MM's claims are based on Defendants' litigation activity on behalf of their clients, and thus barred by *Noerr-Pennington*, the Court should grant this motion with prejudice.

**B.     The *Noerr-Pennington* Doctrine's Narrow "Sham Exception" Does Not Apply.**

The sham exception to *Noerr-Pennington* is "extraordinarily narrow," *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chi., Inc.*, 953 F.3d 955, 963 (7th Cir. 2020), and deliberately so: the doctrine intentionally "overprotects potentially baseless petitions to ensure that First Amendment rights are not chilled," *Ford*, 2025 WL 3306280, at *12. Consistent with this high bar, courts routinely reject the exception's invocation at the motion to dismiss stage. *See Trinity Sober Living, LLC v. Vill. of Hinsdale*, 2021 WL 1057749, at *3 (N.D. Ill. Mar. 18, 2021) (Gettleman, J.) (dismissing complaint lacking allegations "that the state court lawsuit was a sham, or that its allegations were frivolous or objectively baseless"); *Humira*, 465 F. Supp. 3d at 828 n.8 (recognizing doctrine's applicability on a motion to dismiss) (collecting dismissed cases).

The sham exception applies only when (1) the litigation (or the way it was conducted) was not "genuine," both objectively and subjectively. *Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993); *see U.S. Futures*, 953 F.3d at 963 (excepting "objectively baseless" litigation brought with improper subjective intent); and (2) a defendant made knowing and intentional misrepresentations "in [an] adjudicative proceeding" that were "material, in the

12

sense that [they] actually altered the outcome of the proceeding," *id.* at 960 & n.7. J-MM can establish neither.

*First*, J-MM has not shown that the litigation was objectively baseless. Courts should find litigation to be objectively baseless "only with great reluctance." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 934 (9th Cir. 2024). Critically, litigation that succeeded or settled cannot "by definition" be objectively meritless. *Rubloff*, 863 F. Supp. 2d at 741–43. This principle proved dispositive in *Rubloff*, where the plaintiff "paid $200,000 and made significant concessions . . . to settle the suits" that formed the basis of the RICO claim. *Id.* at 743. "That settlement [was] fatal to the sham litigation argument." *Id.*; *see New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (same). The principle also is dispositive here, as J-MM voluntarily settled six of the 10 cases it cites (*Bretado*, *Perkins*, *Swiger*, *Azevedo*, *Boyance*, and *Noll*), *see* Ex. A, and expressly disclaims any desire to undo those settlements. As in *Rubloff*, this forecloses any sham exception argument.

As for the other four cases, one of them (*Morgan*) yielded an eight-figure jury verdict for SHC's (now deceased) client, *see* Ex. A, making it a "successful action" and therefore not objectively meritless as a matter of law. *Rubloff*, 863 F. Supp. 3d at 741. SHC voluntarily dismissed the remaining three (*Carranza*, *Yates*, and *Montgomery*),[7] *see* Ex. A, but the facts of these cases foreclose objective baselessness: The victims in all three cases alleged asbestos exposure at a time and in a location where J-MM sold asbestos-cement pipe or J-MM asbestos-cement pipe pre-existed in the field, and all three victims died from mesothelioma, a disease caused only by asbestos exposure. FAC ¶ 150 (Yates); *id.* ¶ 158 (Montgomery); RJN Ex. 1 ¶ 1 (Carranza). The procedural

---

[7] The reasons for the dismissals vary and are protected by the attorney-client privilege, but the known circumstances show that the dismissals were, in fact, for reasons *other than* the merits of the claims. For example, in *Yates*, the victim died before he could provide product identification testimony, and there were no other witnesses who could testify to his exposure to J-MM's products, *see* FAC ¶ 150, tragically leaving his family without any recovery.

history forecloses objective baselessness, too: J-MM declined to challenge two of the complaints, and while it initially challenged the third (*Yates*), it withdrew that challenge and answered an amended complaint without challenge before any court action. *See* FAC ¶¶ 132–39 (*Carranza*), 150–57 (*Yates*), 158–66 (*Montgomery*). *Cf. Prof'l Real Est. Invs.*, 508 U.S. at 62 ("probable cause . . . precludes a finding that [a] defendant has engaged in sham litigation"); *Swat-Fame, Inc. v. Goldstein*, 101 Cal. App. 4th 613, 626 (2002) (denial of demurrer reflects probable cause for the claim), *disapproved of on other grounds by Zamos v. Stroud*, 32 Cal. 4th 958 (2004), *and Reid v. Google, Inc.*, 50 Cal. 4th 512 (2010). And to the extent J-MM argues that voluntary dismissal constitutes an admission of objective baselessness, it would be wrong on the law. Meritorious lawsuits are unsuccessful every day.[8] Indeed, courts recognize that even adverse court rulings (much less voluntary dismissals) do not show frivolousness. *See U.S. Futures*, 953 F.3d at 966 ("[I]t does not follow that a petition lacks merit simply because it did not prevail.").

*Second*, the exception's application to fraudulent misrepresentations is inapposite. Only cases where a judicial ruling was "dependent upon the [allegedly] misrepresented information" fall outside *Noerr-Pennington*. *Mercatus Grp. LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011); *Rubloff*, 863 F. Supp. 2d at 742 (no sham exception where misrepresentations did not impact "the government's (i.e., the judge's) action"); *see also Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 403 (4th Cir. 2001) (same where "no judicial ruling was based on" misrepresentations). Here, the six cases J-MM voluntarily settled and the three SHC clients

---

[8] *See Westmoreland v. J.I. Case Co.*, 714 F. Supp. 397, 398 (E.D. Wis. 1989) (voluntary dismissal reflected "commendable decision not to continue to litigate after it became apparent that he would not be able to meet his burden of proof"); *Dean v. Riser*, 240 F.3d 505, 510 (5th Cir. 2001) ("Many circumstances may influence a plaintiff to voluntarily dismiss his claim with prejudice . . . . A plaintiff whose claim appeared meritorious at the onset may encounter various changes in his litigation posture . . . 'Decisive facts may not emerge until discovery or trial. The law may change or clarify . . . .'").

voluntarily dismissed involved no substantive judicial rulings adverse to J-MM, let alone any based on alleged misrepresentations. The sole remaining case is *Morgan*, involving a jury verdict favorable to SHC's client, but J-MM cites no factual misrepresentations made to the court in that case that could have infected the court's rulings.

