**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

J-M MANUFACTURING COMPANY, INC.,

Plaintiff,

vs.

SIMMONS HANLY CONROY, LLP, JOHN SIMMONS, NICHOLAS ANGELIDES, PERRY BROWDER, AMY GARRETT, BENJAMIN GOLDSTEIN, SUVIR DHAR, CRYSTAL FOLEY, DEBORAH ROSENTHAL, STAN JONES, SOKOLOVE LAW, LLC, and JOHN AND JANE DOES 1-25,

Defendants.

Case No. 1:24-cv-03853
Judge Robert W. Gettleman

**ORAL ARGUMENT REQUESTED**

**OPPOSITION TO "SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16"**

## TABLE OF CONTENTS

**Page**


OPPOSITION TO MOTION TO STRIKE....................1

I. The Anti-SLAPP Motion Is Improper in Federal Court....................2

A. The Federal Rules Set the Standard for Pretrial Dismissal....................2

B. The *Shady Grove* Framework Governs....................4

C. The Anti-SLAPP Statute Directly Conflicts with Rules 12 and 56....................4

D. Five Circuits Have Rejected Anti-SLAPP Statutes in Federal Court....................7

E. The Ninth Circuit's Contrary Approach Is Increasingly Untenable. ....................7

F. Defendants' Lead Cases Are Inapposite....................9

G. Federal Courts May Not Rewrite the Anti-SLAPP Statute....................10

H. Defendants' Remaining District Court Decisions Are Unpersuasive....................11

I. Erie's Twin Aims Counsel Against Applying the Anti-SLAPP Statute....................12

J. Defendants Are Judicially Estopped from Applying the Heightened Standard....................12

K. Defendants Are Not Entitled to Attorney Fees....................13

II. Defendants' Choice-of-Law Argument Fails....................13

III. Even if the Anti-SLAPP Statute Applied, Defendants Cannot Prevail on the Merits....................14

A. Defendants Cannot Satisfy Step One....................14

B. The Litigation Privilege Does Not Bar J-MM's Claims....................16

C. J-MM Can Demonstrate a Probability of Prevailing....................17

IV. J-MM's Unjust Enrichment and Civil Conspiracy Claims Are Properly Pled....................18

CONCLUSION....................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group, LLC*,
783 F.3d 1328 (D.C. Cir. 2015) (Kavanaugh, J.) (Washington D.C.) ....7, 13

*Albright v. Christensen*,
24 F.4th 1039 (6th Cir. 2022) ....11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....3

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ....19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....3, 5, 10

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ....19

*AsymaDesign, LLC v. CBL & Associates*,
103 F.4th 1257 (7th Cir. 2024) ....1

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ....15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....3

*Benton v. Little League Baseball, Inc.*,
2020 IL App (1st) 190549 ....19

*Berk v. Choy*,
607 U.S. ___, 146 S.Ct. 546 (2026) ....1, 5, 6, 7, 8, 10

*Blevins v. Hudson*,
395 F. Supp. 2d 662 (S.D. Ohio 2004) ....16

*Carbone v. CNN, Inc.*,
910 F.3d 1345 (11th Cir. 2018) (Georgia) ....7

*Matter of Cassidy*,
892 F.2d 637 (7th Cir. 1990) ....12



108592724v1

*Chi v. Loyola Univ. Med. Ctr.*,
787 F. Supp. 2d 808 (N.D. Ill. 2011) ....................11, 14

*Chi v. Loyola University Medical Center*,
787 F. Supp. 2d 797 (N.D. Ill. 2011) ....................11

*Chicago Title Ins. Co. v. Teachers' Ret. Sys. of State of Ill.*,
2014 IL App (1st) 131452....................19

*City of Cotati v. Cashman*,
29 Cal.4th 69 (2002) ....................15

*CoreCivic, Inc. v. Candide Grp., LLC*,
46 F.4th 1136 (9th Cir. 2022) ....................9

*Doe v. Williams McCarthy, LLP*,
2017 IL App (2d) 160860 ....................16

*Ed & F Man Biofuels Ltd. v. MV FASE*,
728 F. Supp. 2d 862 (S.D. Tex. 2010) ....................18

*Flatley v. Mauro*,
39 Cal. 4th 299 (2006) ....................15

*Gopher Media LLC v. Melone*,
154 F.4th 696 (9th Cir. 2025) (en banc) ....................8

*Hanna v. Plumer*,
380 U.S. 460 (1965)....................12

*Intercon Solutions, Inc. v. Basel Action Network*,
969 F. Supp. 2d 1026 (N.D. Ill. 2013) ....................7, 9, 10, 11

*Klocke v. Watson*,
936 F.3d 240 (5th Cir. 2019) (Texas) ....................7, 13

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) ....................18

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) (California)....................7, 13

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
885 F.3d 659 (10th Cir. 2018) (New Mexico) ....................7

*Makaeff v. Trump University, LLC*,
715 F.3d 254 (9th Cir. 2013) (Kozinski, C.J., concurring)....................8

*Makaeff v. Trump University, LLC*,
736 F.3d 1180 (9th Cir. 2013) (Watford, J., dissenting from the denial of rehearing en banc) .......... 8

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002) .......... 17

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) .......... 7, 8, 9

*Osundairo v. Geragos*,
447 F. Supp. 3d 727 (N.D. Ill. 2020) .......... 11, 12

*Park v. Board of Trustees of California State University*,
2 Cal. 5th 1057 (2017) .......... 14

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
890 F.3d 828 (9th Cir. 2018) .......... 10, 17

