**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

J-M MANUFACTURING COMPANY, INC.,    )
    )   Hon. Robert W. Gettleman
      Plaintiff,    )
    )
    v.    )   CASE NO. 1:24-CV-03853
    )
SIMMONS HANLY CONROY LLP,    )
JOHN SIMMONS, NICHOLAS ANGELIDES,    )
PERRY BROWDER, AMY GARRETT,    )
BENJAMIN GOLDSTEIN, SUVIR DHAR,    )
CRYSTAL FOLEY, DEBORAH    )
ROSENTHAL, STAN JONES,    )
SOKOLOVE LAW, LLC AND JOHN AND    )
JANE DOES 1–25,    )
    )
      Defendants.    )

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants Simmons Hanly Conroy LLP, John Simmons, Nicholas Angelides, Perry Browder, Amy Garrett, Benjamin Goldstein, Suvir Dhar, Crystal Foley, Deborah Rosenthal, Stan Jones, and Sokolove Law, LLC respectfully submit this response to the Notice of Supplemental Authority (Dkt. 93) of Plaintiff J-M Manufacturing Co., Inc. ("J-MM"), which cites *Uber Technologies, Inc., et al. v. Simon & Simon P.C., et al.*, 2026 WL 1284178 (E.D. Pa. May 11, 2026). The opinion in *Uber* rests on distinguishable facts and applies legal standards the Seventh Circuit has expressly rejected.

*Uber* involved an alleged scheme in which a lawyer and his firm referred clients injured in accidents to medical professionals who, in turn, generated fraudulent medical records for use in litigation against Uber, FedEx, and others. *Id.* at *2–3. Uber and FedEx sued the firm, its lawyers, and doctors alleging a racketeering enterprise, and the defendants moved to dismiss, arguing,

among other things, that their activities constituted protected petitioning activities under *Noerr-Pennington*. *Id*. at *4. The district court denied the motion, holding that *Noerr-Pennington* did not bar the claims. *Id.* at *1.

**Noerr-Pennington**. To start, while acknowledging that a lawyer's "filing and serving complaints constitute classic petitioning activity," the *Uber* court held that *Noerr-Pennington* does not extend to a dispute that centers on "pre-filing conduct"—such as lawyers directing doctors "to create false medical records and reports" in exchange for unnecessary treatment. *Id*. at *6–7. The court explained that the lawyers' alleged referrals, while intended to generate evidence to support a future claim, were "outside the litigation process" and distinct from communications directed at a court or opposing party. *Id*. at *7–8. And it distinguished *Ford Motor Co. v. Knight L. Grp.*, 2025 WL 3306280 (C.D. Cal. Nov. 24, 2025), as involving activities that "stemmed from ongoing litigation or preparation for litigation," which *Noerr-Pennington* protects, rather than "fraud before any relevant proceeding began," which it does not. *Id*. at *13–14.

*Uber*'s holding regarding pre-litigation activity has no applicability here, where J-MM alleges that Defendants engaged in racketeering activity "stemm[ing] from ongoing litigation or preparation for litigation." *Id*. at *13.

**Sham Exception**. In the alternative, *Uber* held that—even if the challenged conduct was protected petitioning activity—the sham exception applied. *Id*. at *8–11. Uber and FedEx alleged that "lawyers and doctors misused the governmental process" by manufacturing fabricated evidence, which, if true, meant that the lawyers filed lawsuits without regard to merit. *Id*. at *10.

J-MM invokes this holding (Dkt. 93 at 1–2) but overlooks a threshold problem: the legal framework *Uber* applied—as dictated by the Third Circuit—has been expressly rejected by the Seventh Circuit. The Third Circuit instructs that courts assessing a "series of petitions" should

2

apply "the framework detailed in . . . *California Motor Transportation Company v. Trucking Unlimited*." *Uber*, 2026 WL 1284178, at *8 (citing *Hanover 3201 Realty, LLC, v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 180 (3rd Cir. 2015)). Under that "more flexible standard," the first question is whether lawsuits "were filed with or without regard to merit"—not whether they were objectively baseless. *Id.* at *8–9. (quoting *Hanover 3201 Realty, LLC,* 806 F.3d at 180). The Seventh Circuit has rejected this approach: "We do not agree *California Motor* provides a separate rubric to use whenever a 'pattern' of sham filings is alleged." *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chicago, Inc.*, 953 F.3d 955, 964 (7th Cir. 2020). The "objective component" of the sham exception remains "'indispensable'" in this Circuit. *Id.* at 965 (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993)).

The same goes for *Uber*'s treatment of fraudulent misrepresentations. The court reasoned that "a *material* misrepresentation that affects the very core of a litigant's [ ] case will preclude *Noerr-Pennington* immunity," and found that Uber alleged "injury from the [governmental] process itself—the use of allegedly fabricated evidence to file and maintain a case to extract settlements." *Id.* at *11–12. That is not the Seventh Circuit's standard. Here, materiality for the sham exception requires that the alleged misrepresentations "*actually altered* the outcome of the proceedings." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011) (emphasis added); *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 742 (N.D. Ill. 2012) (misrepresentations must impact court action).

**Predicate Acts**. J-MM characterizes *Uber* as "reject[ing] an argument that mail or wire fraud committed in the context of litigation cannot qualify as a RICO predicate." Dkt. 93 at 2. This is incorrect. The *Uber* court in fact "agree[d]" that "the lawyers filing and serving complaints constitutes litigation activity" protected from RICO liability. *Id*. at *18. It held only that the

3

predicate acts alleged—"repeated use of the mails and interstate wires to transmit fraudulent records"—fell outside that protection because litigation was but "one component of the scheme, not its entirety[,]" and the alleged predicate acts involved "coordinated conduct" "before . . . and outside litigation," *id.* at *21, including a "conveyor belt" referral system to medical professionals, *id.* at *17. The court distinguished cases like *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) (cited by Defendants here), and decisions applying *Kim*, as addressing whether "state-court proceedings" can themselves be "predicate acts," whereas the *Uber* case involved out-of-court fraudulent activities as predicate acts. 2026 WL 1284178, at *20–21.

Here, the predicate acts alleged by J-MM are litigation acts—filings, depositions, and communications in furtherance of litigation. If such acts were "adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action." *Kim*, 884 F.3d at 104. That is not, and should not be, the law.

In short, *Uber* has no bearing here. The allegations material to the *Uber* court's decision are not present here, and the legal standards it applied are inapplicable.

Dated: May 26, 2026

Respectfully submitted,

JENNER & BLOCK LLP

 */s/ John R. Storino*
John R. Storino

Reid J. Schar (6243821)
John R. Storino (6273115)
Andrianna D. Kastanek (6286554)
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
rschar@jenner.com
jstorino@jenner.com
akastanek@jenner.com

4

Amit B. Patel (6309876)
1155 Avenue of the Americas
New York, NY 10036-2711
Tel: (212) 891-1600
apatel@jenner.com

*Counsel for Defendants*