**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| J-M MANUFACTURING COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SIMMONS HANLY CONROY, LLP, NICHOLAS ANGELIDES, PERRY BROWDER, AMY GARRETT, BENJAMIN GOLDSTEIN, SUVIR DHAR, CRYSTAL FOLEY, DEBORAH ROSENTHAL, STAN JONES, SOKOLOVE LAW, LLC, and JOHN SIMMONS<br><br>Defendants. | Hon. Robert W. Gettleman<br><br>CASE NO. 1:24-CV-03853<br><br>JURY TRIAL DEMANDED<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS SIMMONS HANLY CONROY, LLP, JOHN SIMMONS, NICHOLAS ANGELIDES, PERRY BROWDER, AMY GARRETT, BENJAMIN GOLDSTEIN, SUVIR DHAR, CRYSTAL FOLEY, DEBORAH ROSENTHAL, and STAN JONES' MOTION FOR RECONSIDERATION AND, IN THE ALTERNATIVE, TO CERTIFY QUESTIONS UNDER 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

A. J-MM's Factual Allegations ........ 3

B. The Court's Order ........ 4

LEGAL STANDARD ........ 6

ARGUMENT ........ 7

I. The Court Should Reconsider Its *Noerr-Pennington* Ruling and, If Necessary, Certify the Fraud-Exception Question Under § 1292(b). ........ 7

A. Under the Required Case-by-Case Analysis, *Noerr-Pennington* Bars J-MM's Claims as to All Ten Lawsuits Cited in the Amended Complaint. ........ 7

B. If Any Issues Remain, the Court Should Certify the Question Whether the *Noerr-Pennington* Fraud Exception Reaches Dismissed or Settled Suits. ........ 13

II. If The Court Determines That *Noerr-Pennington* Does Not Bar J-MM's Claims, It Should Certify Whether Ordinary Litigation Activity Can Be A Pattern of Racketeering for Interlocutory Appeal Under 28 U.S.C. § 1292(b). ........ 15

III. Requested Procedural Relief ........ 20

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## CASES

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674 (7th Cir. 2000)...................... 7, 13, 14, 16

*Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394 (4th Cir. 2001)....................... 10, 12, 14

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990).............. 7, 11

*Bd. of Educ. of Twp. High Sch. Dist. No. 214, Cook Cnty., Ill. v. Climatemp, Inc.*, 91 F.R.D. 245 (N.D. Ill. 1981)........................................................................................ 14

*Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000 (7th Cir. 2002)........................................................................................ 15

*Bowens v. Blagojevich*, No. 06 C 4915, 2008 WL 11405935 (N.D. Ill. Nov. 5, 2008)........................................................................................ 20

*Carthan-Ragland v. Standard Bank & Tr.*, No. 11 C 5864, 2012 WL 1658244 (N.D. Ill. May 11, 2012)........................................................................................ 17

*Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119 (3d Cir. 1999).................................. 10, 14

*City of Joliet v. Mid-City Nat'l Bank*, No. 05 C 6746, 2008 WL 4889038 (N.D. Ill. June 13, 2008)........................................................................................ 14, 17

*Costello v. BeavEx, Inc.*, No. 12 C 7843, 2014 WL 12775669 (N.D. Ill. Dec. 1, 2014)........................................................................................ 19

*Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003).............................................. 18

*Demkovich v. St. Andrew the Apostle Par.*, No. 16-CV-11576, 2019 WL 8356760 (N.D. Ill. May 5, 2019)........................................................................................ 20

*Drobny v. JP Morgan Chase Bank, N.A.*, 929 F. Supp. 2d 839 (N.D. Ill. 2013).................... 6, 17

*Edelson PC v. Bandas L. Firm PC*, No. 16 C 11057, 2018 WL 723287 (N.D. Ill. Feb. 6, 2018)........................................................................................ 17

*Garlock Sealing Techs., LLC v. Simon Greenstone Panatier Bartlett*, No. 14-cv-116, 2015 WL 5148732 (W.D.N.C. Sept. 2, 2015)........................................................ 17

*Gibson v. Chubb Nat'l Ins. Co.*, 182 F.4th 519 (7th Cir. 2026)................................................ 11

*Hagenbuch v. Sonrai Sys.*, No. 13 C 7042, 2015 WL 14097374 (N.D. Ill. Sept. 29, 2015)........................................................................................ 20

*In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of Balt. v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022)....................9

*Int'l Star Registry of Ill., Ltd. v. RGIFTS Ltd.*, No. 21 CV 6446, 2025 WL 2766304 (N.D. Ill. Sept. 26, 2025)....................1

*Johnson v. Burken*, 930 F.2d 1202 (7th Cir. 1991)....................14

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)....................6, 16, 18, 19

*Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998)....................1, 9, 11

*Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834 (7th Cir. 2011)....................passim

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992)....................1, 18

*Morgan v. J-M Mfg. Co.*, 60 Cal. App. 5th 1078 (2021)....................3

*New West, L.P. v. City of Joliet*, 491 F.3d 717 (7th Cir. 2007)....................5, 8, 9, 10

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)....................4, 10, 13

*Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45 (E.D.N.Y. 2020)....................17

*Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004)....................18

*Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246 (7th Cir. 1987)....................7

*Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732 (N.D. Ill. 2012)....................10, 14

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512 (5th Cir. 2016)....................17

*Snyder v. U.S. Equities Corp.*, No. 12-cv-6092, 2014 WL 317189 (W.D.N.Y. Jan. 28, 2014)....................17

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656 (7th Cir. 1996)....................14, 16

*Trinity Sober Living, LLC v. Vill. of Hinsdale*, No. 19 C 7321, 2021 WL 1057749 (N.D. Ill. Mar. 18, 2021)....................9

*U.S. Futures Exch., L.L.C. v. Bd. of Trade of City of Chi., Inc.*, 953 F.3d 955 (7th Cir. 2020)....................8, 9, 10, 11