J-MM cannot avoid *Noerr-Pennington*, so the Court should dismiss the case with prejudice.

## II. J-MM Fails To State A RICO Violation.

J-MM's RICO claims suffer from additional pleading defects that each independently compel dismissal. The defects are four-fold. (1) As before, J-MM does not adequately allege an enterprise. J-MM does not sufficiently allege that the Individual Defendants participated in the operation or management of the so-called Simmons Hanly Enterprise. And J-MM does not allege an association-in-fact distinct from the alleged RICO "person[s]," i.e., Defendants. (2) J-MM does not adequately allege predicate racketeering activity because ordinary litigation activities cannot constitute mail or wire fraud. (3) As to each individual current or former SHC employee named as a defendant, J-MM fails to adequately allege any pattern of mail or wire fraud. (4) J-MM's RICO claims are untimely under RICO's four-year statute of limitations. And because the substantive RICO counts must be dismissed, so too must the conspiracy count.

### A. J-MM Fails To Adequately Allege A RICO Enterprise.

A plaintiff invoking § 1962(c) must properly allege a RICO enterprise. *United Food & Comm. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). In its amended complaint, J-MM purports to identify two enterprises: (1) one in which SHC itself was the enterprise (Count I); and (2) one in which all defendants comprise an enterprise (Count II). Neither is legally sufficient. The alleged racketeering activity of the Individual Defendants in connection with first purported enterprise does not amount to operation or management of that enterprise. And the second purported enterprise is coextensive with the

15

named defendants, who were not bound by a common purpose. That means the amended complaint fails for the same reason this Court dismissed the initial complaint.

> ### 1. J-MM Fails To Allege That The Individual Defendants Participated In The Operation And Management Of The "Law Firm Enterprise."

To cure the deficiency this Court identified, J-MM subtracted SHC as a defendant from Count I and left only the Individual Defendants—but ran itself into a different problem by doing so: Count I's "legal entity" enterprise requires J-MM to adequately plead that the Individual Defendants (the sole "persons" in Count I) "'participate[d] in the *operation or management* of the enterprise itself'" through the alleged racketeering activity. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) (emphasis added). "Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice," *id.*, even if the defendant "kn[e]w[] of the enterprise's illicit nature," *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998).

J-MM's new allegations fail this test. Even setting aside that J-MM includes only superficial assertions specific to the Individual Defendants, the allegations do not demonstrate that Individual Defendants Angelides, Browder, Goldstein, Dhar, Foley, Jones, or Rosenthal were involved in directing the affairs of the alleged enterprise—the firm—*through their alleged racketeering activity*. These defendants are alleged to have engaged in mail and wire fraud, FAC ¶¶ 226–27, but that alleged racketeering activity was not "operation or management" of the alleged enterprise. For example, Angelides's name was purportedly on litigation documents containing allegedly false information. *Id*. ¶ 120. Browder and Goldstein allegedly transmitted case-specific settlement-related documents. *Id*. ¶¶ 209, 214. Dhar allegedly took steps related to filing a complaint and discovery in one case. *Id*. ¶¶ 132–39. Foley allegedly electronically filed and served pleadings and discovery in specific cases. *Id*. ¶¶ 138–39. Jones allegedly was involved in case-

specific telephonic depositions. *Id*. ¶ 134. And Rosenthal allegedly transmitted case-specific papers and conducted case-specific telephone communications. *Id*. ¶¶ 138, 152–53, 165.

Even if that constituted racketeering activity—and as explained below, it does not—such activity does not rise to the level of "operation or management" of the alleged law firm enterprise. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994) (no operation or management where defendant had "acted as no more than [an] attorney" for alleged enterprise); *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (same where attorney's "role was limited to providing legal services"); *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538–40 (3d Cir. 1993) (similar for accounting firm). J-MM does nothing more than describe the Individual Defendants' work within the law firm pursuant to their ordinary employer-employee business relationships. No matter how important these services were to SHC, alleged racketeering activity that arises only out of working for the law firm enterprise is not the same as "participat[ing] in the operation or management of the enterprise" or playing "some part in directing the enterprise's affairs" through racketeering activity. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). J-MM thus fails to allege any racketeering activity that goes beyond legal services and rises to operation or management of the law firm as the alleged enterprise.

The remaining conduct alleged—transmission of corporate filings (Simmons), chairing SHC's Asbestos Department (Angelides), and termination of Peebles and transmission of filings in connection with his lawsuit (Garrett)—do not remotely resemble mail or wire fraud or any other RICO predicate act, as discussed below. Those acts therefore cannot be grounds on which to find the "conduct" requirement of RICO met either. Count I should be dismissed.

> **2.    J-MM Fails To Allege An Association-In-Fact Enterprise Distinct From Defendants Where Enterprise Participants Shared A Common Purpose.**

Count II should be dismissed as well. J-MM attempts to plead an association-in-fact

17

enterprise consisting of all defendants, but the new allegations do not satisfy RICO's distinctness and common purpose requirements for precisely the same reason this Court dismissed the RICO claims in *Ratfield v. United States Drug Testing Lab'ys, Inc.*, 2024 WL 640955 (N.D. Ill. Feb. 15, 2024) (Gettleman, J.), *aff'd*, 140 F.4th 849 (7th Cir. 2025).