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) .......... 16, 17

*Sandholm v. Kuecker*,
2012 IL 111443, 962 N.E.2d 418 .......... 13

*Shady Grove Orthopedic Associates, PA v. Allstate Insurance Co.*,
559 U.S. 393 (2010) .......... 1, 4, 5, 7, 8, 9, 10, 11

*Silberg v. Anderson*,
50 Cal. 3d 205 (1990) .......... 16

*Tanner v. Jupiter Realty Corp.*,
433 F.3d 913 (7th Cir. 2009) .......... 14

*Tocco v. Richman Greer Professional Ass'n*,
553 F. App'x 473 (6th Cir. 2013) .......... 18

*Trudeau v. ConsumerAffairs.com*
2011 WL 3898041, at *5 .......... 11

*Trudeau v. Consumeraffairs.com, Inc., et al.*,
2011 WL 3898041 at *5 (N.D. Ill. Sept. 6, 2011) .......... 11

*UL LLC v. Callington*,
2025 WL 2257375 (N.D. Ill. Aug. 7, 2025) .......... 9

*Wiley v. Am. Soc'y of Anesthesiologists, Inc.*,
2025 WL 2976482 (N.D. Ill. Oct. 21, 2025) .......... 9

**Statutes**


Cal. Civ. Proc. Code § 425.16 ....................1, 3, 14, 15

Cal. Civ. Proc. Code § 425.16(b)(1) ....................3

Cal. Civ. Proc. Code § 425.16(b)(2) ....................1, 3, 6

Cal. Civ. Proc. Code § 425.16(c)(1) ....................13

Cal. Civil Code § 47(b) ....................16

Citizen Participation Act, 735 ILCS 110/1, et seq. ....................13

Citizen Participation Act, 735 ILCS 110/15 ....................13

Fed. R. Civ. P. 1 ....................2

Fed. R. Civ. P. 8 ....................2, 5, 6

Fed. R. Civ. P. 8(a)(2) ....................5

Fed. R. Civ. P. 12 ....................1, 2, 3, 4, 5, 6, 7, 10, 11, 12

Fed. R. Civ. P. 12(b)(6) ....................1, 2, 3, 9, 13

Fed. R. Civ. P. 12(d) ....................3, 5, 10

Fed. R. Civ. P. 23 ....................4

Fed. R. Civ. P. 56 ....................1, 2, 3, 4, 6, 7, 10, 11, 12

Fed. R. Civ. P. 56(d) ....................3, 6

N.Y. C.P.L.R. § 901(b) ....................4


**Other Authorities**


Law360, Justices' Med Mal Ruling May Hurt Federal Anti-SLAPP Suits (Jan. 2026) ....................6

Washington Legal Foundation, Supreme Court Ruling Signals Trouble Ahead for Anti-SLAPP Statutes in Federal Court (Jan. 26, 2026) ....................6

## OPPOSITION TO MOTION TO STRIKE

Defendants have filed a purported "Special Motion to Strike Pursuant to California Code of Civil Procedure § 425.16." Dkts. 81, 82. They claim that California state-law civil procedure gives them blanket immunity from liability for "wrongful, false, unethical, or illegal" acts simply because Defendants are attorneys who committed their misconduct in the context of litigation. Dkt. 82 at 14. As Defendants would have it, attorneys who "peddled falsehoods," "improperly coached deposition witnesses," and "served false discovery responses" have merely engaged in "quintessentially protected conduct" that this Court is powerless to redress. *Id.* at 14-15. Unsurprisingly, Defendants are wrong. When lawyers abuse the public trust to enrich themselves through a fraudulent scheme, they must face the consequences.

But the Motion fails for an equally fundamental reason, which is that "federal rules govern the procedure for litigation in federal court." *AsymaDesign, LLC v. CBL & Associates*, 103 F.4th 1257, 1259 (7th Cir. 2024). The Supreme Court has made clear that when a state rule and federal rule "answer the same question," the federal rule controls and preempts the state law. *Shady Grove Orthopedic Associates, PA v. Allstate Insurance Co.*, 559 U.S. 393, 401 (2010). That is the case here. By requiring the plaintiff to show a "probability" of success, § 425.16 imposes a more demanding standard than Rule 12 or Rule 56. Similarly, by directing the court to "consider the pleadings, and supporting and opposing affidavits stating the facts" (*id.* § 425.16(b)(2)), the California procedure conflicts with Rule 12's provision that any consideration of "matters outside the pleadings" (*i.e.*, evidence, as distinct from allegations) requires conversion from a Rule 12(b)(6) motion to dismiss into a Rule 56 summary judgment motion.

This year, the Supreme Court confirmed this principle yet again in *Berk v. Choy*, 607 U.S. __, 146 S.Ct. 546 (2026), holding unanimously that a state law imposing additional evidentiary burdens beyond what the Federal Rules require at the pleading stage does not apply in federal

court. As the Court explained, Federal Rule 8 establishes a "ceiling" on what plaintiffs can be required to present about the merits of their claims, and "[t]he Federal Rules already prescribe a mechanism for putting a plaintiff to his proof: a motion for summary judgment." *Id.* at 553, 555. That reasoning applies with full force here: California's anti-SLAPP statute requires plaintiffs to demonstrate a "probability" of prevailing at the pleading stage—an evidentiary burden that has no place in federal court under Rules 8, 12, and 56.