*Uber Techs., Inc. v. Simon & Simon P.C.*, No. 25-5365, 2026 WL 1284178 (E.D. Pa. May 11, 2026)....................17

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992)....................6, 19

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002)................................................ 18

*Whitman v. Bumble Trading LLC*, No. 22-cv-2100, 2024 WL 6862251 (C.D. Ill. Feb. 23, 2024)................................................................................................................ 17

**STATUTES**

18 U.S.C. § 1962(c)................................................................................................... 4

18 U.S.C. § 1962(d)................................................................................................... 4

28 U.S.C. § 1292(b).............................................................................................passim

**RULES**

Fed. R. Civ. P. 54(b)................................................................................................. 6

## INTRODUCTION

The Court's November 6 Order partially denying Defendants' motion to dismiss, Dkt.116 ("Op."), dramatically expands RICO's reach into disputes arising from civil litigation by adopting a standard that permits any litigation adversary to turn a suit it lost or settled into a federal RICO case simply by alleging that the other side's lawyers lied. The Order dispenses with the case-by-case analysis the Seventh Circuit requires to decide whether *Noerr-Pennington* protects a litigant's petitioning. It delays the resolution of Defendants' immunity under that doctrine because J-MM "raise[s] the possibility" that an exception applies, Op.15 (quoting *Int'l Star Registry of Ill., Ltd. v. RGIFTS Ltd.*, No. 21 CV 6446, 2025 WL 2766304, at *6 (N.D. Ill. Sept. 26, 2025)), thus exposing Defendants to "the danger that the mere pendency of the action will chill the exercise of First Amendment rights," *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998) (citation omitted). And contrary to district courts in this Circuit that have said otherwise, the Order treats litigation conduct, absent any allegations of bribery or corruption, as predicate acts of racketeering.

The consequences of this rule are far-reaching. If a party's pleadings, discovery responses, and testimony in a suit can be a pattern of racketeering, every unsuccessful suit can spawn a retaliatory RICO case that reopens the underlying cases, with sweeping discovery into closed suits and a threat of trebled damages. "Congress enacted RICO in an attempt to eradicate organized, long-term criminal activity," *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992), not to allow litigation adversaries, however bitter their dispute, to engage in a death spiral of retaliatory litigation. Accordingly, Moving Defendants Simmons Hanly Conroy, LLP ("SHC"), John Simmons, Nicholas Angelides, Perry Browder, Amy Garrett, Benjamin Goldstein, Suvir Dhar, Crystal Foley, Deborah Rosenthal, and Stan Jones (herein "Defendants") respectfully seek reconsideration. If the Court adheres to its rulings in any part, Defendants ask that it certify two questions of law for interlocutory appeal. 28 U.S.C. § 1292(b).

***First***, the Court rejected Defendants' *Noerr-Pennington* defense in its entirety—as to the ten suits J-MM names, and perhaps others it invokes—by analyzing a single case. Op.13-15. But *Noerr-Pennington* requires a case-by-case analysis, and the parties' briefs argued each case individually. The Court should grant reconsideration, perform the required analysis, and hold that the individual cases do not fall within a *Noerr-Pennington* exception.

The ten underlying cases J-MM names fall into three categories: six settled, one ended in a jury verdict against J-MM, and three were voluntarily dismissed. J-MM has not pointed to any ruling in any of the ten cases in which the court ruled against SHC on a material issue. The *Noerr-Pennington* analysis, properly conducted, requires dismissal of all. The settled suits cannot be shams under Seventh Circuit precedent, and they cannot be frauds either, because no tribunal decided anything in reliance on any alleged misstatement. Likewise, the case that ended in a jury verdict against J-MM, affirmed on appeal, cannot be a sham under Supreme Court precedent, where J-MM pleads no facts suggesting that fraud tainted the verdict. And the voluntarily dismissed suits cannot be frauds because *no ruling by any court* is alleged to have relied on a misrepresentation—and J-MM never argued otherwise.

Nor do the facts alleged by J-MM make any of the cases shams: J-MM itself acknowledges that a voluntary dismissal "does not establish that claims lacked merit," Dkt.89 at 9, and it pleads nothing more. A petition is not baseless simply because it did not prevail.

At minimum, the Court should certify the question whether *Noerr-Pennington*'s fraud exception reaches settled or dismissed suits where alleged misstatements merely increased litigation costs—a rule that no appellate court has adopted and that would eviscerate *Noerr-Pennington*, since every lawsuit imposes costs from its inception. The answer substantially affects the scope of this litigation going forward and should be resolved now, before discovery begins.

***Second***, if any RICO claim survives the foregoing analysis, the Court should certify whether allegations (like those here) of ordinary litigation misconduct not involving bribery, witness intimidation, or other corrupt conduct can qualify as a pattern of "racketeering activity" under RICO—a question the Seventh Circuit has never decided, on which several circuits have rejected RICO liability absent corruption, and that controls whether J-MM's RICO counts survive.

## BACKGROUND

### A. J-MM's Factual Allegations

J-MM's amended complaint alleges that SHC, some of its attorneys, and Sokolove Law, LLC engaged in a scheme to defraud J-MM via "fraudulent discovery and pleadings, perjured testimony, and other communications" in asbestos suits SHC filed on behalf of clients. Dkt.63 ("FAC"), ¶¶ 4, 242. Although J-MM believes this "scheme" may involve "more than 430 cases" filed since 2001, *id.* ¶ 12, its amended complaint describes only five in any depth, *see id.* ¶¶ 120-166 (discussing *Bretado*, *Carranza*, *Perkins*, *Yates*, and *Montgomery*). It cites five others in which aspects of testimony allegedly followed a "common pattern." *Id.* ¶ 183; *see id.* ¶¶ 173-185 (*Swiger*, *Azevedo*, *Boyance*, *Noll*, and *Morgan*).