In *Ratfield*, the plaintiffs alleged that defendants United States' Drug Testing Laboratories ("USDTL"), USDTL's president, and USDTL's COO, along with a separate company Choice Labs Services ("CLS") and its owners, formed a RICO enterprise. 2024 WL 640955, at *1–3. This Court emphasized that a RICO plaintiff must identify a "person" as the defendant, as distinct from the enterprise itself. *Id.* at *3. The *Ratfield* plaintiffs failed to do that, identifying USDTL, its president, and its COO as the RICO "persons" and alleging that together they were the RICO enterprise. In dismissing the RICO claims, this Court explained there could not be an "enterprise" because an association of USDTL, its president, and its COO "is not distinct from the RICO persons." *Id.* (discussing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).

The same is true here. The alleged enterprise includes all defendants, or persons. There is no defendant as distinct from the enterprise, as reflected in J-MM's own allegations. As in *Ratfield*, J-MM alleges no distinction between the members of the enterprise and the Individual Defendants.

In *Ratfield*, the plaintiffs attempted to cure the deficiency by alleging in their second amended complaint that CLS and its owners were also part of the enterprise. J-MM has done something similar here. In its amended complaint, J-MM now includes Sokolove as a member of the alleged enterprise in addition to naming it as a defendant. But as in *Ratfield*, the allegations of the role of the new participant amount to nothing more than "a standard commercial relationship," and in any event, do not establish that Sokolove was "conducting the affairs of the alleged enterprise as opposed to [its] own affairs." *Ratfield*, 2024 WL 640955, at *3 (dismissing second

18

amended complaint because allegations as to CLS and its owners did not suffice to show a RICO enterprise). J-MM characterizes Sokolove as generating leads for and making referrals to SHC so as to provide SHC an inventory of cases, but a referral arrangement alone is not evidence of an enterprise. *See Green v. Morningstar, Inc.*, 2018 WL 1378176, at \*5 (N.D. Ill. Mar. 16, 2018) (allegations that corporate defendants were organized to procure revenue-sharing payments not sufficient to state a claim). And there are no allegations that, if true, show anything but a longstanding, ordinary referral relationship among firms expressly permitted under governing ethical rules, *see* ABA Model Rule 1.5, or that SHC-Sokolove referral arrangement benefited a distinct enterprise as opposed to SHC or Sokolove individually. *See id.*

This Court also should reject J-MM's attempt to cast Defendants' activities involving Sokolove as constituting a RICO enterprise, where J-MM has done nothing more than allege (inadequately) that the activities themselves were fraudulent. RICO requires not only a common purpose but that the purpose is "separate from the predicate acts themselves." *Green*, 2018 WL 1378176, at \*5; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (no association-in-fact enterprise where complaint "allege[d] no more than that Defendants' primary business activity . . . was conducted fraudulently"). J-MM uses a conclusory "common purpose" label to describe its alleged enterprise, *see* FAC ¶¶ 221, 232, 251, but again, the few concrete allegations show only a routine co-counsel and/or fee-sharing relationship between Sokolove and SHC, where Sokolove sources and refers cases to SHC and the Individual Defendants litigate the cases—each case with different attorneys and clients[9]—allegedly fraudulently. J-MM's real gripe appears to be with Model Rule

---

[9] The lack of consistency or overlap in the individuals involved in each of the allegedly fraudulent cases itself also shows a lack of a common purpose. *See Rao v. BP Prods. N. Am., Inc.*, 589 F.3d

1.5's permitting fee sharing among different firms for case referrals.

The district court in *Ford* just two months ago resoundingly rejected an almost identical enterprise theory in an auto manufacturer's case against plaintiffs' firms and their individual lawyers. In *Ford*, lawyers co-counseling on cases allegedly filed fraudulent fee petitions in Lemon Law cases, where the auto manufacturer's alleged harm was from inflated fees. 2025 WL 3306280, at *1–2. While crediting allegations that the lawyers "back-dated their billing," "failed to record time contemporaneously," and engaged in "reprehensible practices," the court found the allegations to "lack an indication that the parties came together *for the purpose of* fraudulently inflating their billing," rather than to "bring[] . . . cases" while "utiliz[ing] poor billing practices in doing so." *Id*. at *14. J-MM's conclusory allegation "[t]he racketeering acts were committed for a common purpose: to further the scheme to defraud," FAC ¶ 232, is not enough to "turn an ordinary business relationship into a RICO enterprise," *Ford*, 2025 WL 3306280, at *15. Count II should therefore be dismissed with prejudice.

### B. J-MM Does Not Adequately Allege Any Racketeering Activity.

J-MM's RICO claim must be dismissed with prejudice for the additional reason that, as to all but Simmons and Sokolove, J-MM's mail and wire fraud allegations are based solely on alleged use of mail and wires in connection with litigation: filing documents, serving discovery responses, participating in virtual depositions, and discussing settlement. Courts have held time and again that even fraudulent mailings and wirings in furtherance of litigation cannot be RICO predicate acts, as a matter of law. J-MM's mail and wire fraud allegations as to Simmons and Sokolove are even more deficient. J-MM admits that express disclosures on Sokolove's website explain how it refers cases to other attorneys to litigate, FAC ¶ 80, which defeats any suggestion of fraud. And

---

389, 400 (7th Cir. 2009) (allegations of "different actors for each event" did "not suggest a group of persons acting together for a common purpose or course of conduct").

J-MM names Simmons only because certain (accurate) corporate filings for nonparty Sokolove Law, LLP bear his name.

Without adequately alleged racketeering activity, J-MM's RICO claims must be dismissed.

### 1. Use Of Mail And Wires In Connection With Litigation Cannot Constitute Racketeering Activity.

Putting aside J-MM's irrelevant grievances about asbestos litigation, the alleged misconduct is straightforward: Defendants purportedly filed meritless cases against J-MM and used the mail or wires to prosecute them. This alleged misconduct is not racketeering activity.