In the alternative, if the Court disagrees on preemption, it should still deny the Motion on the merits. As shown below in Sections II through IV, Defendants' choice-of-law argument fails, their claims do not arise from protected activity, the litigation privilege does not bar J-MM's claims, and J-MM can demonstrate a probability of prevailing. Despite their attempt to do so, Defendants cannot have it both ways. They cannot take the position that this Court should rewrite the California anti-SLAPP statute to conform to Rule 12 (Dkt. 82 at 7–8), but in the same breath ask the Court to apply the heightened probability standard set forth in the original anti-SLAPP statute (Dkt. 82 at 16). Accordingly, in any event, the Motion should be denied.

## I. <u>The Anti-SLAPP Motion Is Improper in Federal Court</u>

The motion to strike is doomed at the outset because this is a federal court, whose procedures are governed by the Federal Rules of Civil Procedure. Just as they could not file a Rule 12(b)(6) motion in California court, Defendants cannot file a California Code of Civil Procedure motion to strike here—as numerous federal courts have recognized.

### A. <u>The Federal Rules Set the Standard for Pretrial Dismissal</u>

The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts," regardless of whether the substantive claims arise under federal or state law. Fed. R. Civ. P. 1. Under the Federal Rules, a plaintiff is entitled to a trial if his case meets the standards of Rules 12 and 56. On a Rule 12(b)(6) motion to dismiss, the

complaint's well-pleaded allegations are assumed to be true, and the claim survives if it is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,'" *id.*, so "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those [alleged] facts is improbable, and 'that a recovery is very remote and unlikely,'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). And a case survives Rule 56 summary judgment "if the evidence is such that a reasonable jury could return a verdict for the [plaintiff]," regardless of how probable such a verdict seems. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

California has its own California Code of Civil Procedure to govern procedure in the California state courts. In many respects that Code is similar to the Federal Rules. But § 425.16, the provision at issue here, is an exception. Section 425.16 is California's "anti-SLAPP" law. It provides that claims based on the defendant's speech or petitioning activity "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." California Code of Civil Procedure § 425.16(b)(1). By requiring the plaintiff to show a "probability" of success, § 425.16 imposes a more demanding standard than Rule 12 or Rule 56. Similarly, by directing the court to "consider the pleadings, and supporting and opposing affidavits stating the facts" (*id.* § 425.16(b)(2)), the California procedure conflicts with Rule 12's provision that any consideration of "matters outside the pleadings" (i.e., evidence, as distinct from allegations) requires conversion from a Rule 12(b)(6) motion to dismiss into a Rule 56 summary judgment motion, in which scenario the plaintiff is generally entitled "to take discovery" to the extent necessary "to justify its opposition." Fed. R. Civ. P. 12(d), 56(d); see *Anderson*, 477 U.S. at 250 n.5. The question here is whether California Code § 425.16 applies in this federal court.

B. <u>The *Shady Grove* Framework Governs</u>

The Supreme Court's decision in *Shady Grove Orthopedic Associates, PA v. Allstate Insurance Co.*, 559 U.S. 393 (2010), lays out the governing framework. That case dealt with New York Civil Practice Law § 901(b), a state law prohibiting class actions in suits for penalties or statutory minimum damages. *Id.* at 396. In federal court, the availability of class certification is governed by Federal Rule of Civil Procedure 23. The question in *Shady Grove* was whether, in a lawsuit under New York law brought in federal court (*i.e.*, a diversity jurisdiction case), New York's § 901(b) precluded the federal judge from certifying a class even though the class satisfied Rule 23. *Id.* Applying a two-part test, the Court held that § 901(b) did not apply. *See id.* at 398–406. The test is: (1) Does the Federal Rule of Civil Procedure "answer[] the question in dispute"? *Id.* at 398. And, if so, (2) is the Federal Rule valid under the U.S. Constitution and the federal Rules Enabling Act? *Id.* If the Federal Rule both "answers the question in dispute" and is valid, then "it governs—New York's law notwithstanding." *Id.*

At the first step, "[t]he question in dispute [was] whether *Shady Grove*'s suit may proceed as a class action." *Id.* And "Rule 23 provides an answer," for it "states that '[a] class action may be maintained' if two conditions are met." *Id.* "By its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id.* And, "[b]ecause [the New York law] attempts to answer the same question—i.e., it states that Shady Grove's suit 'may not be maintained as a class action' . . . it cannot apply in diversity suits unless Rule 23 is ultra vires." *Id.* at 399. As for the second step (the validity of Rule 23), the Supreme Court has "rejected every statutory challenge to a Federal Rule that has come before us" and likewise rejected the challenge to Rule 23. *Id.* at 407–08.

C. <u>The Anti-SLAPP Statute Directly Conflicts with Rules 12 and 56</u>

The *Shady Grove* framework makes clear that the California procedure does not apply in

federal court. As shown above, and as several courts of appeals have recognized (see infra), the California anti-SLAPP law and Federal Rules 12 and 56 are plainly "in conflict" in the relevant sense: They both "answer the same question," *Shady Grove*, 559 U.S. at 399, of whether a claim can proceed toward trial, but they impose different standards. The anti-SLAPP law asks whether the judge thinks that success for the plaintiff is "probable," whereas Rule 12 asks only whether his claim is "plausible," which is emphatically not a probability standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Since Rule 12 and the anti-SLAPP law give different answers to the same question, the anti-SLAPP law "cannot apply in diversity suits unless Rule [12] is ultra vires." *Shady Grove*, 559 U.S. at 399; *see also id.* at 398 ("We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid."). And Defendants do not (and could not) contend that Rule 12 or 56 is somehow invalid.