Of the ten cases, J-MM agreed to settle six (*Bretado*, *Perkins*, *Swiger*, *Azevedo*, *Boyance*, and *Noll*), *see* Op.12—in part, by its own telling, to mitigate "the uncertainty of litigation" and avoid a "runaway verdict," suggesting even its own belief in the credibility of the witnesses against it. FAC ¶¶ 9, 102, 130, 189. One case, *Morgan*, ended in a jury verdict for SHC's client that was affirmed on appeal. *See* Op.12; *Morgan v. J-M Mfg. Co.*, 60 Cal. App. 5th 1078 (2021). J-MM alleges no actual misrepresentation in *Morgan*. The remaining three cases—*Carranza*, *Montgomery*, and *Yates*—were voluntarily dismissed. *See* Op.12. Beyond alleging that *Carranza* was dismissed "as part of a deal" resolving "approximately 15 cases," FAC ¶ 139, and that *Montgomery* was dismissed after J-MM "filed a motion for summary judgment," *id.* ¶ 166, J-MM

pleads no facts about why the three cases were dismissed.

J-MM's amended complaint asserts six claims for relief, all based on the foregoing alleged course of conduct: three counts under the federal RICO statute, 18 U.S.C. § 1962(c) and (d), *see* FAC ¶¶ 236-263 (Counts I-III); and three claims under California law for common-law fraud, unjust enrichment, and civil conspiracy, *see id.* ¶¶ 264-288 (Counts IV-VI).

### B. The Court's Order

Defendants moved to dismiss the amended complaint. *See* Dkt.80 ("Mot."); Dkt.87 ("Resp."); Dkt.90 ("Reply"). Two of Defendants' arguments for dismissal are relevant here. First, Defendants argued that all of J-MM's claims were barred by the *Noerr-Pennington* doctrine, which "provides immunity from liability to those who petition the government," including by filing a lawsuit. Op.9; *see* Mot.10-15. Second, Defendants argued that J-MM failed to plausibly allege that Defendants' litigation activities constituted an actionable pattern of racketeering activity for purposes of RICO. *See* Op.33-37; Mot.20-24.[1] The Court rejected both arguments.

***Noerr-Pennington.*** Because J-MM's "allegations are based on litigation-related activities that would ordinarily be protected," the Court framed the only question as whether J-MM had plausibly alleged facts satisfying one of two narrow exceptions: sham lawsuits or fraud. Op.12. Both turn on the features of the specific suits. A suit is a sham only if objectively baseless (meaning "no reasonable litigant could realistically expect success on the merits") *and* subjectively baseless, even when a plaintiff alleges a "pattern" of suits. Op.11 (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*")). The fraud exception requires an intentional misrepresentation to the court that "actually altered the outcome of the proceeding." Op.12 (quoting *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011)).

[1] Defendants also moved to dismiss J-MM's state-law claims (Counts IV-VI) as barred by California's litigation privilege, Mot.33, and the Court granted that motion, *see* Op.42-55.

Defendants argued that J-MM pleaded neither exception as to any of the ten cases. Mot.12-15; Reply.3-8. The six settled cases and *Morgan* could not be shams, because a suit that settles or succeeds is not objectively baseless. Mot.13 (citing, *inter alia*, *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007)). As to the dismissed cases, J-MM did not plausibly allege objective baselessness: in each, the plaintiff died of mesothelioma after alleged exposure to J-MM's asbestos piping; J-MM did not challenge any complaint as baseless in the underlying cases; and even meritorious suits may be voluntarily dismissed for valid reasons. Mot.13-14; Reply.4-6. And J-MM alleged no ruling in any case that rested on a misrepresentation, as the fraud exception requires. Mot.14-15; Reply.6-7.

J-MM responded case by case, too: that Defendants abandoned the dismissed cases after J-MM challenged the evidence; that the settlements were driven by "litigation costs ..., not by the merits"; and that the verdict in *Morgan* showed only "that the fraud worked." Resp.6-7. On the fraud exception, J-MM argued that *Morgan* was "tainted by [Defendants'] fraudulent playbook" and that the exception reaches fraudulently induced settlements even absent a judicial ruling. *Id.* at 8-9. J-MM did *not* invoke the fraud exception for the dismissed cases. *Id.*

The Court held that J-MM "pleaded enough [] to avoid dismissal" under both exceptions. Op.13. But unlike the parties, the Court analyzed a single case: *Carranza*. On the sham exception, the Court held that J-MM had plausibly alleged objective baselessness because "[t]he alleged exposure in the complaint was false" and Defendants knew it. Op.13-14 (quoting FAC ¶ 133). The Court found that those same facts "also support the inference that [*Carranza*] was subjectively baseless" because "it was filed to force [J-MM] to settle." *Id.* at 14. And on the fraud exception, the Court found that J-MM—despite not having invoked it as to *Carranza*—plausibly alleged that the exposure allegations "were intentionally made, with knowledge of their falsity, and were

material." *Id.* at 15. On materiality, the Court explained that the alleged misrepresentation "allegedly forced [J-MM] to spend significant sums" in defense and "forced defendants[] to dismiss the case." *Id.*

In rejecting Defendants' claim of *Noerr-Pennington* immunity, the Court did not mention any of the other nine cases referenced in the amended complaint—much less the cases the complaint does not describe—or explain why its analysis of *Carranza* was generalizable.

**RICO predicate.** The Court also rejected Defendants' argument that any alleged litigation misconduct is not "racketeering activity." Op.33. In *Kim v. Kimm*, the Second Circuit held that, "[i]n the absence of corruption," the ordinary litigation activity alleged there "cannot act as a predicate offense for a civil-RICO claim." 884 F.3d 98, 104 (2d Cir. 2018) (citation omitted). The Court distinguished *Kim*, which involved only a single suit, and likened this case to *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), which involved many. Op.35-36. The Court recognized that *Eisen* involved bad acts *outside* of litigation—e.g., "pressuring accident witnesses to testify falsely, paying individuals to testify falsely that they had witnessed accidents, paying unfavorable witnesses not to testify, and creating false photographs, documents, and physical evidence," 974 F.2d at 251—but found *Eisen* nonetheless on point because Defendants allegedly "ha[d] witnesses testify falsely and suppress[ed] evidence." Op.36 (citation omitted). The Court acknowledged, however, that "district courts in this circuit have stated that 'filing and prosecuting a complaint is not considered mail or wire fraud or a predicate act under RICO,'" and noted that it found no Seventh Circuit case "directly on point." *Id.* at 36-37 (quoting *Drobny v. JP Morgan Chase Bank, N.A.*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013)).