Myriad courts have rejected attempts to cast ordinary litigation activities, even if baseless or malicious, as RICO predicate acts. *See Kim v. Kimm.*, 884 F.3d 98, 104 (2d Cir. 2018) (citing appellate decisions nationwide, all agreeing that "[i]n the absence of corruption," litigation activity "cannot act as a predicate offense for a civil-RICO claim").[10] That includes rejecting as a RICO predicate act the alleged "filing and prosecuting a complaint" with false documents, *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013); filing lawsuits to enforce an allegedly illegally obtained copyright, *Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, *3–4 (N.D. Ill. July 7, 1994); serving false "litigation documents," *U.S. v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (collecting cases); and making "false statements to [a] [c]ourt with the intent to coerce [a] plaintiff into settling," *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 69 (E.D.N.Y. 2020). Courts are uniformly "unwilling to expand RICO liability for mail fraud in such a dramatic fashion as to include litigation papers and pre-litigation statements of

---

[10] For a sampling of courts that agree, see, e.g., *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087–88 (11th Cir. 2004) (rejecting "alleged conspiracy to extort money through the filing of malicious lawsuits" as RICO predicates); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (rejecting meritless litigation as RICO predicate); *Gabovitch v. Shear*, 70 F.3d 1252 (unpublished table decision), 1995 WL 697319, at *2 (1st Cir. Nov. 21, 1995) (same, even where allegations included "proffering false affidavits and testimony to [a] state court").

legal position." *Nolan v. Galaxy Sci. Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003).

The district court in *Paul S. Mullin & Associates, Inc. v. Bassett* summarized the issue well when it "f[ound] absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud" and that "[i]f such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation." 632 F. Supp. 532, 540 (D. Del. 1986) (citing *Spiegel v. Cont'l Ill. Nat. Bank*, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir. 1986)). "Such activity simply is not fraudulent." *Id.* Holding otherwise "would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation" and "as it did here, give birth to collateral suits." *Spiegel*, 609 F. Supp. at 1089. It also "would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." *Kim*, 884 F.3d at 104; *see also Azima v. Dechert LLP*, 2024 WL 4665106, *19 (S.D.N.Y. Sept. 26, 2024) (explaining policy reasons supporting *Kim* rule); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014) ("[r]ecognizing . . . litigation as a predicate RICO act" would "chill[] parties' resort to the judicial system to resolve their disputes"); *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017) (the "path to relief" against "lawyers who foment frivolous litigation" "is not through RICO"). "[A] civil RICO action . . . is not the appropriate mechanism to seek redress for false statements made in court filings by a litigation adversary."[11] *Azima*, 2024 WL 4655106, at *19.

---

[11] Before initiating this lawsuit, J-MM never attempted to seek relief through more appropriate means, such as "lodg[ing] a complaint with the appropriate disciplinary body," "apply[ing] to the court for assistance," or seeking sanctions or other relief in the handful of asbestos cases it claims were fraudulent or improper. *See* FAC ¶ 233. J-MM instead waited years after the cases were

The Second Circuit's decision in *Kim* is a compelling illustration of this rule. A restaurant owner and operator sued a lawyer for trademark violations and breach of contract. 884 F.3d at 101. The lawyer prevailed on summary judgment on some claims, with other claims dismissed by agreement. *Id.* The lawyer then filed a RICO lawsuit against the owner and operator, alleging they were "members of two criminal enterprises that conspired to sue him for trademark infringement and breach of contract" and knowingly submitted false affidavits to "extort $2 million from him." *Id.* at 101–03. The district court dismissed, and the Second Circuit affirmed, joining the First, Fifth, Tenth, and Eleventh Circuits in holding that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Id.* at 104.

The same rationale undermines J-MM's claims. J-MM alleges misconduct solely through litigation activities, which courts consistently hold are not predicate acts even if false statements are alleged. Indeed, the allegations here are far more benign than the false affidavits in *Kim*, as the underlying asbestos cases here involved conflicting evidence, imperfect memories about decades-earlier events, and/or witnesses with good memories. For example, J-MM criticizes "implausibl[e] testi[mony]" in Bretado's recollection of asbestos-cement pipe distributors, and the "remarkable level of detail about the [asbestos-cement pipe]." FAC ¶¶ 122–28. J-MM also takes issue with the "familiar pattern" the deposition in *Carranza* allegedly followed, the contents of "five interrogatory responses" served in *Carranza*, the written discovery responses in *Perkins* and *Yates*, and purported contradictions by a witness in *Yates*. *Id.* ¶¶ 135–38, 145–48, 152–55.[12] And it claims

---

concluded and then improperly leapt straight to a federal RICO claim. *See Spiegel*, 609 F. Supp. at 1088 (quoting earlier ruling).

[12] J-MM implies that because Yates allegedly worked with J-MM asbestos-cement pipe after J-MM "had stopped supplying [asbestos-cement pipe]," FAC ¶ 152, Defendants should have known Yates's allegations to be false. But J-MM admits that "thousands of miles of [asbestos-cement pipe]" remain in use today. *Id.* ¶ 49.

inconsistencies in *Montgomery* regarding the victim's work history and social security records. *Id.* ¶¶ 158–64. In J-MM's view, the plaintiffs are making it up.

J-MM's complaints boil down to routine evidentiary disputes and criticisms about conduct during long-concluded litigation that J-MM could have raised contemporaneously. Indeed, in many instances, J-MM *did* contemporaneously develop and advance what it highlights here as counterevidence. *See, e.g.*, FAC ¶ 127 (discussing deposition of family members of alleged employers to rebut Bretado's testimony), ¶ 133 (deposition of Carranza's employer); ¶¶ 142–43 (deposition of Perkins), ¶ 154 (discussing evidence from discovery purportedly contradicting Yates' claims), ¶¶ 162–63 (discussing admission from *Montgomery* product identification witness). J-MM cannot relitigate these evidentiary disputes and criticisms now through a RICO claim simply because it is dissatisfied with the results of earlier court cases.

### 2. J-MM Fails To Sufficiently Allege Any Pattern Of Racketeering Activity As To The Individual Defendants.

J-MM's RICO claims against the Individual Defendants also fail due to J-MM's lack of particularity in pleading the alleged fraud, the mailings or wirings they purportedly sent in furtherance of the scheme, or the pattern of racketeering activity in which they allegedly engaged.