The Supreme Court's recent decision in *Berk v. Choy*, 607 U.S. __, 146 S.Ct. 546 (2026), powerfully reinforces this conclusion. In *Berk*, the Court unanimously held that Delaware's affidavit-of-merit requirement for medical malpractice claims does not apply in federal court because it conflicts with the Federal Rules of Civil Procedure. *Id.* at 551. The Court applied the same *Shady Grove* framework at issue here, asking (1) whether a Federal Rule "answers the question in dispute," and (2) whether the Federal Rule is valid under the Rules Enabling Act. *Id.* at 552-53.

At step one, the Court held that Rule 8(a)(2)'s requirement of "a short and plain statement of the claim" sets a "ceiling" on what plaintiffs can be required to present about the merits of their claims at the pleading stage. *Id.* at 553. A state law requiring additional evidentiary submissions beyond what Rule 8 demands—such as expert affidavits—directly conflicts with this standard. *Id.* at 552. The Court further held that Rule 12(d)'s prohibition on considering "matters outside the



108592724v1

pleadings" reinforces the conflict, because the state-mandated submissions constitute precisely such extraneous materials. *Id.* at 553. At step two, the Court found Rules 8 and 12 valid under the Rules Enabling Act, emphasizing that "the substantive nature of [a state] law, or its substantive purpose, makes no difference" to the validity analysis of the Federal Rule. *Id.* at 557. The Court also rejected the argument that the state law was merely an early evidentiary requirement that operated alongside the Federal Rules, explaining that summary judgment under Rule 56 "already prescribe[s] a mechanism for putting a plaintiff to his proof[.]" *Id.* at 555.

The parallels to the California anti-SLAPP statute could not be more obvious. Like the Delaware affidavit-of-merit statute struck down in *Berk*, the anti-SLAPP law requires a plaintiff to present evidence—in the form of a showing of "probability" of success—beyond what Rule 8 demands at the pleading stage. And like the Delaware statute, the anti-SLAPP law directs the court to "consider" evidence (namely, "supporting and opposing affidavits stating the facts" (Cal. Civ. Proc. Code § 425.16(b)(2))) that Rule 12(d) prohibits the court from considering absent conversion to summary judgment. *Berk* thus confirms what the Second, Fifth, Eleventh, and D.C. Circuits have already held: State laws that impose additional evidentiary burdens beyond Rules 8, 12, and 56 are displaced by the Federal Rules. See also *Berk*, 146 S.Ct. at 555 ("[t]he Federal Rules already prescribe a mechanism for putting a plaintiff to his proof: a motion for summary judgment").[1]

[1] Multiple commentators have recognized these implications. *See, e.g.*, Washington Legal Foundation, Supreme Court Ruling Signals Trouble Ahead for Anti-SLAPP Statutes in Federal Court (Jan. 26, 2026); Law360, Justices' Med Mal Ruling May Hurt Federal Anti-SLAPP Suits (Jan. 23, 2026). Indeed, after *Berk*, the Ninth Circuit's approach of allowing anti-SLAPP motions in federal court is more untenable than ever.

D. <u>Five Circuits Have Rejected Anti-SLAPP Statutes in Federal Court</u>

In the years since *Shady Grove*, the Second, Fifth, Tenth, Eleventh, and D.C. Circuits have all concluded under the *Shady Grove* framework that state anti-SLAPP statutes (including California's) do not apply in federal court because they are preempted by Rules 12 and 56. *La Liberte v. Reid*, 966 F.3d 79, 83, 85–89 (2d Cir. 2020) (California); *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (Texas); *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1349–57 (11th Cir. 2018) (Georgia); *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1331–37 (D.C. Cir. 2015) (Kavanaugh, J.) (Washington D.C.); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 662–68 (10th Cir. 2018) (New Mexico).

These decisions provide thorough, compelling analyses, and Plaintiff respectfully refers the Court to their discussions rather than repeating them in detail here. Tellingly, despite having already briefed this issue previously in this case, Defendants still have no rebuttal to the clear logic of these sister circuits. And the Supreme Court's decision in *Berk v. Choy* now provides further confirmation of the framework these circuits applied.

E. <u>The Ninth Circuit's Contrary Approach Is Increasingly Untenable.</u>

The Ninth Circuit reached the opposite conclusion in a pre-*Shady Grove,* pre-*Berk* decision. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970–73 (9th Cir. 1999). As more recent precedents recognize, though, "*Newsham* is no longer good law (to the extent it ever was) in light of the Supreme Court's intervening decision in *Shady Grove*." *La Liberte*, 966 F.3d at 87 & n.4; *Carbone*, 910 F.3d at 1356; *Abbas*, 783 F.3d at 1335–36; *Intercon Solutions, Inc. v. Basel Action Network,* 969 F. Supp. 2d 1026, 1048–53 (N.D. Ill. 2013). The Seventh Circuit, with the benefit of intervening precedents like *Shady Grove*, *La Liberte*, and *Abbas*—and now *Berk v. Choy*—would not repeat the Ninth Circuit's mistake.

Indeed, even before *La Liberte* and *Abbas*, judges within the Ninth Circuit were expressing

a belief that "*Newsham* is wrong and should be reconsidered." *Makaeff v. Trump University, LLC*, 715 F.3d 254, 272–75 (9th Cir. 2013) (Kozinski, C.J., concurring); see also *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1188–92 (9th Cir. 2013) (Watford, J., dissenting from the denial of rehearing en banc) ("We should have taken this case en banc to bring our case law in line with *Shady Grove*"). This Court should adopt their reasoning.