## LEGAL STANDARD

A court may revise an interlocutory order at any time before judgment adjudicating all claims. *See* Fed. R. Civ. P. 54(b). Reconsideration serves a "valuable function" where a court has

"misunderstood a party," decided "outside the adversarial issues presented," or made "an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). It is also appropriate "to correct manifest errors of law or fact." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted).

Interlocutory review under 28 U.S.C. § 1292(b) is appropriate when four requirements are satisfied: "[1] there must be a question of *law*, [2] it must be *controlling*, [3] it must be *contestable*, and [4] its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).[2]

## ARGUMENT

### I. The Court Should Reconsider Its *Noerr-Pennington* Ruling and, If Necessary, Certify the Fraud-Exception Question Under § 1292(b).

*Noerr-Pennington* requires a case-by-case analysis, yet the Order analyzed only one of ten cases. The Court should grant reconsideration, perform the required analysis, and dismiss the amended complaint, because J-MM has not plausibly alleged an exception to *Noerr-Pennington* immunity as to any case cited in the amended complaint. If the Court adheres to its holding that the fraud exception reaches a suit where an alleged misrepresentation increased litigation costs, even though no court is alleged to have relied on it, the Court should certify that question for interlocutory appeal under § 1292(b).

#### A. Under the Required Case-by-Case Analysis, *Noerr-Pennington* Bars J-MM's Claims as to All Ten Lawsuits Cited in the Amended Complaint.

The Court should reconsider its Order because it did not assess, case by case, whether J-MM plausibly alleged an exception to *Noerr-Pennington*. As the Court recognized, the sham

[2] Such a petition "must be filed in the district court within a *reasonable time*." *Ahrenholz,* 219 F.3d at 675. This motion, which is being filed within 14 days of the Order, satisfies that standard.

exception's objective baselessness component must be satisfied even when a plaintiff alleges a "pattern" of petitions: a petitioner does not lose immunity for an objectively reasonable suit "merely because it chooses to exercise [its] right more than once." *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chi., Inc.*, 953 F.3d 955, 964-65 (7th Cir. 2020); *see* Op.11. Thus, in *New West*, the Seventh Circuit held that one of a city's suits "cannot have been a sham" because it had settled, then remanded for "the proper classification of the rest" of the challenged suits. 491 F.3d at 722.

The fraud exception, too, necessarily requires case-by-case "classification," *id.*, since it asks whether a misrepresentation "actually altered *the outcome* of *the proceeding*" in which it was made, *Mercatus*, 641 F.3d at 843 (emphases added). As discussed below, that inquiry looks to what the tribunal did, not to what the misrepresentation cost the opposing party. Litigation expense, which every suit imposes, cannot show that a court's ruling turned on a falsehood.

Although the Court's Order recounted the parties' case-by-case arguments, *see* Op.12-13, it ultimately analyzed only *Carranza* as an "example," *id.* at 13-15. But that analysis—which is itself flawed—cannot be carried over to the other nine cases. The Court found objective and subjective baselessness as to *Carranza* because J-MM specifically pleaded that an SHC attorney knew that certain allegations in *Carranza* were inaccurate. *See id.* at 13-14; FAC ¶ 133. There are no comparable factual allegations about any other case. Nothing in the Order explains why a finding resting on facts pleaded about one case should apply to nine others, let alone to the other cases not cited but vaguely invoked by J-MM.

Absent individualized rulings on the other nine cases, J-MM will surely treat the Order as license to take discovery into *all* the cases it says make up the alleged "scheme," FAC ¶¶ 12-13—all without a finding that such intrusion is warranted. That is the burden *Noerr-Pennington* exists

to prevent: "when a plaintiff seeks damages ... for conduct which is prima facie protected by the First Amendment, the danger [is] that the mere pendency of the action will chill the exercise of First Amendment rights." *Kottle*, 146 F.3d at 1063 (citation omitted); *see Mercatus*, 641 F.3d at 846-47 (recognizing that improper "application of the sham exception might inadvertently stifle the legitimate exercise of this core right").

While the Order suggests a general reluctance to resolve *Noerr-Pennington* on the pleadings, Op.13, 15, other courts have readily dismissed complaints that allege litigation misconduct when a plaintiff fails to adequately plead either of the narrow exceptions to *Noerr-Pennington*. *E.g.*, *Trinity Sober Living, LLC v. Vill. of Hinsdale*, No. 19 C 7321, 2021 WL 1057749, at *3 (N.D. Ill. Mar. 18, 2021); *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 828 n.8 (N.D. Ill. 2020) (collecting cases), *aff'd sub nom. Mayor & City Council of Balt. v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022). That a plaintiff has "ma[de] allegations that raise the possibility of the application of the sham exception," Op.15 (citation omitted), *as to a particular petition* cannot strip immunity from *other* petitions as to which there are no comparable allegations. *See U.S. Futures*, 953 F.3d at 963-65 (rejecting approach that would dispose of case-by-case analysis when a "pattern" of fraudulent petitioning is alleged); *see also In re Humira*, 465 F. Supp. 3d at 828 ("[B]ecause immunized conduct cannot be aggregated with nonimmunized conduct without nullifying the immunity, it is necessary to identify protected and unprotected conduct."). The Court should reconsider its contrary decision and perform the required case-by-case analysis of the other nine cases. And as Defendants argued, Mot.12-15; Reply.3-8, under the proper case-by-case analysis, neither exception reaches any of the ten cases, including *Carranza*.