Rule 9(b) requires a plaintiff alleging fraud to identify with particularity the "who, what, when, where, and how: the first paragraph of any newspaper story of the alleged fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). In the context of racketeering based on mail or wire fraud, the plaintiff also must describe with particularity the *pattern* of racketeering activity in which *each defendant* is alleged to have engaged. *See Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 689 (N.D. Ill. 2012). Plus, RICO liability requires two more things: that each defendant "personally committed at least two predicate acts of racketeering," *Dudley Enters., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 502 (N.D. Ill. 1993), and where those acts are mail and wire fraud, the

falsehood in question was material, *Neder v. U.S.*, 527 U.S. 1, 22 (1999).[13]

J-MM's allegations fall far short. In addition to the legal defects identified above, the amended complaint's conclusory, barebones allegations against the Individual Defendants do not come close to showing *material* falsehoods given that J-MM repeatedly describes its contemporaneous disbelief of them and its contemporaneous efforts to disprove them. *See supra* at 23–24.[14] Nor do they show a pattern of mail and/or wire fraud *by any of them individually*.[15]

**Nicholas Angelides**. Angelides is allegedly the "Chair of the firm's Asbestos Department" and "'directed the legal strategy of all of the firm's asbestos and mesothelioma cases' since 2012." FAC ¶ 17. Though J-MM asserts that Angelides was "responsible for developing" the "playbook," *id.* ¶ 207, and was "the brainchild of 'the legal strategy[,]'" *id.* ¶ 205, it offers no specific facts to support those sweeping conclusions. J-MM says Angelides was included on the signature blocks of—but was not the signer of—some documents containing allegedly false information, but cites no mailings or wires in which Angelides allegedly was involved, or when they occurred. And it does not identify any misrepresentations Angelides himself allegedly made, let alone the who, what, where, and when of those unalleged misrepresentations.

**Perry Browder**. The allegations against Browder are likewise deficient. J-MM generically alleges that Browder is "part of the firm's leadership team[,]" *id.* ¶ 18, "engaged in decision-making, oversight and predicate acts," *id.* ¶ 30, "overs[aw] the operation of the enterprise to ensure

---

[13] *See also infra* at 34–35 (discussing materiality and reliance in connection with common-law fraud claim).

[14] J-MM complains of harm from Defendants' alleged fraud on third parties, such as state regulators and asbestos plaintiffs. FAC ¶¶ 77–95. J-MM fails to allege materiality from the perspectives of those third parties, but in any event, the Supreme Court has rejected allegations of RICO injuries based on fraud on third parties as too attenuated. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006); *see also Ratfield*, 140 F.4th at 853 (rejecting alleged misrepresentations to others regarding efficacy of drug tests).

[15] Attached as Ex. B is a chart summarizing J-MM's allegations against the Individual Defendants.

that it maximizes results," *id.* ¶ 204, "signed the settlement paperwork" in *Bretado*, *id.* ¶ 209, was "involved" in the settlement of *Perkins*, *id.*, and is "effectively Angelides'[s] deputy and a leader within the RICO enterprise," *id.* ¶ 208. Browder also allegedly sent letters with "settlement paperwork and requesting stipulation of dismissal paperwork" in *Bretado*, *Perkins*, *Azevedo*, and *Boyance*. *Id.* ¶ 228. Aside from these general allegations and boilerplate descriptions of case communications, J-MM does not identify with the specificity Rule 9(b) requires how those communications were fraudulent, connected to, or in furtherance of the alleged scheme.

**Suvir Dhar**. Dhar, now a former SHC attorney, *see* FAC ¶ 21, allegedly engaged in conduct related only to the *Carranza* case, *id.* ¶¶ 132–39. J-MM does not allege that Dhar used or agreed to use any interstate mail or wires other than presenting Carranza's brother for a multi-day telephonic deposition and examining him, during which the brother allegedly gave false testimony. *Id.* ¶¶ 134–35. J-MM offers only a generic description of that testimony, without identifying with particularity what Carranza's brother said during the deposition or why the testimony was allegedly wrong (or that Dhar knew it was false). Moreover, J-MM alleges no *pattern* of mail or wire fraud by Dhar. Dhar is alleged to have taken a *single* deposition of a *single* witness in a *single* case, which even though it spanned multiple days, lacks the continuity required of a pattern. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 827–28 (7th Cir. 2016).

**Crystal Foley**. Foley allegedly signed and served or filed litigation documents—pleadings and written discovery responses—purportedly containing false information in four lawsuits. FAC ¶ 228. But J-MM's allegations as to the supposedly false information in the documents lack particularity. The amended complaint labels as "false" the "exposure information" and "work history" from these cases but does not provide any detail beyond J-MM's naked assertions, such as *what* about the information or history is supposedly false.

**Amy Garrett**. Garrett is not alleged to have used or agreed to use interstate mail and/or wires in connection with any litigation against J-MM. The allegations specific to her relate only to her terminating former SHC attorney Peebles, *id.* ¶ 212, her participation in the *Peebles* lawsuit, and more generically, how she allegedly "acted to ensure that the scheme was not exposed," *id.* ¶ 211. J-MM alleges Garrett used mail or wires in connection with court filings in *Peebles*, but does not specify the contents of those filings, let alone how they were allegedly fraudulent or how any purported fraud in a dispute over the termination of a firm employee was connected to any other alleged racketeering activity involving asbestos lawsuits against J-MM.