And today it seems *Newsham*'s days are numbered. Last year, the Ninth Circuit once again "rewrote" the California anti-SLAPP statute to be more aligned with federal law, by holding that the denial of an anti-SLAPP motion in federal court is not immediately appealable, one of the key features of the statute as written by the California legislature. *Gopher Media LLC v. Melone*, 154 F.4th 696, 704 (9th Cir. 2025) (en banc). The court dodged the question of whether the California anti-SLAPP applies in federal court, but not without vehement criticism from a four-judge concurrence. This concurrence aptly summarizes why the Ninth Circuit's approach is not sustainable, and why this Court should not go down the same misguided path:

> For over twenty-five years, the Ninth Circuit has struggled with its misguided experiment of allowing California's anti-SLAPP statute to apply in federal court. Almost as soon as we allowed these motions to be filed in federal litigation, we were forced to alter the state's anti-SLAPP procedures in various ways to avoid conflicts with the Federal Rules of Civil Procedure. Over the years, numerous judges of this court have implored us to reevaluate the broader issue, forcefully explaining why California's anti-SLAPP statute should have no place in federal court. Picking up on those criticisms, virtually every other circuit to consider the issue has come out against us. The time was therefore ripe—beyond ripe—for bringing our circuit in line with the overwhelming majority view and holding that California's anti-SLAPP statute is a state procedural device that does not apply in federal court. Today's decision unfortunately ducks that issue.

*Gopher Media LLC*, 154 F.4th at 709 (Bress, J., concurring in the judgment). Only two judges in the eleven-judge en banc panel affirmatively defended *Newsham*. *See id.* at 704 (Bennett, J., concurring). Given the trend in the case law since *Shady Grove*—and now *Berk v. Choy*—common sense suggests that the Ninth Circuit will eventually abandon *Newsham* in favor of what is now

the clear majority position among the courts of appeals.

F. <u>Defendants' Lead Cases Are Inapposite</u>

The cornerstone case upon which Defendants rely is *Wiley v. Am. Soc'y of Anesthesiologists, Inc.*, 2025 WL 2976482 (N.D. Ill. Oct. 21, 2025). But *Wiley* does far less than Defendants suggest. The court in *Wiley* never actually applied the California anti-SLAPP statute; instead, it dismissed the counterclaim on ordinary Rule 12(b)(6) grounds (finding the statements at issue were nonactionable opinion) and denied the anti-SLAPP motion as moot. *Id.* at *7–8. The court's passing reference to the anti-SLAPP framework was dicta—recited in a legal standards section but never applied—and relied entirely on Ninth Circuit authority (*CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022), which in turn rests on *Newsham*) that is not binding on this Court and that has been rejected by the clear majority of circuits. *Wiley* therefore provides weak support for Defendants' position.

Defendants also cite *UL LLC v. Callington*, 2025 WL 2257375 (N.D. Ill. Aug. 7, 2025), but that case is equally unhelpful. The court in *Callington* denied the anti-SLAPP motion on the merits, appearing to assume without deciding that Oregon's anti-SLAPP statute could apply in federal court. *Id*. at *11. No attorney fees were awarded, and the court never conducted the *Shady Grove* analysis that is dispositive here. A case that assumes without deciding a legal question provides no persuasive authority on that question.

In contrast, the most thorough on-point decision from this district—*Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026 (N.D. Ill. 2013)—squarely rejects Defendants' position. There, the question was whether Washington state's anti-SLAPP law, which required a court considering a special motion to strike to look beyond the pleadings and weigh the probability of success on the merits, applies in federal court. *Id.* at 1046–47. Applying *Shady Grove*, the *Intercon* court answered that question with a "No," reasoning that the Washington statute "plac[ed]

a higher procedural burden on the plaintiff than is required to survive a motion for summary judgment under Rule 56" and therefore "conflicts with Rule 12(d) and Rule 56 by restricting a plaintiff's 'procedural right to maintain [an action]' established by the federal rules and therefore cannot be applied by a federal court sitting in diversity." *Id.* at 1047–48 (N.D. Ill. 2013) (quoting *Shady Grove*, 559 U.S. at 401 n.4).

G. Federal Courts May Not Rewrite the Anti-SLAPP Statute

To be clear, Defendants do not dispute that the California anti-SLAPP law's "probability" standard directly conflicts with Rule 12's plausibility standard—even though conflict is the dispositive question under *Shady Grove*. Nor do Defendants contend that *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018), is binding on courts in the Seventh Circuit; unlike a Ninth Circuit panel, this Court is not bound by erroneous Ninth Circuit precedents. Rather, Defendants suggest that this Court should follow the Ninth Circuit's lone example and also rewrite the California anti-SLAPP statute to impose the same plausibility standard imposed by Rule 12 and *Iqbal*. But a federal court has no license to rewrite the clear terms of a state law—such as the anti-SLAPP law's probability requirement—even if the rewriting would avoid a conflict with federal law.

*Shady Grove* made this point explicitly, explaining that "concern for state prerogatives is frustrated rather than furthered by revising state laws when a potential conflict with a Federal Rule arises; the state-friendly approach would be to accept the law as written and test the validity of the Federal Rule." 559 U.S. at 403–04; *see also id.* at 403 ("The manner in which the law 'could have been written' has no bearing; what matters is the law the Legislature did enact. We cannot rewrite that to reflect our perception of legislative purpose.") (cleaned up). *Berk v. Choy* reaffirmed this principle, rejecting the argument that the state affidavit-of-merit requirement could be reconceptualized as something compatible with the Federal Rules. 223 L. Ed. 2d at 472. No

wonder, then, that the Second, Fifth, Tenth, Eleventh, and D.C. Circuits have all rejected application of anti-SLAPP laws in federal court rather than rewriting those laws to mirror the Federal Rules. *See also Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1053 (N.D. Ill. 2013), aff'd on other grounds by 791 F.3d 729 (7th Cir. 2015) (finding that the anti-SLAPP law and Federal Rule 56 "cannot be reconciled").