**The six settled cases.** *New West* holds that a suit settled for a substantial amount "cannot have been a sham." 491 F.3d at 722. The Order did not—and could not—explain why that rule

does not apply here. J-MM itself pleads that it settled because of "the uncertainty of litigation" and the risk of "runaway verdict[s]," FAC ¶¶ 9, 130, 189. Claims that J-MM concedes carried a real risk of a runaway verdict are not claims that "no reasonable litigant could realistically expect" to win. Op.11; *see New West*, 491 F.3d at 722; *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 743 (N.D. Ill. 2012) ("[S]ettlement is fatal to the sham litigation argument."). And J-MM pleads no facts suggesting otherwise as to the six cases here.

Nor can the settled cases satisfy the fraud exception. J-MM argues that the exception reaches "fraudulently induced settlements," Resp.8-9, but it targets "a party's knowing fraud upon, or its intentional misrepresentations to, *the court*" and applies only when such misrepresentations "actually alter[] the outcome of *the proceeding*." *Mercatus*, 641 F.3d at 843 (emphases added). A settlement requiring no court approval is decided by no tribunal, and the plaintiff (in J-MM's own words) never "obtain[s] [a] judicial outcome[]." Resp.8. Absent any allegation that the underlying court itself was "the target of [any] alleged deception," any fraud is "solely between the parties," *Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 402 (4th Cir. 2001), and not, as required, "upon … the court," *Mercatus*, 641 F.3d at 843; *see Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 123 (3d Cir. 1999) (misrepresented facts must "infect ... the government's resulting actions"—i.e., the court's ruling—to fall outside *Noerr-Pennington*).

***Morgan.*** *Noerr-Pennington* likewise bars claims based on *Morgan*, which ended in a jury verdict for SHC's client that was affirmed on appeal. Op.12. It is settled that "[a] winning lawsuit is by definition … not a sham." *PRE*, 508 U.S. at 60 n.5; *see U.S. Futures*, 953 F.3d at 963 ("[A] *successful* action self-proves its reasonableness[.]"). J-MM's sole retort—that the verdict shows only "that the fraud worked," Resp.7—simply restates its fraud theory, ignoring *PRE* and *U.S. Futures*. And it fails on its own terms: J-MM alleges no misrepresentation in *Morgan*, much less

one that affected the jury's verdict. While J-MM alleges that some testimony in *Morgan* resembled testimony in other cases, *see* FAC ¶¶ 174-175, 177, 182, 185, such speculative assertions of fraud, which merely "recast disputed issues from the underlying litigation as 'misrepresentations,'" do not suffice. *Kottle*, 146 F.3d at 1063 (citation omitted). And they are assertions J-MM was positioned to test in the *Morgan* trial itself through questioning of witnesses.

***Yates* and *Montgomery*.** The two voluntarily dismissed suits the Order did not discuss are likewise immune. Beginning with the fraud exception, J-MM never argued for that exception's application to the dismissed cases, *see* Resp.8-9, so any such argument is waived, *e.g.*, *Gibson v. Chubb Nat'l Ins. Co.*, 182 F.4th 519, 527 n.2 (7th Cir. 2026) (argument "nowhere to be found in [party's] briefs … is waived"). In any event, in a voluntarily dismissed case, like a settled one, any fraud necessarily failed to infect the (nonexistent) "outcome of the proceeding." *Mercatus*, 641 F.3d at 843; *see* pp. 5, 10, *supra*. As to the sham exception, J-MM itself conceded that "voluntary dismissal with prejudice does not establish that claims lacked merit—it may reflect a settlement, a strategic decision, or any number of considerations unknown to this Court." Dkt.89 at 9; *see* Reply.6. J-MM must therefore allege more than dismissal to show objective baselessness. It has not done so. On the contrary, as to both *Yates* and *Montgomery*, J-MM simply alleges that its discovery and investigation developed evidence contrary to plaintiffs' evidence. FAC ¶¶ 154, 161-163. But a petition does not lack "merit simply because it did not prevail." *U.S. Futures*, 953 F.3d at 966.

***Carranza*.** The Court should reconsider its ruling on *Carranza*. First, because J-MM never invoked the fraud exception as to *Carranza*, *see* Resp.8-9, the argument was waived, and the Order improperly resolved the exception's application "outside the adversarial issues presented," *Bank of Waunakee*, 906 F.2d at 1191 (citation omitted). Second, the Order's materiality analysis—that

the alleged misstatements forced J-MM "to spend significant sums responding to the[m]," Op.15—cannot be squared with *Mercatus*. All lawsuits impose defense costs; if that alone sufficed, *Mercatus*'s "altered the outcome" requirement would be meaningless. 641 F.3d at 843. The Court reasoned that these defense costs amounted to an "ascertainable effect on the proceedings," Op.15, but *Mercatus* used that language only to describe misrepresentations that fall *outside* the exception, *see* 641 F.3d at 843. "[A]ltered the outcome" remains the test, *id.*, and the Order never found *that* standard satisfied as to *Carranza*, *see* Op.15. Nor could it have, since *Carranza* produced no judicial outcome at all. *See Balt. Scrap*, 237 F.3d at 403 (no fraud where "no judicial ruling was based on" alleged misstatements). The fraud exception exists to deny immunity where "*success* is achieved by means of intentional falsehoods," which is why *Mercatus* saw it as "clos[ing] a sizable loophole in the Supreme Court's definition of sham litigation." 641 F.3d at 843 (emphasis added). An abandoned suit necessarily achieved no success, so the only question is whether it was a sham; treating a dismissed suit as a "fraud" would allow plaintiffs to evade the sham exception's objective-baselessness requirement by artful pleading.