**Benjamin Goldstein**. Goldstein is generically alleged to have been "involved" in *Bretado*, *Carranza*, *Yates*, and *Montgomery*, and *Morgan*, *id.* ¶ 214, and, specifically, in the dismissal of *Carranza*, *id.* ¶ 139, *Perkins*, *id.* ¶ 228, and *Azevedo*, *id.* His only alleged use of mail or wires is a single "[e]mail" re "settlement demands in *Azevedo* and *Perkins*." *Id.* J-MM does not allege that the email contained false information—or anything else about the contents of the email—and J-MM provides no details from which the Court can infer a connection between that email and any alleged scheme to defraud or pattern of racketeering, as Rule 9(b) requires.[16]

**Stan Jones**. Jones was a SHC case investigator, *id.* ¶ 24, and his alleged conduct is limited to participating in depositions and assisting with translation in *Bretado* and *Carranza*, *id.* ¶¶ 121 n.84, 134. Beyond that, J-MM makes only vague and generic allegations on information and belief that "Jones helped manufacture [] testimony and 'evidence'" and "assisted in the coaching of SHC represented witnesses both before and during key depositions," such as in *Carranza*. *Id.* ¶¶ 216–17. J-MM does not identify the nature of the alleged false evidence or Jones's purported role in

---

[16] Goldstein's alleged participation in "retaliatory conduct," *id.* ¶ 214, against Mr. Peebles is irrelevant. J-MM does not attempt to demonstrate how that alleged conduct—which has nothing to do with the asbestos cases filed against J-MM—constitutes racketeering activity.

securing it, much less a pattern of fraud described with particularity.

**Deborah Rosenthal**. J-MM baldly alleges Rosenthal's "involve[ment] in some of [SHC]'s cases involving egregious misconduct[,]" *id.* ¶ 23, but this, too, lacks substance. Rosenthal was allegedly involved in filing a summary judgment brief in *Carranza*, but J-MM does not state with specificity her role in preparing the brief, or its contents. *Id.* ¶ 138. J-MM alleges that Rosenthal "attempt[ed] [to] intimidat[e]" an unnamed agent of J-MM when discussing J-MM's demurrer (California's version of a motion to dismiss) in *Yates*, *id.* ¶ 152–53,[17] and that Rosenthal in a letter to J-MM "vigorously resisted" discovery and opposed a motion to compel on an unspecified date in *Montgomery*, *id.* ¶¶ 165, 199, but does not identify what Rosenthal did to allegedly "intimidate" J-MM nor how arguments she made in routine motion practice were fraudulent.

**John Simmons**. J-MM points to no direct, or even indirect, involvement of Simmons in any of the asbestos cases referenced in the amended complaint. The only alleged use of mail or wires by Simmons is the transmission of corporate filings for a nonparty, *e.g.*, *id.* ¶¶ 93, 228, which J-MM cannot claim were false and deceptive and thus could not have constituted fraud.[18]

### C. J-MM's RICO Claims Are Time Barred.

J-MM's RICO claims also are time-barred, providing a separate and independent ground to dismiss them. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) (permitting dismissal of untimely claims on the pleadings if plain from the complaint).

Civil RICO claims carry a four-year statute of limitations that "begins to run when the

---

[17] J-MM does not allege the medium by which this conference took place, but for purposes of this motion only, Defendants assume that it was by telephone or video.

[18] The "John and Jane Doe" defendants serve no legitimate purpose and are not the subject of any genuine allegations of fact. "[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Demouchette v. Sheriff of Cook Cnty.*, 2011 WL 1378712, at *2 (N.D. Ill. Apr. 12, 2011). The Court thus should dismiss the "Doe" defendants.

plaintiffs discover, or should, if diligent, have discovered, that they had been injured by the defendants." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). The Seventh Circuit has explained that "the injury arising from the first predicate act to injure the plaintiff" starts the limitations period, "rather than the injury from the last predicate act, which might occur decades after the first." *Hayden*, 610 F.3d at 386–87. A plaintiff need not know it has "been injured by a RICO violation" or "a pattern of racketeering activity" for the period to begin running, *id.* at 387—it need only know of the "harm itself," *Cancer Found.*, 559 F.3d at 674.

Under these well-established rules, J-MM's RICO claims are time-barred. J-MM claims it was injured when it was first forced to incur attorneys' fees "defending against" "sham" cases and "induced" to settle other cases. FAC ¶¶ 3, 234. Nine of the 10 asbestos cases J-MM mentions were litigated (and many resolved) well before May 10, 2020 (i.e., four years before the initial Complaint was filed). For example, *Carranza* was filed in 2018 and voluntarily dismissed in March 2020. *Id.* ¶¶ 132–39. *Bretado* was settled in August 2019. *Id.* ¶ 130; Ex. A. The jury in *Morgan* returned a verdict adverse to J-MM in November 2018. *See* Ex. A. J-MM also allegedly began incurring "fees and costs" "defending against" other cases filed by SHC well before May 2020. *Perkins*, *Yates*, *Swiger*, *Azevado*, and *Boyance* were filed in 2019. *Id. Noll* was filed in February 2013, the complained-of deposition in that case was in April 2013, and J-MM settled the case in November 2013. FAC ¶¶ 174–75; RJN Ex. 8; Ex. A. In other words, based on J-MM's theory of injury, J-MM was harmed as early as 2013 when it took the deposition in *Noll*, *see* FAC ¶¶ 174–75, and the limitations period expired as early as a decade before J-MM filed this case.

*Montgomery* was filed after the others, in 2021, but later acts in furtherance of a common scheme do not create a "new" claim with a new cause of action within the limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187–90 (1997) (rejecting application of "last predicate act" rule

to civil RICO claims). A new cause of action accrues only when there is a *new* instance of wrongful conduct that causes a new injury. *See McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992). By contrast, "new" injuries that flow from the same scheme do not generally restart the statute of limitations. *Grimmet v. Brown*, 75 F.3d 506, 513 (9th Cir. 1996); *Simmons v. Reich*, 2021 WL 5023354, at *3 (2d Cir. 2021) (same); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59–60 (2d Cir. 1998) (same); *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71–72 (9th Cir. 1979) (similar as to acts in furtherance of a single conspiracy).

Here, J-MM's own theory of this RICO case is that *Montgomery* is part of a single, long-standing scheme and not "new" misconduct that would support a separate claim. J-MM alleges that SHC has "filed hundreds of cases against [J-MM]," all of which have employed "a coordinated, well-developed, and long-running strategy that involves evidence suppression, shifting narratives and fraud." FAC ¶ 3. According to J-MM, each case followed a "Fraud Playbook" and were part of a "persistent pattern" that J-MM has been aware of for decades, but did nothing about until now. *Id.* ¶¶ 97, 233.[19] In other words, if J-MM's allegations were true, the cases were part of a common scheme, with new cases being "clearly derivative" of the earlier strategy and not "new and independent" injuries. *Simmons*, 2021 WL 5023354, at *3.