H. Defendants' Remaining District Court Decisions Are Unpersuasive

Defendants' other district court decisions are distinguishable or otherwise unpersuasive. *Chi* and *Trudeau* both erroneously apply an Erie substance/procedure analysis rather than asking whether the anti-SLAPP law answers the same question as Rule 12. *See Chi v. Loyola University Medical Center*, 787 F. Supp. 2d 797, 808–09 (N.D. Ill. 2011); *Trudeau v. Consumeraffairs.com, Inc., et al.*, 2011 WL 3898041 at *5 (N.D. Ill. Sept. 6, 2011). As shown above, where a Federal Rule answers the same question addressed by a state law (here, whether a claim can proceed to trial), the Federal Rule prevails—and "[w]e do not wade into Erie's murky waters unless the federal rule is inapplicable or invalid." *Albright v. Christensen*, 24 F.4th 1039, 1048–49 (6th Cir. 2022) (quoting *Shady Grove*, 559 U.S. at 398). *Intercon* made this very point: "the courts reached their holdings by essentially doing exactly what *Shady Grove* advised against—diving into Erie's murky waters to determine whether the state law in question [is] procedural or substantive without ever assessing in the first place whether the Federal Rules provide an answer to the question in dispute." 969 F. Supp. 2d at 1053.

Defendants' other case, *Osundairo v. Geragos*, 447 F. Supp. 3d 727 (N.D. Ill. 2020), never analyzes whether California's anti-SLAPP law applies in federal court; it appears that this point was not contested by the parties to that litigation. Thus, *Osundairo* never addresses *Shady Grove*, *Intercon*, or any of the appellate cases applying *Shady Grove* to anti-SLAPP laws. Rather, *Osundairo* takes for granted that state anti-SLAPP laws apply in federal court and considers only

(1) whether to apply Illinois law or California law, and (2) the standard imposed by the California law "when applied by a federal court sitting in diversity." 447 F. Supp. 3d at 743–44. Since *Osundairo* never actually analyzed the question at issue here, it does Defendants no good.

I. Erie's Twin Aims Counsel Against Applying the Anti-SLAPP Statute

Even if the Court concludes California's anti-SLAPP statute is not preempted, it should still decline to apply state law because doing so would better advance "the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). Given that most circuits do not allow state anti-SLAPP statutes in federal court, if this Court were to permit California's anti-SLAPP statute to be applied in this District, that decision would actually exacerbate the risk of forum shopping and inequitable administration of laws, as litigants would cherry-pick the federal venues where they can obtain the (rewritten and diluted) provisions of the anti-SLAPP statute. A ruling permitting application of California's anti-SLAPP law here would place this District at odds with the clear majority of federal courts and create an anomaly that Erie's twin aims were designed to prevent.

J. Defendants Are Judicially Estopped from Applying the Heightened Standard

Even if the Court decides that California's (and not Illinois's) anti-SLAPP statute applies, this just means it must proceed under normal Rule 12 and 56 standards. Despite their attempt to do so, Defendants cannot have it both ways: they cannot argue there is no conflict between a rewritten anti-SLAPP statute and the Federal Rules (Dkt. 82 at 7), and yet try to apply the "probability of success" standard of the original statute (Dkt. 82 at 16). Indeed, they are judicially estopped from doing so. *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position."). Thus, if the Court declines to dismiss the motion to strike on preemption grounds, it should nevertheless

deny it under Rule 12(b)(6). The merits arguments raised in this motion to strike all parallel arguments that Defendants made in their Rule 12(b)(6) motion and that Plaintiff is rebutting in opposition to that motion. Accordingly, this motion should be denied in any event for the same reasons articulated in Plaintiff's opposition to the Rule 12(b)(6) motion.

### K. Defendants Are Not Entitled to Attorney Fees

Finally, Defendants seek attorney fees, urging that "[w]here a defendant prevails on an anti-SLAPP motion, an award of attorneys' fees and costs is mandatory." Dkt. 82 at 20. The California law indeed provides that "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." California Code of Civil Procedure § 425.16(c)(1). Here, though, Defendants cannot possibly "prevail[] … on [their] special motion to strike" because federal procedure does not even allow for such a motion. As the Fifth Circuit, Second Circuit, and D.C. Circuit have explained, that means that Defendants would have no right to attorney fees even if they were to prevail on the parallel arguments in their Rule 12(b)(6) motion. See *Klocke*, 936 F.3d at 247 n.6; *La Liberte*, 966 F.3d at 88–89; *Abbas*, 783 F.3d at 1337 n.5.

## II. Defendants' Choice-of-Law Argument Fails

Even if the anti-SLAPP statute could apply in federal court, Defendants' argument that California's anti-SLAPP law—rather than Illinois's—governs this action is wrong. Illinois is the forum state, and Illinois's own Citizen Participation Act, 735 ILCS 110/1 et seq., is far more limited than California's anti-SLAPP statute: it protects only acts "genuinely aimed at procuring favorable government action, result, or outcome," 735 ILCS 110/15, and does not extend to ordinary litigation conduct of the type Defendants invoke here. Indeed, the Illinois Supreme Court has construed the CPA narrowly, holding that the Act is "intended to target only meritless, retaliatory SLAPPs" and "was not intended to protect those who commit tortious acts . . ." *Sandholm v. Kuecker*, 2012 IL 111443, ¶¶ 42–45, 962 N.E.2d 418, 430.