The Court also should reconsider its conclusion that J-MM plausibly alleged *Carranza* to be a sham. It wrongly treated the voluntary dismissal as evidence of baselessness, *see* Op.14, even though J-MM itself concedes that a voluntary dismissal "does not establish that claims lacked merit," Dkt.89 at 9, and the amended complaint alleges that *Carranza*'s dismissal was "part of a deal resulting in the dismissal of approximately 15 cases," FAC ¶ 139. Thus, the *Carranza* resolution is akin to a settlement, which cannot satisfy the sham exception. And as a negotiated resolution, it says nothing about the merits of *Carranza* itself. The allegedly false allegation also concerned only Carranza's employer and dates of work. *See id.* ¶¶ 132-133. But the claim itself, that J-MM's pipe caused Carranza's mesothelioma, rested on sworn testimony that he installed

and cut J-MM piping at "hundreds" of sites. *E.g.*, *id.* ¶ 135. An alleged misstatement as to one particular employer does not suffice to show that no reasonable litigant could expect success. *PRE*, 508 U.S. at 62-63 (citation omitted). And the Order's reliance on Defendants' alleged knowledge of the misstatement cannot fill the gap. Knowledge goes to subjective baselessness. Objective baselessness is a separate requirement, and both must be met. Op.11.

For all these reasons, the Court should reconsider its application of *Noerr-Pennington* and hold that J-MM's claims are barred in their entirety. And if the Court's case-by-case analysis does not result in outright dismissal but narrows the set of cases in play, that narrowing undoubtedly affects the Order's other holdings, including on predicate acts and the statute of limitations.[3] Defendants would welcome supplemental briefing on these issues should the Court so desire.

### B. If Any Issues Remain, the Court Should Certify the Question Whether the *Noerr-Pennington* Fraud Exception Reaches Dismissed or Settled Suits.

If the Court adheres to its fraud-exception ruling on *Carranza* or applies it to any other dismissed or settled case, Defendants ask the Court to certify the following question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

> Whether the fraud exception to *Noerr-Pennington* can be satisfied in a suit that was settled or voluntarily dismissed, where the alleged misrepresentations increased the opposing party's litigation costs, but no tribunal's decision depended on them.

This question satisfies each of § 1292(b)'s four requirements. *See Ahrenholz*, 219 F.3d at 675.

**Pure question of law.** The question turns on the meaning of *Mercatus*'s requirement that a misrepresentation "altered the outcome of the proceeding," assuming the facts as pleaded. 641 F.3d at 843. The Seventh Circuit can decide "the meaning of [this] … common law doctrine"

[3] For example, if only *Carranza* remains, J-MM's pattern allegations would fall away, and this case would no longer "allege[] more than just mailings in a single fraudulent lawsuit." Op.35. The Court's statute of limitations holding likewise would require reconsideration. All of J-MM's allegations as to *Carranza* fall outside the limitations period, so the court's holding necessarily depends on the existence of "a fraudulent scheme" including more recent cases like *Yates*, *Bretado*, and *Montgomery*. Op.38-40.

"quickly and cleanly without having to study the record." *Ahrenholz*, 219 F.3d at 676-77.

**Controlling.** A question is controlling if its resolution is "quite likely to affect the further course of the litigation, even if not certain to do so," *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996), including by "sav[ing] time for the district court" or "time and expense for the litigants," *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (citation omitted). Because the sham exception cannot apply as a matter of law to *Morgan* or the six settled cases, *see* pp. 5, 10-11, *supra*, the fraud exception would be the only way to keep them in this case. And for the dismissed suits, a cost-based fraud theory would excuse J-MM from showing objective baselessness at all. Excluding the settled cases, and confining the dismissed suits to whatever J-MM can plead as shams, would significantly narrow the scope of discovery, saving "time and expense for the litigants," *Johnson*, 930 F.2d at 1206, thus justifying § 1292(b) review, *see Bd. of Educ. of Twp. High Sch. Dist. No. 214, Cook Cnty., Ill. v. Climatemp, Inc.*, 91 F.R.D. 245, 251 (N.D. Ill. 1981) (issue was controlling where resolving it would "seriously affect[] the manner in which this litigation may proceed in terms of scope of discovery").

**Contestable.** The question presents a "substantial ground for difference of opinion," 28 U.S.C. § 1292(b): a difficult question of law that controlling authority does not settle. *City of Joliet v. Mid-City Nat'l Bank*, No. 05 C 6746, 2008 WL 4889038, at *2 (N.D. Ill. June 13, 2008). *Mercatus* held that the fraud exception applies "*only if* the misrepresentation … actually altered *the outcome of the proceeding*," 641 F.3d at 843 (emphases added), citing numerous cases tying this inquiry to whether "*the government's* action"—i.e., the court's action—relied upon the misrepresentation, *Cheminor*, 168 F.3d at 124 (emphasis added); *see Balt. Scrap*, 237 F.3d at 403 (no fraud where "no judicial ruling was based on" alleged misstatements); *accord Rubloff*, 863 F. Supp. 2d at 742 (no fraud where alleged misrepresentations did not "implicate materiality with

respect to the *government's* (*i.e.*, the judge's) action"). This Court's Order extended the exception to a suit in which no court acted, on the ground that the alleged misstatements increased litigation costs. Op.15. Defendants are aware of no appellate authority adopting that extension, and the question is one of first impression in this Circuit. A "question[] of first impression" is "certainly contestable," making § 1292(b) review appropriate. *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1007-08 (7th Cir. 2002).

**Speed up the litigation.** An immediate appeal would materially advance the termination of this case. If the fraud exception does not reach settled or dismissed suits, the six settled cases drop out, and the dismissed suits remain only to the extent J-MM can plead them as shams. Discovery would narrow from ten named cases to what remains. Certifying now, before discovery opens, avoids discovery that a later reversal would render unnecessary. And because this question can be certified together with the question addressed in Part II, the Seventh Circuit could resolve both in a single appeal, further promoting efficiency.