J-MM's introduction of Sokolove does nothing to save its claim. Even if Sokolove's conduct somehow violates RICO—and as explained above, it plainly does not—weaving

---

[19] J-MM's general counsel, Frank Fletcher, stated in open court in 2021 that "for as long as I've been part of J-M and looking at our history, all [SHC's] cases follow their same highly unusual patterns . . . the two most notable examples are [*Bretado*, filed in 2018] and Carranza [filed in 2018] . . . and the facts are always unbelievable." RJN Ex. 11 at 3. Fletcher later criticized J-MM's own defense counsel in its legal malpractice case against that counsel described above for not being "prepared for the well-established patterns and practices of the Simmons Firm" RJN Ex. 12 at 16. Fletcher has said the same about other plaintiffs' firms. For example, attacking Maune Raichle Hartley French & Mudd, Fletcher asserted that "fraud in asbestos litigation" consisting of "made-up testimony" has been known for "about 25 years." RJN Ex. 14 at 11.

additional entities into its narrative does not change the nature of J-MM's alleged injury or that J-MM has long believed it is a victim of an alleged scheme by Defendants. And while J-MM says a recent lawsuit "exposed" information about Sokolove, *see* FAC ¶ 37, Sokolove's relationship with SHC has been publicly known for decades. *See* RJN Ex. 17 (2011 article referring to "John Simmons approach[ing] Jim Sokolove a decade ago to work together"); RJN Ex. 18 (2017 article referring to SHC's "long-standing relationship" with "Sokolove Law to handle marketing and case generation"). Indeed, even J-MM admits that "the two law firms have been financially intertwined for more than five years" and "shared a longstanding marketing relationship for over a decade." FAC ¶ 222. J-MM cannot revive the statute of limitations with colorful new labels on stale facts.[20]

### D. J-MM Cannot State A RICO § 1962(d) Claim.

In dismissing J-MM's initial complaint, this Court explained that "[b]ecause [J-MM] fails to adequately allege an enterprise that would establish a violation of section 1962(c), [J-MM] also cannot state a claim for conspiracy under section 1962(d) based on those same facts." Dkt. 48 at 19. That remains true as to both the defective enterprise allegations and the RICO allegations more broadly. *See Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 791 (N.D. Ill. 2015) (§ 1962(d) claim "based on the same nucleus of operative facts [as defective § 1962(c) claim] fails as well.").

### III. J-MM's State Law Claims Also Must Be Dismissed.

### A. Because J-MM's RICO Claims Fail, This Court Should Decline To Exercise Supplemental Jurisdiction Over J-MM's State Law Claims.

If this Court does not dismiss J-MM's pendent state law claims under *Noerr-Pennington* or California's anti-SLAPP law, it should decline to exercise jurisdiction over them.

---

[20] Even if this Court were to find some claims to be based on events within the four-year limitations period, the claims based on *Bretado*, *Carranza*, *Yates*, *Swiger*, *Azevedo*, *Boyance*, *Noll*, and *Morgan* are time-barred, as they are expressly based on events (e.g., depositions or filings) that took place more than four years before the filing of the initial complaint.

The only basis J-MM invokes for this Court's jurisdiction over Counts IV–VI, which "all are based on the same underlying facts and involve all of the same parties," is supplemental jurisdiction under 28 U.S.C. § 1367(a). FAC ¶ 28. But because J-MM's RICO claims must be dismissed, "the sole basis for invoking federal jurisdiction is nonexistent and [this] [C]ourt[] should not exercise supplemental jurisdiction over [J-MM]'s remaining state law claims." *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003) (recognizing rule in favor of relinquishing jurisdiction over pendent state-law claims rather than resolving them on the merits); *see also Ratfield*, 140 F.4th at 853–54 (affirming dismissal of state law claims for lack of supplemental jurisdiction where the court dismissed RICO claims).

### B.   J-MM's State Law Claims Fail Under California Or Illinois Law.

If the Court does not dismiss J-MM's state law claims for lack of jurisdiction, it should dismiss those counts because they fail under either the substantive law of California or Illinois.

J-MM, a Delaware corporation headquartered in California, FAC ¶ 14, has not specified the source of substantive law for its common law claims. As discussed more fully in Defendants' accompanying Motion to Strike, California law should apply to the state law claims, not least because J-MM alleges that all the conduct was directed at it in California. Illinois courts use the "most significant relationship" test of the Restatement (Second) of Conflict of Laws for tort claims. *Ingersoll v. Klein*, 46 Ill. 2d 42, 45 (1970). Under that approach, "the local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, the law of Illinois should apply." *Id.* Four factors govern this analysis: (1) the injury's location; (2) where the injury-causing conduct occurred; (3) the parties' domiciles; and (4) the center of the parties' relationship. *Id.* at 47.

These factors weigh in favor of applying California law. California is the sole location of

J-MM's alleged financial injury. FAC ¶ 234. Six of the 10 cases—*Bretado*, *Carranza*, *Yates*, *Montgomery*, *Boyance*, and *Morgan*—were venued in California state court. FAC ¶¶ 120, 132, 150, 158, 174–75, 182, 185. In addition, J-MM is domiciled there,[21] as are Goldstein and Rosenthal. *Id.* ¶¶ 14, 20–23.[22] The center of the parties' relationship is, if anywhere, California.

### 1. Counts III, IV, and V Fail Under California's Litigation Privilege.

As discussed in the Motion to Strike, the scope of California's litigation privilege immunizes all litigation conduct—which is the only conduct at issue in the amended complaint. *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), *as modified* (Mar. 12, 1990). It applies to all tort claims, including fraud. *Silberg*, 50 Cal. 3d at 215 (citing *Carden v. Getzoff*, 190 Cal. App. 3d 907, 913 (1987)). And the privilege is virtually without exception, even for alleged "fraud[] . . . or perjury[]." *Silberg*, 50 Cal. 3d at 218; *Carden*, 190 Cal. App. 3d at 915.