Even under the *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913 (7th Cir. 2009), analysis that Defendants invoke, California's contacts do not warrant application of its anti-SLAPP law here. Defendants are an Illinois-based law firm. SHC is headquartered in Alton, Illinois. FAC ¶¶ 15–16. This suit was brought in Illinois federal court. The alleged fraudulent scheme was orchestrated from SHC's Illinois offices. FAC ¶ 29-30. And the claims at issue are common-law fraud, unjust enrichment, and civil conspiracy—torts that are governed by the substantive law applicable to the underlying claims, not by a California procedural mechanism.

Moreover, Defendants' reliance on *Chi* and *Global Relief* for choice-of-law analysis is misplaced, as both cases were decided under a different analytical framework that erroneously treats the anti-SLAPP statute as substantive. As shown in Section I.A–C above, the anti-SLAPP statute is procedural, and the choice-of-law question therefore does not arise. But even if it did, Illinois's strong interest in regulating the conduct of its own attorneys—SHC is an Illinois firm—and in providing a forum for claims arising from an alleged fraud scheme orchestrated from Illinois offices weighs heavily against applying California's broader anti-SLAPP protections.

## III. Even if the Anti-SLAPP Statute Applied, Defendants Cannot Prevail on the Merits

### A. Defendants Cannot Satisfy Step One

Even if the California anti-SLAPP statute applied, Defendants' motion fails at the threshold because J-MM's claims do not "arise from" protected activity within the meaning of § 425.16. The California Supreme Court has made clear that the "arising from" requirement focuses on "what actions by the defendant supply those elements [of the challenged claim] and consequently form the basis for liability." *Park v. Board of Trustees of California State University*, 2 Cal.5th 1057, 1063 (2017). "A claim may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Id.* at 1060.

Here, the "wrong complained of" is not that Defendants engaged in litigation; it is that they committed fraud. J-MM does not seek to punish Defendants for filing lawsuits. J-MM seeks to recover for a deliberate scheme to fabricate evidence, coach false testimony, file knowingly false discovery responses, and conceal material evidence—all to extract fraudulent settlements. FAC ¶¶ 96–114, 264–276. The gravamen of J-MM's claims is the underlying fraud, not the petitioning activity in which that fraud was carried out. See *City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002) ("the statutory phrase 'cause of action arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition[.]") (cleaned up).

Additionally, the California Supreme Court has recognized that conduct that is "illegal as a matter of law" is not protected by the anti-SLAPP statute. *Flatley v. Mauro*, 39 Cal.4th 299, 320 (2006). Here, J-MM alleges that Defendants suborned perjury, filed false sworn discovery responses, and concealed material evidence in violation of court rules and California law. FAC ¶¶ 105, 108–114. For example, Defendants allegedly coached witnesses to provide false testimony about asbestos exposure that was contradicted by Social Security records, employer records, and other objective evidence. *Id.* ¶¶ 120–131 (Bretado), 132–139 (Carranza), 150–157 (Yates), 158–166 (Montgomery). Defendants also allegedly concealed the CertainTeed bankruptcy claim while affirmatively denying its existence in sworn discovery responses. *Id.* ¶¶ 140–149 (Perkins). Such conduct falls outside the protection of § 425.16.

Under *Baral v. Schnitt*, 1 Cal.5th 376, 396 (2016), even in "mixed" claims involving both protected and unprotected activity, the court must evaluate each allegation separately. "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." *Id*. The allegations here that form the basis for liability—fabricating

evidence, filing false discovery responses, coaching perjured testimony, and concealing material facts—are not acts "in furtherance of the right of petition[.]" They are acts of fraud that happened to occur in a litigation setting. The anti-SLAPP statute was enacted to protect legitimate petitioning activity, not to immunize attorneys who deliberately abuse the litigation process.

B. The Litigation Privilege Does Not Bar J-MM's Claims

Defendants argue that California's litigation privilege, Civil Code § 47(b), bars all of J-MM's claims because they arise from "litigation conduct." Dkt. 82 at 16–18. But the litigation privilege has well-recognized limits that Defendants ignore. First, the litigation privilege does not apply in all federal court proceedings. *See Blevins v. Hudson*, 395 F. Supp. 2d 662, 666-67 (S.D. Ohio 2004) (collecting cases and holding the privilege does not apply to FDCPA claim). Further, the privilege is a California state-law doctrine. In a federal diversity action, whether to apply a state litigation privilege is itself a choice-of-law question. Illinois is the forum here, and Illinois law does not recognize an absolute litigation privilege of the same scope as California's. *See, e.g.*, *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶ 26.

Second, even under California law, the privilege is not as absolute as Defendants suggest. The California Supreme Court has recognized that the privilege does not extend to malicious prosecution claims, *Silberg v. Anderson*, 50 Cal. 3d 205, 216 (1990), and "does not bar criminal prosecutions for perjury." *See Rusheen v. Cohen*, 37 Cal. 4th 1048, 1065 (2006). Here, J-MM's claims are grounded in allegations of deliberate evidence fabrication and perjury—conduct that sounds in these recognized exceptions.