## II. If The Court Determines That *Noerr-Pennington* Does Not Bar J-MM's Claims, It Should Certify Whether Ordinary Litigation Activity Can Be A Pattern of Racketeering for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

If the Court concludes that *Noerr-Pennington* does not bar J-MM's claims, the case turns on a second question that the Seventh Circuit has never decided: whether litigation activity, without bribery, witness intimidation, or other corrupt conduct, can form a pattern of racketeering activity under RICO. The Order answers yes, principally because J-MM alleges many suits rather than one. Op.35-36. Several courts of appeals have drawn the line at corruption, and district courts in this circuit have said that filing and prosecuting a complaint is not a RICO predicate act at all. *Id.* at 36-37. The answer to the certified question decides whether any RICO claim survives, and it should come from the Seventh Circuit before discovery begins into the closed cases J-MM seeks to relitigate, as that discovery undoubtedly will pose complex attorney-client privilege issues.

Defendants therefore ask the Court to certify the following question under § 1292(b):

> Whether alleged fraud in the course of ordinary litigation activities, such as filing pleadings, responding to discovery, and providing witness testimony, absent allegations of bribery, witness intimidation, or other corrupt conduct, can constitute a pattern of racketeering activity under RICO.

This question, too, meets each requirement of § 1292(b). *See Ahrenholz*, 219 F.3d at 675.

**Pure question of law.** The question presented is a categorical one: whether a scheme consisting of filing pleadings, serving discovery, and presenting testimony in civil litigation, without more, can be the pattern of racketeering the RICO statute reaches. The question turns on "the meaning of a statutory … provision," which the Seventh Circuit can decide "without having to study the record." *Id.* at 676-77. The question also accepts J-MM's allegations as true: that Defendants made "'repeated and knowing false statements' … in discovery responses, litigation filings, and depositions," Op.54—without any bribery, witness tampering, or corruption, *see also, e.g.*, *id.* at 12 ("There is no dispute here that plaintiff's allegations are based on litigation-related activities that would ordinarily be protected under *Noerr-Pennington.*"). Defendants deny the allegations, but the Seventh Circuit need not resolve any factual dispute about them. It need only decide *when* litigation activity can form a pattern of "racketeering."

Nor does the question ask the Seventh Circuit to review the sufficiency of particular allegations. The Order drew a legal line. It distinguished *Kim* because J-MM alleges many suits and not one, *id.* at 35-36, and it treated the number of suits as the difference between non-actionable litigation activity and an actionable pattern of racketeering. Whether that is the line, or whether the kind of conduct is what matters (bribery, corruption, and the like), is a *legal* question about the scope of RICO, and the court of appeals would decide it de novo.

**Controlling.** Answering the certified question is quite likely to "affect the further course of the litigation." *Sokaogon*, 86 F.3d at 659. The only racketeering acts pleaded are mail and wire

fraud based on Defendants' litigation conduct. *E.g.*, FAC ¶¶ 224, 241; Op.28-33. If that conduct does not amount to a pattern of racketeering, J-MM's RICO claims would necessarily fail.

**Contestable**. The Order recognizes that there is no "Seventh Circuit case ... directly on point" and that "district courts in this circuit have stated that 'filing and prosecuting a complaint is not considered mail or wire fraud or a predicate act under RICO.'" Op.36-37 (citations omitted) (collecting cases).[4] This reflects that RICO's applicability to alleged litigation misconduct is "not settled by controlling authority," warranting interlocutory review. *City of Joliet*, 2008 WL 4889038, at *2 (citation omitted). And the Order's place on one side of a division among district courts in this circuit "indicates that courts are developing substantial differences of opinion" on the issue. *Whitman v. Bumble Trading LLC*, No. 22-cv-2100, 2024 WL 6862251, at *6 (C.D. Ill. Feb. 23, 2024).

Out-of-circuit authority confirms that the difference of opinion is substantial. Several circuits have rejected RICO liability for litigation misconduct absent corruption. In *Snow Ingredients, Inc. v. SnoWizard, Inc.*—which involved alleged witness tampering and obstruction—the Fifth Circuit held that "bad faith litigation absent corruption" cannot support RICO claims, distinguishing cases where "the litigation activity included bribery of parties and witnesses." 833 F.3d 512, 524-25 (5th Cir. 2016). Similarly, the Eleventh Circuit has held that serving litigation

[4] District courts in this circuit have repeatedly said that filing and prosecuting litigation, even under allegedly fraudulent pretenses, cannot qualify as a RICO predicate. *See Drobny*, 929 F. Supp. 2d at 848; *Carthan-Ragland v. Standard Bank & Tr.*, No. 11 C 5864, 2012 WL 1658244, at *2 (N.D. Ill. May 11, 2012); *see also Edelson PC v. Bandas L. Firm PC*, No. 16 C 11057, 2018 WL 723287, at *5 (N.D. Ill. Feb. 6, 2018) ("Even if Defendants' conduct is not protected *per se* because it relates to litigation, numerous courts throughout the country have concluded that conduct similar to that of Defendants, though reprehensible, is not criminal or actionable under RICO."). District courts elsewhere, meanwhile, have divided on whether litigation-activity alone is sufficient. *Compare Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 69 (E.D.N.Y. 2020), *and Snyder v. U.S. Equities Corp.*, No. 12-cv-6092, 2014 WL 317189, at *7 (W.D.N.Y. Jan. 28, 2014), *with Garlock Sealing Techs., LLC v. Simon Greenstone Panatier Bartlett*, No. 14-cv-116, 2015 WL 5148732, at *5 (W.D.N.C. Sept. 2, 2015), *and Uber Techs., Inc. v. Simon & Simon P.C.*, No. 25-5365, 2026 WL 1284178, at *12 (E.D. Pa. May 11, 2026).

documents by mail is an ordinary litigation practice that does not constitute mail fraud, noting that "[a] number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility." *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002); *see Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 n.3 (11th Cir. 2004) (rejecting attempt to use prior litigation activity as RICO predicate absent "pattern of witness intimidation, fraudulent depositions, and concealment of data and documents"). The Tenth Circuit, too, has held that the "filing of a groundless lawsuit, particularly when the plaintiff resorts to fraudulent evidence," does not state a RICO claim. *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003).[5]