*Engate, Inc. v. Esquire Deposition Servs., L.L.C.*, is illustrative. 331 F. Supp. 2d 673, 705 (N.D. Ill. 2004), *aff'd in part*, *rev'd in part*, 208 F. App'x 946 (Fed. Cir. 2006). There, the defendant counterclaimed for unfair competition, asserting that the plaintiff brought suit "without a scintilla of evidence" or a "good faith belief that [the plaintiff] could prevail in litigation." *Id.* The court dismissed the counterclaim, as California's litigation privilege is "an absolute privilege extended to communicative acts made in judicial proceedings, such as the filing of a complaint." *Id.* California's litigation privilege bars J-MM's state law claims here for the same reason.

### 2. J-MM Fails To State A Claim For Common Law Fraud.

J-MM fails to state a claim under state law. Its common law fraud claim (Count IV) is subject to Rule 9(b). *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 788 (N.D. Ill. 2020)

---

[21] A national corporation is domiciled where headquartered. *Taylor v. Avid Holdings, LLC*, 2010 WL 3307374, at *3 (N.D. Ill. Aug. 19, 2010).

[22] J-MM incorrectly alleges that Jones, who is located in California, is an Illinois resident. FAC ¶ 22. The mistake is not material, however, given the other reasons to apply California law.

(applying Rule 9(b) to state-law fraud claims in federal court). Yet J-MM provides only the barest of conclusory and general assertions as to the allegedly misrepresented facts. *See* FAC ¶¶ 264–76. These allegations do not satisfy Rule 9(b)'s who, what, where, when, and how requirements.

J-MM also has not alleged reliance, as both California and Illinois law require. *RePET, Inc. v. Zhao*, 2016 WL 11634745, at *3 (C.D. Cal. Sept. 2, 2016); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996). J-MM purports to identify a laundry list of misrepresentations, consisting largely of alleged false testimony and written discovery responses. *See* FAC ¶¶1227–283 (*Bretado*), 135–38 (*Carranza*), 146–47 (*Perkins*), 151–54 (*Yates*), 158–64 (*Montgomery*). But J-MM does not allege detrimental reliance on those alleged misrepresentations. To the contrary, J-MM admits that it did *not* believe, and sought to *disprove*, the alleged misrepresentations. *See, e.g.*, *id.* ¶¶ 127, 135, 137 (describing documents collected (e.g., social security and high school records) and witnesses located (e.g., employers) to contradict alleged misrepresentations).

Regardless, any purported reliance by J-MM on Defendants' alleged representations would not be "reasonable" because (1) in all cases, SHC represented an opposing party in litigation, and (2) J-MM admits distrust of all asbestos plaintiffs and knowledge of the "high-profile" fraud allegations against unrelated law firm Baron & Budd from 25 years ago. *Id.* ¶¶ 69–70. Those facts contradict any assertion that J-MM has ever lent credence to any asbestos plaintiffs' or their counsel's representations during litigation and settlement negotiations; instead, J-MM's allegations taken as a whole show that its actions were motivated by other factors, such as "the uncertainty of litigation." *Id.* ¶ 130; *Tocco v. Richman Greer Pro. Ass'n*, 553 F. App'x 473, 475–76 (6th Cir. 2013). "It is well settled rule that a party may not justifiably rely on an opposing attorney's statements made in an adversarial setting, including litigation." *Ed & F Man Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862, 868 (S.D. Tex. 2010); *see also Edelson PC v. Bandas L.*

*Firm PC*, 2018 WL 723287, at *10 (N.D. Ill. Feb. 6, 2018) (no materiality because plaintiff "agreed to pay Defendants out of a fear of economic harm" and plaintiff "certainly knew that Defendants were not acting in good faith" such that "purported misrepresentations could [not] form the basis for a federal mail or wire fraud charge"). Without reliance, there can be no fraud claim.

### 3.    J-MM Fails To Allege Unjust Enrichment And Civil Conspiracy.

"Conspiracy" is not a standalone claim in either California or Illinois. *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 861 (N.D. Cal. 2023); *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 846 (N.D. Ill. 2015). Courts in both jurisdictions also readily dismiss civil conspiracy claims where plaintiffs have failed to plead a viable RICO claim. *See, e.g.*, *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1136 (C.D. Cal. 2001); *Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436, at *10 (S.D. Cal. Dec. 8, 2020). Likewise, in California, "[u]njust enrichment is not a cause of action," it is "just a restitution claim." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011). Courts thus consistently dismiss standalone "unjust enrichment" claims. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010); *see also Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (applying Illinois law). This Court should follow suit.

### CONCLUSION

This Court already has dismissed J-MM's complaint once. J-MM's amended complaint adds only generalized speculation about SHC's open, ethical, and ordinary referral relationship with Sokolove. That does not cure any deficiencies. Referrals, common ownership, and fee sharing are not evidence of a RICO enterprise, and J-MM cannot manufacture a RICO claim by recasting ordinary litigation activities as fraudulent many years later. The amended complaint should be dismissed in its entirety with prejudice.

Dated: January 23, 2026

Respectfully submitted,

JENNER & BLOCK LLP

*/s/ John R. Storino*
John R. Storino

Reid J. Schar (6243821)
John R. Storino (6273115)
Andrianna D. Kastanek (6286554)
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
rschar@jenner.com
jstorino@jenner.com
akastanek@jenner.com

Kirsten H. Spira (admitted *pro hac vice*)
2029 Century Park East
Suite 1450
Los Angeles, CA 90067-2901
Tel: (213) 239-6900
kspira@jenner.com

Amit B. Patel (6309876)
1155 Avenue of the Americas
New York, NY 10036-2711
Tel: (212) 891-1600
apatel@jenner.com

*Counsel for Defendants*