Third, the privilege requires a "connection or logical relation" to litigation, *Silberg*, 50 Cal. 3d at 212, but it does not protect a systematic fraud scheme that merely uses litigation as its vehicle. J-MM does not challenge any single litigation communication; it challenges a coordinated, multi-year scheme to fabricate evidence, suborn perjury, and file knowingly false lawsuits to extract

fraudulent settlements. FAC ¶¶ 96–114. The "gravamen" of J-MM's claims is the underlying fraud, not the litigation communications through which it was carried out. See *Rusheen*, 37 Cal.4th at 1065 (the privilege does not apply where an "independent, noncommunicative, wrongful act was the gravamen of the action").

C. J-MM Can Demonstrate a Probability of Prevailing

Even if the Court reaches Step Two of the anti-SLAPP analysis, J-MM can demonstrate a "probability of prevailing" on its claims. At Step Two, the plaintiff need only "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment[.]" *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002). This is a minimal burden. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

J-MM's fraud claim is legally sufficient and supported by detailed factual allegations. The FAC identifies specific instances of fraudulent conduct, including: (1) false claims about Bretado's work history and exposure, contradicted by his own brother's subsequent admissions, FAC ¶¶ 120–131; (2) false claims about Carranza's construction work, disproven by high school and immigration records, *id.* ¶¶ 132–139; (3) false discovery responses and autopsy concealment in Yates, where the TT Technologies CEO refuted the entire exposure narrative, *id.* ¶¶ 150–157; (4) demonstrably impossible claims in Montgomery that the decedent worked with J-MM pipe years before J-MM began selling it, *id.* ¶¶ 158–166; and (5) deliberate concealment of the CertainTeed bankruptcy claim in Perkins, including false sworn discovery responses denying its existence, *id.* ¶¶ 140–149.

Defendants' argument that J-MM cannot show "reasonable reliance" is equally meritless. Dkt. 82 at 18–19. Defendants contend that reliance on an adversary's representations is per se unreasonable. But J-MM's reliance was not on informal attorney statements; it was on sworn

testimony and formal discovery responses—the very instruments on which our adversarial system depends. When a party serves verified interrogatory responses and presents witnesses under oath, the opposing party must respond to those representations: investigating the claims, taking discovery, and deciding whether to settle based on the strength of the evidence as presented. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327 n.10 (2011). That is precisely what happened here. J-MM was hauled into court, forced to defend against specific factual claims presented in sworn filings, and induced to settle based on the perceived strength of those claims—claims that were, according to the FAC, fabricated. FAC ¶¶ 131, 139, 150, 157, 166. The law does not require a litigation defendant to disbelieve every representation made by an adversary under oath; to the contrary, the entire legal system proceeds on the assumption that sworn statements are truthful. J-MM's reliance on Defendants' sworn representations was entirely reasonable—and was the very reliance that Defendants intended to induce.

Defendants' reliance on *Tocco v. Richman Greer Professional Ass'n*, 553 F. App'x 473 (6th Cir. 2013), and *Ed & F Man Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862 (S.D. Tex. 2010), is inapposite. Those cases involved informal attorney statements in negotiations—not the systematic fraud alleged here. Moreover, many of J-MM's allegations are not tethered to litigation conduct at all. The FAC alleges that Sokolove Law made false representations to prospective clients to induce them to retain SHC, that Defendants concealed bankruptcy claims that contradicted lawsuit exposure narratives (*e.g.*, Perkins and CertainTeed), and that Defendants fabricated work histories for claimants like Bretado who never worked at the locations claimed. FAC ¶¶ 77–86, 140–149, 120–131. These are not "litigation conduct" shielded by any privilege; they are independent acts of fraud that happened to be deployed in the context of litigation.

## IV. <u>J-MM's Unjust Enrichment and Civil Conspiracy Claims Are Properly Pled</u>

Defendants' final merits argument—that unjust enrichment and civil conspiracy are not

"standalone" causes of action under California law—misses the mark. As an initial matter, Illinois law controls here, as demonstrated above. However, whether applying Illinois law or California law, it is well established that a plaintiff may plead unjust enrichment as an alternative to other causes of action, seeking the restitution-like remedy. *See Chicago Title Ins. Co. v. Teachers' Ret. Sys. of State of Ill.*, 2014 IL App (1st) 131452, ¶¶ 17-19; *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Here, J-MM alleges that Defendants received contingency fees from fraudulent settlements extracted from J-MM. FAC ¶¶ 277–282. That is a textbook restitution claim: Defendants were unjustly enriched by retaining the proceeds of their fraud.

As to civil conspiracy, Defendants are correct that conspiracy is not an independent tort, but that is irrelevant here because J-MM has adequately pled the underlying tort of fraud. *See Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 91; *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994). J-MM alleges a coordinated scheme between SHC, Sokolove, and the individual defendants to fabricate evidence and engage in litigation extortion. FAC ¶¶ 283–288. Because the underlying fraud claim survives, so does the derivative conspiracy claim. Defendants' argument collapses if any of J-MM's fraud allegations—and the FAC identifies numerous specific instances—survive scrutiny.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to strike.

March 9, 2026

Respectfully submitted,

/s/ Ashwin J. Ram

Frank Fletcher
General Counsel
J-M Manufacturing Company, Inc.
d/b/a JM Eagle
5200 West Century Boulevard
Los Angeles, CA 90045

Ashwin J. Ram
Andrew C. Erskine
Buchalter LLP
180 N. LaSalle St., Suite 2300
Chicago, IL 60601
(213) 891-5035
aram@buchalter.com