Although the Court distinguished the Second Circuit's decision in *Kim* because it involved one lawsuit rather than the many alleged here, *see* Op.34-35, that reading of *Kim* is itself contestable. *Kim* reasoned broadly even though it addressed a single suit: "[i]n the absence of corruption, … litigation activity cannot act as a predicate offense for a civil-RICO claim." 884 F.3d at 104. It based that rule on concerns that "[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action, which would inundate the federal courts with procedurally complex RICO pleadings." *Id.* (citations and quotation marks omitted). That reasoning did not depend on the *number* of prior lawsuits, but on the *kind* of conduct alleged to be fraudulent. This Court also distinguished *Kim* on grounds that this case is not between "two parties who were litigating in the underlying lawsuits." Op.35. But

---

[5] In *Midwest Grinding*, 976 F.2d at 1021, the Seventh Circuit suggested that alleged perjury—which is not itself a RICO predicate—"theoretically may serve as [a] predicate act" if it constitutes mail or wire fraud or obstruction. Op.36. But this statement was made in the context of a lawsuit where the scheme to defraud entailed false invoices and diversion of customers, followed by perjury in depositions and requests to admit as a "cover-up" of the fraud. 976 F.2d at 1018-19. This is a far cry from the fraud alleged here, and in any event, the discussion was dicta, as the Seventh Circuit rested its ultimate holding on Midwest's failure to show a pattern of racketeering. Plus, the Seventh Circuit expressly left open the question of *when* such litigation activity would qualify as racketeering, the question posed by this motion.

even if that difference had bearing on *Kim*'s articulated concern about RICO litigation "eroding the res judicata and collateral estoppel doctrines," 884 F.3d at 104, it does nothing to address—indeed, even heightens—the retaliation concerns. Where a firm like SHC is a repeat player in litigation against a single company like J-MM, it is *the firm* that is the likely target of retaliatory suits, not the individual plaintiff.

This Court found *Eisen,* 974 F.2d 246, on point, reasoning that Defendants here, like the defendants in *Eisen*, allegedly had witnesses testify falsely and suppressed evidence. Op.35-36. But the conduct in *Eisen* was corruption of the litigation process from *outside of it*: bribing and pressuring witnesses to testify falsely. Whether the "corruption" that takes litigation conduct outside *Kim*'s rule is limited to that kind of out-of-court bribery and obstruction in *Eisen*, or instead reaches pleadings and discovery responses within a lawsuit, is a question of law. Courts have drawn that line in different places, the Seventh Circuit has never weighed in on it, and the answer determines whether J-MM's RICO claims can proceed at all. That question is appropriate for the Seventh Circuit's review. *See, e.g.*, *Costello v. BeavEx, Inc.*, No. 12 C 7843, 2014 WL 12775669, at *2 (N.D. Ill. Dec. 1, 2014) ("[T]he question for certification is contestable not only because the circuits are split on the issue ... but also because the Seventh Circuit has never directly addressed [it].").[6]

**Speed up the litigation**. An immediate appeal would materially advance the litigation. J-MM's claims involve numerous underlying lawsuits. *See* FAC ¶¶ 3, 229. If its claims are permitted to proceed as pleaded, discovery will involve extensive disputes over the scope of discovery, and over complex privilege and work product issues. J-MM can be expected to seek material that rightfully belongs to former clients and nonparties, whose rights would have to be

[6] Of course, the Court is free to reconsider its application of *Kim* and *Eisen* in the first instance rather than certifying any question for interlocutory appeal.

considered and protected. And there will be significant questions about the extent to which J-MM could probe SHC lawyers' knowledge, strategy, and judgment in each case. The Seventh Circuit should decide at the outset whether that costly, time-consuming process is legally justified. If the alleged litigation conduct at the heart of J-MM's claims does not qualify as a pattern of racketeering activity, all parties would be better off knowing so now: the case would end without discovery or, at minimum, discovery would proceed with definitive word from the Seventh Circuit as to what conduct is legally relevant. Certifying this question, together with the one in Part I.B, lets the Seventh Circuit resolve both in a single appeal, before the parties and the Court invest in discovery that a ruling could make unnecessary.

## III. Requested Procedural Relief

Defendants respectfully request oral argument on this motion. They also request that the Court stay proceedings, including the December 7, 2026 answer deadline, pending resolution of this motion. Should the Court certify any question for interlocutory review, Defendants ask that the stay remain in place until the Seventh Circuit's disposition of the petition and any appeal. *See* 28 U.S.C. § 1292(b) (contemplating such a stay).[7]

## CONCLUSION

The Court should reconsider its November 6, 2026 Order and, on reconsideration, grant Defendants' motion to dismiss the amended complaint as barred by *Noerr-Pennington*. In the alternative, Defendants request that the Court certify the two questions described above for interlocutory appeal under 28 U.S.C. § 1292(b). Finally, Defendants request a stay of all deadlines pending the Court's resolution of this motion.

[7] Courts routinely stay proceedings pending appeal when certifying an interlocutory appeal. *E.g.*, *Demkovich v. St. Andrew the Apostle Par.*, No. 16-CV-11576, 2019 WL 8356760, at *3 (N.D. Ill. May 5, 2019); *Hagenbuch v. Sonrai Sys.*, No. 13 C 7042, 2015 WL 14097374, at *4 (N.D. Ill. Sept. 29, 2015); *Bowens v. Blagojevich*, No. 06 C 4915, 2008 WL 11405935, at *2 (N.D. Ill. Nov. 5, 2008).

Dated: November 20, 2026

Respectfully submitted,
/s/ Andrianna D. Kastanek

Reid J. Schar (6243821)
John R. Storino (6273115)
Andrianna D. Kastanek (6286554)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
rschar@jenner.com

Amit B. Patel (6309876)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Tel: (212) 891-1600
apatel@jenner.com

Counsel for Defendants